Mark J. Geragos
California State Bar #108325
GERAGOS & GERAGOS
644 S. Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 625-3900
Facsimile: (213) 625-1600

Jon D. Williams (8318)
9 Exchange Place, Suite 600
Salt Lake City, UT 84111
Telephone: (801) 746-1460
Facsimile: (801) 998-8077

*Attorneys for Lev A. Dermen*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LEV ASLAN DERMEN, | **DEFENDANT LEV DERMEN'S MOTION TO SEVER AND MEMORANDUM IN SUPPORT OF MOTION**<br><br>Case No.: 2:18-cr-00365-JNP-BCW |

Defendant Lev Aslan Dermen, by and through counsel now moves to sever his trial form that of his Codefendants.  Mr. Dermen's bases this motion on the applicable law in

1

combination with the fact that severance is warranted because Mr. Dermen is ready to go to trial and his co-defendant, Jacob Kingston is not, and secondly that Mr. Dermen's purported involvement in the charged offenses pales in comparison to that of his co-defendants.  This motion is premised on the substantial prejudice caused to Mr. Dermen's speedy trial and related trial rights and continued compromise of these rights if his trial is not severed.

## **BACKGROUND**

### **Trial Date & Defendant Dermen's Speedy Trial Act Rights**

Throughtout the proceedings in this case, defendant Dermen has remained unequivocoal in asserting his speedy trial rights and his refusal to voluntarily waive these rights.  Mr. Dermen has not joined any motion for a continuance and once again reasserts his unwillingness to waive his Constitutional rights.

On August 31, 2018, at the time of the arraignment for defendants Jacob Kingston and Isaiah Kingston, Magistrate Judge Wells set a five-week jury trial for October 29, 2018, and ordered discovery due by September 26, 2018.

On September 24, 2018, Chief Magistrate Judge Warner made a finding on the record that the case was complex, vacated the October 29, 2018 trial date, set a status conference for October 3, 2018, before Magistrate Judge Wells, and excluded the time from September 24, 2018, until October 3, 2018.

On October 3, 2018, Magistrate Judge Wells conducted a status conference as to all Defendants.  At that status conference, Magistrate Judge Wells scheduled a status conference for December 5, 2018, and found that the ends of justice were served by excluding all time from October 3, 2018, through December 5, 2018, under the Speedy Trial Act due to the complexity of the case, the vast amount of discovery, and the due diligence required to review that discovery.

On October 9, 2018, Judge Parrish entered an Order excluding time under the Speedy Trial Act from August 24, 2018, and September 24, 2018, further time excluded between September 25, 2018, and October 3, 2018. Shealso excluded time between August 24, 2018, and December 5, 2018, from the speedy trial calculation and found that the ends of justice that were served by excluding this time outweigh the best interest of the public and the defendant in a speedy trial.  The five-week trial was reset for February 11, 2019.

A status conference was held on December 4, 2018, before Magistrate Judge Brooke C. Wells. The Kingstons were arraigned on the new charges brought by the First Superseding Indictment.  After discussion about the February 11, 2019, trial date, Magistrate Judge Wells ordered all parties to submit to the Court their position/motions as to discovery and the current trial date.   Mr. Dermen maintained his Sixth Amendment right to a speedy trial and continued to refuse to voluntarily waive these rights.

The parties submitted additional briefing on December 17, 2018.  Mr. Dermen reasserted his Speedy Trial rights and requested that the court set a hearing for review of detention under 18 U.S.C. § 3164. *See* Defendant Lev Dermen's Response to Order [Doc 107] attached as Exhibit 1.

A status conference was held on December 18, 2018, before District Court Judge Parrish.  The Court heard from the parties regarding continuing the February 11, 2019, trial date and reconsideration of detention under 18 U.S.C. § 3164.  Additionally, the government claimed by January 17, 2019, a Second Superseding Indictment would be secured, which would add up to four additional defendants and include additional charges against all three current defendants.

Despite Mr. Dermen's insistence on preserving his speedy trial rights, the February 11, 2019, trial date was ultimately continued on December 21, 2018, by an Order (the "December Order") entered by Judge Parrish. *See* December Order, attached as Exhibit 2. The findings made in the December Order included (1) that the matter involves novel questions of law regarding renewable fuel tax credits; (2) the nature of the prosecution includes allegations of a complex and multi-year fraud scheme to defraud the United States out of more than $511 million in renewable fuel tax credits; (3) the discovery in the case is voluminous; (4) the government's representations that it anticipates filing a second superseding indictment by mid-January that will add additional

defendants and additional charges against the existing defendants; (5) that counsel for

Jacob Kingston is scheduled to begin a trial in the Eastern District of New York on

March 18, 2019 that is estimated to last six weeks; (6) counsel for Mr. Kingston

represents that he needs more time to review the extensive volume of discovery in this

case and that he cannot fully prepare for trial until he knows what the final charges

against Jacob Kingston will be and that he cannot be ready to try the case until after

his trial is concluded in the Eastern District of New York; (7) that in a brief filed on

December 7, 2018, Mr. Dermen stated that he opposes any continuance of the February

11, 2019, trial date; and (8) that Isaiah Kingston also objected to any continuance of the

February 11, 2019, trial date and demanded a speedy trial. (Ex. 4.)  Ultimately, the trial

date was continued, according to the Order, primarily due to Jacob Kingston's interests in

continuity of counsel.  Accordingly, the December 21, 2018 Order by District Court

Judge Parrish excluded time from February 21, 2019, until May 13, 2019, resetting the

trial date for May 13, 2019.  The Court declined Mr. Dermen's request to set a hearing

for review of detention under 18 U.S.C. § 3164.

Significantly, on January 15, 2019, an Order was entered in United District for

Eastern District of New York case number 18-CR-204 (NGG)(VMS) continuing

co-defendant Jacob Kingston's co-counsel's New York trial date to April 29, 2019.  *See*

Exhibit 3, *United States of America v. Kieth Raniere*, United District for Eastern District

of New York case number 18-CR-204 (NGG)(VMS), January 15, 2019 Order.   The trial

in *Raniere* matter is estimated to last approximately six weeks which will conflict with the the May 13, 2019 trial date in this matter and will very likely cause yet another continuance this trial date due to Jacob Kingston's interest in continuity of counsel.

Mr. Dermen continues to assert his constitutional right to a speedy trial and objects to any continuances.

**<u>Indictment</u>**

On August 01, 2018, the United States Government filed a fifteen-count Indictment against Jacob Ortell Kingston, Isaiah Elden Kingston (collectively "the Kingstons") and Lev Aslan Dermen ("Mr. Dermen"). *See* Indictment attached as Exhibit 4. The Kingstons reside in the state of Utah and are the owners of Washakie Renewable Energy, LLC ("Washakie') and United Fuel Supply ("UFS"). Washakie and UFS are limited liability companies based out of Salt Lake City, Utah. (Ex.. 1, ¶¶ 3, 4.)  Counts 1 through 9 of the Indictment allege a $500 million plus tax fraud scheme in violation of 26 U.S.C. § 7206(2), naming only co-defendant, Jacob Kingston.  These Counts accuse Jacob Kingston of willfully aiding and assisting in, and procuring, counseling, and advising the presentation to the IRS of Forms 8849, claims for refund excise taxes, for and on behalf of his company Washakie, while Jacob Kingston then knew that Washakie was not in fact entitled to the credits.

Mr. Dermen is not charged in the alleged $500 million renewable fuel tax credit scheme nor is he implicated in a conspiracy.  Instead, Mr. Dermen is charged in four

separate money laundering counts where it is alleged that he aided in the transfer of

illegally obtained funds on behalf of Jacob Kingston. (Ex. 1.) Specifically, Counts

10-12 allege that Mr. Dermen caused the making of principal and interest payments of an

alleged loan made to "Borrower X" in violation of Title 18, United States Code, Sections

1956(a)(1)(B)(i)-(ii). (Ex.1, ¶ 22). According to the Indictment, in June of 2013 Jacob

Kingston used proceeds from the alleged fraudulent tax credit benefits to make an $11.2

million loan to "Borrower X" who is described in the Indictment as a California

businessman. The Indictment claims that Jacob Kingston deposited a U.S. Treasury

check in the amount of $11.4 million to be deposited in a Washakie bank account on June

17, 2013. On June 21, 2013 a wire transfer in the amount of $11,226,211 was sent from a

Washakie bank account to a third party account in Florida for the purpose of making a

loan to Borrower X for that amount. Approximately two years later on February 4, 2015,

Mr. Dermen and Borrower X executed a promissory note for $12,000,000 to document

the loan, which then became payable to SBK Holdings USA, Inc., instead of Washakie.

Thereafter Borrower X allegedly made principal and/or interest payments on this loan to

bank accounts controlled by Pillar Law Group, a California law firm. These separate

interest payments made by Borrow X constitute Counts ten through twelve of the

Indictment which charge Jacob Kingston and Mr. Dermen for knowingly and willfully

causing the making of principal and interest payments on the $11,226,211 loan made to

Borrow X, which allegedly came from the proceeds of Kingston's tax credit scheme. The

total amount of dollars at issue in Counts 10 through 12 is $350,000.

Lastly, Mr. Dermen is charged in Count 14 of the Indictment, which relates to the purchase of real property located at 2072 East Creek Road, Sandy, Utah.  According to the Indictment, on or about June 10, 2013, Mr. Dermen allegedly deposited a $3 million check originating from Jacob Kingston's Merrill Lynch bank into a Noil Energy Group account.  Then, on July 29, 2013, Jacob Kingston signed a purchase contract listing "Noil Energy" as the buyer of real property located on 2072 East Creek Road, Sandy, Utah 84093.  According to the Indictment, Noil Energy Group is a California corporation controlled by Mr. Dermen.  The Indictment alleges that on August 1, 2013, the Kingstons wire transferred $50,000 from a Washakie account to Meridian Title Company for the purchase of the real property described above.  On August 2, 2013, the Kingstons wire transferred $675,034 from a Washakie account to the title company for the purchase of the real property.  Thereafter, according to the Indictment, on August 5, 2013, Mr. Dermen wire transferred $3,160,000 from a Noil Energy Group bank account to Meridian Title Company for the purchase of the property.   The Indictment charges Mr. Dermen and Mr. Kingston for money laundering  in violation of Title 18 United States Code Sections 1956(a)(1)(B)(i) in connection with the  $3,160,000 wire transfer from Noil Energy Group to Meridian Title Company for the purchase of the real property.  Meridian Title Company is not charged as a co-defendant.

**First Superseding Indictment**

On November 20, 2018, a First Superseding Indictment was returned. *See* First Superseding Indictment, attached as Exhibit 2.  The First Superseding Indictment did not include additional charges against Mr. Dermen.  This was despite the government's continued misrepresentations to the Court both at the August 28, 2018 hearing in the Central District of California and the bail review hearing in Utah on October 3, 2018, before Judge Parrish, where the government insisted that "more serious charges were coming," against Mr. Dermen.  It has been six months since the government secured the August 1, 2018 Indictment causing Mr. Dermen's arrest and ongoing subsequent detention.  As it currently stands Mr. Dermen is not charged in the substantive renewable fuel tax credit scheme counts nor has he been implicated in any additional charges.

On several occasion the government has represented to the court that the reason for the piecemealing of charges across what will purportedly result in a second superceding indictment is preserving statute of limitations.  While the government has been in possession of much of the discovery in this case since 2016, it waited until August 1, 2018 to secure the initial Indictment, and November 20, 2018 to pursue a first superseding indictment, and apparently the third week of January of 2019 for the second and final superseding indictment.

**Custody**

Mr. Dermen was arrested in the Central District of California where he resides on August 23, 2018.   He was arraigned in the Central District of California on August 24, 2018. The government moved for detention of Mr. Dermen on August 24, 2018.  On August 28, 2018, a detention hearing was held before Magistrate Judge Standish in the Central District of California, and Mr. Dermen was ordered detained as a flight risk. He was ordered removed to the District of Utah on September 4, 2018.  He made his initial appearance and arraignment before Chief Magistrate Judge Warner in the District of Utah on September 24, 2018.  On September 24, 2018, Mr. Dermen filed a Motion for Review of detention.  On October 3, 2018, the District Court conducted a de novo hearing regarding detention of Mr. Dermen.  On October 9, 2018, an Order was entered denying Mr. Dermen's Motion for Review of Detention and ordered Mr. Dermen detained pending trial.  As of the date of filing this motion, Mr. Dermen has spent 142 days in custody.

## ARGUMENT

The Federal Rules of Criminal Procedure govern the proper joinder of defendants under a single indictment. Specifically, Rule 8(b) permits the joinder of two or more defendants in an indictment if those defendants participated in the same act or transaction. Fed. R. Crim. P. 8(b ). "Where the evidence overlaps, the offenses are similar and the operable events occurred within a relatively short span of time, joinder of

defendants and offenses is proper." *United States v. Esch,* 832 F.2d 531, 538 (10th Cir.1987).  Alternatively, Rule 14(b) provides relief to joined defendants if the joinder of offenses or defendants in an indictment, appears to prejudice a defendant. Fed. R. Crim. P. 14.  Moreover, Rule 21(b) permits the transfer of criminal proceedings to a different district if in the interest of justice.  Fed. R. Crim. P. 21(b).  Here, Mr. Dermen has been severely prejudiced as a result of joinder with co-defendant Jacob Kingston.

## A.     Mr. Dermen is Not Implicated in the Kingstons' Common Plan or Scheme to Allegedly Commit Renewable Fuel Tax Credit Fraud

Federal Rules of Criminal Procedure Rule 8(b) provides in pertinent part: "[t]he indictment or information may charge two or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  The question of misjoinder is a question of law for the court. *United States v. Cardall*, 885 F.2d 656, 667 (10th Cir.1989). To be part of the "same series of acts, the offenses charged must be part of one overall scheme about which all joined defendants knew and in which they all participated." *United States v. Sazenski*, 833 F.2d 741, 745 (8th Cir. 1987) (citations omitted).

In *United States v. Garganese*, 156 F.R.D. 263, 267 (D. Utah 1994), several defendants were charged in a 130-count indictment alleging a bank fraud scheme. The defendants moved for severance on grounds of misjoinder because they were not charged in the conspiracy count and because those defendants did not know of the illegal activities of their co-defendants. *Id*. at

266. There, this Court granted the motion to sever and held that Rule 8(b) "does not simply allow joinder because defendants have *participated in the same act or transaction* or series of acts and transactions, rather the acts and transactions must be involved in constituting an offense or offenses." *Id*. at 267 (emphasis added).  Here counts 10-12 and 14 indeed charge Mr. Dermen and Jacob Kingston jointly with the money laundering offenses. Yet, that alone is insufficient to establish that Mr. Dermen was part of Jacob Kingston's plan or scheme with respect to the underlying renewable fuel tax credit scheme as Mr. Dermen is not charged in the substantive allegations making up this Indictment.

Moreover, unlike in *Garganese*, here the Indictment does not allege a conspiracy. Rather, the government contends that Mr. Dermen "schemed" with the Kingstons without providing any factual support for such allegations.  In fact, in the original Indictment, nine of the fifteen counts go to the government's underlying theory of Title 26, United States Code, Section 7206(2) violations.  Importantly, Mr. Dermen is not charged as a participant in that underlying scheme. As this Court noted, "[t]here must be a logical relationship between the offenses, a commonality must be involved." *Id.*  at 266 (citing *United States v. McLain*, 823 F.2d 1457, 1467 (11th Cir.1987)).  Rule 8(b) may not be read to embrace similar or even identical offenses, unless those offenses are related.  *See United States v. Nicely*, 922 F.2d 850, 853 (D.C. Cir. 1991). Here, the only logical connection offered by the government is that Mr. Dermen executed a promissory note to "Borrower X" nearly two years after the Kingstons allegedly secured fraudulent funds to source the loan. (Ex. 1, ¶ 21).  That, alone, cannot serve as the basis to join

Mr. Dermen in a supposed "scheme" because "mere similarities between some actors or crimes does not show a common scheme or plan." *Garganese*, 156 F.R.D. at 267 (citing *United States v. Valdez*, 149 F.R.D. 220, 222 (D. Utah 1993)).

Furthermore, here, joinder is inappropriate due to the complex characterization of the offenses involving renewable fuel tax credit fraud that only implicate Jacob Kingston. The trial date has been severely impacted as a result of the "novel questions of law" regarding renewable fuel tax credits. On September 24, 2018, Chief Magistrate Judge Warner made a finding on the record that the case was complex, vacated the October 29, 2018 trial date, set a status conference for October 3, 2018 before Magistrate Judge Wells, and excluded the time from September 24, 2018 until October 3, 2018. On October 3, 2018, Magistrate Judge Wells conducted a status conference as to all Defendants. At that status conference, Magistrate Judge Wells scheduled a status conference for December 5, 2018, and found that the ends of justice were served by excluding all time from October 3, 2018, through December 5, 2018, under the Speedy Trial Act due to the complexity of the case, the vast amount of discovery, and the due diligence required to review that discovery. The findings made in the December Order, which continued the trial for three months, from February 11, 2019 to May 13, 2019, instead included (1) that the matter involves novel questions of law regarding renewable fuel tax credits; and (2) the nature of the prosecution includes allegations of a complex and multi-year fraud scheme to defraud the United States out of more than $511 million in renewable fuel tax credits, which results in voluminous discovery. Moreover, because of the complexity arising from this novel area of

law, Jacob Kingston's defense counsel requested that the February 11, 2019, trial date be

extended in part because he needed additional time to diligently review the voluminous

discovery  -- most of which was collected as a result of a 2016 search warrant of the Kingstons'

business and homes.  Mr. Dermen is not implicated in the fuel tax credit scheme, yet he

continues to be prejudiced by being joined in an Indictment with a co-defendant who is charged

with those offenses.  The nature of Mr. Dermen's alleged conduct -- which consists of four

counts of money laundering – are not complicated charges.  Counsel's preparation for trial on

these four counts, three of which relate to one loan and the fourth a real estate transaction, does

not require diligent review of most of the discovery, multiple terabytes that are irrelevant to

these money laundering allegations, nor would the charges as they currently stand require a five

week trial.  Here, two separate trials will not involve a substantial amount of the same evidence

or witnesses; nor would a separate trial on the current charges require a five week trial estimate.

**B.   Joinder Has Resulted in Violation of Mr. Dermen's Speedy Trial Rights and Prolonged Detention**

Mr. Dermen has suffered prejudice by joinder with Jacob Kingston as a result of a

delayed trial date and prolonged detention.  Mr. Dermen has remained absolute about his

unwillingness to waive his speedy trial rights or agree to a continuance of his trial date.  For

example, during the September 24, 2018, status conference before Magistrate Judge Warner,

counsel for Mr. Dermen stated on the record that he was prepared to proceed with trial as

scheduled.   Again during the October 3, 2018, detention hearing counsel for Mr. Dermen

reiterated his readiness for trial.  Then again throughout the December 4, 2018, status

conference, counsel for Mr. Dermen expressed his objection to a continuance of the February

11, 2019, trial date.  Counsel for Mr. Dermen stated, "The fact is, I said, since August 28th in

the central district, they don't understand at least Mr. Dermen's role in this case, and we're

ready to go, because I've been down this road before with the government.  And I said it again

when we were here before Judge Parrish, and said it again before the other magistrate." *See*

Transcript of December 4, 2018, Status Conference, 35:Lines 3 to 8, attached as Exhibit 6.

After the December 4th hearing, all parties were asked to submit their written positions on the

trial date and again, Mr. Dermen stated his unwillingness to waive his rights or agree to a

continuance of the trial date.  This is especially due to the fact that Mr. Dermen is not implicated

in the fuel tax credit fraud scheme and consequently a vast amount of discovery produced by the

government has little or no bearing on the four counts of money laundering that Mr. Dermen is

accused of committing according to the Indictment.  For that reason, counsel's preparation for

trial on the present Indictment does not require review of multiple terabytes of discovery, which

are not relevant to Mr. Dermen's alleged conduct.

However, as detailed above, following the December 18, 2018, status conference, the

February 11, 2019, date was indeed continued, over Mr. Dermen's objection, due to Jacob

Kingston's right to continuity of counsel, an issue that was raised because of Jacob Kingston's

defense counsel's representations to the court that he would not be prepared by the February

11th trial date due to (1) a trial set to begin in the Eastern District of New York on March 18,

2019, that is estimated to last six weeks; and (2) a need to review the extensive volume of discovery in this case, which he cannot fully prepare for until he knows what the final charges against Jacob Kingston will be. As a result, the trial date was extended by 90 days from February 11, 2019, to May 13, 2019. As recent as January 15, 2019, counsel for co-defendant Jacob Kingston's trial in the Eastern District of New York was continued yet again to commence on April 29, 2019 and estimated to last approximately 6 weeks. This new trial date in the Eastern District of New York conflicts with the May 13, 2019 trial date in this matter. Consequently, Mr. Dermen continues to be prejudiced by joinder with Jacon Kingston.

While co-defendant Jacob Kingston may very well have had good cause for a continuance of the trial date, those reasons are inapplicable to Mr. Dermen and cause severe prejudice to him with an unnecessarily prolonged detention. Mr. Dermen will have spent 264 days in custody by the current May 13, 2019 trial date.

## C.     The Complexity of the Case against the Jacob Kingston Would Prevent the Jury from Making a Reliable Judgment as to Mr. Dermen, and Cause him Prejudice

Rule 14 states that a court should grant a severance "if there is a serious risk that a joint trial would… prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). The government has failed to provide sufficient evidence to link Mr. Dermen to its underlying theory of fraud. Jacob Kingston is implicated in every count in the Indictment where Mr. Dermen is charged in four counts of money laundering. If the government had sufficient evidence to tie Mr. Dermen to the alleged

fraud it would have charged Mr. Dermen accordingly, especially because the government has been in possession of the most of the evidence regarding the fuel tax credit fraud scheme since at least 2016.   However, if a severance is not granted it is likely that a jury would return an unreliable finding as to Mr. Dermen in a trial where the principal theory is defrauding the United States government.

Even if this Court were to find that Mr. Dermen's counts were properly joined, severance is warranted because the prejudicial effect far outweighs this Court's interest in the otherwise expeditious resolution of this matter.  Rule 14(a) states that "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires. Fed. R. Crim. P. 14(a). In considering the merits of Mr. Dermen's motion this Court "must balance two competing interests by weighing the prejudice to a particular defendant against considerations of economy and expedition in judicial administration." *United States v. Pack,* 773 F.2d 261, 267 (10th Cir. 1985). The Supreme Court has recognized that "[w]hen many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened." *Kotteakos v. United States*, 328 U.S. 750, 774-775 (1946).

**D.    Change of Venue**

If a severance is granted**,** then Mr. Dermen moves the Court, pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure, for an order transferring Counts 10-12 and 14 of this

case from the District of Utah, Central Division, to the United States District Court for the Central District of California.  Rule 21(b) states: "upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21. The decision whether to grant a motion for change of venue rests largely in the sound discretion of the trial judge. *United States v. Calabrese*, 645 F.2d 1379, 1384 (10th Cir. 1981). This Court should transfer Mr. Dermen's case to the Central District where Mr. Dermen, his counsel, and most, if not all, of the witnesses involving Mr. Dermen's alleged conduct reside.

In *United States v. Young*, No. 2:12-CR-502, 2012 WL 5397185 (D. Utah Nov. 5, 2012) (unpublished) this Court listed a non-exclusive list of factors to be considered when ruling on a motion to transfer venue. The Court should consider the

> (1) location of corporate defendant [or the individual defendants];
> (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved;
> (5) disruption of defendant's business unless the case is transferred;
> (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer.

*Id*. (citing *Platt v. Minnesota Mining & Manufacturing Company*, 376 U.S. 240 (1964)).  As this Court noted, "no factor by itself is dispositive; instead, it is within the sound discretion of the court to strike a balance and determine which factors are of greatest importance, based on the totality of the circumstances." *Id*. (citations omitted).

Here, the majority of the relevant factors enumerated by this Court warrant a transfer to the Central District of California.   First, Mr. Dermen is a resident of Los Angeles, California. (Ex.1, ¶ 5).  Also, the Indictment alleges that the relevant acts occurred through Mr. Dermen's corporations Noil Energy Group and SBK Holdings, which are corporations with offices in California. *Id*. In particular, SBK Holdings is a corporation formed in California. (Ex.1, ¶ 6). Accordingly, since the Indictment alleges the transfer of funds through Mr. Dermen's corporations located in California, the location of records and documents relevant to this case are located in California. Similarly, the Indictment does not allege that Mr. Dermen personally traveled to Utah or that his alleged conduct occurred in Utah. For those reasons, factors (1)-(4) favor transfer.  Finally, the witnesses that the government has identified with regard to Mr. Dermen are based in California, including "Borrower X," Edgar Sargsyan, John Balian, and Santiago Garcia, among others.  The witnesses Mr. Dermen intends to call in his defense similarly reside in the Central District of California.

Moreover, in the event of a severance, the expense and inconvenience of a trial in Utah would cause an undue burden on Mr. Dermen's defense.  Mr. Dermen's retained counsel is a California licensed attorney appearing Pro Hac Vice before this Court. Mr. Dermen has already had to bear the high costs of travel to ensure representation throughout all stages of this proceeding and to secure local counsel in Utah.

Finally, the government has already indicated that the primary reason they charged Mr. Dermen in the state of Utah was so the Indictment would not be leaked.  During Mr. Dermen's

August 28, 2018, detention hearing in the Central District of California Agent Hatcher testified that he took efforts during the course of this two year investigation to keep the circle close so that the Indictment would not be leaked and stated "That's why we kept it mostly in Utah." *See* August 28, 2018 Detention Hearing Transcript, attached as Exhibit 7, at Pg. 40, Line 8.  Forcing Mr. Dermen to litigate this case in Utah when all the relevant evidence and testimony is in Mr. Dermen's state of residency is against the interests of justice if a severance is denied.

Lastly, transferring the venue to California will not create an additional burden on the government because the government attorneys comprising the prosecution team are also based outside of Utah. For these reasons, upon severance, this Court should grant Mr. Dermen's motion to transfer venue and return Mr. Dermen to the Central District of California.

## <u>CONCLUSION</u>

A severance is warranted in the unique circumstances of this case, including a Defendant who is ready for trial and has consistently expressed his desire for speedy trial; a co-defendant who is months away from from being ready and who has an interest in continuity of counsel; combined with pre and post Indictment delay caused by piecemeal prosecution on the part of the government.

For the foregoing reasons this Court should grant Mr. Dermen's motion to sever and transfer the case to the United States District Court for the Central District of California.

//

//

RESPECTFULLY  SUBMITTED this 15th  day of January, 2019.


                      By      */s/ Mark J. Geragos*
                                   MARK J. GERAGOS

Attorney for Defendant Dermen


                      By      */s/ Jon D. Williams*
                                   JON D. WILLIAMS

Attorney for Defendant Dermen

## CERTIFICATE OF SERVICE

I hereby certify that I filed a true and correct copy of the foregoing, on thne case styled *United States of America v. Lev Aslan Dermen*, this 15th day of January, 2019, with the Clerk of the Court using CM/ECF, which sent notification of the filing to all parties registered to receive such notice in the case.


/s/     *Mark J. Geragos*