Mark J. Geragos
California State Bar #108325
GERAGOS & GERAGOS
644 S. Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 625-3900
Facsimile: (213) 625-1600

John D. Williams (8318)
9 Exchange Place, Suite 600
Salt Lake City, UT 84111
Telephone: (801) 746-1460
Facsimile: (801) 998-8077

*Attorneys for Lev Dermen*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LEV ASLAN DERMEN, | **DEFENDANT LEV DERMEN'S REQUEST FOR RECONSIDERATION OF BAIL**<br><br>Case No.: 2:18-cr-00365-JNP-BCW |

Defendant Lev Aslan Dermen requests that this Court reconsider his pretrial detention and set conditions for bond.  Mr. Dermen's request is based on constitutional due process, change in circumstances, and new information now available to the Court to support a finding that he should be released on conditions that will assure his appearance in court.

1

### A.     SECOND SUPERSEDING INDICTMENT

On January 18, 2019, the government filed its second superseding indictment.   Mr. Dermen is charged in 10 of the 60 counts charged in the new Indictment.  The second superseding indictment charges Mr. Dermen as follows:

**Count 1 -** 18 U.S.C. § 1349 (Conspiracy to commit mail fraud)

**Count 24 -** 18 U.S.C. § 1956 (Conspiracy to commit international, concealment, and expenditure money laundering offenses)

**Counts 26-30** - 18 U.S.C. § 1956 (Money laundering, conceal /disguise)

**Count 32 -** 18 U.S.C. § 1956 (Money laundering, conceal / disguise)

**Count 42 -** 18 U.S.C. § 1957 - (Money laundering, expenditure)

**Count 45 -** 18 U.S.C. §1957 (Money laundering, expenditure)

The second superseding indictment does not allege or incorporate any new evidence whatsoever that was not already in possession of the government when Mr. Dermen was first indicted on August 1st, 2018 resulting in his August 23, 2018 arrest and ongoing detention.  Instead, this indictment merely expands on the underlying renewable fuel tax credit scheme narrative of the original indictment.  For six months the government sat on evidence instead of presenting a full case to the grand jury. Basically the government unfolded a piecemeal grand jury presentation while Mr. Dermen languished in county jail. This dilatory action was nothing more than a ruse to keep Mr. Dermen detained and to cause a continuance of the trial date.

For instance, Count 1 of the Superseding Indictment charges the defendants with conspiracy to commit mail fraud in violation of *18 U.S.C. § 1349,* which the government refers to as the "Mail Fraud Scheme." The conduct charged in Count 1 which allegedly took place

between the years 2010 through 2017 is only an elaboration and expansion of the renewable fuel

tax credit scheme detailed in the First and Second Indictments initally only naming Jacob

Kingston.

The Second Superseding Indictment also charges a second conspiracy naming Jacob

Kingston, Isaiah Kingston, and Mr. Dermen for allegedly conspiring to commit international

concealment, and expenditure money laundering offenses in violation of *18 U.S.C. § 1956(h)*.

This allegation consists of conduct that the government claims took place from April 2013

through November of 2016.  This second conspiracy still is only a restatement of the alleged

renewable tax credit scheme where the defendants are accused of concealing the proceeds of the

"Mail Fraud Scheme."  Allegedly Mr. Dermen's "shares of proceeds" of the Mail Fraud Scheme

from Washakie's bank accounts were transferred to him personally or to entities that were

allegedly controlled by Mr. Dermen.

Counts 26 through 30 of the Second Superseding Indictment charge Mr. Dermen with

separate counts of money laundering in violation of *18 U.S.C. § 1956,* with respect to an $11

million loan to "Borrower X" detailed in the original Indictment.  Again, this is only a more

specific narrative that has already been alleged and detailed in the original Indictment and refers

to five transactions that allegedly took place between June 4, 2014 and April 24, 2015.

 Count 32 of the second superseding indictment charges Mr. Dermen with one count of

money laundering in violation of 18 U.S.C. § 1956 with respect to the purchase of real property

located at 20172 East Creek Road.  This offense is already charged in the initial indictment.

Count 42 of the second superseding indictment charges Mr. Dermen, Jacob Kingston, and

Isaiah Kingston with one count of 18 U.S.C. § 1957 for causing a wire transfer in the amount of

$483,000 to an overseas bank account with a wire transfer memo that read "VAT of the waterside house (mansion)."   This transaction allegedly occurred in March of 2014.  The evidence of this transaction was used by the government against Isaiah Kingston and Lev Dermen during both defendants's respective detention hearings, but the government waited until January of 2019 to present the same evidence to the grand jury.

        Lastly, Count 43 of the Second Superseding Indictment charges Mr. Dermen with one count of money laundering in violation of 18 U.S.C. § 1957 alleging that Mr. Dermen used proceeds of the Mail Fraud Scheme for the purchase of a residence located in Huntington Beach, California in March of 2015.   Like the payment of the VAT tax discussed above, evidence of this real estate transaction was also used by the government through the testimony of Agent Hatcher during Mr. Dermen's October 3, 2018 detention hearing.  Again, the government stalled the second superseding indictment until January of 2019, nearly 6 months after Mr. Dermen's August 23rd 2018 arrest and ongoing detention.

        At the conclusion of Mr. Dermen's October 3, 2018 detention hearing a discussion took place between the Court, the government, and counsel for Mr. Dermen regarding the speedy trial clock and the trial date.  There, the government made representations to the court that there was an "ongoing investigation" with respect to superseding indictments.   Specifically, AUSA R. Rowling stated: "Your Honor, I will say what we have said publicly before Judge Wells, and that is that we intend to present a superseding indictment in this case against the charged defendants and maybe others. It's coming.  *If the grand jury returns that indictment, it will change the scope and change the nature of the trial this Court will preside upon*." *October 3, 2018 Transcripts, at Pg. 229.*  The government went on to suggest that the speedy trial clock will start

4

again once this superseding Indictment was returned. *Id*. at 229-233.  These representations were made again by the government during the December 18, 2018 status conference.  For instance, when the court asked the government when discovery would be turned over, they stated that there was an "ongoing investigation" related to the second superseding indictment and as result, the government would required two weeks from the date the second superseding indictment was returned to complete discovery production.

The Second Superseding Indictment adds two new additional defendants, Rachel Kingston and Sally Kingston.  This was also unnecessarily untimely given the length of time the government has had the underlying discovery.  Both Rachel and Sally are implicated in Count 1, Conspiracy to Commit Mail Fraud, *18 U.S.C. § 1349*.  Rachel and Sally are also charged in a separate conspiracy allegation, conspiracy to commit concealment money laundering offenses (Count 24) along with Jacob and Isaiah Kingston.  Rachel is additionally charged in Counts 40 and 41 with money laundering offenses in violation of 18 USC 1957.  Lastly, Rachel is charged with co-defendants Jacob and Isaiah Kingston with a violation of 18 USC 1512(c)(1), destroying and concealing records and objects.  Notably, the government is not seeking pretrial detention of Rachel or Sally.

### B.    TRIAL DATE & MR. DERMEN'S SPEEDY TRIAL ACT RIGHTS

On December 21, 2018, the district court granted over Mr. Dermen's objection a request by a codefendant for a continuance of more than five months, which will result in the unconstitutional illegal pretrial detention of Mr. Dermen. The trial has already been reset twice, will likely be reset again to accommodate a co-defendant's counsel, and the government's position that the superseding indictment resets the speedy trial clock.  Now that two additional

defendants have been added, it is likely that new counsel will need additional time to reveiw multiple terabytes of discovery. The government should not be able to detain Mr. Dermen for an indefinite period of time as he awaits trial.

Throughtout the proceedings in this case, Mr. Dermen has remained absolute about his unwillingness to waive his speedy trial rights or agree to a continuance of his trial date.  For example, during the September 24, 2018, status conference before Magistrate Judge Warner, counsel for Mr. Dermen stated on the record that he was prepared to proceed with trial as scheduled.   Again during the October 3, 2018, detention hearing counsel for Mr. Dermen reiterated his readiness for trial.   Then again throughout the December 4, 2018, status conference, counsel for Mr. Dermen expressed his objection to a continuance of the February 11, 2019, trial date.  Counsel for Mr. Dermen stated, "The fact is, I said, since August 28th in the central district, they don't understand at least Mr. Dermen's role in this case, and we're ready to go, because I've been down this road before with the government.  And I said it again when we were here before Judge Parrish, and said it again before the other magistrate." After the December 4th hearing, all parties were asked to submit their written positions on the trial date and again, Mr. Dermen stated his unwillingness to waive his rights or agree to a continuance of the trial date.

Despite Mr. Dermen's insistence on preserving his speedy trial rights, the February 11, 2019 trial date was ultimately continued on December 21, 2018, by an Order (the "December Order") entered by this Court. The findings made in the December Order included (1) that the matter involves novel questions of law regarding renewable fuel tax credits; (2) the nature of the prosecution includes allegations of a complex and multi-year fraud scheme to defraud the United

States out of more than $511 million in renewable fuel tax credits; (3) the discovery in the case is voluminous; (4) the government's representations that it anticipates filing a second superseding indictment by mid-January that will add additional defendants and additional charges against the existing defendants; (5) that counsel for Jacob Kingston is scheduled to begin a trial in the Eastern District of New York on March 18, 2019 that is estimated to last six weeks; (6) counsel for Mr. Kingston represents that he needs more time to review the extensive volume of discovery in this case and that he cannot fully prepare for trial until he knows what the final charges against Jacob Kingston will be and that he cannot be be ready to try the case until after his trial is concluded in the Eastern District of New York; (7) that in a brief filed on December 7, 2018, Mr. Dermen stated that he opposes any continuance of the February 11, 2019, trial date; and (8) that Isaiah Kingston also objected to any continuance of the February 11, 2019, trial date and demanded a speedy trial. (Ex. 4.)  Ultimately, the trial date was continued, according to the Order, primarily due to Jacob Kingston's interests in continuity of counsel.  Accordingly, the December 21, 2018 Order by District Court Judge Parrish excluded time from February 21, 2019, until May 13, 2019, resetting the trial date for May 13, 2019.  The Court declined Mr. Dermen's request to set a hearing for review of detention under 18 U.S.C. § 3164.

Significantly, on January 15, 2019, an Order was entered in United District for Eastern District of New York case number 18-CR-204 (NGG)(VMS) continuing co-defendant Jacob Kingston's co-counsel's New York trial date to April 29, 2019.  The trial in the *Raniere* matter is estimated to last approximately six to eight weeks which will conflict with the the May 13, 2019 trial date in this matter and will very likely cause yet another continuance this trial date due to Jacob Kingston's interest in continuity of counsel.

C.      DUE PROCESS

As the Supreme Court has explained, "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno,* 481 U.S. 739, 755, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Under the Speedy Trial Act, the government must try a defendant within 70 days from the filing date of the indictment or the date of the defendant's first appearance, whichever is later. 18 U.S.C. § 3161(c)(1). 18 U.S.C. § 3161(h)(6) excludes "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." The general rule is that "[a]ll the defendants who are joined for trial … fall within the speedy trial computation of the latest codefendant." *United States v. Margheim*, 770 F.3d 1312, 1318-19 (10th Cir. 2014) (*quoting Henderson v. United States*, 476 U.S. 321, 323 n. 2 (1986)).

But a separate clock applies for pretrial detention. Section 3164(b) provides that "[t]he trial of any person described [herein] shall commence not later than ninety days following the beginning of such continuous detention or designation of high risk by the attorney for the Government." 18 U.S.C. § 3164(b). While it is true that "periods of delay in section 3161(h) are excluded in computing the time limitation" relating to § 3164(b), other considerations also apply to the § 3164 analysis. *Id*. "No detainee … shall be held in custody pending trial after the expiration of such [90]-day period required for the commencement of his trial." § 3164(c).

a.      The *Theron* Standard

The Tenth Circuit has addressed the additional considerations that apply when a court is considering detention under § 3164. In *United States v. Theron*, the Tenth Circuit held that §

3164(b) "requires bail or trial" in 90 days for a defendant who has objected to speedy trial exclusions and otherwise done nothing to delay court proceedings. 782 F.2d 1510, 1514 (10th Cir. 1986). In *Theron*, the defendant was detained when the court found he was a flight risk. Theron's codefendants, who were free on bail, sought a motion to continue the trial based on complexity, and the district court granted the ends-of-justice continuance pursuant to § 3161(h)(8). Theron sought a writ of mandamus after the district court refused to dismiss the indictment.

The Tenth Circuit in *Theron* held that "the 'reasonable delay' exclusion of § 3161(h)(7) has a different meaning and application under § 3164 than under § 3161, because of the different context in which it arises." *Id*. at 1516. The Court further held that "[w]hat might be reasonable delay to accommodate conservation of public resources by trying codefendants together as an exception to the Speedy Trial Act's seventy-day limit [pursuant to § 3161] might become unreasonable when a defendant is incarcerated for more than ninety days without a chance to make bail." *Theron*, 782 F.2d at 1516. The Court continued that "[i]f we did not construe the statute to require release or trial sooner than the dates the court has set, [the defendant's] continued detention would present serious constitutional issues." *Id.*

The Tenth Circuit addressed the *Theron* Court's analysis and came to the same conclusion in a more recent case. *In re Robinson*, 713 F. App'x 764 (10th Cir. 2017) (unpublished). In *Robinson*, the detained defendant was one of 22 codefendants in an alleged drug conspiracy. The district court granted a 180-day ends-of-justice continuance under § 3161(h)(7) without properly considering the requirements of § 3164. *Id*. at 767.

*Robinson* involved an interlocutory appeal of a district court order denying release after finding "that the length of Robinson's pretrial detention did not violate § 3164, implicate due process concerns, or necessitate release under *United States v. Theron*, 782 F.2d 1510 (10th Cir. 1986)." *Id.* at 765. On appeal, the Tenth Circuit instructed the district court to "revisit whether the length of Robinson's pretrial detention violates § 3164 and implicates due process concerns under *Theron*. Importantly, the Court explicitly recognized the *Theron* standard as including a "due process concern[]." *Id.*

The *Robinson* Court ultimately held that "[t]he district court's analysis is flawed for the same reasons we identified in *Theron*, where the district court granted an ends-of-justice continuance based on '(1) the codefendants' need for preparation time; (2) the complexity of the case; and (3) the desirability of trying all defendants at once.'" *Id.* at 767 (quoting *Theron*, 782 F.2d at 1512).

The same analysis that the Court used in *Theron* and *Robinson* applies in this case. "If a defendant 'used all means available to him to secure an immediate trial[,] his desire and his position as a defendant who is not out on bail must weigh strongly in favor of applying' the Speedy Trial Act's limitation." *Id.* (quoting § 3161(h)(6)). Further, as this Court held in *Theron*, "the complexity of a case does not automatically justify an ends-of-justice continuance." *Id.* The "obvious purpose" of § 3161(h)(6) is "to accommodate the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial." *Theron*, 782 F.2d at 1514. Case law recognizes a "strong presumption favoring trying properly joined defendants together." *Zar*, 790 F.3d at 1043. But despite these interests, the Court has held that § 3164 requires bail or immediate trial. "And while we declined to establish a 'bright line' as to what constitutes a

reasonable delay for purposes of § 3164, we had 'no hesitancy' in saying that *four months* additional incarceration before trial was 'too long.'" *Robinson*, 713 F. App'x at 768 (quoting *Theron*, 782 F.2d at 1516) (emphasis added).

This Court's conclusion that "a period of delay from December 5, 2018 to May 13, 2019 – a little over five months – is reasonable" is now in retrospect misplaced.  The December 21, 2018 Order has a footnote that those five months may not even be "the outer limit of reasonability under the facts of this case." The *Theron* court would disagree.

From *Theron,* it is clear that "the coincidence of a complex case *and* multiple defendants, without more," does not outweigh a particular defendant's interest in a prompt trial. *Theron*, 782 F.2d at 1513. In this case, Mr. Dermen faces at least *six more months* of prolonged incarceration, and likely more, imposed solely on the reasoning that his codefendants deserve counsel of their choice as well as more time to review discovery. Even more egregious, the government waited until mid January of 2019 to supersede with evidence it had been sitting on for three years and added Rachel and Sally Kingston as defendants five months after securing the August 1, 2018 Indictment which was based on virtually the same evidence.  These new defendants are understandably disadvantaged considering the volume of discovery which will presumably result in Mr. Dermen's trial date to be continued yet again.   The government confirmed that it believes new defendants and a new speedy trial clock "would bootstrap [ ] into the 3164 time starting anew." (Dec. Tr. 9:18-20). The government's position is simply wrong.

In its decision as to whether the court would continue the trial date once again and exclude time from the speedy trial clock pursuant to an ends of justice analysis, this court noted that the matter is complex, the volume of discovery is large, and Defendant "Jacob Kingston's

counsel represent[ed] that he would be unable to represent him at trial until after he finishes another trial in the Eastern District of New York." The December 21st Order did not include in its analysis anything relating to Mr. Dermen's interests as a defendant.

The Tenth Circuit in *Theron* and *Robinson* made it clear that more than 90 days detention under § 3164 requires an analysis beyond that required for § 3161(h)(6); indeed the analysis requires more than a weighing of the interests of codefendants and the government. Indeed, "[i]f a defendant 'used all means available to him to secure an immediate trial[,] his desire and his position as a defendant who is not out on bail must weigh strongly in favor of applying' the Speedy Trial Act's 90-day limitation." *Robinson*, 713 F. App'x at 768 (quoting § 3161(h)(6)).

Here the trial date was reset to May 13, 2019 over Mr. Dermen's continued objections and refusal to waive his rights.  The trial date will likely be reset again because of the Second Superseding Indictment and the addition of Sally and Rachel Kingston as defendants.  Currently, with the speedy trial exclusions calculations in the December 21, 2018 Order, Mr. Dermen will reach 90 days in detention as of March 7.  Tenth Circuit precedent and due process require that the government release Mr. Dermen from detention pending trial by March 7, 2019.

If the Court does not release Mr. Dermen pending trial, his illegal detention will not be correctable on appeal. The Tenth Circuit has determined that "prolonged confinement" that turns out to be unwarranted, which could happen when Mr. Dermen is acquitted of these charges, amounts to damage not correctable on appeal. *United States v. Carey*, 664 F. App'x 716, 719 (10th Cir. 2016). A May trial date puts Mr. Dermen in detention for nine months. And that May trial date will likely be continued once again.

The Tenth Circuit set forth the guidelines courts should follow when conducting a due process detention analysis. In *United States v. Cos*, this Court remanded a case to the district court for consideration of three factors: "(1) the length of detention; (2) the extent of the prosecution's responsibility for the delay of trial; and (3) the strength of the evidence upon which the detention was based." *United States v. Cos*, 198 F. App'x 727, 732 (10th Cir. 2006) (unpublished). The district court in this case did not conduct such an inquiry. In short, district courts are still equating a pretrial detention analysis under § 3164 with an analysis under § 3161.

The Speedy Trial Act allows the government 90 days to get its case together before trial must start. The reality is that the government was in possession of all the evidence and discovery relating to the second superseding indictment since at least the execution of the search warrants in 2016 and perhaps acted in bad-faith. There was no "ongoing investigation." Rather, while three men are being held and stripped of their freedom for nearly half of a year, the government has sat on the evidence and inexplicably waited until mid-January of 2019 to seek the final superseding indictment. While indeed the Second Superseding Indictment alleges new counts and even adds Sally and Rachel Kingston as defendants, the new charges consist of conduct that occurred years ago and frankly, just expand on the "Mail Fraud Scheme" that was already alleged in the Indictment of August 1, 2018. While the government continued to mislead the court and defense counsel by claiming an "ongoing investigation," government knew it would supersede with these two new defendants by the fall of 2018. Since the new charges are not based on an ongoing investigation nor would the new charges alone require current defense counsel to request a continuance of the trial date - the only sure way the government would be guaranteed yet a later trial date is by adding these two new defendants in mid-January of 2019

believing that this will restart the speedy trial clock.  The truth is that there is no real fundamental change in the scope or nature of the trial that will take place.  This tactic was misleading to the court and at the expense of the defendants who are forced to remain in jail.

### D.      CONCLUSION

Mr. Dermen has remained in custody since his August 23, 2018 arrest.  His prolonged, unconstitutional, illegal detention is the direct result of the government's delay of the grand jury proceedings to force a later trial date by causing the speedy trial clock to restart over and over again.  Mr. Dermen is a 52-year old father of two children. He is a United States citizen.  Mr. Dermen has no felony convictions, nor has he ever violated a court order or has missed a court appearance.   He has been held in custody apparently because of his financial net worth.  Since this Court's October 2018 ruling ordering Mr. Dermen detained pending trial, there have been changes in circumstances, particularly continued delays of the trial date over Mr. Dermen's objection and refusal to waive his speedy trial and constitutional rights.  Mr. Dermen's pretrial detention has become unnecesarily prolonged, illegal, and punitive.  Mr. Dermen respectfully requests that this Court reconsider imposing conditions of release allowing Mr. Dermen to be released from detention.

DATED this 28th day of January, 2019

/s/
_____
Mark J. Geragos
Attorney for Defendant
LEV ASLAN DERMEN

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I filed a true and correct copy of the foregoing, on thne case styled *United States of America v. Lev Aslan Dermen*, this 28th day of January, 2019, with the Clerk of the Court using CM/ECF, which sent notification of the filing to all parties registered to receive such notice in the case.


*/s/     Mark J. Geragos*