Mark J. Geragos
California State Bar #108325
GERAGOS & GERAGOS
644 S. Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 625-3900
Facsimile: (213) 625-1600

Jon D. Williams (8318)
9 Exchange Place, Suite 600
Salt Lake City, UT 84111
Telephone: (801) 746-1460
Facsimile: (801) 998-8077
Attorneys for Lev Dermen

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> **Plaintiff**, <br><br><br> v. <br><br> **LEV ASLAN DERMEN**, <br><br> **Defendant**. | **DEFENDANT LEV DERMEN'S RESPONSE TO ORDER TO BRIEF DETENTION ISSUE** <br><br> Case No.: 2:18-cr-00365-JNP-BCW |

Defendant Lev Aslan Dermen ("Mr. Derman") submits this RESPONSE TO ORDER TO

BRIEF DETENTION ISSUE (Doc. 191, the "Order"). On February 19, 2019, the Court ordered

the parties to submit additional briefing on "how courts should weigh the three § 3161(h) factors

adopted by the Tenth Circuit when they are being applied in the context of § 3164." (Order at 2.)

Mr. Dermen submits the following:

**ARGUMENT**

In its Order, the Court noted that pursuant to Tenth Circuit precedent, "the 'reasonable delay' exclusion of § 3161(h)[(6)][1] has a different meaning and application under § 3164 than under § 3161, because of the different context in which it arises. What might be reasonable delay to accommodate conservation of public resources by trying codefendants together as an exception to the Speedy Trial Act's 70-day limit might become unreasonable when a defendant is incarcerated for more than 90 days without a chance to make bail. Thus it is possible, as here, that subsection (h)[(6)] will not require dismissal of the indictment but will require that the defendant be tried or released." *United States v. Theron*, 782 F.2d 1510, 1516 (10th Cir. 1986). Mr. Dermen argues that, as the Tenth Circuit in *Theron* illustrates, the context of a due process analysis under § 3164 does in fact require that he "be tried or released." *Id*.

I.     **THE *THERON* ANALYSIS**

The difficulty, and reason for much of the confusion, regarding the implications and rights associated with § 3164 is the section contemplates both statutory and constitutional rights, and courts often conflate their analyses regarding both. Section 3164(b) provides that "[t]he trial of any person described [herein] shall commence not later than ninety days following the beginning of such continuous detention or designation of high risk by the attorney for the Government." 18 U.S.C. § 3164(b). While it is true that "periods of delay in section 3161(h) are excluded in computing the time limitation" relating to § 3164(b), other considerations also apply

---

[1]  Section 3161(h)(6) was originally codified at § 3161(h)(7) and was redesignated as § 3161(h)(6) in 2008. *See* Judicial Administration and Technical Amendments Act of 2008, Pub L. No. 110–406, § 13, 122 Stat. 4291, 4294.

to the § 3164 analysis. *Id*. "No detainee … shall be held in custody pending trial after the expiration of such [90]-day period required for the commencement of his trial." § 3164(c).

Thus, the statutory rights include the right not to be detained longer than 90 days, subject to the § 3161(h) exclusions that are deemed "reasonable." But courts differ as to how to determine whether the detention is "reasonable." In addition, there are also constitutional implications of § 3164 in light of Fifth Amendment due process protections. Under the Due Process Clause, pretrial confinement must not amount to punishment – it must be "regulatory, not penal." *United States v. Salerno*, 481 U.S. 739, 746 (1987). Detention as punishment would violate the Due Process Clause. "[P]retrial detention assumes a punitive character when it is prolonged significantly." *Theron*, 781 F.2d at 1516. Yet there is no clear "point at which detention in a particular case might become excessively prolonged." *Salerno,* 481 U.S. at 743 n.4. Courts recognize that both statutory and constitutional analyses under § 3164 are best done "case-by-case." *Id*.

To complicate matters further, there are competing interests – factors – that courts must balance to decide whether detentions are excessively long. "Even described in this manner, however, the precise methodology for how the test should be applied, the interrelationship between the factors, and the relative weight that should be afforded each factor, remains largely undefined by caselaw." *United States v. Cos*, No. CR 05-1619 JB, 2006 WL 4061168, at *5 (D.N.M. Nov. 15, 2006) (unpublished). "This lack of defined lines and limits concerns the Court, because the weakness of any case-by-case balancing approach is that it can vest excessive discretion in judges and lead to inconsistent decision-making." *Id.* (quotation omitted); *see also United States v. Ailemen,* 165 F.R.D. 571, 577 (N.D.Cal.1996) ("What is appreciably less clear, however, is the structure of the analytical process courts should use to determine, in a particular

case, whether continued detention of a given defendant would violate [due process].").

Mr. Dermen herein attempts to highlight the endurance of the right against prolonged detention in courts other than just the Tenth Circuit, the factors the Court should apply in making its detention determination, and how those factors apply to Mr. Dermen.

A.     LEGISLATIVE HISTORY OF SECTION 3164

A quick mention of certain poignant details of § 3164's legislative history may be helpful in understanding how courts should weigh certain factors. The Second Circuit explained in *United States v. Gonzales Claudio*, 806 F.2d 334, 340-41 (2d Cir. 1986), that "Congress expressed in the Speedy Trial Act a preference that the trial of incarcerated defendants should begin within ninety days after the start of detention. 18 U.S.C. § 3164(b). Indeed, in debate on the preventive detention provisions of the Bail Reform Act, the Senate was assured that ninety days is the 'worst case limit,' 130 Cong.Rec. S941 (statement of Senator Thurmond), and the 'upper bound' of pretrial detention, *id.* at S943 (statement of Senator Laxalt)." Considering the periods of permissible trial delay like those resulting from § 3161(h)(6), "the ninety-day period specified in section 3164(b), representing the considered view of the Congress as to the normal limit on pretrial detention, provides at least a point of reference in our consideration of the constitutional limit on such detention." *Id.* at 341.

Even more, the legislative history also recognized a due process concern: "The word speedy does not, in the Committee's view denote assembly-line justice, but efficiency in the processing of cases **which is commensurate with due process**." *United States v. Mejias*, 417 F. Supp. 579, 582–83 (S.D.N.Y.), *aff'd sub nom. United States v. Martinez*, 538 F.2d 921 (2d Cir. 1976) (quoting legislative history) (emphasis added).

B.      STATUTORY GUIDELINES

Under the Speedy Trial Act, the government must try a defendant within 70 days from the filing date of the indictment or the date of the defendant's first appearance, whichever is later. 18 U.S.C. § 3161(c)(1). 18 U.S.C. § 3161(h)(6) excludes "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." The general rule is that "[a]ll the defendants who are joined for trial … fall within the speedy trial computation of the latest codefendant." *United States v. Margheim*, 770 F.3d 1312, 1318-19 (10th Cir. 2014) (*quoting Henderson v. United States*, 476 U.S. 321, 323 n. 2 (1986)).

But a separate clock applies for pretrial detention. A separate penalty applies also. Section 3164(b) provides that "[t]he trial of any person described [herein] shall commence not later than ninety days following the beginning of such continuous detention or designation of high risk by the attorney for the Government." 18 U.S.C. § 3164(b). "[P]eriods of delay in section 3161(h) are excluded in computing the time limitation" relating to § 3164(b), but other considerations also apply to the § 3164 analysis. *Id.* "No detainee … shall be held in custody pending trial after the expiration of such [90]-day period required for the commencement of his trial." § 3164(c). Interestingly, the reasonableness requirement in (h)(6) is absent from most of the other excludable delay provisions. While a violation of the Speedy Trial Act's 70-day limitation demands dismissal, with or without prejudice, the penalty of violating § 3164 is pretrial release. *Theron*, 781 F.2d at 1516.

C.      CONSTITUTIONAL DUE PROCESS GUIDELINES

It is clear that additional considerations apply when a court is considering detention under § 3164. In *United States v. Theron*, the Tenth Circuit held that § 3164(b) "requires bail or trial"

in 90 days for a defendant who has objected to speedy trial exclusions and otherwise done nothing to delay court proceedings. *Id*. at 1514. In *Theron*, the defendant was detained when the court found he was a flight risk. Theron's codefendants, who were free on bail, sought a motion to continue the trial based on complexity, and the district court granted the ends-of-justice continuance pursuant to § 3161(h)(8). After Theron sought a writ of mandamus, the Tenth Circuit held that "the 'reasonable delay' exclusion of § 3161(h)(7) has a different meaning and application under § 3164 than under § 3161, because of the different context in which it arises." *Id*. at 1516. The court further held that "[w]hat might be reasonable delay to accommodate conservation of public resources by trying codefendants together as an exception to the Speedy Trial Act's seventy-day limit [pursuant to § 3161] might become unreasonable when a defendant is incarcerated for more than ninety days without a chance to make bail." *Theron*, 782 F.2d at 1516. The court continued that "[i]f we did not construe the statute to require release or trial sooner than the dates the court has set, [the defendant's] continued detention **would present serious constitutional issues**." *Id.* (emphasis added).

From *Theron,* it is clear that "the coincidence of a complex case *and* multiple defendants, without more," does not outweigh a particular defendant's interest in a prompt trial. *Theron*, 782 F.2d at 1513. But there is no bright line to determine exactly how long of a detention is too long under a proper due process analysis. For example, the Tenth Circuit found four months violated due process in *Theron*, but affirmed a district court's decision that due process was not violated by a 34-month detention in *United States v. Peters*. No. 94-2107, 28 F.3d 114, 1994 WL 325419 (10th Cir. July 7, 1994) (unpublished) (upholding 34-month pretrial detention against due process challenge).

It is helpful to review how other courts have determined a reasonable period of delay

under § 3161(h)(6) in the context of § 3164 since the Tenth Circuit decided *Theron*.

## II.     SINCE *THERON*

### A.     TENTH CIRCUIT

The Tenth Circuit addressed the *Theron* Court's analysis and came to the same

conclusion in a more recent case – *In re Robinson*, 713 F. App'x 764 (10th Cir. 2017)

(unpublished). In *Robinson*, the detained defendant was one of 22 codefendants in an alleged

drug conspiracy. The district court granted a 180-day ends-of-justice continuance under §

3161(h)(7) without properly considering the statutory or constitutional requirements of § 3164.

*Id*. at 767.

The district court found that "that the length of Robinson's pretrial detention did not

violate § 3164, implicate due process concerns, or necessitate release under *United States v.

Theron*, 782 F.2d 1510 (10th Cir. 1986)." *Id.* at 765. Robinson made an interlocutory appeal,

wherein the Tenth Circuit instructed the district court to "revisit whether the length of

Robinson's pretrial detention violates § 3164 and implicates due process concerns under

*Theron*." *Id.*

The *Robinson* Court ultimately held that "[t]he district court's analysis is flawed for the

same reasons we identified in *Theron*, where the district court granted an ends-of-justice

continuance based on '(1) the codefendants' need for preparation time; (2) the complexity of the

case; and (3) the desirability of trying all defendants at once.'" *Id*. at 767 (quoting *Theron*, 782

F.2d at 1512). As in *Theron*, these three factors were "improper or insufficient factors" to

consider. *Theron*, 782 F.2d at 1512-13. Instead, the court held that "[i]f a defendant 'used all

means available to him to secure an immediate trial[,] his desire and his position as a defendant

who is not out on bail must weigh strongly in favor of applying' the Speedy Trial Act's

limitation." *Id.* (quoting § 3161(h)(6)). Further, as this Court held in *Theron*, "the complexity of a case does not automatically justify an ends-of-justice continuance." *Id.* The "obvious purpose" of § 3161(h)(6) is "to accommodate the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial." *Theron*, 782 F.2d at 1514. Case law recognizes a "strong presumption favoring trying properly joined defendants together." *Zar*, 790 F.3d at 1043. But despite these interests, the Court has held that § 3164 requires bail or immediate trial. "And while we declined to establish a 'bright line' as to what constitutes a reasonable delay for purposes of § 3164, we had 'no hesitancy' in saying that **four months additional incarceration before trial was 'too long.'**" *Robinson*, 713 F. App'x at 768 (quoting *Theron*, 782 F.2d at 1516) (emphasis added). "Nevertheless, no case has established an absolute outside limit." *United States v. Peters,* No. 94-2108, 28 F.3d 114, 1994 WL 325419 (10th Cir. July 7, 1994) (unpublished) (upholding 34-month pretrial detention against due process challenge**).**

B.    OTHER CIRCUITS

1. The First Circuit

In *United States v. Zannino*, the First Circuit stated "in many, perhaps most, cases sixteen months would be found to exceed the due process limitation on pretrial confinement." 798 F.2d 544, 548 (1st Cir. 1986). Thus, the First Circuit clearly recognized a due process implication caused by prolonged detention. In *United States v. Jones*, the First Circuit recognized the § 3164 complication discussed in *Theron* but declined to apply a correction because the defendant had not requested a severance, and had explicitly rejected the court's offer to sever the case and try it earlier. *United States v. Jones*, 201 F.3d 429 (1st Cir. 1999). As to the due process assertion, the court did not consider the claim because it had not been raised below.

Regarding the reasonableness analysis, the First Circuit has at the very least noted that a

failure to move to sever is "an important consideration."  *United States v. Maryea*, 704 F.3d 55, 67 (1st Cir. 2013) (collecting cases).

      2.  The Second Circuit

Shortly after the Tenth Circuit decided *Theron*, the Second Circuit recognized its holding and the limitations of due process on delayed detention. *See United States v. Melendez-Carrion*, 790 F.2d 984, 1008 (2d Cir. 1986) ("Indeed, the Tenth Circuit recently held that detention of four months before trial constitutes impermissible punishment."). In *Melendez-Carrion*, the court held "the incarceration at issue here is rendered so harsh by its length that it, too, degenerates into punishment." *Id*. The court instructed that "[e]nforced separation from family, friends and the community by confinement in an institutional setting for many months is clearly punitive under our traditions." *Id*. Of course the Second Circuit recognized the longstanding exception that "pretrial detention has 'historically' not been seen as punishment when designed to protect the integrity of the judicial process by assuring the defendant's appearance or preventing his interference with witnesses," and noted that due process may "impose a limit on the period of time a defendant may be held to protect the integrity of the judicial process." *Id*. at 1008-09.

In a separate 1986 Second Circuit case, the court explicitly recognized "the due process limitation on the duration of preventive detention," but noted that assessment must be on a "case-by-case basis, since due process does not necessarily set a bright line limit for length of pretrial confinement." *United States v. Gonzales Claudio*, 806 F.2d 334, 340 (2d Cir. 1986) (quoting *United States v. Salerno, supra,* 794 F.2d at 78-79 (Feinberg, C.J., dissenting on other grounds)). In *Gonzales Claudio*, the defendant had been detained for 14 months, and would likely be detained 26 months by the time trial ended. "Detention that has lasted for fourteen months and, without speculation, is scheduled to last considerably longer, points strongly to a denial of due

process." *Id*. In fact, such a detention "would exceed even the flexible standards of due process" even as weighed against the risk that the defendants may flee *Id*. at 343. "[The] risk is serious, but of at least equal gravity is the preventive detention for fourteen months of defendants who are presumed innocent and whose trial to determine guilt or innocence will not even begin until detention has lasted eighteen months. In mandating fundamental fairness, the Due Process Clause endeavors to set outer limits at which risks to society must be accepted to avoid unconscionable deprivations of the liberty of individuals." *Id*.

The Second Circuit also found dispositive the fact that those detained had no hope of meeting bail was relevant to the constitutional question. "[T]hose without any opportunity to secure release might have a more substantial claim that fundamental fairness has been denied than those for whom bail has been set." *Id*. at 340. Obviously, bail has not been set for Mr. Dermen in this case, and his claim on fundamental fairness is high.

Two cases in New York district courts found pretrial detention longer than six months to have exceeded due process limitations. *See United States v. LoFranco,* 620 F.Supp. 1324 (N.D.N.Y.1985); *United States v. Hall,* 651 F.Supp. 13 (N.D.N.Y. 1985). More recently, the Second Circuit has again noted "the difficulties faced by the prosecution in a large and complex case do not justify the indefinite detention of the defendants." *United States v. Briggs*, 697 F.3d 98, 102–03 (2d Cir. 2012), *as amended* (Oct. 9, 2012) (finding no due process violation where the defendant "bears some of the blame for his trial's delay"). "When the government decides to prosecute a case of considerable complexity and scope, it must still pursue that case with promptness and energy. Due process does not slumber because cases are complex." *Id*. at 103. *See also United States v. Ojeda Rios,* 846 F.2d 167 (2nd Cir.1988) (defendant released from custody where he had been detained for over 32 months awaiting trial, trial date was still several

months away and would take months to try, and defendant was willing to abide by restrictive conditions of release).

### 3.     The Third Circuit

The Third Circuit also recognizes that the length of pretrial detention could raise a constitutional issue. *United States v. Accetturo,* 783 F.2d 382, 388 (3d Cir. 1986). A district court in the Third Circuit agreed that "the reasonable delay exclusion of § 3161(h)([6]) has a different meaning and application under § 3164 than under § 3161, because of the different context in which it arises. The harm caused by postponing the trial date is not comparable to the harm caused by continued detention." *United States v. Mendoza*, 663 F. Supp. 1043, 1047 (D.N.J. 1987). In fact, the "Speedy Trial Act was not designed to relieve the due process concerns" implicated by prolonged pre-trial detention. *Id.* "In order to avoid transforming pre-trial detention into a punitive vehicle through excessive prolongation, at some point a pre-trial detainee must be tried or released." *Id.*

The district court in New Jersey noted that "[t]he law in its present state places the detained defendant in an irreconcilable dilemma. If the accused exercises his constitutional rights by filing pre-trial motions, he thus extends his period of pre-trial incarceration. This is so even if he is successful on said motions. On the other hand, if he foregoes those motions, he accelerates his trial date, but thereby relinquishes valuable rights and defenses. The chilling effect is obvious." *Id*. at 1047-48.

### 4.     The Fifth Circuit

In *United States v. Hare*, the Fifth Circuit recognized a due process limit on the duration of preventive detention and explained that "[i]n determining whether due process has been violated, a court must consider not only factors relevant in the initial detention decision, such as

the seriousness of the charges, the strength of the government's proof that the defendant poses a risk of flight or a danger to the community, and the strength of the government's case on the merits, but also additional factors such as the length of the detention that has in fact occurred or may occur in the future, the non-speculative nature of future detention, the complexity of the case, and whether the strategy of one side or the other occasions the delay." *United States v. Hare*, 873 F.2d 796, 801 (5th Cir. 1989). These factors the Tenth Circuit uses are discussed more fully below. The Fifth Circuit court cited to the *Theron* case, but then noted that "delays caused by defendant do not implicate due process." *Id*. at n.24.

5.      The Sixth Circuit

On the issue of whether a prolonged pretrial detention is unconstitutional, the Sixth Circuit has found the Second Circuit's case law "particularly instructive." *United States v. Watson*, 475 Fed.Appx. 598, 601 (6th Cir.2012).

6.      The Seventh Circuit

The Seventh Circuit has recognized that the length of pretrial detention could raise a constitutional issue. *United States. v. Portes*, 786 F.2d 758, 768 (7th Cir. 1986). The Seventh Circuit makes the same distinction that a defendant "cannot be allowed to manufacture the grounds for [his] constitutional argument." *United States v. Infelise,* 934 F.2d 103, 104-05 (7th Cir. 1991). But also, "the government cannot be permitted to defeat the restrictions with which the Bill of Rights hedges about criminal prosecutions by indefinite delay in bringing defendants to trial." *Id*. at 104. "To get to first base," though, the defendant "must show that either the prosecution or the court has unnecessarily delayed in bringing the case to trial." *Id*. at 104-05. Mr. Dermen can show that here.

12

### 7.    The Ninth Circuit

In *United States v. Hall*, the Ninth Circuit cited *Theron* and echoed other courts' insistence that the test for reasonableness under § 3161(h)(6) is conducted on a case-by-case basis. *United States v. Hall*, 181 F.3d 1057, 1062 (9th Cir. 1999) (finding delay unreasonable where purpose of continuance was to allow codefendant to engage in plea negotiations, which ultimately prejudiced defendant's case).

Similarly in this case, the delay is unreasonable because it prejudiced Mr. Dermen's ability to defend himself at trial because it increased the charges against him. The ability to charge certain defendants in an alleged broad scheme, sit on those indictments for six months while defendants are detained, and then bring superseding indictments that add defendants and charges based on the same factual scenarios is an abuse of prosecutorial power, and an unreasonable delay under § 3164. The burden is also constitutional because Mr. Dermen has done nothing to prolong the trial. The government's actions pierce both the letter and the spirit of the Speedy Trial Act.

### 8.    The Eleventh Circuit

The Eleventh Circuit held that a delay of four months was not an unreasonable application of § 3161(h)(6) because the defendant had not first requested severance. *United States v. Woodley*, 484 F. App'x 310, 317 (11th Cir. 2012). The court also recognized that time excluded under § 3161(h)(6) is "limited to a reasonable period of delay." *Id*. at 315 (quotation omitted). The court found in a separate case that a ten-month delay was not reasonable because the defendant had moved to sever, but because a codefendant's motion to suppress was pending, "the overall delay did not violate the Act." *Id*. at 317 (citing *United States v. Khoury*, 901 F.2d 948 (11th Cir. 1990)).

## III.   WEIGHING THE APPLICABLE FACTORS

Courts recognize that both statutory and constitutional analyses under § 3164 are best done on a "case-by-case" basis. The only question then is what factors courts should use, and how courts should weigh those factors under § 3164

### A.   REASONABLENESS FACTORS

The Tenth Circuit has developed three factors[2] to determine whether the delay caused by § 3161(h)(6) attributable to a codefendant is "reasonable" under the statute. *United States v. Vogl*, 374 F.3d 976, 983–84 (10th Cir. 2004). Those three factors are: "(1) whether the defendant is free on bond, (2) whether the defendant zealously pursued a speedy trial, and (3) whether the circumstances further the purpose behind the exclusion to accommodate the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial." *Id.* at 984 (quotation omitted) (the "*Vogl* factors"); *see also United States v. Tranakos,* 911 F.2d 1422, 1426 n.1 (10th Cir.1990) ("In measuring reasonableness we consider whether the defendant was incarcerated, whether he actively sought an earlier trial date, and whether it is most efficient to try the defendant and codefendant together.") (finding reasonableness where defendant did not seek severance and moved for continuances); *United States v. Thomas*, 749 F.3d 1302, 1309 (10th Cir. 2014) (applying the three reasonableness factors, the court found 70-day delay

---

[2]  The court in *Theron* noted that the district court had used three factors to justify the continuance: "(1) the codefendants' need for preparation time; (2) the complexity of the case; and (3) the desirability of trying all defendants at once." *United States v. Theron*, 782 F.2d at 1512–13. But, since these factors cannot be considered "adopted by the Tenth Circuit," since the Tenth Circuit specifically said they were "improper or insufficient factors," Mr. Dermen assumes these are not the factors the Court referred to in its Order. In fact, the Tenth Circuit held that "any extended delay based solely on the complexity of the case and the number of defendants constitutes an abuse of discretion." *Id.* at n.1.

excludable as reasonable because defendant did not pursue speedy trial); *United States v. Margheim*, 770 F.3d 1312, 1319 (10th Cir. 2014) (finding ten-month interval reasonably excluded where defendant requested 120-day continuance, changed attorneys several times, and did not seek a severance; "[t]his conduct by [the defendant] tipped the second *Vogl* factor towards the government.").

When deciding how to weigh the reasonableness factors, the third factor – accommodating the efficient use of resources – will mostly always favor the government if the issue is whether a codefendant's excludable time should be applied to a defendant. If the third factors always favors the government, and the test is intended to be a real weighing of factors, then the first two factors must take higher priority. In this case, the first two factors weigh in favor of fInding unreasonable delays attributed to Mr. Dermen: he is not free on bond, and he has zealously pursued a speedy trial, including by filing a motion to sever.

B.    DUE PROCESS FACTORS

In addition, the Tenth Circuit also set forth guidelines courts should follow specifically when conducting a *due process* detention analysis. In *United States v. Cos*, this Court remanded a case to the district court for consideration of three factors: "(1) the length of detention; (2) the extent of the prosecution's responsibility for the delay of trial; and (3) the strength of the evidence upon which the detention was based." *United States v. Cos*, 198 F. App'x 727, 732 (10th Cir. 2006) (unpublished) (the "*Cos* factors"). These factors derive from the Second Circuit in *United States v. Millan,* 4 F.3d 1038, 1043 (2d Cir.1993). The Tenth Circuit noted that it has "approved the Second Circuit's three-factor test either explicitly [in *Cos*] or implicitly, *see United States v. Peters*, No. 94-2107, 1994 WL 325419, at * 1 (10th Cir. July 7, 1994)." *United States v. Jarvis*, 299 F. App'x 804, 808–09 (10th Cir. 2008).

The Second Circuit concurs with these factors. *See Gonzales Claudio*, 806 F.2d at 340. In a due process analysis, "the duration of confinement is obviously a central focus of our inquiry, we also consider the extent to which the prosecution bears responsibility for the delay that has ensued and the strength of the evidence indicating risk of flight." *Id*; *see also United States v. Briggs*, 697 F.3d 98, 101 (2d Cir. 2012), *as amended* (Oct. 9, 2012) (setting forth the same three factors to consider when analyzing due process limits on detention).

The Eleventh Circuit recognized slightly different factors. *See United States v. Myrie*, 479 F. App'x 898, 902 (11th Cir. 2012) (unpublished) ("[W]hether the amount of delay attributed to appellant under [§ 3161(h)(6) ] was reasonable can be determined by reference to the totality of the circumstances prior to trial, by the extent to which the appellant's defense was prejudiced, or by the sheer length of the delay." (quotations omitted)). The three-factor *Cos* test seems more applicable in the Tenth Circuit.

### C.    HOW COURTS SHOULD WEIGH THE APPLICABLE FACTORS

The court in *Gonzales Claudio* offered helpful instruction on **how** a court should apply factors when weighing due process against a prior determination that the defendant is a flight risk. "[W]e start with the fact that an able and experienced District Judge has made a considered judgment that no conditions of release will reasonably assure the presence of these appellants at trial." *Id*. at 343. "Though we have concluded that the District Judge's findings of underlying historical facts and the consequent factual determination of risk of flight are not clearly erroneous and we therefore accept them," the court continued, "we are entitled to apply a broader standard of review in determining the extent to which the facts regarding risk of flight, as found by the District Court, have significance on the constitutional issue of whether continued detention violates due process limitations." *Id*. The court found particular weighty the fact that

16

"what is significant is the absence of any prior acts specifically evidencing likelihood of flight. There is no finding and no evidence that either appellant has ever fled from lawful authority, or failed to honor court orders." *Id*. (quotation omitted). The same could be said of Mr. Dermen. Despite the Court's prior finding that he is a flight risk, the government has never shown that he has either fled from lawful authority or failed to honor court orders. The hypothetical ties to Turkey are simply insufficient to overcome due process protections. Specifically, the court in *Gonzales Claudio* distinguished between the threat of flight risk and any acts "specifically evidencing likelihood of flight" or a "fail[ure] to honor court orders." *Id*. The absence of such facts "do not establish that risk to a degree sufficient to render continued detention within constitutional limits." *Id*.

To assess **how** courts apply the three due process *Cos* factors in the context of competing interests, courts have categorized the cases into three groups – short detentions under a year, intermediate detentions involving one to two year spans, and cases with long detentions of two years or more. *See United States v. Cos*, No. CR 05-1619 JB, 2006 WL 4061168, at *6–7 (D.N.M. Nov. 15, 2006) (collecting cases); *accord*, *Ailemen*, 165 F.R.D. at 582–583 (N.D.Cal.1996) (extensively canvassing the law, noting the three categorizations).

In cases with short detention durations, some courts have rejected a balancing approach as premature. But the *Theron* case, which found a due process violation at four months, rejects this approach. The Tenth Circuit reached a conclusion similar to *Theron* in a case where the defendant had been incarcerated for just 13 months, with trial still two months away. *United States v. Denogean*, 13 F.3d 407 (10th Cir. 1993). The defendant in *Denogean* filed no pretrial motions, and the district court preemptively held that it would grant no severance. *Id*. at *2. The court cited *Theron* as precedent, held that the detention violated due process, and released the

defendant on bond with appropriate restrictions.

Similarly, a court in New York found that a period of pretrial detention for six months, with at least three months to go before trial started, was a violation of due process, especially where the "defendant lost the protection of the Speedy Trial Act when [the court] declared [it] a complex case." *United States v. Lofranco*, 620 F. Supp. 1324, 1326 (N.D.N.Y. 1985). The court found a due process violation even when measured against the fact that "releasing him will create potential dangers to the public and to the integrity of his trial." *Id*. The court held that "the dangers do not justify continuing the detention." The court made such analysis based on a six-month detention period, and noted that the "prospect of continuing detention [for three more months] bolsters this conclusion of unconstitutionality." *Id*.

Like the defendant in *Theron* and *Lofranco*, the delay thus far cannot be attributed to Mr. Dermen, and thus the Court should weigh the factors in his favor. The government is responsible for piecemealing this case as it dragged out, over six months, not only the charges against Mr. Dermen, but even the number of codefendants included. As codefendants have asked for continuances to prepare for trial, Mr. Dermen has continuously asserted his right for a speedy trial. Mr. Dermen has not filed pretrial motions other than the motion to sever, which should also weigh in Mr. Dermen's favor. The fact that the case has been declared complex and the government desires a joint trial does not outweigh Mr. Dermen's constitutional right to a speedy trial. He has been and is willing to go to trial now. His codefendants' needs for time should not derail these important constitutional protections.

In the medium-sized detention cases, courts "typically consider all the due process factors … but often place special emphasis on the government's role in causing unnecessary delay." *Id*. at *7 (collecting cases). In the cases with very long periods of pretrial detention,

"courts have typically upheld detention only if the government was not responsible for any significant portion of the delay." *Id*. (collecting cases). "As a district court in Tennessee explained, [t]he cases suggest that, the longer the detention, the more weighty countervailing concerns must be." *United States v. Omar*, 157 F. Supp. 3d 707, 716 (M.C. Tenn. 2016).

The government has failed to show that Mr. Dermen's detention in this case serves a procedural rather than a punitive purpose. "[A]t a fresh proceeding in which the detained defendant asserts that his due process rights have been violated, more is required of the government" than a preponderance of the evidence that the defendant is a flight risk or danger to the community. *United States v. Young*, No. 2:12-CR-502-TC-DBP, 2013 WL 12131300, at *5 (D. Utah Aug. 27, 2013).

## IV.   THE FACTORS APPLIED IN THIS CASE

In light of the *Theron* precedent and the cases since, this Court should weigh the *Vogl* and *Cos* factors to Mr. Dermen's benefit and find that his detention has been both statutorily and constitutionally defective.

### A.   REASONABLENESS FACTORS / *VOGL* FACTORS

The three *Vogl* factors as applied to Mr. Dermen include:

1.   Free on bond.

Mr. Dermen is not free on bond. This factor weighs heavily in his favor, especially in light of the fact that two codefendants currently are out on bond.

2.   Zealously pursued a speedy trial.

Mr. Dermen has enforced his right to a speedy trial at every opportunity. He has objected to motions for continuances, and resisted the impulse, to his detriment, to ask for more time to review the extensive discovery. He has filed a motion to sever, and wishes to proceed. Section

3164 affords him that right to go to trial within 90 days where he has filed a motion to sever and does not wish to participate in his codefendants' motions for continuances. This factor also weighs heavily in Mr. Dermen's favor.

      3.     Efficient use of prosecutorial and judicial resources.

The government has already thumbed its nose at the efficient use of prosecutorial and judicial resources by choosing to indict only a few of the alleged perpetrators almost six months ago, with no intention to charge them under the original indictment, and with the specific intention of taking at least six months to get its case together while Mr. Dermen sat in jail. Despite the need to preserve resources, the government's failure to do so thus far weighs against it in this case.

It is clear that by applying these three factors that Mr. Dermen has a statutory right to be released pending trial. The Court should apply the factors, weigh them in Mr. Dermen's favor, and release him pending trial under § 3164.

      B.     DUE PROCESS FACTORS / *COS* FACTORS

The three *Cos* factors as applied to Mr. Dermen include:

      1.     Length of Detention.

Mr. Dermen has already been detained for almost six months. On December 21, 2018, the district court granted, over Mr. Dermen's objection, a request by a codefendant for a continuance of more than five months. This delay has already resulted in the unconstitutional and illegal pretrial detention of Mr. Dermen. Further, now that two additional defendants have been added, there are current motions for continuances into June, by the government, and July, by codefendants. That would put Mr. Dermen at 14 months of detention before he's even adjudged of the charges. The caselaw, especially the Tenth Circuit's holding in *Theron* and the similar

holding in *Lofranco*, requires that the Court weigh this factor in Mr. Dermen's favor, or at least move to the next factor to look most closely at the government's role in the delay.

2.       Extent of Prosecution's Responsibility for Delay.

As discussed throughout, the government bears the responsibility for the delays in this case thus far, especially seeing that it continues to ask for continuances even now. It waited to charge all the defendants. It waited to include all the charges. It filed not one superseding indictment but a *second* one as well, all while Mr. Dermen sits in jail, waiting for due process and a speedy trial. This factor should weigh heavily in Mr. Dermen's favor.

3.       Strength of Evidence of Detention.

The Court previously found that Mr. Dermen was a flight risk, but not a danger to the community. Despite this risk, though, due process requires the release of Mr. Dermen. And in fact, the government has not offered any evidence to show that Mr. Dermen has ever run from authorities or ever not appeared at a court-ordered appearance. As a court in this jurisdiction held, at a subsequent due process hearing, more is required than a preponderance of the evidence that the defendant is a flight risk or danger to the community. *United States v. Young*, No. 2:12-CR-502-TC-DBP, 2013 WL 12131300, at *5 (D. Utah Aug. 27, 2013). And in fact, the government has failed to offer evidence that Mr. Dermen "has ever fled from lawful authority, or failed to honor court orders." *Gonzales Claudio*, 806 F.2d at 343.

It is clear that by applying these three factors that Mr. Dermen has a constitutional right to be released pending trial. The Court should apply the factors, weigh them in Mr. Dermen's favor, and release him pending trial under the Due Process Clause.

**CONCLUSION**

As noted in *Gonzalez Claudio*, the risks associated with our system of criminal justice

must not be borne by defendants, who are presumed innocent, alone. The rub is that the sanction

for the government's lackadaisical and intentionally protracted charging phase with its unduly

prolonged detention is release prior to trial. The sanction is not dismissal. Thus any appeal after

judgment will lose the purpose and effect of the sanction, and protection, to begin with. If Mr.

Dermen is not released pending trial, he cannot be made whole.

Dated: February 24, 2019

/s/ Mark J. Geragos
Mark J. Geragos
Jon D. Williams
Attorneys for Defendant
LEV ASLAN DERMEN

## **CERTIFICATE OF SERVICE**

I hereby certify that I filed a true and correct copy of the foregoing, on the case styled *United States of America v. Lev Aslan Dermen*, this 24th day of February, 2019, with the Clerk of the Court using CM/ECF, which sent notification of the filing to all parties registered to receive such notice in the case.


*/s/    Jon D. Williams*