Mark J. Geragos
California State Bar #108325
GERAGOS & GERAGOS
644 S. Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 625-3900
Facsimile: (213) 625-1600

Jon D. Williams (8318)
9 Exchange Place, Suite 600
Salt Lake City, UT 84111
Telephone: (801) 746-1460
Facsimile: (801) 998-8077

*Attorneys for Lev Dermen*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LEV ASLAN DERMEN, | DEFENDANT LEV DERMEN'S SUPPLEMENTAL MOTION FOR REVIEW DETENTION<br><br>Case No.: 2:18-cr-00365-JNP-BCW |

Defendant Lev Aslan Dermen submits the following supplemental information in support of his Motion for Review of Detention.

**United States & Turkey Bilateral Extradition Treaty**

Throughout the detention process in this matter, the government has concocted a theory that if released from detention, Mr. Dermen would flee from the United States to

the Republic of Turkey ("Turkey").   They add that if Mr. Dermen does flee, there is no mechanism to compel his return to the United States because the United States does not have a valid extradition agreement with Turkey.

The United States and Turkey signed a bilateral extradition treaty on June 7, 1979 that was entered into force on January 1, 1981.  See 32 UST 3111.   This treaty remains effect today.   This information can be found on the Department of Justice public website at  https://www.justice.gov/criminal-oia/list-participating-countries.  *See Exhibit A, United States Department of Justice, International Prisoner Transfer Program, List of Participating Countries.*

On December 16, 2018, it was reported by the New York Times, that Turkey's foreign minister, Mevlut Cavusoglu announced that the United States was working on extraditing Fethullah Gulen, who is currently wanted in Turkey.  *See Exhibit B, New York Times, December 16, 2018, U.S. Is "Working On" Extraditing Gulen, Top Turkish Official Says*.  According to the statements made by the Foreign Minister, there is currently at least 80 pending extradition requests made by Turkey to the United States. This evidences the fact that the bilateral treaty is valid and Turkey is actively seeking to enforce it.

Additionally, the United States Department of Justice website provides other alternatives to extradition https://www.justice.gov/jm/jm-9-15000-international-extradition-and-related-matters#9-15.600.  See  *Exhibit C, United States Department of Justice, 9-15.000 - International Extradition And Related Matters*.  Section 9-15.610 titled "Deportations, Expulsions, or Other Lawful Methods of Return," provides that if

the fugitive is not a national or lawful resident of the country in which he or she is located, the Criminal Division's Office of International Affairs (OIA), through the Department of State or other channels, may ask that country to deport, expel, or otherwise effectuate the lawful return of the fugitive to the United States.  Other methods according to the United States Department of Justice website include, lures, interpol red notices, revocation of U.S. passports, and foreign prosecution.  *Id*.

**Mr. Dermen is Not a Flight Risk**

Regardless, if this Court sets conditions to release Mr. Dermen on bail, he will not flee from the jurisdiction of the United States.  The idea that Mr. Dermen has some sort of plot to flee to Turkey while this case is pending has been completely manufactured by the government from the outset of this case in order effectuate his ongoing and now prolonged detention.

During Mr. Dermen's initial detention hearing in the Central District of California before Magistrate Judge G. Standish, the government alleged that Mr. Dermen had plans to travel to Turkey during the time of his arrest which occurred on August 23, 2018.  The government misrepresented Mr. Dermen's travel plans to the court and falsely stated to Magistrate Standish that he had an itinerary to travel to Turkey.  Mr. Rowling unequivocally stated to the Court: "And in fact as the Pretrial Services report shows, he was flying to Turkey yesterday, not coincidentally the same time period his co-defendant Jacob Kingston was arrested on a flight to Turkey on Thursday last week."  Transcripts of August 28, 2018 hearing at P. 5.   Mr. Dermen concedes that he intended to travel, as he frequently does overseas, but his travel plans were to Dubai on August 27th, 2018 - and

3

this is demonstrated by airline tickets purchased from Emirates Airlines.  On this note, while the Government's attempts to establish Mr. Dermen's unlimited access to private airplanes, Mr. Dermen's flight reservations were through a commercial airline rather than by private jet.  *See Exhibit D, Dermen August 27, 2018 Emirate Airline Flight Itinerary Confirmations.*

Moreover, contrary to the government's fanciful nominations, Mr. Dermen was not arrested on his way out of the country.  Rather, Mr. Dermen was arrested at the IRS Office in Los Angeles, California.  During his August 28, 2018 testimony, SA Hatcher explained the circumstances of Mr. Dermen's arrest stating that Mr. Dermen voluntarily contacted the IRS Office days before his arrest requesting to meet with the agents.  Id. at 26.  Despite the Government's allegations and the court's findings that Mr. Dermen was arrested as he was fleeing the country, this was simply not the case as evidenced by the government agent's own testimony.

The government also repeatedly invokes the canard that Mr. Dermen changed his name from Levon Termendzhyan to Lev Aslan Dermen as part of the plot to flee the jurisdiction.  As it is evidenced from the government's discovery, Mr. Dermen went by the name "Aslan" as far back as 2016.  Yet that has not stopped the government from portraying the name change as a "recent" one.  The government is misleading this court again.   Mr. Dermen petitioned to change his name on June 9, 2017 in the Los Angeles Superior Court, in case number BS169819.  *See Exhibit E, Dermen Petition for Name Change.*  This was well over a year before his August 23, 2018 arrest, and months before the execution of a search warrant by a local and federal joint task force involving the

4

Department of Homeland Security and the Los Angeles Police Department on August 10, 2017.

Mr. Dermen has never fled the jurisdiction to escape a criminal investigation. Instead, Mr. Dermen voluntarily returned to state of California knowing a criminal investigation was pending following the August 10, 2017 search warrant executed by Department of Homeland Security, Customs and Border Patrol, and LAPD agents.  The government claims that the August 10, 2017 search warrant executed on Mr. Dermen's businesses and homes by Homeland Security and LAPD agents did not overlap with the investigation in this case.  On August 10, 2017, in a joint task force with Homeland Security Investigation and agents from the United States Customs and Border Patrol, and the Los Angeles Police Department executed a search warrant obtained from the Los Angeles Superior Court, on multiple gas stations owned by Mr. Dermen and two homes, one belonging his elderly parents.  While the search warrant affidavit remains sealed, the investigation was regarding allegations related to biodiesel fraud and grand theft by false pretenses with respect to biodiesel fuel.  As a result of the warrant, several vehicles, currency, business records, computers, point of service systems, and jewelry among other items were seized from Mr. Dermen's homes and businesses, as well as those of his family members. One of those vehicles was the Bugatti Veyron, the subject of Count 33 of the Second Superseding Indictment in this case.  Moreover, the government's discovery has revealed multiple email communications between these Homeland Security agents and Zubair Kazi identified as "Borrower X" in the Indictment, directing Kazi to stop making payments towards the 11.2 million dollar loan that is the subject of Counts

26 through 30 of the Second Superseding Indictment.  *Exhibit F, Email from HSI SA Louis S. Skenderis to Kazi.*  Finally, the government's discovery also includes written memorandums summarizing two interviews between Mr. Dermen and LAPD officers that followed the August 10, 2017 the subject of which were LAPD Detective Walter McMahon, the affiant of the 2017 search warrant, the government's cooperating witnesses John Balian and Edgar Sargsyan.  In fact, the defense has learned that on January 30, 2019 Sergeant Melendez and Detective Kane of the Los Angeles Police Department interviewed Mr. Dermen at the Davis County Jail regarding the discovery material provided by the government in this case.  It seems that the government has again misled the court about how much overlap there really is between this case and the August 10, 2017 search warrant.

    Not only did Mr. Dermen return to California voluntarily, but he was also responsible for initiating judicial proceedings by subjecting himself to the jurisdiction of the Los Angeles Superior Court when he filed a motion of return of property, where the Los Angeles District Attorney's Office was the responding party.  *See Exhibit G, Los Angeles Superior Court, Order for Return of Property.*  Deputy District Attorney Daniel Wright appeared on behalf of the District Attorney's Office and maintained throughout the proceedings and even after Mr. Dermen obtained the Order for return of property seized by the agents, that the District Attorney's Office intended on filing felony criminal charges related to biodiesel fraud against Mr. Dermen and his business.  Mr. Dermen was aware of the potential serious criminal charges at all times.   He was also aware of the potential for federal criminal charges because his property - which included all of his

6

business records - was turned over by the Los Angeles Police Department to Homeland Security and Custom and Border Patrol instead. *See Exhibit H, Email exchanges b/w Counsel for Dermen & HSI counsel*. In fact, by the time the time Mr. Dermen obtained the Order for return of property, the property was already in possession of Homeland Security and US Customs and Border Protection. These two federal agencies ultimately facilitated the return of property. LAPD specifically represented that they were out of the picture. Meanwhile Mr. Dermen remained in the United States in the state of California despite knowing that he was the subject of a federal criminal investigation.

According to the government, unnamed witnesses allegedly have reported that Mr. Dermen has a house in Turkey, "possibly" more than one. When SA Hatcher was asked during his testimony if he verified any of these alleged assets, Hatcher responded that he "tried to reach out to Turkey to get a request for records, but as it's been discussed, they are not cooperative right now." *August 28, 2018 Hearing Transcripts at P. 45*. The inability to verify most of the colorful and spurious allegations the government has made involving assets and transfer of funds to Turkey appear to have become a common occurrence with the evidence in this case. Mr. Dermen was able to obtain verification from the General Directorate of Land Registry and Cadaster which operates under Turkey's Ministry of Environment and Urbanization, confirming that Mr. Dermen does not actually have any immovable property in Turkey. Similarly, Turkiye Garanti Bankasi A.S., has verified that Mr. Dermen has two bank accounts a the Garanti bank, with a combined balance of $22,811.93. *See Exhibit I, General Directorate of Land Registry and Cadaster & Turkiye Garanti Bankasi A.S. verifications re Dermen.*

7

The government claimed during the March 4th hearing that 90% of their witnesses will have inculpatory testimony against Mr. Dermen and that the evidence against Mr. Dermen alone will take eight to nine weeks alone.  This was even though the government's trial estimate went from 5 to 10 weeks in the matter of two months.  What the witnesses will or will not say is irrelevant to determining Mr. Dermen's detention.  Unlike the other defendants in this case, Mr. Dermen has neither been charged with obstruction of justice or witness intimidation.  This Court has already found that the weight of the government's evidence does not weigh heavily on Mr. Dermen's detention. [Doc 91, Order Denying Defendant's Motion for Review of Detention.]

Mr. Dermen never fled the United States because of a criminal investigation.  Mr. Dermen has traveled in his lifetime and had a right to travel as any American citizen is free to do absent a court order or some other legal limitation.  He should not be punished by this court because at some period of his life he had access to a private jet or because he worked hard and gained financial success.  His accomplishments and successes in life should not be used against in determining his bail.

DATED this 7th day of March, 2019                    /s/Mark J. Geragos
                                                      MARK J. GERAGOS
                                                      Attorney for Defendant
                                                      LEV ASLAN DERMEN

CERTIFICATE OF SERVICE

     I hereby certify that I filed a true and correct copy of the foregoing, on thne case styled *United States of America v. Lev Aslan Dermen*, this 7$^h$ day of March, 2019, with the Clerk of the Court using CM/ECF, which sent notification of the filing to all parties registered to receive such notice in the case.

*/s/     Mark J. Geragos*