IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>LEV ASLAN DERMEN,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT LEV DERMEN'S MOTION TO SEVER TRIALS**<br><br>Case No. 2:18-cr-365<br><br>District Judge Jill N. Parrish |

Before the court is a motion to sever trials filed by defendant Lev Aslan Dermen[1] on May 8, 2019. (ECF No. 289). The government responded in opposition on May 22, 2019 (ECF No. 314), and Mr. Dermen replied on May 29, 2019 (ECF No. 321). With leave of court, the government filed a surreply on June 4, 2019. (ECF No. 332-1). Finally, Mr. Dermen obtained leave to supplement his motion with evidence and arguments not available to him when he filed his motion; he filed his supplemental brief on June 12, 2019. (ECF No. 355). On the basis of these filings, a review of relevant law, and for the reasons below, Mr. Dermen's motion to sever is denied.[2]

---

[1] Mr. Dermen initially moved to sever his trial on January 15, 2019, two days before the return of the second superseding indictment. (ECF No. 130). On January 29, 2019, the government responded in opposition to that motion. At a February, 19, 2019 hearing convened, in part, to hear oral argument on Mr. Dermen's motion, his counsel withdrew the motion because the arguments therein were premised on an obsolete indictment.

[2] Mr. Dermen further requests—in the event his motion for severance is granted—that his case be transferred to the United States District Court for the Central District of California. Because the court denies Mr. Dermen's motion for severance, it does not reach his motion for transfer.

## I.     ANALYSIS

Mr. Dermen's motion presents three grounds for severance: (1) that he will be prejudiced by a joint trial due to the admission of evidence relevant to charges not asserted against him; (2) that he will be deprived of his Sixth Amendment Confrontation Clause rights in a joint trial because the government is likely to admit testimonial statements made by non-testifying codefendants; and (3) that if his trial were severed, those same codefendants would actually take the stand at Mr. Dermen's individual trial and offer testimony that exculpates him. Additionally, Mr. Dermen's supplemental brief argues that the government's proffer in connection with a pretrial evidentiary proceeding not concerning his severance further supports his motion to sever.

### A. MISJOINDER

Mr. Dermen repeatedly characterizes his motion as seeking severance due to the prejudice he would face in a joint trial, clearly referring to Rule 14(a), titled "Relief from Prejudicial Joinder." However, midway through his motion, Mr. Dermen recites authorities that govern motions to sever trials on the basis of misjoinder, which occurs when, under Rule 8 of the Federal Rules of Criminal Procedure, a defendant should not have been joined in an indictment in the first instance.

After reciting Rule 8 and describing a district court case applying it, Mr. Dermen immediately asserts the first of several arguments that he will be prejudiced by a joint trial. Thus, it is unclear whether Mr. Dermen is arguing that his joinder in this indictment was impermissible under Rule 8, or whether he mistakenly believes that the Rule 8 standard somehow bears on the discretionary Rule 14 standard for severance. The court suspects the latter, but to the extent Mr. Dermen meant to bring a motion seeking mandatory severance on the basis of misjoinder, the court briefly applies the relevant standard to the operative indictment.

Rule 8 provides that:

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8(b). Rule 8 is construed broadly "to allow joinder to enhance the efficiency of the judicial system." *Caldwell*, 560 F.3d at 1212. "The test for a proper joinder is a common thread to each of the defendants." *United States v. Rogers*, 921 F.2d 975, 984 (10th Cir. 1990). "In conspiracy cases, the general rule is that persons indicted together should be tried together." *Id.*

Count I of the operative indictment charges Mr. Dermen and every other defendant with conspiring to commit mail fraud. That count forms the heart of this case, alleging that defendants engaged in a years-long scheme to fraudulently obtain refundable fuel tax credits in the amount of $511 million. A holistic review of the indictment reveals that the mail fraud conspiracy is itself the "common thread" between the joined defendants in that the tax fraud scheme that forms the basis of that count is a central evidentiary component of each of the remaining charges (false tax returns, money laundering/concealment, and obstruction of justice). Put simply, there is no charged conduct in the operative indictment that does not grow out of the scheme alleged in Count I. Because the conduct giving rise to the mail fraud conspiracy charge runs throughout the indictment, Mr. Dermen's joinder in this case is well within the parameters of Rule 8.

    B. **PREJUDICE FROM JOINT TRIAL**

Under Rule 14(a) of the Federal Rules of Criminal Procedure, a court may nevertheless sever properly joined defendants "[i]f the joinder of . . . defendants in an indictment . . . appears to prejudice a defendant." "Severance is a matter of discretion, not of right, and the defendant bears a heavy burden of demonstrating prejudice to his case." *United States v. Rogers*, 925 F.2d 1285, 1287 (10th Cir. 1995) (quoting *United States v. Mabry*, 809 F.2d 671, 682 (10th Cir.

1987)). "To meet this burden, [a] defendant must demonstrate actual prejudice and not merely a negative spill-over effect from damaging evidence presented against codefendants." *United States v. Wacker*, 72 F.3d 1453, 1468 (10th Cir. 1995). That the moving defendant is less culpable or is charged in fewer counts does not suffice to establish actual prejudice caused by a joint trial. *Id.* "[S]everance 'should be granted only when there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *United States v. Caldwell*, 560 F.3d 1202, 1213 (10th Cir. 2009) (quoting *United States v. Zapata*, 546 F.3d 1179, 1191 (10th Cir. 2008)).

"In determining the merits of a motion for severance, the trial court must balance two competing interests by weighing the prejudice to a particular defendant caused by the joinder against considerations of economy and expedition in judicial administration." *United States v. Pack*, 773 F.2d 261, 266 (10th Cir. 1985).

Mr. Dermen contends that he will face actual prejudice by the introduction of evidence that falls into two categories: (1) evidence related to the Davis County Cooperative Society (the "Order"), of which he is not a member; and (2) evidence related to the obstruction of justice charges not asserted against him.[3]

Mr. Dermen's argument about prejudice flowing from the Order-related evidence fails because the indictment clearly alleges that the mail fraud coconspirators used Order-related entities in furtherance of the conspiracy. Thus, whether he is tried alone or with his alleged

---

[3] Mr. Dermen also advances an argument that he will face prejudice by having to review discovery that does not bear directly on the charges asserted against him. This is not the type of prejudice with which Rule 14 is concerned, and even if it were, this inconvenience would not outweigh the substantial expense of conducting two substantially similar trials. Additionally, because of the broad scope of evidence that is potentially admissible against Mr. Dermen in this conspiracy case (any overt acts taken by coconspirators in furtherance of the conspiracy), he would be wise to review even those materials that do not facially pertain to him, even in an individual trial.

coconspirators, Mr. Dermen cannot avoid the presentation of Order-related evidence, especially when those entities played such an integral role in the alleged conspiracy. *See United States v. Scott*, 37 F.3d 1564, 1581 (10th Cir. 1994) (holding that evidence of conduct alleged to form part of conspiracy was "admissible against all the coconspirators as evidence of the conspiracy"); *United States v. Ramsey*, 510 F. App'x 731, 734 (10th Cir. 2013) ("Overt acts taken in furtherance of a conspiracy are admissible against all coconspirators as evidence of the conspiracy."). Further, the government represents that its evidence will show that Mr. Dermen was not merely a siloed coconspirator responsible for one component of the conspiracy in Los Angeles, but rather that he had full knowledge of the Order-related entities' participation in the scheme, that he traveled to Utah in furtherance of the scheme, and that he even met the Order's leadership.

The same result obtains with respect to any prejudice flowing from the presentation of evidence establishing the obstruction counts asserted against Mr. Dermen's codefendants. Although that conduct forms the basis of individual counts not asserted against Mr. Dermen, it is also alleged to have been taken in furtherance of the mail fraud conspiracy, and thus it is properly admissible as against Mr. Dermen. *See Ramsey*, 510 F. App'x at 734–35 (holding that evidence that coconspirators shot an individual believed to be a "snitch" was admissible against coconspirator who did not participate in the shooting as evidence of the conspiracy). Thus, whether tried alongside his codefendants or alone, Mr. Dermen is not likely to be able to avoid the presentation of that evidence.

Nevertheless, Mr. Dermen is justifiably concerned that the jury's resolution of the obstruction counts premised on that conduct might bleed into their finding on the conspiracy and money laundering counts that are asserted against Mr. Dermen. To guard against this result, the

court intends to give a jury instruction directing the jury to consider each count and defendant individually.

The mail fraud conspiracy charge does not, however, allege that the money laundering/concealment conduct was taken in furtherance of the conspiracy, and thus, those counts present a risk of negative spill-over as to Mr. Dermen. But Mr. Dermen is himself charged in 8 money laundering counts, and though it is theoretically possible that he might experience some negative spill-over from the presentation of evidence related to the laundering counts in which he is not charged, the court cannot find that this rises to the level of actual prejudice.

In sum, the risk of any potential negative spill-over created by the joint trial can be sufficiently cured by a jury instruction directing the jury to compartmentalize the evidence and consider each count and each defendant individually.

On the other side of the equation, the court must weigh the costs of conducting separate trials. *See United States v. Hollis*, 971 F.2d 1441, 1456 (10th Cir. 1992) ("In deciding on a motion for severance, the district court has a duty to weigh the prejudice resulting from a single trial of counts against the expense and inconvenience of separate trials."). The government represents that trying Mr. Dermen separately from his codefendants would result in conducting essentially the same trial twice. Mr. Dermen responds that an individual trial would obviate the presentation of any Order-related evidence, thereby saving substantial time at his trial. This argument is easily rejected.

Although the government's case-in-chief at Mr. Dermen's hypothetical individual trial would, no doubt, expend fewer trial days than the joint trial (due to the fact that the government would not need to put on evidence related to the false returns and some of the concealment

6

charges), it would nevertheless require presentation of all the evidence required to prove the mail fraud conspiracy—the central focus of this case, and far and away the most evidence-intensive count in the indictment. Thus, contrary to Mr. Dermen's argument, his individual trial would involve substantial duplication of judicial effort.[4]

The court has significantly rearranged its calendar to accommodate this three-month jury trial, deferring resolution of numerous motions and trials.[5] If the court were to preside over Mr. Dermen's individual trial shortly after concluding the Kingstons' trial, the parties to those cases would experience even further delay in vindicating their rights.[6]

After carefully considering the possibility that Mr. Dermen may face prejudice at a joint trial, and balancing any possible prejudice against the considerable judicial resources required to try him separately, the court finds that Rule 14 does not entitle Mr. Dermen to a severed trial.

## C. MR. DERMEN'S *BRUTON* ARGUMENT

Next, Mr. Dermen asserts that he must be severed to avoid the occurrence of a *Bruton* error. A *Bruton* error occurs when, in a joint trial, a court admits an out-of-court, testimonial statement made by a defendant who has invoked his privilege against self-incrimination, which statement facially incriminates his codefendants. The Supreme Court in *Bruton* held that in these circumstances, the declarant-defendant's exercise of his Fifth Amendment right means that the

---

[4] This duplication of judicial effort would only multiply if the court granted Mr. Dermen's additional request to transfer his case to the Central District of California. This court has expended countless hours familiarizing itself with the facts underlying the years-long, wide-ranging mail fraud scheme alleged by the operative indictment, to say nothing of the complex legal issues implicated therein—all of which would be duplicated by a transferee district judge in California.

[5] In fact, the backlog caused by this three-month trial has created a highly congested calendar for the court in the months following this trial. The court is presently scheduling trials to begin in February 2020 for cases that are ripe for trial now.

[6] The same duplication of judicial effort would attend a transfer of Mr. Dermen's case to another judge in this district.

non-declarant codefendants are deprived of their Sixth Amendment Confrontation Clause right to cross-examine him with respect to the incriminating statement.

*Bruton* applies only when a non-testifying defendant's out-of-court statement (1) is testimonial, *United States v. Clark*, 717 F.3d 790, 815 (10th Cir. 2013); (2) is "so inculpatory as to the defendant that the practical and human limitations of the jury system cannot be ignored," *United States v. Sarracino*, 340 F.3d 1148, 1160 (10th Cir. 2003); and (3) is being introduced for the truth of the matter asserted, *United States v. Pablo*, 696 F.3d 1280, 1287 (10th Cir. 2012). When the government intends to offer statements that meet this narrow standard, they must either be excluded, or the non-declarant defendants severed—a limiting instruction will not suffice. *See Richardson v. Marsh*, 481 U.S. 200, 208 (1987) ("[A] defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant.").

Mr. Dermen primarily offers speculation about the possibility of a *Bruton* problem in this case, asserting that he "has no way of knowing if there have been testimonial statements made by codefendants." The court has not seen much indication that the defendants have found themselves in circumstances capable of producing testimonial statements[7] that implicate *Bruton*.[8]

---

[7] The Tenth Circuit has articulated two definitions of a "testimonial" statement: "(1) 'a formal declaration made by the declarant that, when objectively considered, indicates the primary purpose for which the declaration was made was that of establishing or proving some fact potentially relevant to a criminal prosecution'; or (2) '[a] formal statement [such that] a reasonable person in the position of the declarant would objectively foresee that the primary purpose of the statement was for use in the investigation or prosecution of a crime." *Clark*, 717 F.3d at 816 (alterations in original) (quoting *United States v. Smalls*, 605 F.3d 765, 778 (10th Cir. 2010).

[8] The paradigmatic factual *Bruton* scenario is a conspiracy in which one codefendant has essentially confessed or made other damning statements to law enforcement, but nevertheless ultimately goes to trial.

However, to the extent the government believes that it cannot prove its case without heretofore undisclosed *Bruton* evidence, the court notes that the government is running the risk of having those statements excluded.

Mr. Dermen does adduce one statement, the introduction of which, he argues, will result in a *Bruton* error. In a civil contract proceeding in the United States District Court for the Southern District of New York, Mr. Dermen's codefendants, Jacob and Isaiah Kingston, each submitted two affidavits regarding the location of Washakie's cash deposits. The first affidavit attested that much of Washakie's cash was on deposit in Turkey. The second affidavit "withdrew" that statement, explaining that it was "untrue." The government indicates that it will seek to introduce the second affidavit at trial. Mr. Dermen argues that his inability to cross-examine Jacob and Isaiah about these out of court statements results in a deprivation of his confrontation rights such that he must be severed to avoid *Bruton* error.

In response, the government argues that the statement is neither inculpatory of Mr. Dermen nor offered for its truth. The court agrees. Statements made by Mr. Dermen's codefendants that tend to establish their mendacity in a civil proceeding are, at best, only inferentially incriminating of him, and without the government's context, the statements themselves are almost wholly divorced from Mr. Dermen. Clearly, the statements are not "so inculpatory as to [Mr. Dermen] that the practical and human limitations of the jury system cannot be ignored." *Clark*, 717 F.3d at 814. In addition to the more general instruction discussed above, Mr. Dermen is free to seek a limiting instruction at trial if he can articulate how these statements inferentially incriminate him vis-à-vis conduct with which he is charged.

Moreover, from the outset of this action, the government's theory regarding the affidavits has been that the matter asserted in the second affidavit was, in fact, false. That is, the

9

government intends to offer the second affidavits (that withdraw the earlier statements and characterize them as "untrue") for their falsity. Stated differently, the government is not offering the statements in the second affidavit to prove the truth of the statements (that the first affidavits were false) but rather to demonstrate that the assertions were themselves untrue. Thus, these statements do not implicate *Bruton*.

### D. MR. DERMEN'S ASSERTED NEED FOR CODEFENDANT TESTIMONY

"When a defendant moves to sever claiming he needs a codefendant's testimony, we consider factors including the likelihood that the codefendant would testify; the significance of the testimony; the exculpatory nature of the testimony; the likelihood that the testimony would be impeached; the prejudice caused by the lack of the testimony; the effect of a severance on judicial administration and economy; and timeliness of the motion." *Scott*, 37 F.3d at 1579.

Mr. Dermen makes little attempt to apply these seven factors, instead asserting that "[t]here is no doubt Mr. Dermen will seek exculpatory evidence from the Kingstons," and listing a series of facts he claims the Kingston defendants will testify to at his individual trial. In response, the government argues, and the court agrees, that even accepting that the Kingstons would testify at his severed trial (which Mr. Dermen has not established) and further accepting that they would testify to those facts, the facts are not generally exculpatory. For example, testimony that Mr. Dermen had no ownership interest in Washakie or United Fuel Supply and that he did not file tax returns or interact with the IRS on behalf of those entities would not absolve Mr. Dermen of the counts with which he is charged. Indeed, the government has nowhere argued that he owns those entities or was involved in the tax filing component of the conspiracy, and as a matter of law, those facts are not necessary to sustain a jury's conviction of Mr. Dermen. Thus, Mr. Dermen need not be severed on these grounds.

### E. MR. DERMEN'S SUPPLEMENTAL BRIEF

After this motion became fully briefed, Mr. Dermen moved for a hearing or for leave to file a supplemental brief so that he could present evidence and arguments made available to him by the government's intervening disclosure of Jencks Act material. The court granted leave to file that supplemental motion, but what followed from Mr. Dermen was, in substance, a response to the government's proffer in connection with the *James* hearing in this case (a pretrial procedure used to define the bounds of statements that meet the coconspirator exemption from the rule against hearsay).

It is unclear how an argument that the government's *James* proffer falls short of establishing the existence of a conspiracy for evidentiary purposes bears on the instant motion.[9] The most charitable construction of Mr. Dermen's supplemental brief is that he intended to argue that he has a markedly different level of culpability than his codefendants, and that this disparity will "prevent the jury from making a reliable judgment about [his] guilt or innocence." *Clark*, 717 F.3d at 817. But even so construed, Mr. Dermen has not shown that his culpability is markedly different than his codefendants. Indeed, on the basis of the *James* proffer alone, he is not even the least culpable defendant.

---

[9] Mr. Dermen also asserts that the government's Jencks Act disclosure produced material that exculpates Mr. Dermen. In general, this argument and Mr. Dermen's *James* argument read more like arguments in support of a motion to dismiss in that they consistently assert—almost invariably without any support—that there is little or no proposed evidence connecting Mr. Dermen to the charged crimes. But a motion to sever is not a vehicle to exclude hearsay evidence or to obtain a dismissal, and even if it were, Mr. Dermen does no more than nibble at the edges of the government's theories. For example, Mr. Dermen argues that the government's recent investigative efforts have revealed that, contrary to the government's earlier representations, he does not own a yacht in Turkey. It seems amply clear that whether or not Mr. Dermen can be found guilty of conspiring to commit mail fraud and concealing/laundering the fraudulent proceeds does not turn on his ownership of a yacht in Turkey.

In support, Mr. Dermen does no more than list conduct alleged to have been taken in furtherance of the conspiracies—as outlined by the government's *James* proffer—in which he is not alleged to have participated. Of course, that is the nature of conspiracy cases: coconspirators perform different functions to achieve efficiency and scale. And in this five-defendant, five-conspiracy case, it is unsurprising that Mr. Dermen is not alleged to have been involved in every facet of the various conspiracies. In sum, he has not shown how his alleged role in the crimes charged in the indictment is so minimal relative to his codefendants such that his trial must be severed.

## II. ORDER

For the reasons articulated, Mr. Dermen's motion to sever (ECF No. 289) is **DENIED.**

Signed July 2, 2019

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge