JOHN W. HUBER, United States Attorney (#7226)
LESLIE A. GOEMAAT, Special Assistant United States Attorney (MA #676695)
RICHARD M. ROLWING, Special Assistant United States Attorney (OH #0062368)
ARTHUR J. EWENCZYK, Special Assistant United States Attorney (NY #5263785)
JOHN E. SULLIVAN, Senior Litigation Counsel, Tax Division (WI #1018849)
Attorneys for the United States of America
111 South Main Street, #1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682
Email:  leslie.a.goemaat@usdoj.gov
        richard.m.rolwing@usdoj.gov
        arthur.j.ewenczyk@usdoj.gov
        john.e.sullivan@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| UNITED STATES OF AMERICA, | : | Case No. 2:18-CR-365-JNP-BCW |
|---|---|---|
| Plaintiff, | : | |
| v. | : | GOVERNMENT'S SECOND SUPPLEMENTAL SUBMISSION ON THE |
| LEV ASLAN DERMEN, | : | EXISTENCE OF CONSPIRACIES CHARGED IN THE SECOND |
| a/k/a Levon Termendzhyan, | : | SUPERSEDING INDICTMENT |
| Defendant. | : | |
| | : | District Judge Jill N. Parrish |
| | : | Magistrate Judge Brooke C. Wells |

The United States hereby submits its Second Supplemental James Proffer. The United States submitted is first James Proffer under seal on June 3, 2019 and its Supplemental James Proffer under seal on July 9, 2019. This Second Supplemental James Proffer will not be submitted under seal as government witness Katirina Pattison has already testified pursuant to a Rule 15 deposition.

1

I.      **Introduction**

The Court's first James Order found that the government had proven the existence of all conspiracies and the membership thereof, but reserved its ruling as to Sally Kingston on the two charged conspiracies, Counts 1 and 23, and the uncharged conspiracy, Count 44, until the government filed its supplemental brief and the Court could review the statements submitted against Sally. ECF 405. The Supplemental James Proffer included witness statements of "high concern" witnesses, including Katirina Pattison, who has since testified at a Rule 15 deposition on August 13, 2019. The Supplemental James Proffer alleged two additional members of the Count One conspiracy and provided additional evidence relating to Defendant Sally Kingston, based on the Court's reserved ruling. Defendant Sally Kingston has since pleaded guilty to all charges against her in the Second Superseding Indictment, thereby mooting the Court's reserved ruling as to Sally Kingston's membership in the conspiracies.

The Court has not yet ruled on the membership of Katirina Pattison and one additional person as submitted in the government's Supplemental James Proffer. *See* ECF 414 (Government's Supplemental James Proffer) at p. 8.

Here, the United States submits that **Joseph Furando** is also a member of the Count One conspiracy based on the August 13, 2019 Rule 15 testimony of Katirina Pattison.

II.     **Count One (18 U.S.C. § 1349)**

   1. **The Charged Conspiracy**

Count One charges Jacob Kingston, Isaiah Kingston, Lev Dermen, Rachel Kingston, and Sally Kingston with conspiracy to commit mail fraud for scheming to fraudulently obtain government benefits including Renewable Identification Numbers ("RINs") and U.S. Treasury

checks through the filing of false Forms 8849, falsely claiming refundable renewable fuel tax credits on behalf of Washakie and UFS to which they were not entitled, and causing mailings to be sent including 37 Treasury checks totaling $511,842,773. The Indictment charges the conspiracy lasted from in or about 2010 through *at least* May 2017. *See* James Proffer at pp. 14-90. Jacob Kingston, Isaiah Kingston, Rachel Kingston, and Sally Kingston have pleaded guilty to the Count One conspiracy.

2. **Members**

In addition to those members alleged in the United States James Proffer and the Supplemental Proffer, the United States submits that **Joseph Furando** is a member of the Count One, Conspiracy to Commit Mail Fraud.

3. **Evidence**

Katirina Tracey (now Pattison), Joseph Furando, Brian Carmichael, and Chad Ducey, Chris Ducey, and Craig Ducey were prosecuted in the Southern District of Indiana for a re-certification scheme whereby Furando's company, E-biofuels, which owned a biodiesel plant in Indiana, bought B99 from third parties and re-sold it as B100 with RINs as though E-biofuels produced it. Furando called this scheme "Alchemy." Furando recertified over 35 million gallons of fuel during the course of the fraud. Furando controlled New Jersey companies CIMA Green LLC, Caravan Trading LLC, and Sunbelt AG Supply, which he used to layer the transactions, and to purchase the third party biodiesel. Pattison was the COO of both CIMA Green and Caravan Trading.

Katirina Pattison testified on August 13, 2019 pursuant to an unopposed Rule 15

deposition. *See* Exhibit A (Transcript of Deposition of Katirina Pattison).[1] According to her testimony, Pattison was the COO of CIMA Green and Caravan Trading. Pattison and Furando first met Jacob Kingston at the National Biodiesel Board conference in February 2012 in Orlando, Florida. Pattison and Furando had already contracted for several million gallons worth of B99, but E-biofuels could not buy it, as was their usual practice, due to the federal investigation and bankruptcy, and they were looking for a buyer. Pattison asserted that Furando wanted to make more than a penny on a gallon and sought out Jacob Kingston to see if WRE could replace e-biofuels as the fraudulent re-certifier of fuel, in order to make a large profit on the B99 for which Furando and Pattison prepaid.

Pattison and Furando approached Jacob Kingston, who directed Pattison and Furando to meet with Levon Termendzhyan. On March 24, 2012, Furando and Pattison met Termendzhyan – but not Jacob Kingston– in South Beach Miami, Florida. Pattison described Termendzhyan as lavishly wealthy. Furando and Pattison met with Termendzhyan at a restaurant in Miami and discussed recertifying the B99 through WRE. Pattison and Furando discussed with Termendzhyan that they wanted to use WRE and Jacob Kingston's facility to recertify B99 – pretend it was feedstock and fraudulently claim RINs and tax credits – and then ship it to California to meet Termendzhyan's set price of "HO-60," or 60 under heating oil. Pattison testified that based on her experience it was impossible to sell and ship fuel to California at HO-60 without fraudulently recertifying the fuel.

Furando had purchased the fuel for well over HO-60, and Furando and Pattison proposed

---

[1] The United States will file the transcript of the testimony of Katirina Pattison as an exhibit to this Second Supplemental James Proffer when the transcript is completed.

that Washakie take railcars to the fuel terminal in Argo, Illinois, where Furando's main position was, pull the fuel, transport it to WRE, pretend to "process it," pretend to turn it back into B100 – although this was, of course, physically impossible, and then claim the dollar tax credit and a RIN for every gallon of B99. Having fraudulently created a profit of as much as $3.35 per gallon in tax credits and RINs, WRE could then afford to sell the B99 to Levon Termendzhyan at his set price of HO-60.

In the grand jury, Pattison was asked "Was Levon open to this proposal?" and she responded, "He had absolutely zero problem with it. He seemed to be just fine. There was no what you're doing is illegal moment, not at all." *See* Supplemental James Proffer Exhibit 188 at p. 18.

Four days after the Miami meeting, Pattison was summonsed to Los Angeles to again meet with Termendzhyan in pursuit of the deal. Pattison was picked up by Termendzhyan's associates at the airport with a Rolls Royce Ghost and a Bentley. They were driven to Termendzhyan's office where Pattison was presented with a spread of food and tequila. Kat Pattison did not recall when Jacob Kingston joined them during this meeting, but did take this photo of Jacob Kingston, Levon Termendzhyan, and several of his bodyguards during that trip, clearly demonstrating that Jacob Kingston was at some point present:



*Exhibit 4-1 (Photo taken by Kat Pattison of Jacob Kingston, Levon Termendzyhyan, and bodyguards)*

Ultimately, Pattison and Levon left the group and called Furando on speakerphone and they discussed finalizing the deal and moving material. The plan was as follows: WRE would pull fuel with their railcars from Argo, Illinois, move the fuel to WRE to pretend to "process" it, WRE would send it to Termendzhyan in California for 60 under heating oil, and WRE would take the tax credit and RIN from the "processing" of the material that was already B99. At the end of this phone call, Pattison, Furando, and Levon Termendzhyan agreed to do a "test run" of six railcars, but had not agreed to dates or prices.

Ultimately, six railcars (approximately 130,000 gallons) of B99 were sent to Washakie. The paperwork claimed that Sunbelt AG Supply, another company controlled by Furando, was selling "soy blend" to WRE. *See* Exhibit 4-5 (admitted at Rule 15 deposition of Katirina Pattison). These fake invoices were intended to support Washakie's fraudulent claims for tax credits and RINs, which would in turn allow Jacob Kingston to sell the B99 at substantially below-market prices to Levon Termendzhyan, for his use in up-blending at his gas stations.

Indeed, while giving Pattison a tour of his facilities, Termendzhyan told her that he blended up to 50% of biodiesel into his gas stations and intended to use the fuel purchased from Pattison, through Washakie, in his fuel pumps.

Days later, CIMA Green was raided by the FBI, and the word of the raid spread quickly through the biodiesel industry. After the raid, Jacob Kingston and Pattison changed the invoices to no longer fraudulently claim the sale of "soyblend," and instead to merely reference the sold railcars. After the raid, Jacob Kingston sent revised pricing claiming $0 from RINs and ultimately paid only approximately $1.00 per gallon for the fuel. However, the evidence will show that WRE claimed both tax credits and RINs on the RINless B99 purchased for $1.00 per gallon from Pattison and Furando and sold that fuel for $2.35 *with RINs* to NOIL. *See* Exhibit 4-12 (UFS invoices to NOIL for B99 with RINs, admitted at Rule 15 deposition). Pattison testified that because biodiesel RINs could sell for as much as $1.50 a gallon, and each biodiesel gallon generated 1.5 RINs, that the price of $2.35 for B99 with RINs amounted to selling the B99 to Levon Termendzhyan for ten cents a gallon.

After the raid, Jacob Kingston claimed the delivered fuel had quality issues. Ultimately, Jacob Kingston told Katirina Pattison, "This will be resolved when **Levon** gets back into the country next week." *See* Exhibit 4-10 (admitted at the August 13, 2019 Rule 15 deposition of Katirina Pattison).

Katirina Pattison's Rule 15 testimony is sufficient to prove well beyond a preponderance of the evidence that Joseph Furando was a member of the conspiracy charged in Count One.

**III.   Conclusion**

Based upon the foregoing, the United States submits that there is sufficient evidence to show, by a preponderance of evidence, that uncharged co-conspirator Joseph Furando was a

member of the conspiracy charged in Count One.

Respectfully submitted this 17th day of August, 2019.

>JOHN W. HUBER
>United States Attorney
>
>*/s/ Leslie A. Goemaat*
>LESLIE A. GOEMAAT
>RICHARD M. ROLWING
>ARTHUR J. EWENCZYK
>Special Assistant United States Attorneys
>JOHN M. SULLIVAN
>Senior Litigation Counsel

<u>Certificate of Service</u>

    I certify that on the 17th of August 2019, I caused a copy of the foregoing to be filed through the CM/ECF electronic filing system, thereby providing notice to all parties of record in this case.

    <u>/s/Leslie A. Goemaat</u>
LESLIE A. GOEMAAT
Special Assistant United States Attorney