Mark J. Geragos
California State Bar #108325
GERAGOS & GERAGOS
644 S. Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 625-3900
Facsimile: (213) 625-1600

Jon D. Williams (8318)
9 Exchange Place, Suite 600
Salt Lake City, UT 84111
Telephone: (801) 746-1460
Facsimile: (801) 998-8077

*Attorneys for Lev Aslan Dermen*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>v.<br><br>LEV ASLAN DERMEN<br><br>     Defendant. | **DEFENDANT LEV DERMEN'S SUPPLEMENTAL MEMORANDUM TO MOTION TO COMPEL DISCOVERY RELATING TO DEFENDANT'S RESTRICTIVE PRETRIAL CONDITIONS OF CONFINEMENT**<br><br>Case No. 2:18-cr-00365-JNP-BCW<br><br>Honorable Jill N. Parrish<br><br>**Hearing Requested** |

Defendant Lev Aslan Dermen ("Mr. Dermen"), as directed by the Court's August 16, 2019

Order on Motion to Compel ( the "Order," Dkt. 486), hereby submits, through counsel, this

Supplemental Memorandum to the Defendant's Motion to Compel Discovery Relating to

Defendant's Restrictive Pretrial Conditions of Confinement.

Defense counsel continues to receive differing explanations as to why Mr. Dermen's privileges have been revoked and his security classification changed. The Court has stated Mr. Dermen was violating regulations by using other inmates' PIN numbers to place unauthorized calls. (Order, at 1.) Instead of just restricting Mr. Dermen's telephone privileges, the Court stated that the Marshals Service "changed Defendant's status classification." (*Id.*)

The government, though, has stated that there have been witness tampering issues and threats to a certain "Witness X." (Government's Response to Defendant Lev Dermen's Motion to Compel Discovery ("Response to Motion to Compel"), Dkt. 482, at 2.)  Indeed, Davis County produced a July 2, 2019 email correspondence from Brittany Dean, Supervisory DUSM, Court Operations, U.S. Marshal's Office to Sargeant Heather Swaner of Davis County Jail, informing Sgt. Swaner that the U.S. Marshal's office requested the restrictions at the request of Judge Parrish "*due to witness tampering* in this case." (Defendant's Motion to Compel Discovery, Dkt. 476, Ex. B, at 2 (emphasis added).)

To further complicate the misinformation, the Court has disclosed an ex parte motion made by the government to support the claim that Mr. Dermen was using other inmates' PIN numbers, and therefore his security designation should be altered. (Order, Attach. A.) But the government's motion was submitted to the Court on July 30, and Mr. Dermen's privileges were revoked, and his classification status changed, almost a month earlier on July 3. Even further, Mr. Dermen was moved to a maximum-security pod on July 29, and the government's motion was submitted on July 30.

In its July 30, 2019 ex parte motion, the government communicated uncorroborated claims about Mr. Dermen somehow threatening Ara Khrayan through the Mexican Mafia, a government

witness, that it received on July 23rd, 2019. (Order, Attach. A, at 2.) The government admitted it was "unable to gather information to confirm" these alleged threats and described them as being "uncorroborated." (*Id*.) The government also told the Court on July 30th that it had been informed that Mr. Dermen was using other inmates' PIN numbers to make unauthorized phone calls. (*Id*. at 3.) It also referenced a vague claim of "ongoing witness security concerns in this case." (*Id*. at 4.)

There is still no explanation as to why Mr. Dermen's classification was changed on July 3 other than Mr. Dermen making unauthorized calls using another inmate's PIN. "While a pretrial detainee may be disciplined for a specific institutional infraction committed during the period of his detention, the discipline imposed must be roughly proportionate to the gravity of the infraction. An arbitrary, or disproportionate sanction, or one that furthers no legitimate penological objective, constitutes punishment (and, thus, is proscribed by the Fourteenth Amendment)." *Surprenant v. Rivas*, 424 F.3d 5, 13 (1st Cir. 2005) (citing *Bell,* 441 U.S. 520, 538–39 (1979); *Collazo–Leon v. U.S. Bureau of Prisons,* 51 F.3d 315, 318 (1st Cir.1995)).

The fact that the Court disclosed a July 30th motion to explain an Order imposed on or around July 3rd compounds the problem that Mr. Dermen has not received reliable information about unconstitutional restrictions on his ability to meet with his counsel prior to trial. A July 30th application to the court by the government does not supply the necessary information for a July 3rd change to his pretrial conditions.

"*Wolff* has long established the level of due process required before a pretrial detainee can be deprived of a liberty interest in a disciplinary hearing." *Surprenant v. Rivas*, 424 F.3d 5, 18 (1st Cir. 2005). Pretrial "detainees placed in [ ] restraint status should reasonably promptly thereafter be accorded due process hearings in accordance with the Supreme Court's decision in *Wolff v.*

*McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)." *Benjamin v. Fraser*, 264 F.3d 175, 189 (2d Cir. 2001). *Wolff* requires more than Mr. Dermen received here, which was nothing – not even notice to his attorneys regarding the real reason he was put on restraint status. "When an institutional restriction infringes on a specific constitutional right, the prison policy must be evaluated in light of the legitimate objectives of penal administration-security, order and rehabilitation." *Ramos v. Lamm*, 639 F.2d 559, 579–80 (10th Cir. 1980) (citations omitted).

Mr. Dermen repeats his request for discovery related to the July 3rd decision to restrict his pretrial conditions. Specifically, Mr. Dermen requests:

(1)     Discovery related to the unproven allegations Mr. Dermen used other inmates' PIN numbers to make unauthorized calls, including the identities of these other inmates, and any and all records to support and prove the allegations including communications between the government - the prosecution team and its agents - and the U.S. Marshal.

(2)     Discovery related to any due process hearing conducted related to the restraint on Mr. Dermen's liberties.

(3)     Discovery related to jail policies related to the consequences of an inmate making unauthorized calls.

(4)     Discovery related to previous jail responses when other inmates have made unauthorized calls.

(5)     Discovery related to allegations of witness tampering, including documents and communications related to:

    (a)     Threats made to Ara Khrayan, as detailed in the Court's Order, Dkt. 486.
    (b)     Threats made against Witness X *by Jacob Kingston*, as referenced in the government's Response to Motion to Compel, Dkt. 482.
    (c)     Any other threats made by Jacob Kingston.
    (d)     Any other threats made against Witness X.
    (e)     An and all requests or inquiry made by the government to other law enforcement agencies, including the Eurasian Organized Crime Task Force in Los Angeles, and any reports or memorandums regarding the decision by these other law enforcement agencies to decline to prosecute these alleged

4

uncorroborrated allegations that were nonetheless sufficient basis to impose stricter restrictions on this defendant.

This above-referenced material should be produced immediately in order to allow Mr. Dermen an opportunity to (1) determine the extent of the constitutional violation, (2) evaluate relevant evidence for exculpatory and impeachment purposes, and (3) adequately prepare for trial. The changes to Mr. Dermen's security classification, and the restrictions on his telephone privileges, have prejudiced his ability to prepare for trial and his constitutional right to confer with his counsel. Without more reliable information, the changes appear to have been made in order to punish Mr. Dermen.  Regardless, they have impeded his constitutional rights.

"This Court has recognized a distinction between punitive measures that may not constitutionally be imposed prior to a determination of guilt and regulatory restraints that may." *Bell v. Wolfish*, 441 U.S. 520, 537 (1979). The inquiry includes

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter,* whether its operation will promote the traditional aims of punishment-retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may often point in differing directions.

*Id.* at 537–38. These are all relevant factors in the determination of whether the restraint on Mr. Dermen's liberties is reasonable or not. "Courts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility." *Id*. at 539.

Further, the government is obligated to produce exculpatory evidence as well as evidence that could be useful to the defense in impeaching witnesses, even if not exculpatory. *See Giglio v.*

*United States*, 405 U.S. 150 (1972); *Douglas v. Workman*, 560 F.3d 1156, 1172–73 (10th Cir.

2009) ("[N]o distinction is recognized between evidence that exculpates a defendant and 'evidence

that the defense might have used to impeach the [United States'] witnesses by showing bias and

interest.' " (quoting *United States v. Bagley*, 473 U.S. 667, 676 (1985))); *United States v.

Abello–Silva*, 948 F.2d 1168, 1179 (10th Cir. 1991) ("Impeachment evidence merits the same

constitutional treatment as exculpatory evidence.").  The Court stated it "has no reason to doubt"

that the government will produce *Brady* and *Giglio* evidence (Order, at 3), but the government has

already admitted it will not produce such evidence relating to Witness X because it does not intend

to call Witness X. (Response to Motion to Compel, at 2.) That is not the standard.

　　　Mr. Dermen hereby incorporates the arguments he made, and authority cited, in his Motion

to Compel and in his Reply to the Response to Motion to Compel. The Court should schedule a

hearing on these important, constitutional, matters and compel the requested discovery.

Dated: August 17, 2019.

> /s/ Mark J. Geragos
> MARK J. GERAGOS
> GERAGOS & GERAGOS
> 644 Figueroa Street
> Los Angeles, CA 90017
> Telephone: (213) 625-3900
> Email: geragos@geragos.com
> *Attorneys for Lev Aslan Dermen*

**CERTIFICATE OF SERVICE**

I hereby certify that I filed a true and correct copy of the foregoing, on the case styled *United States of America v. Lev Aslan Dermen*, this 17th day of August, with the Clerk of the Court using CM/ECF, which sent notification of the filing to all parties registered to receive such notice in the case.


/s/     *Mark J. Geragos*