JOHN W. HUBER, United States Attorney (#7226)
ARTHUR J. EWENCZYK, Special Assistant United States Attorney (NY #5263785)
LESLIE A. GOEMAAT, Special Assistant United States Attorney (MA #676695)
RICHARD M. ROLWING, Special Assistant United States Attorney (OH #0062368)
JOHN E. SULLIVAN, Senior Litigation Counsel, Tax Division (WI #1018849)
Attorneys for the United States of America
111 South Main Street, #1800
Salt Lake City, Utah 84111
Telephone:  (801) 524-5682
Email: arthur.j.ewenczyk@usdoj.gov
       leslie.a.goemaat@usdoj.gov
       richard.m.rolwing@usdoj.gov
       john.e.sullivan@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 2:18-CR-365-JNP |
| Plaintiff, | : | |
| v. | : | GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION OF COURT'S ORDER ON DEFENDANT'S MOTION IN LIMINE TO EXCLUDE DEPOSITION TESTIMONY OF BRENDAN MORRISSEY, AND MOTION TO COMPEL DISCOVERY, ECF 644 |
| LEV ASLAN DERMEN, a/k/a Levon Termendzhyan, | : | |
| | : | |
| Defendant. | | |

**GOVERNMENT'S RESPONSE TO
DEFENDANT DERMEN'S MOTION FOR RECONSIDERATION**

The United States of America, by and through its undersigned attorneys, hereby submits the following Response to Defendant Dermen's motion for reconsideration of the Court's order denying Dermen's motion in limine to exclude the deposition testimony of Brendan Morrissey and to compel discovery.

1

Defendant Dermen's argument that the government has taken steps to make Mr. Morrissey unavailable is simply not true. To the contrary, for months, the government has gone to great lengths to secure the testimony of Mr. Morrissey for this trial. The government has repeatedly requested that Mr. Morrissey personally appear in Utah and testify. In the face of his steadfast refusal, the government has spent considerable effort securing his voluntary, albeit reluctant, appearance at a Rule 15 deposition. The government has even gone so far as to indicate to Mr. Morrissey that it would seek to involve Irish authorities to secure his appearance at the deposition in Dublin. When the Court recently ordered that the defendant could re-open the deposition of Mr. Morrissey, the government successfully convinced him to appear on October 4, despite his initial reluctance and then subsequent refusal to do so. All these efforts have been made toward one very simple objective: to allow the jury to hear Mr. Morrissey's testimony, including cross-examination–whether live or in recorded form.

The government first traveled to Ireland in November 2018 in order to interview Mr. Morrissey because it believed he would have relevant evidence against Defendant Dermen and the Kingston defendants. At the conclusion of the interview, the government requested that Mr. Morrissey travel to the United States to testify at the Kingston/Dermen trial at government expense. He expressed his fear of Defendant Dermen and his reluctance to testify. *See* Declaration of EPA Special Agent Candice Urban, ECF 313-1, attached hereto as Exhibit 1.

The government asked Mr. Morrissey to voluntarily appear for a Rule 15 deposition in Ireland. Mr. Morrissey was unwilling to do so and repeatedly expressed fear that Dermen might harm him or his family: "I have reservations about testifying. I'm reading press on the case (*see* below). We can discuss it on the call but it's not something I want to do. I don't want to put my family or myself at risk over this." *See* April 26th email from Mr. Morrissey, attached as Exhibit

2

2.  In light of Mr. Morrissey's position, the government informed him that if he refused to participate in a Rule 15 deposition, the government would have to involve Irish authorities and seek an order requiring his appearance at a deposition before an Irish judge. *See* Declaration, Exhibit 1.  He finally agreed.  *See* Exhibit 2, May 2nd 2019 email from Morrissey.

The government then went to a great deal of effort to schedule the deposition at a time and place in Dublin mutually convenient to all five defense teams and the Court.  During the communications about scheduling the deposition in Dublin, the government again asked Mr. Morrissey, on June 4, whether he was travelling to the United States anytime soon so that the government could secure his testimony while here in the country, which would have greatly simplified logistics and reduced cost for the government and the defense. *See* June 4, 2019 email chain, attached as Exhibit 3.  Mr. Morrissey indicated he had no intention of coming to the United States before or during trial. However, he agreed to make travel arrangements to be in Dublin on July 8, 2019 for the deposition.  *See* Exhibit 3.

At the deposition, under oath, he reiterated his fear of Defendant Dermen. Morrissey transcript at 114-17, 237-40.  ECF 494-1.  He also explained that his unwillingness to cooperate was overcome only by the government's persistence, which Mr. Morrissey described as "heavy." Morrissey transcript at 241-242. ECF 494-1.

A few weeks after the deposition, the Kingstons entered guilty pleas and trial was continued to September, and then ultimately set for October 10, 2019.  ECF 577.  In late August, the government again asked Mr. Morrissey to voluntarily appear at then scheduled September trial, and he once again refused and described his fear of Defendant Dermen.  *See* August 22 Skype message inserted and described in ECF 539 ("Levon scares me whether he's in prison or not. I have to take care of my family and put them first and going to Utah to testify would not be

putting them first.").

On September 12, 2019, the government informed Mr. Morrissey of the new October trial date, and again requested that he travel to Utah to testify in person at the trial:

> First, the trial has again been rescheduled, this time it is scheduled to start on October 15 in Utah, and go through mid-November. Again we ask that you agree to appear and testify in Utah during these four or five weeks. Are you planning any travel to the US at this time? If not, we will arrange for your flights, lodging and transportation. Please let us know ASAP whether you are available and willing to appear and testify during this trial.

*See* September 12, 2019 email to Morrissey, attached as Exhibit 4. This request, made after Mr. Morrissey had already testified by video from Dublin, demonstrates that the government also prefers Mr. Morrissey testify in person live rather than through video. Indeed, there is no advantage to the government to have Mr. Morrissey testify in Dublin by video rather than live in Utah. He is a compelling government witness with damaging testimony about Defendant Dermen and his role in the conspiracy as it relates to Jacob Kingston, and the government would also prefer to have him testify live. However, the government has no power to make him appear. In response to the government's September request, Mr. Morrissey again refused to come to the United States and reiterated his fear of testifying against Defendant Dermen:

> I do not feel safe for myself or my family testifying against Levon Termendzhyan in the US. You assured me that the deposition in Dublin was all I would be required to do. I took you at your word. I am back working now and have extensive travel and meetings booked for that period. I'm trying to catch up on months of not working. I do not want to travel to Utah to testify. I have no USA travel booked.

Exhibit 4.

4

Shortly thereafter, on September 19, this Court issued an Order denying Defendant Dermen's Motion in Limine to Exclude the Morrissey Video Deposition from the trial, but also granting defense counsel the right, "at their option, to reconvene the deposition to continue their cross examination of Mr. Morrissey." ECF 600. In light of the Court's order, the government again reached out to Mr. Morrissey, who reiterated his reluctance to participate any further in these proceedings. He explained Defendant Dermen was "the most terrifying person I have ever met… I do not want to spend the rest of my life looking over my shoulder and worried about my family." *See* September 23 email from Morrissey, attached as Exhibit 6. Despite his fears, at the urgings of the government, Mr. Morrissey agreed to appear for the continuation of the deposition in Dublin on October 4th. *See* Exhibit 6.

On September 26, counsel for Dermen contacted Mr. Morrissey directly by email with entirely reasonable and proper questions about Mr. Morrissey's testimony and records.[1] In response to this email, Mr. Morrissey decided to consult with an Irish attorney. *See* September 26 email from Mr. Morrissey attached as Exhibit 7. After consulting with counsel, Mr. Morrissey informed the government he was no longer willing to participate in the deposition absent an order from an Irish court. *See* September 27 email from Morrissey, attached as Exhibit 8.

Given the timing of Mr. Morrissey's reversal, the government found itself in a difficult situation. Indeed, there would be no way to secure an Irish court order–a process that involves

---

[1] While the government accurately informed Mr. Morrissey that he had no obligation to respond to the defense contacts, it also clearly and accurately stated that it was up to him whether he chose to respond or provide records. *See* Exhibit 11. And, any records Mr. Morrissey provided to the government were provided in discovery.

5

filing an official request for assistance from Irish authorities pursuant to a Mutual Legal Assistance Treaty –by the October 10th trial date.  But because Mr. Geragos notified the Court and the government that he anticipated the additional deposition would take "three hours at the absolute most," *see* September 23 emails from Mr. Geragos to the undersigned, attached as Exhibits 9 and 10, the government passed this information along to Mr. Morrissey to assuage his mistaken fear and belief that this re-opened deposition was a complete do-over, or "a full deposition again," s*ee* Exhibit 8, and only did so as part of its attempt to convince Mr. Morrissey to voluntarily appear for the October 4 deposition.

In a further effort to secure Mr. Morrissey's voluntary appearance at the deposition, the government also responded to his questions and concerns about any legal exposure resulting from his involvement with Defendant Dermen, the Kingstons, and their companies. *See* Exhibit 11 ("Can the U.S. government confirm that I am indemnified and will not be contacted about this case after next Friday. And that I can freely travel to the USA."). The government considers, and has always considered, Mr. Morrissey to be a witness in this case. As such, Mr. Morrissey always remained free to travel to the United States. The only caveat being that during the pendency of the present matter, the government would seek to serve Mr. Morrissey with process and ensure his personal appearance at trial should he enter the United States and thereby come within the Court's jurisdiction.

The government attempted to convey all this to Mr. Morrissey when it responded: "I do believe that after next Friday, you will not be asked to testify again. And please know that you have no exposure here. You are just a witness. . . . And after Friday, you will be able to freely travel to the United States." *See* Exhibit 11. Admittedly, the government's response may have been inartful. In retrospect, the government probably should have told Mr. Morrissey that he

would be able to freely travel to the United States (without being compelled to testify) after the trial, which was then imminently set to begin. However, all the government was attempting to convey was that Mr. Morrissey was not under investigation, the Friday October 4 event was anticipated to be the last time he would be asked to testify, and that other than efforts to secure his appearance at trial, the government had no reason to interfere with his ability to travel freely.

The government also attempted to convey to Mr. Morrissey what Mr. Geragos had indicated, namely that he intended to focus on additional impeachment as part of continued cross-examination rather than exploring entirely new lines of questioning. *See* September 22 email from Geragos attached as Exhibit 12 ("We are assembling exhibits most of which are impeachment but we can talk about that,"). Thus, far from giving Mr. Morrissey a "false impression" of the length or nature of the continued deposition, the government endeavored to convey to Mr. Morrissey the information it was receiving from defense counsel.

After several emails, and a phone call on September 30, which was memorialized, the government was finally able to convince Mr. Morrissey to again agree to re-appear for the continuation of the deposition later that week on October 4 in Dublin. *See* September 30 email to defense counsel, attached as Exhibit 14. Based on the assurances from Mr. Morrissey, the government finalized its arrangements and the cost for a conference room, the travel of a videographer, a court reporter, and agents, as well as flights, and hotel rooms to conduct the deposition. *See* September 25 email from Mr. Geragos, attached as Exhibit 13. At that time of departure for Ireland, no exhibits had been provided to the government by defense counsel nor was any description of the subject matter of the continued impeachment provided. Government counsel learned during a stop-over in Philadelphia, en route to Dublin, that defense counsel was cancelling the continued deposition and forgoing the opportunity to further question Mr.

Morrissey.

In summary, the government requested Mr. Morrissey's personal appearance at the Utah trial on no less than four occasions. Each time he refused. At least one of the government requests was made *after* Mr. Morrissey had already testified by video.

Further, the government pleaded with Mr. Morrissey to voluntarily appear and then re-appear for live-streamed video depositions in Ireland. And finally, the government successfully got Mr. Morrissey to change his mind from "not attending" to re-appearing at the scheduled continuation.[2] Defendant Dermen's argument that instead the government had some agreement with Mr. Morrissey to make himself unavailable is not supported by the facts and is in direct contradiction of the record. The government has made every effort to ensure that Mr. Morrissey's testimony, whether live or by video, including the additional cross-examination ordered by this Court, would be available for the jury.[3]

---

[2] The government notes the inconsistency in Defendant's two allegations of government interference: one when a foreign witness refuses his invitation to testify, and the other when the government was successful in convincing the foreign witness to voluntarily appear and testify.

[3] The government also notes that Dermen misunderstands Mr. Morrissey's explanation of the California entity associated with Mobstar. Mr. Morrissey's email provided as follows:

> On October 28th 2014 we signed a Joint Venture agreement with Jonathan Kim a US based technologist from Samsung on the understanding that he was bringing US Venture Capital funding to the company. He required a US entity to achieve this because US VC's generally do not invest in a European companies. The company did not trade because we did not receive any funding. We cancelled the JV and parted company. If he set up US banking please check the account to confirm this.

Finally, Dermen demands that the government turn over all of its emails and other electronic communications sent to other potential witnesses. He cites no authority for this demand, despite the government's previous request that he state some specific basis for his demand and the government's representation that it would produce all documents it was obligated to. Defendant has no general pretrial discovery right to the government's communications with its witnesses or others it has interviewed. *United States v. Lujan*, 530 F. Supp. 2d 1224, 1234 (D.N.M. 2008) (recognizing that, in order to obtain requested discovery, a defendant "must make a *prima facie* showing of materiality" that goes beyond "conclusory allegations of materiality" (quoting *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990)); *see also cf* Fed. R. Evid. 16 (a)(2) (providing that Rule 16 "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case").

The Tenth Circuit has explicitly stated that the government does not have any obligation to disclose even the names of its witnesses in any manner pre-trial; *a fortiori* there is no free-standing discovery right to the government's communications with those witnesses, or others that it has interviewed and has decided not to call. *See United States v. Nevels*, 490 F.3d 800, 803 (10th Cir. 2007) ("It is settled law in this circuit that, in the absence of a statutory or

---

*See* Exhibit 4. Accordingly, while a Mr. Kim incorporated a Mobstar entity in California in 2014, and then signed a joint venture with the Irish Mobstar European entity created by Mr. Morrissey (in which Mr. Kingston invested), this relationship was apparently severed shortly thereafter, according to Mr. Morrissey, when no funding was received. Stated differently, the only relevant entity called Mobstar is the European company created by Mr. Morrissey. But, whether the company Mobstar is a European entity or not is again irrelevant to whether Mr. Morrissey is subject to the subpoena power of this Court. He is not. *See* ECF 585. And while the fact that Mobstar is a European company may be important in forfeiture proceedings, those have yet to begin, and also may not require Mr. Morrissey's presence in Utah.

constitutional requirement, there is no requirement that the government disclose its witnesses in any manner, except in a case where trial is for treason or other capital offense." (ellipses and alterations omitted)).

Without stating a legal basis for his demand, defendant gives the government no argument it can respond to – or any relief the Court could properly grant. The Court should reject Dermen's efforts to divert the Court's resources (and potentially further delay the trial) by litigating this collateral issue.[4]

The fact remains that this Court provided Defendant Dermen the opportunity to continue his examination of Mr. Morrissey, the government went to great lengths to arrange the details as well as convince Mr. Morrissey to re-appear, and counsel for Dermen refused to avail himself of the opportunity. Based on the foregoing, and for the reasons set forth in the government's previously filed responses, ECF 539, 572, and 585, the Court should deny Defendant Dermen's request to exclude the deposition testimony of Brendan Morrissey, and deny his further attempt to compel discovery of all communications by the government with all witness interviewed in this investigation. Such communications are not subject to discovery.

Respectfully submitted this 7th day of October, 2019.

>JOHN W. HUBER
>United States Attorney
>
>*/s/ Richard M. Rolwing*
>ARTHUR J. EWENCZYK
>LESLIE A. GOEMAAT
>RICHARD M. ROLWING
>Special Assistant United States Attorneys
>JOHN E. SULLIVAN
>Senior Litigation Counsel

---

[4] Only due to the impending nature of the continued deposition did the government agree in this instance to provide its communications to Morrissey in unredacted form rather than ask the Court to spend resources reviewing them in response to a motion to compel prior to the deposition.

<u>Certificate of Service</u>

I certify that on the 7th day of October, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF electronic filing system, which will send notice of electronic filing to counsel of record in this case.

                                                  */s/ John E. Sullivan*
                                                  JOHN E. SULLIVAN
                                                  Senior Litigation Counsel