Mark J. Geragos CA SBN #108325
Setara Qassim CA SBN #283552
GERAGOS & GERAGOS
644 S. Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 625-3900
Facsimile: (213) 625-1600

Jon D. Williams (8318)
9 Exchange Place, Suite 600
Salt Lake City, UT 84111
Telephone: (801) 746-1460
Facsimile: (801) 998-8077

*Attorneys for Lev Aslan Dermen*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LEV ASLAN DERMEN<br><br>Defendant. | **DEFENDANT LEV DERMEN'S RESPONSE TO THE GOVERNMENT'S REPLY [ECF 1102] re DEFENDANT'S SUPPLEMENTAL MOTION FOR NEW TRIAL [ECF 1099]**<br><br>Case No. 2:18-cr-00365-JNP-BCW<br><br>Honorable Jill N. Parrish<br><br>**HEARING REQUESTED** |

  Defendant, Lev Aslan Dermen ("Mr. Dermen") submits this Response to the prosecution's Reply regarding Mr. Dermen's Supplemental Motion for New Trial [ECF DOC 1099].

  Mr. Dermen's pending Motion for New Trial and Request to Reopen Discovery calls out the government's discovery production and identifies items of material discovery that were

1

suppressed by the government either intentionally or through willful ignorance, in order to avoid learning of ongoing DOJ commissioned investigations that were actively pending within the Central District of California overlapping with the evidence and witnesses in this case. The government knew or should have known about the discovery, and intentionally withheld or moved to suppress these material items from defense counsel, and suppression of the discovery affected the outcome and/or the confidence in the outcome of the proceedings. The prosecution's impotent discovery production was and continues to be an issue hence multiple supplemental filings by the defendant. The issues were also raised pretrial repeatedly by defense counsel in Dermen's multiple informal written requests for discovery sent directly to the prosecution, requests of the Court to compel the government to produce all *Brady/Giglio* material, a motion to compel discovery filed in this Court in November 2019, and also in detention proceedings. Even in the face of serial *Brady* violations since the verdict was returned in March, the prosecution still asks this Court to have confidence in this prosecution team (as it theoretically should) that they would uphold its discovery obligations. In its recent filing, the government clings to this by repeatedly citing to the Court's Order denying Defendant's Motion to Compel Discovery as a crutch for the government to lean against to defend against its blatant discovery violations.

**The Prosecution's Discovery Obligations**

The prosecution's *Brady* obligations are ongoing and continue throughout the judicial process. In *Douglas v. Workman*, 560 F.3d 1156 (10th Cir. 2009), the Tenth Circuit held once a prosecutor's obligations under Brady have been triggered they "continue throughout the judicial process." *Douglas v. Workman*, 560 F.3d at 1173. In *United States v. Headman*, 594 F.3d at 1183 (10th Cir. 2010), the Tenth Circuit held "[a]lthough Brady claims typically arise from nondisclosure of facts that occurred before trial, they can be based on nondisclosure of favorable evidence (such as impeachment evidence) that is unavailable to the government until trial is underway." The disclosure obligation continues even while a case is on direct appeal. [See *United States v. Headman*, 594 F.3d at 1183; *Smith v. Roberts*, 115 F.3d 818, 819, 820 (10th Cir.

1997)(applying *Brady* to a claim that the prosecutor failed to disclose evidence received after trial but while the case was on direct appeal).

The government's response relies on other Circuits to try to narrow the scope of their discovery obligations. The government complains that the prosecution team should not be required to go on a "fishing expedition" when producing discovery in a 40+ count indictment with implications of a life sentence on the defendant. As usual, the government's analysis is misplaced, and a misdirection of the facts and evidence, its obligations, the case law, and the Constitution.

**Scope of prosecution**

The prosecutors cloak their lack of *Brady* compliance basically by the default claim that the exculpatory or impeachment information was not known to them. The linchpin of this argument is persuading the Court as what is the scope of the prosecution team. If they can convince the Court to artificially compartmentalize the Department of Justice to exclude federal prosecutions and investigations within the Central District of California then they believe they have no Brady obligation. In essence they state this fiction as fact namely that the DOJ prosecutors who are deployed from Main Justice and have all repeatedly reminded this court of their multi-jurisdictional cases when it comes to Utah to categorize the United States Attorney's Office in the Central District of California as a "third party."

In *Smith v. Sec'y of New Mexico Dep't of Corr.*, 50 F.3d 801, 825 (10th Cir. 1995) the Tenth Circuit held that because one county district attorney's office had "actual knowledge" of an investigation by another county into the same homicide it was prosecuting, it was "reasonable to impute the knowledge possessed by each [county] to the prosecution under *Brady*." *Id.* at FN 36.

In *United States v. Combs*, 267 F.3d 1167, 1173 (10th Cir. 2001), the Tenth Circuit determined that no *Brady* violation existed when prosecutors failed to disclose impeachment discovery obtained from a third party, Pretrial Services, due to lack of its materiality. However, the significance of *Combs* to this analysis is that in *Combs* the United States took the position that there is a distinction for purposes of *Brady* disclosure between government agencies and agencies acting on behalf of "the government" *i.e.* the prosecution. The government in *Combs*

3

argued that because Pretrial Services is "an arm of the judiciary, not the prosecution," it was not "'acting on the government's behalf'" and its knowledge "cannot be imputed to the prosecution." *Combs,* 267 F.3d at 1173. The prosecution in *Combs* even cited *United States v. Sherlin,* 67 F.3d 1208, 1218 (6th Cir.1995), where the Sixth Circuit stated that "*Brady* expressly applies to material evidence withheld from the defense *by the prosecution...* Because, in its view, Pretrial Services officers 'do not work for, and are not under the control of, the United States Attorney's Office or any investigative agency of the Executive branch,' the government concludes that 'information in the possession of Pretrial Services cannot be imputed to the government.'" *Combs*, 267 F.3d at 1173–74. This position contradicts the position taken by the United States in Mr. Dermen's case. Here the new items of discovery raised in Mr. Dermen's motion for new trial were in control of government agencies acting on behalf of the executive and within the control of and under the authority of the Department of Justice. There is no similar distinction between the United States Attorney's Office in Utah and the Central District of California, or law enforcement agencies including Homeland Security or the FBI, as the government in *Combs* asserted there is between the US Attorney's Office and Pretrial Services. Rather, U.S. attorneys from one branch can easily and readily access evidence in possession by another branch, and together all branches are under authority of one United States Department of Justice and the executive branch of government. The CIPA revelation in this case is a perfect example.

      The government's response states that the information regarding its own trial witness, Nicolas Steele, "was not discoverable until it came into the prosecution team's possession on June 22, 2020" and the "prosecution team had no prior contact with AUSA Dubois and had no knowledge of the CDCA investigation into Nicolas Steele"... accordingly, information in the possession of AUSA Dubois was not in the possession of this prosecution team." ECF 1102 at pg. 3. The Seventh Circuit in *Carey v. Duckworth*, 738 F.2d 875 (7th Cir. 1984) held that "a prosecutor's office cannot get around *Brady* by keeping itself in ignorance, or by compartmentalizing information about different aspects of a case." *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984).

In *United States v. Deutsch,* 475 F.2d 55 (5th Cir.1973), the United States was held to have violated *Brady* when it failed to obtain personnel records from the United States Post Office and turn them over to the defense, in a case in which the defendants and the government's witness were all Post Office employees. The *Deutsch* court stated: "The government cannot compartmentalize the Department of Justice and permit it to bring a charge affecting a government employee in the Post Office and use him as its principal witness, but deny having access to the Post Office files. In fact it did not even deny access, but only present possession without even an attempt to remedy the deficiency. We do not suggest ... that the government was obliged to obtain evidence from third parties, but there is no suggestion in *Brady* that different 'arms' of the government, particularly when so closely connected as this one for the purpose of the case, are severable entities." *Deutsch,* 475 F.2d at 57.

In *United States v. Auten,* 632 F.2d 478, 481 (5th Cir.1980), the Fifth Circuit cited *Deutsch* in support of the proposition that the requirement of "disclosure" is not excused "where the prosecution has not sought out information readily available to it." In *Auten,* the prosecution failed to conduct a criminal background check on a witness because it had only made the decision to call the witness the night before he testified. The court held that the fact "[t]hat the prosecutor, because of the shortness of time, chose not to run an FBI or NCIC check on the witness, does not change 'known' information into 'unknown' information within the context of the disclosure requirements." Id.

In *Williams v. Whitley,* 940 F.2d 132 (5th Cir.1991), the Fifth Circuit held that "the prosecution is deemed to have knowledge of information readily available to it," such as police reports. *Id.* at 133.

The Third Circuit, while following the 5th Circuit's *Auten* decision, stated that the U.S. Attorney's failure to check an obvious database for a key witness's criminal conviction "amounted to conduct unworthy of the United States Attorney's Office." *United States v. Perdomo,* 929 F.2d 967, 970–71 (3rd Cir.1991).

In *United States v. Thornton,* 1 F.3d 149, 158 (3d Cir.1993), the Third Circuit stated that "prosecutors have an obligation to make a thorough inquiry of all enforcement agencies that had

5

a potential connection to the witnesses." The Court in *Thornton* held that prosecutors violated *Brady's* disclosure requirements when they failed to make "any follow-up inquiry" of the DEA, after the DEA did not respond to an initial request to advise the prosecutors "of any payments [to witnesses] that would have to be disclosed under *Brady*."

In *United States v. Osorio,* 929 F.2d 753, 762 (1st Cir.1991), the First Circuit held "that a prosecutor is duty bound to demand compliance with disclosure responsibilities by all relevant dimensions of the government. Ultimately, regardless of whether the prosecutor is able to frame and enforce directives to the investigative agencies to respond candidly and fully to disclosure orders, responsibility for failure to meet disclosure obligations will be assessed by the courts against the prosecutor and his office."

*In United States v. Brooks,* 966 F.2d 1500, 1500–04 (D.C.Cir.1992), the United States Court of Appeals for the District of Columbia held that the prosecution's duty to learn of *Brady* material extends to the files of the police department's homicide and internal affairs divisions, observing: "The cases finding a duty to search have involved files maintained by branches of government closely aligned with the prosecution ... and in each case the court has found the bureaucratic boundary too weak to limit the duty." *United States v.* Brooks, 966 F.2d 1500, 1503 (D.C. Cir. 1992). In Brooks the Court recognized that an explicit request for an apparently very easy examination was made by defense counsel, "and a non-trivial prospect that the examination might yield material exculpatory information, we think the prosecution should make the inquiry. As the burden of the proposed examination rises, clearly the likelihood of a pay-off must also rise before the government can be put to the effort." Id. at 1504.

In *United States v. Padilla*, No. CR 09-3598 JB, 2011 WL 1103876, (D.N.M. Mar. 14, 2011), the U.S. District Court for New Mexico held that under *Brady* "[a] prosecutor must disclose information of which it has knowledge and access." *United States v. Padilla*, 2011 WL 1103876, at 7 (citing United States v. Bryan, 868 F.2d 1032, 1037 (9th Cir. 1989)). "A prosecutor may have a duty to search files maintained by other 'governmental agencies closely aligned with the prosecution' when there is 'some reasonable prospect or notice of finding

exculpatory evidence.' " *United States v. Padilla*, 2011 WL 1103876, at 7 (quoting United States v. Brooks, 966 F.2d 1500, 1503 (D.C. Cir. 1992)).[1]

The new discovery regarding Nicolas Steele was readily and easily accessible to the prosecution team. The United States Attorney's Office is not only a closely aligned but a branch of the same prosecutorial office. The same goes for the new discovery related to Zubair Kazi's tax penalties and settlement with the IRS, Kazi's dealings with Santiago Garcia and various corrupt Homeland Security Agents for airplanes and other luxury items in exchange for his cooperation against Mr. Dermen in Utah [See *Douglas v. Workman*, 560 F.3d 1156 (10th Cir. 2009), the Tenth Circuit held that because impeachment of a witness who held the key to the successful prosecution of defendant was denied to the defense, state's *Brady* violations resulting from nondisclosure of deal the prosecution made in exchange for witness' testimony, were material. *Douglas v. Workman*, 560 F.3d 1156 (10th Cir. 2009)], or Edgar Sargsyan's criminal conduct and plea agreement and his dealings with corrupt FBI agent Babak Broumand - both criminal matters prosecuted by the same Department of Justice, and undoubtedly approved by the highest levels of Main Justice. The federal prosecutors from this case were shipped to the central district of Utah from the Department of Justice, Main Justice, Criminal Tax Division. They prosecuted this case under the auspices of US attorney for Utah, John Huber. In fact Huber's name is on every single filing as the lead prosecutor in this case. There simply is no distinction between the Department of Justice, the U.S. Attorney's Office in Utah and its branch in Central District of California.

Moreover, the defense requested this precise category of discovery from the prosecution team in its written discovery request where defense counsel implored the prosecution to investigate its informants and cooperating witnesses to produce the relevant discovery to defense counsel pretrial. In his motion to compel discovery, the defendant respectfully requested that this Court compel the government to produce discovery from parallel and/or overlapping investigations, specifically investigations pending in the Central District of California where

---

[1] See also *United States v. DeLeon*, No. CR 15-4268 JB, 2017 WL 2271427, at 30 (D.N.M. Mar. 8, 2017).

much of the evidence existed and where the government witnesses against Mr. Dermen including Dermen himself resided. At that time, the defendant was not aware of Zubair Kazi's multi-million dollar tax negotiations with the IRS, the Nick Steele investigation, or the exact nature of Edgar Sargsyan's criminal conduct and his dealings with corrupt FBI agent Babak Broumand.

**The Discovery Did Not Develop After Trial**

The government's response states that the new evidence pertains to a "minor government witness" which came into the prosecution team's possession "well after the jury returned its verdict" and "does not pertain to subject matter of any testimony or evidence introduced at trial." ECF 1102 at Pg. 1-2.

The government's response suggests that the new discovery regarding Nicolas Steele and his years long status as a Homeland Security informant, as well as the investigation regarding Steele's alleged FAA regulations magically developed after the verdict was returned in this case. This is simply not true and purposeful manipulation of the facts by the prosecution team. First, the information regarding Steele's status as a federal law enforcement informant is information that was easily accessible to the Department of Justice, and there is simply no excuse for the prosecution's claims otherwise. Defense counsel made a specific pretrial request of the prosecution to thoroughly investigate its witnesses as required by DOJ policy and local practice. The LABEST Homeland Security Taskforce, which Steele was apparently an informant for and was receiving immigration benefits in return, was disregarded by the prosecution team which went as far as telling this court that it was a just a defense red herring. Just as AUSA Scott Dubois contacted this prosecution team to inform it of the ongoing investigation of Nicolas Steele on June 22, 2020 as purported by the government's filing [ECF 1102 at Pg. 2], the members of this prosecution team could have just as easily picked up the phone and inquired of the status of its witnesses, pending criminal investigations, and status as government cooperators from its California counterpart.

**McMahon/Steele Emails**

In response to the defense's November 1, 2019 written discovery request, on November 22, 2019 the government produced Volume 40 of its discovery which included several email exchanges between Nicolas Steele and LABEST HSI taskforce agent, Walter McMahon. The government's Response states that a "few" of these emails "mention that Mr. Steele was facing issues with the FAA with regard to his aircraft operator's license" but "None of the emails discuss the FAA licensing issue with any specificity." The prosecution claims- without a declaration verifying these facts - that it was not until the June 22nd telephone call from AUSA Dubois that the prosecution team became aware of the investigation. This is yet another misleading mischaracterization of the evidence by this prosecution team which is undercut by the government's own production. For instance, on March 28, 2016, McMahon wrote to Steele providing his cell phone number writing "I am trying to figure out why FAA is messing with you." On March 29, 2016, McMahon wrote to Steele, "Did you fly him this morning?? We spoke with FAA and you need to get your Charter permit ASAP. We are waiting for another phone call from them to get more details." On March 31, 2016, Steele provided a the name of the investigator and an investigation case number to McMahon. On October 27, 2016, McMahon using a Department of Homeland Security .gov email address, writing to Michael Bumberger at FAA.gov, subject line "LA BEST Assist" writes:

> Michael,
>
> Here's the info. Tail# N888ZZ. The plane was recently repo last week at the Van Nuys airport. I need all info on that plane. Edgar Sarsyian took control of the plane under Ragdlin Aviation.
>
> I have been talking with a pilot named Nicolas Steele and he has been helpful with some things.
>
> Steele has been having some problems with FAA. The inspectors names are David Voelker and Britt Boutin. He is having problems with his 135 certificate and other items. Please don't tell anyone that I have been dealing with Nicolas steele yet.
>
> Hopefully we can meet on Monday to go over everything.

> Thanks,
>
> TFO Wally McMahon
>
> LA BEST/ LAPD

On November 11, 2016, McMahon, using the same DHS.gov email address, writes to Lisa Toscano at FAA.gov, with subject line Steele Aviation:

> Lisa,
>
> Thank you for talking to me today over the phone regarding Mr. Steele.  Hopefully, we can work something out with the enforcement issues with Mr. Steele.  I am looking forward to meeting with next Friday, November 18th at your office.
>
> My partner's name is Ben McArthur HSI/ LA BEST
>
> My name is Walter McMahon LAPD/ LA BEST
>
> Thanks,
>
> Detective Walter McMahon
>
> LAPD/ LA BEST

On November 8, 2019, the prosecution team sent a written response to the defendant's November 1, 2019 informal discovery request stating "[t]he government has endeavored to **thoroughly** investigate its cooperating witnesses and has turned over Brady/Giglio evidence it has collected." (emphasis added).

    "[T]he belated disclosure of impeachment or exculpatory information favorable to the accused violates due process when an 'earlier disclosure would have created a reasonable doubt of guilt.' " *United States v. Burke*, 571 F.3d 1048, 1054 (10th Cir. 2009). The Tenth Circuit has stated,"Where the district court concludes that the government was dilatory in its compliance with *Brady*, to the prejudice of the defendant, the district court has discretion to determine an appropriate remedy, whether it be exclusion of the witness, limitations on the scope of permitted testimony, instructions to the jury, or even mistrial." *United States v. Burke*, 571 F.3d at 1054. The prosecution team had every opportunity to inquire of McMahon's meeting with FAA

investigators regarding Nicolas Steele. The prosecution team had direct communication and access to McMahon. For instance, on May 13, 2019 the prosecution directed McMahon to appear ex-parte in the Los Angeles Superior Court in Long Beach California, before Superior Court Judge G. Ferrari, to unseal the sealed affidavit to the "much litigated" August 10, 2017 search warrant executed in Los Angeles County on Mr. Dermen's homes and businesses in Southern California. HSI Agent McMahon appeared ex-parte on the United States Government's behalf and obtained a copy of the affidavit on this prosecution team's behalf. There is no excuse or reasonable explanation why after seeing the email communications produced in Volume 40, that the prosecution team would not inquire about the FAA investigation McMahon attempted to interfere with on behalf of a federal law enforcement agency regarding one of the prosecution's trial witnesses. The prosecution's purposeful ignorance as to the discovery regarding Nicolas Steele as well as the other items of material discovery raised in Dermen's Rule 33 briefing has significantly prejudiced the defense. This is the sort purposeful ignorance by prosecutors to curtail discovery obligations that has been condemned by other Circuits and should not be tolerated by this Court.

**The Prosecution's attempts to characterize Nicolas Steele as a "minor government witness"**

The government's response attempts to whittle down the significance of the new evidence regarding Nicolas Steele by repeatedly describing Steele as a "minor" government witness. First, by taking this position, the government concedes the materiality of the new evidence regarding Zubair Kazi, who is indisputably a "major" government witness if Steele is treated as a "minor" witness.

The prosecution response also concludes that Nick Steele was insignificant because "the cross-examination of Steele was also limited and revealed that defense counsel believed that Steele's testimony was of minimal probative value." ECF 1102 at pg. 5. Defense counsel's cross-examination of Nicolas Steele would have been dramatically different if the prosecution team had disclosed to defense counsel that the government's trial witness, a pilot that Dermen allegedly employed for private flights, was a Homeland Security / LABEST informant and that he was receiving immigration benefits that mirrored the benefits that Santiago Garica was

11

receiving from the same federal law enforcement agency in exchange for their cooperation against the defendant's in this case.  Similarly, the defense counsel's knowledge of Steele's own personal motives for collecting cash payments would have been explored by the defense counsel with him.  Also, Steele's status as a federal law enforcement informant would have been factored into defendant's response to the government's Motion in Limine to exclude testimony from Steele regarding Jacob Kingston's molestation of a minor while on a private flight chartered by Steele.  Surely, defense counsel would have made an inquiry for discovery of any statements made by Steele in the capacity of a law enforcement informant regarding witnessing this encounter and any follow-up law enforcement investigation.

      The prosecution's response states that it did not find any Tenth Circuit case law clearly articulating the prosecution's duties to turn over potential impeachment evidence regarding minor government witnesses that was acquired after trial and which does not pertain to any of the evidence or testimony presented at the trial. ECF 1102 at pg. 6.  The Court should disregard any attempt by the prosecution to characterize this evidence as being acquired after trial.  The United States Supreme Court has extended the prosecution's disclosure obligation to include evidence that is useful to the defense in impeaching government witnesses, even if the evidence is not inherently exculpatory. See *Giglio*, 405 U.S. at 153, 92 S.Ct. 763.  In *Douglas v. Workman*, 560 F.3d 1156, 1172–73 (10th Cir. 2009) the Tenth Circuit held "[N]o distinction is recognized between evidence that exculpates a defendant and 'evidence that the defense might have used to impeach the [United States'] witnesses by showing bias and interest.'" (quoting *United States v. Bagley*, 473 U.S. 667, 676 (1985)).  In U*nited States v. Abello–Silva*, 948 F.2d 1168, 1179 (10th Cir. 1991), the Tenth Circuit states "[i]mpeachment evidence merits the same constitutional treatment as exculpatory evidence." The Tenth Circuit has also stated that evidence is material if it "might meaningfully alter a defendant's choices before and during trial ... including whether the defendant should testify." *Case v. Hatch*, 731 F.3d 1015 (10th Cir. 2013)(quoting *United States v. Burke*, 571 F.3d 1048, 1054 (10th Cir. 2009))(internal quotation marks omitted). Evidence is "material" under Rule 16 if "there is a strong indication that it will play an important

role in uncovering admissible evidence, aiding witness preparation, ... or assisting impeachment or rebuttal." *United States v. Graham*, 83 F.3d 1466, 1474 (D.C. Cir. 1996).

As explained in defendant's Supplemental Motion regarding the new discovery regarding Nicolas Steele, the government called Steele to establish (1) that Dermen surrounded himself with law enforcement agents; and (2) Dermen paid Steele with cash. The prosecution has difficulty piecing together the relevance of the new evidence to Steele's trial testimony, perhaps because they "are not defense attorneys," but had defense counsel been given the opportunity, he would have prepared differently to cross examine the witness and the examination of this witness would have been significantly different.

**Oral Argument**

Defense counsel again renews his request for the Court to set a hearing for oral argument. In its responses to the defendant's post-trial briefs regarding various discovery violations, the prosecution team has taken bold factual positions regarding its access to or knowledge regarding the various items within its filings without submitting a supporting declaration as to the factual assertions. For instance, regarding the government's access to Zubair Kazi's cellular phone, the government's Response stated that the prosecution team and its agents "never" had access to Zubair Kazi's cellular phone. The government made this statement without a supporting declaration as to the factual assertion. In its most recent Response the prosecution attempts to establish a timeline of when it discovered the information regarding Nicolas Steele, claiming that it was after being contacted by AUSA Scott Dubois on June 22, 2020. The government has not provided a declaration in support of this factual assertion either from AUSA Dubois or any other member of this prosecution team. While prosecutors have no personal responsibility for discovery violations, it is imperative that a formal colloquy on the record occurs by scheduling oral argument before the Court issues a ruling on the defendant's motion. There will be no prejudice to the government by scheduling of oral argument on the defendant's motion for new trial.

Dated: August 20, 2020 Respectfully Submitted,

/s/ Mark J. Geragos
MARK J. GERAGOS
GERAGOS & GERAGOS
644 Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 625-3900
Email: geragos@geragos.com
*Attorneys for Lev Aslan Dermen*

**CERTIFICATE OF SERVICE**

I hereby certify that I filed a true and correct copy of the foregoing, on the case styled *United States of America v. Lev Aslan Dermen*, this 20th day of August, 2020, with the Clerk of the Court using CM/ECF.

/s/   Mark J. Geragos

Dated: August 20, 2020                           Respectfully Submitted,

/s/ Mark J. Geragos
MARK J. GERAGOS
GERAGOS & GERAGOS
644 Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 625-3900
Email: geragos@geragos.com
*Attorneys for Lev Aslan Dermen*

**CERTIFICATE OF SERVICE**

I hereby certify that I filed a true and correct copy of the foregoing, on the case styled *United States of America v. Lev Aslan Dermen*, this 20th day of August, 2020, with the Clerk of the Court using CM/ECF.

/s/   Mark J. Geragos