FILED
2021 JAN 27 PM 3:01
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>JACOB KINGSTON, ISAIAH KINGSTON, LEV DERMEN, RACHEL KINGSTON, and SALLY KINGSTON,<br><br>　　　　Defendants. | ORDER DENYING MOTIONS TO HOLD AMERICAN CHEMICAL AND NWR IN CIVIL CONTEMPT<br><br>Case No. 2:18-cr-00365-JNP<br><br>District Judge Jill N. Parrish |

Before the court are motions filed by the Government to hold New Washakie Ranch, LLP (NWR) and American Chemical, LLC in civil contempt of restraining orders issued by the court. ECF Nos. 1079, 1080. The court DENIES the motions.

## BACKGROUND

In 2011, NWR leased a plot of land to Washakie Renewable Energy, LLC (WRE). WRE erected buildings on the land and installed equipment and storage tanks for a biofuel production facility. On December 31, 2016, the lease terminated under its own terms. NWR argues that under the terms of the lease, title to the buildings and equipment installed on the land (the Washakie equipment) passed to NWR.

In January 2019, a grand jury charged the owners of WRE, Jacob and Isaiah Kingston, with numerous crimes related to a scheme to fraudulently obtain biofuel tax credits from the United States Treasury. The indictment also charged Rachel Kingston, Sally Kingston, and Lev Dermen with various crimes for participating in the scheme. The indictment charged the defendants with

forfeiture of the proceeds traceable to the count 1 conspiracy charge, including "[t]he physical plant once known as Washakie Renewable Energy, LLC, located at 7550 W 24000 N Plymouth, Utah, and all the equipment installed therein, and affixed thereto." Jacob, Isaiah, Rachel, and Sally Kingston pled guilty to the charges against them. In their plea agreements, they agreed to the forfeiture of the Washakie equipment described in the indictment. A jury convicted Dermen of the charges against him, including the count 1 conspiracy charge.

On March 11, 2019, NWR leased a portion of its real property and some of the Washakie equipment to American Chemical. The lease agreement required American Chemical to make monthly payments of $38,806 to NWR.

On May 8, 2019, the court entered a restraining order against NWR. The restraining order prohibited NWR from taking

> any action that would affect the availability or value of the [Washakie equipment], including but not limited to, directly or indirectly, selling, transferring, assigning, pledging, distributing, encumbering, wasting, secreting, depreciating, damaging, hypothecating or in any way diminishing the value of, or cause anyone else to do so, the [Washakie equipment].

On October 25, 2019, NWR leased some of its real property and part of a Washakie warehouse to True North Organics to be used in a medical marijuana growing operation. The lease term was six months and required monthly payments of $5,500. NWR also leased four storage tanks to U.S. Tank and Rail, LLC. On April 1, 2020, U.S. Tank and Rail subleased the tanks to Big West Oil, LLC at $182,000 per month. The lease term was three months with the option to renew the lease for two additional months.

On April 23, 2020, the court entered a restraining order against American Chemical that required it to "transfer to the United States Treasury any payments related to the [Washakie

equipment] that would otherwise be paid to NWR." Since the court issued the restraining order, American Chemical has not made lease payments to either the United States Treasury or NWR.

The Government filed motions to hold NWR and American Chemical in civil contempt, arguing that these two business entities violated the restraining orders issued by the court. The Government asserts that NWR violated the May 8, 2019 restraining order, which prohibited NWR from taking any action that would affect the availability or value of the Washakie equipment, by leasing part of a warehouse to True North and by leasing the storage tanks to U.S. Tank and Rail. The Government asks the court to sanction NWR by ordering it to pay to the United States Treasury the value of all lease payments made by True North to NWR and the first lease payment made by Big West Oil to U.S. Tank and Rail. The Government also contends that American Chemical violated the April 23, 2020 restraining order by failing to make monthly payments of $38,806 to the United States Treasury.

## ANALYSIS

Federal courts have the power to punish a party for disobeying a lawful order. 18 U.S.C. § 401. In order to show that the court should hold NWR and American Chemical in civil contempt of the restraining orders, the Government "has the burden of proving, by clear and convincing evidence, [1] that a valid court order existed, [2] that the defendant[s] had knowledge of the order, and [3] that the defendant[s] disobeyed the order." *F.T.C. v. Kuykendall*, 371 F.3d 745, 756–57 (10th Cir. 2004) (en banc) (alterations in original) (citation omitted).

A party potentially subject to a contempt order is entitled to notice and an opportunity to be heard. *Harris v. City of Philadelphia*, 47 F.3d 1311, 1322 (3d Cir. 1995). Because the court denies the Government's motions to hold NWR and American Chemical in contempt based upon the terms of the restraining orders, the court determines that no hearing is required on this motion.

3

## I. MOTION TO HOLD NWR IN CONTEMPT

In its May 8, 2019 order, the court enjoined NWR from taking

> any action that would affect the availability or value of the [Washakie equipment], including but not limited to, directly or indirectly, selling, transferring, assigning, pledging, distributing, encumbering, wasting, secreting, depreciating, damaging, hypothecating or in any way diminishing the value of, or cause anyone else to do so, the [Washakie equipment].

The Government argues that NWR violated this order by leasing part of a warehouse to True North and by leasing storage tanks to U.S. Tank and Rail. NWR asserts that it should not be held in contempt because, among other reasons, it did not violate the restraining order by leasing the equipment. The court agrees with NWR.

The court ordered NWR not to do anything that would affect the availability or value of the Washakie equipment. The court included a nonexhaustive list of examples of prohibited actions, but the list did not include a proscription against leasing the equipment. Thus, the question presented by the Government's motion is whether the leases affected the availability or value of the equipment.

First, the Government has not shown by clear and convincing evidence that leases will affect the availability of the Washakie equipment in the event that the Government obtains title to the equipment through the forfeiture proceedings pending before this court. The True North lease term was from October 1, 2019 through March 31, 2020. Although it appears that the lease may have been extended on a month-to-month basis, the Government has not shown that the True North lease constitutes a long-term legal obligation that would affect the availability of the equipment. The Government has not produced evidence regarding the terms of the NWR lease of the storage tanks to U.S. Tank and Rail. But this is not the lease that the Government complains about. It

argues that the sublease between U.S. Tank and Rail and Big West Oil affected the availability of the storage tanks. Setting aside the question of whether the court may punish NWR for a sublease signed by U.S. Tank and Rail, the court notes that the storage tank lease is also a short-term lease that expired either by the end of June 2020 or by the end of August 2020, depending on whether Big West Oil exercised its right to extend the lease by 60 days. Because the forfeiture proceedings are still pending due to difficulties caused by the COVID-19 pandemic, the storage tank lease has not affected the availability of the tanks.

Moreover, even if NWR had entered into long-term leases of the Washakie equipment, the Government has not shown that it would be bound by any existing lease if it prevails in the forfeiture proceedings. Absent any briefing on this issue, the Government has not carried its burden of proving that NWR has violated the court's order not to take any action that would affect the availability of the equipment.

Second, the Government has not proven that the leases affected the value of the equipment. The Government argues in a single sentence that the use of the equipment diminishes its value. But it provides no evidence to support this claim—much less the clear and convincing evidence required to prevail on its motion to hold NWR in contempt of the restraining order.

In short, the court determines that the Government has not met its burden of proving that NWR violated the court's May 8, 2019 order. Accordingly, the court denies the motion to hold NWR in contempt.

## II.   MOTION TO HOLD AMERICAN CHEMICAL IN CONTEMPT

The court's April 23, 2020 restraining order against American Chemical required it to "transfer to the United States Treasury any payments related to the [Washakie equipment] that would otherwise be paid to NWR." After the court entered this order, American Chemical did not

make any monthly lease payments to either the Treasury or NWR. The parties have not presented evidence as to why payments were not made. The Government argues that American Chemical should be held in contempt for failing to make payments to the Treasury.

But the court agrees with American Chemical that it has not violated the terms of the restraining order. The order requires American Chemical to pay to the Treasury any payments "that would otherwise be paid to NWR." Because American Chemical did not make any payments to NWR, by definition, there was no money that would have otherwise been paid to NWR that American Chemical was required to pay to the Treasury. Thus, the Government has not carried its burden of proving that American Chemical disobeyed the court's restraining order.

## CONCLUSION AND ORDER

For the above-stated reasons, the court DENIES the Government's motions to hold NWR and American Chemical in contempt. ECF Nos. 1079, 1080.

DATED January 27, 2021.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge