CARL E. KINGSTON (#1826)
Attorney for Security Investment Corporation
3212 South State Street
Salt Lake City, Utah 84115
Phone: (801) 486-1458
Email: cek@ceklawoffice.com

KATHERINE R. YOUNG (#16204)
Attorney for Security Investment Corporation
3212 South State Street
Salt Lake City, Utah 84115
Phone:  (801) 746-2477
e-mail: katherine.young@kyounglaw.com

---

## IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> JACOB ORTELL KINGSTON, et al., <br><br> Defendants. | Case No. 2:18CR00365-JNP <br><br> PETITION ASSERTING 3RD PARTY INTEREST <br><br> Judge Jill N. Parrish |

Security Investment Corporation ("Security Investment"), through its counsel, asserts its interests in the forfeited property (specifically identified below) in the above-captioned case and petitions this court for an ancillary proceeding, pursuant to Title 21, United States Code, Section 853(n).

## INTRODUCTION

1.  On March 24, 2023, this Court issued a Preliminary Order of Forfeiture (ECF No. 1397), which included the following properties on the attached Exhibit 1:

    a.  Property 3: 4271 S. 1300 E. Salt Lake City, UT 84124, ("Property 3"). More legally described as:

BEG S 172.26 FT FR NW COR LOT 4, BLK 2, 10 AC PLAT A, BIG FIELD SUR; S 114.84 FT; E 220 FT; N 114.84 FT; W 220 FT TO BEG. 0.58 AC M OR L. 7135-2631 8939-3115 9075-8415 10127-7898 10657-0269, Tax ID: 22-05-230-032-0000

b.  Property 7: 24050 N. 600 W. Plymouth UT 84330 (Box Elder County UT Parcel #07-090-0002) More legally described in Exhibit A. ("Property 7")

c.  Property 8: 24050 N. 600 W. Plymouth UT 84330 (Box Elder County UT Parcel #08-041-0004) More legally described in Exhibit A. ("Property 8")

d.  Property 9: 24050 N. 600 W. Plymouth UT 84330 (Box Elder County UT Parcel #08-041-0019) More legally described in Exhibit A. ("Property 9")

e.  Property 10: 24050 N. 600 W. Plymouth UT 84330 (Box Elder County UT Parcel #08-041-0020) More legally described in Exhibit A. ("Property 10")

f.  Property 11: 24050 N. 600 W. Plymouth UT 84330 (Box Elder County UT Parcel #08-041-0025) More legally described in Exhibit A. ("Property 11")

g.  Property 12: 24050 N. 600 W. Plymouth UT 84330 (Box Elder County UT Parcel #08-041-0026) More legally described in Exhibit A. ("Property 12")

h.  Property 13: 24050 N. 600 W. Plymouth UT 84330 (Box Elder County UT Parcel #08-041-0027) More legally described in Exhibit A. ("Property 13")

i.  Property 14: 24050 N. 600 W. Plymouth UT 84330 (Box Elder County UT Parcel #08-041-0028) More legally described in Exhibit A. ("Property 14")

j.  Property 15: 24050 N. 600 W. Plymouth UT 84330 (Box Elder County UT Parcel #08-042-0018) More legally described in Exhibit A. ("Property 15")

k.  Property 16: 24050 N. 600 W. Plymouth UT 84330 (Box Elder County UT Parcel #08-045-0005) More legally described in Exhibit A. ("Property 16")

l.  Property 17: Box Elder County, Utah APN: 08-044-0004. More legally described in Exhibit A. ("Property 17")

m.  Property 18: 24050 N. 600 W. Plymouth UT 84330 (Box Elder County UT Parcel#08-052-0008) More legally described in Exhibit A. ("Property 18")

n.  Property 19: 22555 N. Frontage Rd. Portage, UT 84331. More legally described in Exhibit A. ("Property 19")

o.  Property 20: Box Elder County, Utah APN: 08-052-0014. More legally described in Exhibit A. ("Property 20")

p.   Property 21: Box Elder County, Utah APN: 08-052-0006. More legally described in Exhibit A. ("Property 21")

q.   Property 22: Box Elder County, Utah APN: 08-052-0005. More legally described in Exhibit A. ("Property 22")

r.   Property 23: Box Elder County, Utah APN: 08-052-0004. More legally described in Exhibit A. ("Property 23")

2.   Security Investment has legal right, title, or interest in Properties 3 and 7-23 and such right, title, or interest renders the order of forfeiture invalid in whole or in part because Security Investment is a bona fide purchaser for value of the right, title, or interest in Properties 3 and 7-23 and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section.

3.   Petitioner is entitled to recovery of costs, expenses and attorney's fees consistent with 28 U.S.C. § 2412, 28 U.S.C.S. § 2465(b), and 42 U.S.C. § 2000bb et seq.

## FACTUAL BACKGROUND

1.   Security Investment is a Nevada Corporation registered in the State of Utah. Security Investment is a private lender and has been in business since 1992.

2.   Security Investment never provided any loans to WRE and never received any payments from WRE. Security Investment did not become aware of any of Defendants crimes until Defendants were arrested in August 2018.

### Property 3: 4271 S. 1300 E. Salt Lake City, UT 84124

3.   In August 2013, Jeremy Andrews purchased a home located 4271 S. 1300 E. Salt Lake City, UT 84124 ("Property 3"), through a mortgage from Fidelity Funding Company ("Fidelity Funding"). The original purchase price was $385,000. Over the next five years, Mr. Andrews made significant improvements to the home including adding a second story.

4.   In June 2018, Jolene Andrews purchased Property 3 from her son Jeremy Andrews. Security Investment financed the purchase price of $1,250,245.69. See Warranty Deed and Settlement Statement at Exhibit B and Loan Agreement at Exhibit C.

5.   In June 2018, Security Investment filed a Trust Deed with the Salt Lake County recording its interest in Property 3. See Exhibit D.

6.   Ms. Andrews has been making regular payments on this loan and the outstanding loan balance as of December 31, 2022 was $1,200,804.11.

7.   In January 2019, the United States filed a lis pendens for this case on Property 3.

8.   Security Investment asserts its interest in Property 3 through its home purchase loan. The loan and trust deeds prove Security Investment is an owner of Property 3, under 18 USCS § 983(6)(a), with standing to intervene in this forfeiture. Security Investment was reasonably without cause to believe that Property 3 was subject to forfeiture, at the time it gave Ms. Andrews her home purchase loan.

<u>Properties 7-23, Box Elder County Parcels</u>

9.   During September-November 2016, Eco Ranches, LLC purchased land ("Properties 7-23") in Box Elder County from WRE in four separate purchases. Each of these purchases were financed through mortgages from Security Investment for a total purchase price of $1,299,000. See Loan Agreements at Exhibit E, Settlement Statements and check copies at Exhibit F.

10. In 2016, Security Investment filed Trust Deeds on Properties 7-23 with Box Elder County to record its mortgages. See Warranty Deeds and Trust Deeds at Exhibit G.

11. Eco Ranches defaulted on all four mortgages in 2019 and abandoned the property. Security Investment foreclosed on Properties 7-23 in September 2020 and immediately filed Trustee's Deeds upon Sale with the Box Elder County Recorder. See Exhibit H.

12. In 2019, the United States filed lis pendens for this case on Properties 7-23.

13. The United States, in this case, has filed a motion to set aside the foreclosure sale. Security Investment filed a motion in opposition in January 2022. Even if the foreclosure sale is set aside, Security Investment still qualifies as an owner under 18 USCS § 983(6)(a), with standing to intervene in this forfeiture, because it held mortgages on the property and recorded its interests with Box Elder County. Security Investment did not know and was reasonably without cause to believe that Properties 7-23 were subject to forfeiture at the time it provided mortgages on the property in 2016. It had no knowledge of any wrongdoing by Defendants until Defendants were arrested in 2018.

## PRAYER FOR RELIEF

The petitioner seeks relief from this court's preliminary order of forfeiture and hereby requests that this Honorable Court hold a hearing ancillary to the criminal conviction of the above-named defendants at which Security Investment may testify and present evidence and witnesses on its own behalf pursuant to 21 U.S.C. §853(n)(5) and further that this court amend its preliminary order of forfeiture dated on March 24, 2023 to recognize fully the interests of Security Investment as they are set forth herein.

## AFFIRMATIVE DEFENSES

A. Violation of Equal Protection:

1. Treatment or making a distinction towards a person based on the group, class, or category to which the person is perceived to belong, is unlawful discrimination. Discrimination by treatment of an individual or group based on their actual or perceived membership in a certain group or social category; restricting members of one group from opportunities or

privileges available to other groups; and exclusion of the individual or entities based on illogical decision making are all unlawful.

2. Evidence shows that the Government seeks forfeiture of the Property because of the owner's actual or perceived membership to a certain group or social category, aka "the Order." This is illegal discrimination, which violates the due process clause of the 5th and 14th Amendment to the U. S. Constitution and also violates the equal protection clause of the 14th Amendment to the U. S. Constitution.

B. Violation of Due Process:

1. Forfeiting third parties' property before any determination of wrongdoing by the property owner is a violation of the due process clause of the 5th and 14th Amendment to the U. S. Constitution. Criminal forfeiture raises several due process concerns for third party claimants. *See United States v. Emor*, 415 U.S. App. D.C. 73, 73, 785 F.3d 671, 672 (2015). Security Investment has not been charged with any wrongdoing supporting the forfeiture of the Property. It was not allowed to participate in the previous proceedings or make challenges to the forfeitability of the property, including statute of limitations or nexus.

DATED:    April 24  , 2023

Respectfully submitted,

/s/ Katherine R. Young
Katherine R. Young
Attorney for Petitioner Security Investment Corporation

 /s/ Carl E. Kingston (w/ permission)
Carl E. Kingston
Attorney for Petitioner Security Investment Corporation

## AFFIDAVIT OF KENT JOHNSON

STATE OF UTAH )

                : ss.

COUNTY OF SALT LAKE )

    I, KENT JOHNSON, being first duly sworn, depose and state as follows:

1. I am over the age of eighteen years old.
2. I am the President of Security Investment Corporation.
3. To the best of my knowledge and belief, the facts stated in the attached PETITION ASSERTING 3RD PARTY INTEREST are true and accurate.

KENT JOHNSON
Affiant

On the 24 day of April 2023, KENT JOHNSON personally appeared before me who, being first duly sworn upon oath, stated he had read the foregoing Affidavit and that the statements contained therein were true and correct to the best of his knowledge and belief.

NOTARY PUBLIC:
Residing in Salt Lake County,
State of Utah

My Commission Expires:

Notary Public - State of Utah
CHRIS WYATT
Comm. #719901
My Commission Expires
August 16, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of April, 2023, I electronically filed the foregoing Petition Asserting 3rd Party Interest with the Clerk of Court using the CM/ECF system which sent notification of such filing to all parties and co-defendants.

/s/ Katherine R. Young
Katherine R. Young

# Exhibit A

# EXHIBIT A

7. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #07-090-0002), more legally described as:

SE/4 OF SEC 3 T13N R3W SLM. LESS: BEG AT NE COR OF SE/4 OF SEC, W 534.6 FT, SELY ALG N SIDE OF ST HWY 864.6 FT, N 673.2 FT TO BEG. LESS: RES. LESS: 46.33 ACRES TO UDOT. LESS: BEG AT A PT 1593 FT N ALG SEC LINE & 33 FT W OF SE COR OF SD SEC, W 765.7 FT TO E R/W LINE OF INTER- STATE FREEWAY (NO ACCESS LINE), N 1*09`53W 978.0 FT ALG SD LINE M/L TO N BNDRY OF SE/4 OF SD SEC, S 89* 29`05E 212.8 FT ALG N BNDRY OF SD SE/4 OF SD SEC TO W R/W LINE OF CO RD, S 37*01`12"E 951.37 FT ALG SD LINE, S 216.3 FT ALG SD LINE TO POB CONT 93.28 ACRES M/L, Tax No. 07-090-0002.

8. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #08-041-0004), more legally described as:

BEG 22 2/3 RDS W of the N/4 COR OF SEC 7, TWP 14N, R 3W, SLM. TH RUNNING W 246 FT, TH S 17 RDS, TH E 246 FT, TH N 17 RDS to BEG. Less tracts deeded to: Raymond G. Yaworsky William D. Marsh. CONT .6 ACRES. Tax No. 08-041-0004

9. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #08-041-0019), more legally described as:

BEG AT A PT 538 FT W OF N/4 COR OF SEC 7, TWP 14N, R 3W, SLM. TH W 82 FT, TH S 280.5 FT, TH E 82 FT, TH N 280.5 FT TO BEG. CONT 0.5 ACRES. Tax No. 08-041-0019

10. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #08-041-0020), more legally described as:

BEG AT A PT 374 FT W OF N/4 COR OF SEC 7, TWP 14N, R 3W, SLM. TH W 82 FT, TH S 280.5 FT, TH E 82 FT, TH N 280.5 FT TO BEG. CONT 0.5 ACRES. Tax No. 08-041-0020

11. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #08-041-0025), more legally described as:

All the following within Portage City limits. BEG at a PT 1321.95 FT S of the N/4 COR SEC 07 T14N R03W SLM US Survey be CO UT, E 3300 FT M/L to CTR/L of Samaria Ditch, N ALG the CTR/L of SD Ditch to a PT 330 FT N of Grantor's PROP/L, W to the W BDY of Grantor's PROP, S 330 FT M/L to POB. CONT 10.23 AC M/L. Tax No. 08-041-0025

12. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #08-041- 0026), more legally described as:

All of the following within Portage City limits. N/2 of NE/4 of SEC 07 T14N R03W SLM. Portage. Less: N/2 of W/2 of N/2 of NE/4 of SEC 07. Less: BEG at N/4 COR of SEC 07, N89*57`38"E 2640 FT, S00*28`34"W 660.0 FT, S89*57`38"W 2640 FT, N00*28`34"E 660.0 FT to BEG. Less [08-041-0025]: BEG at a PT 1321.95 FT S of the N/4 COR SEC 07 T14N

R03W SLM US Survey be CO UT, E 3300 FT M/L to CTR/L of Samaria Ditch, N ALG the CTR/L of SD Ditch to a PT 330 FT N of Grantor's PROP/L, W to the W BDY of Grantor's PROP, S 330 FT M/L to POB. CONT. 9.77 AC M/L. Tax No. 08-041-0026

13. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #08-041-0027), more legally described as:

All the following without Portage City limits. BEG at a PT 1321.95 FT S of the N/4 COR SEC 07 T14N R03W SLM US Survey be CO UT, E 3300 FT M/L to CTR/L OF Samaria Ditch, N ALG the CTR/L of SD Ditch to a PT 330 FT N of Grantor's PROP/L, W to the W BDY of Grantor's PROP, S 330 FT M/L to POB. CONT. 14.77 AC M/L. Tax No. 08-041-0027

14. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #08-041-0028), more legally described as:

All the following without Portage City Limits. N/2 of NE/4 of SEC 07 T14N R03W SLM. Less: N/2 of W/2 of N/2 of NE/4 of SEC 07. Less: BEG at N/4 COR of SEC 07, N89*57`38"E 2640 FT, S00*28`34"W 660.0 FT, S89*57`38"W 2640 FT, N00*28`34"E 660.0 FT to BEG. Less [08-041-0027]: BEG at a PT 1321.95 FT S of the N/4 COR SEC 07 T14N R03W SLM US Survey be CO UT, E 3300 FT M/L to CTR/L of Samaria Ditch, N ALG the CTR/L of SD Ditch to a PT 330 FT N of Grantor's S PROP/L, W to the W BDY of Grantor's , S 330 FT M/L to POB. CONT. 10.23 AC M/L. Tax No. 08-041-0028

15. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #08-042-0018), more legally described as:

N/2 of NW/4 of SEC 08 T14N R03W SLM. Less: All land lying E of W BDY of OSLRR R/W. Less [08-041-0027]: BEG at a PT 1321.95 FT S of the N/4 COR SEC 07 T14N R03W SLM US Survey be CO UT, E 3300 FT M/L to CTR/L OF Samaria Ditch, N ALG the CTR/L of SD Ditch to a PT 330 FT N of Grantor's S PROP/L, W to the W BDY of Grantor's PROP, S 330 FT M/L to POB. CONT 46.91 AC. Tax No. 08-042-0018.

16. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #08-045-0005), more legally described as:

LOS 1, 2, 3, W/2 of NE/4, NW/4 of SE/4. Less to ST ROAD COMM. Being in SEC 15, TWP 14N, R 3W, SLM. CONTG 231.20 ACS. Tax No. 08-045-0005

17. Box Elder County, Utah APN: 08-044-0004, more legally described as:

PARCEL 2: LOTS 4, 5, 6, 7, West half of the Southeast quarter of Section 10, Township 14 North, Range 3 West, Salt Lake Base and Meridian. TAX ID: 08-044-0004

18. 24050 N. 600 W. Plymouth, UT 84330 (Box Elder County, UT Parcel #08-052-0008), more legally described as:

BEG N71*W 1350.1 FT FRM SE COR SEC 27 T14N R03W SLM, N40*06`W 435 FT, N19*22`W 240.5 FT, N18*03`W 329.8 FT, N89*38`E 456.2 FT, S00*24`E 876.2 FT TO BEG.

ALSO: BEG AT PT 1320 FT W & 1312 FT N FRM SE COR SD SEC 27, W 396 FT TO E
R/W/L OF CO RD, N04*40`E 274 FT, N15*20`E 1100 FT M/L TO N/L NW/4 SE/4 SD SEC
27, E 83 FT, S 1332 FT M/L TO BEG. CONT 7.20 AC. Tax No. 08-052-0008

19. 22555 N Frontage Rd, Portage, UT 84331, more legally described as:

LOT 1, BRUCE ZUNDEL SUBDIVISION, as recorded March 26, 2001, as Entry No. 150913,
in the office of the BOX ELDER County Recorder. Tax ID: 08-052-0012

20. Box Elder County, Utah APN: 08-052-0014, more legally described as:

The Northwest Quarter of the Southeast Quarter of Section 27, Township 14 North, Range 3
West, Salt Lake Meridian lying West of county road known as Frontage Road. Less: Utah
Department of Transportation access road right of way. Less: Parcel No. 08-052-0013, created by
Warranty Deed 216956. Tax ID: 08-052-0014

21. Box Elder County, Utah APN: 08-052-0006, more legally described as:

PARCEL 3: Northeast Quarter of Southwest Quarter; Southwest Quarter of Southeast Quarter
lying West of county road known as Frontage Road; and the East 31.58 acres of the Southeast
Quarter of Southwest Quarter of Section 27, Township 14 North, Range 3 West. Salt Lake
Meridian. Less: Lot 1, BRUCE ZUNDEL SUBDIVISION. Less: County road right of way. Tax
ID: 08-052-0006

22. Box Elder County, Utah APN: 08-052-0005, more legally described as:

PARCEL 2: The West 5.25 acres of Southwest Quarter of Southwest Quarter of Section 27,
Township 14 North, Range 3 West, Salt Lake Meridian. Less: County road right of way. Tax ID:
08-052-0005

23. Box Elder County, Utah APN: 08-052-0004, more legally described as:

PARCEL 1: Southwest Quarter of Southwest Quarter, less the West 5.25 acres thereof; also the
West 8 42 acres of the Southeast Quarter of Southwest Quarter of Section 27, Township 14
North, Range 3 West, Salt Lake Meridian. Tax ID: 08-052-0004

# Exhibit B

WHEN RECORDED, MAIL TO:

H. Jolene Andrews
4271 S 1300 E
Salt Lake City, Utah 84124

12787398
06/08/2018 08:42 AM $10.00
Book - 10682 Pg - 2366
ADAM GARDINER
RECORDER, SALT LAKE COUNTY, UTAH
H JOLENE ANDREWS
4271 S 1300 E
SLC  UT 84124
BY: SSA, DEPUTY - WI 1 P.

# *Warranty Deed*

Jeremy Andrews,                                   grantor,

of Salt Lake City, County of Salt Lake ,State of Utah,  hereby  CONVEY and WARRANT to

H. Jolene Andrews,                                   grantee,

of Salt Lake City, County of Salt Lake , State of Utah,

for the sum of TEN and no/100--------------------------------DOLLARS, and other good and valuable consideration

the following described tract of land in Salt Lake County, State of Utah, to-wit:

BEG S 172.26 FT FR NW COR LOT 4, BLK 2, 10 AC PLAT A, BIG FIELD SUR; S 114.84 FT; E 220
FT; N 114.84 FT; W 220 FT TO BEG. 0.58 AC M O R L.

PARCEL#22-05-230-032-0000

WITNESS the hand of said grantor, this _7_ day of                    _June_ , 20 _18_

Signed in the presence of                                    _Jeremy Andrews_
                                                            Jeremy Andrews

_____                    _____

_____                    _____

STATE OF UTAH

COUNTY OF _____    } ss.

On this _7_ day of _June_ , 20 _18_ , before me _Lynn Kingston_
         DAY         MONTH              YEAR                NOTARY PUBLIC NAME

a notary public, personally appeared _Jeremy Andrews_
                                      NAME OF DOCUMENT SIGNER

proved on the basis of satisfactory evidence to be the person(s) whose name(s) (is/are) subscribed to this

instrument, and acknowledged (he/she/they) executed the same.  Witness my hand and official seal.



LYNN KINGSTON
Notary Public - State of Utah
My Commission Expires
September 13, 2020
Commission #690937

_Lynn Kingston_
NOTARY PUBLIC

Ent 12787398 BK 10682 PG 2366

When Recorded return to:
INWEST TITLE SERVICES, INC.
200 WEST CIVIC CENTER DR. #160
SANDY UT 84070

12737096
3/20/2018 10:28:00 AM $12.00
Book - 10657 Pg - 269-270
ADAM GARDINER
Recorder, Salt Lake County, UT
INWEST TITLE SRVS SLC
BY: eCASH, DEPUTY - EF 2 P.

File # 199535

## Affidavit of Correction to SPECIAL WARRANTY DEED

The undersigned JAMES WALTON, Authorized Agent of Inwest Title Services, Inc. hereby states as follows:

1.       I am a resident of SALT LAKE County, State of Utah, over the age of twenty-one years and in all respects am competent to testify to the matters contained herein.

2.       I am a TITLE Officer for Inwest Title Services, Inc. and in that capacity I am duly authorized to execute this Affidavit.

3.       The SPECIAL WARRANTY DEED was recorded on AUGUST 26, 2013 as Entry No. 11712600, Book 10172 at Page 2504

4.       THE LEGAL DESCRIPTION CONTAINS A TYPOGRAPHICAL ERROR.

5.       The SPECIAL WARRANTY DEED is corrected to read as follows:

"See Exhibit "A" attached hereto and by this reference made a part thereof."

Dated the 20th day of March 2018.

Inwest Title Services, Inc.

By: JAMES WALTON --- Authorized Agent

STATE OF UTAH          )
                                       :ss
COUNTY OF SALT LAKE    )

The foregoing instrument was acknowledged before me the 20th day of March 2018., by JAMES WALTON, Authorized Agent of Inwest Title Services, Inc.

NOTARY PUBLIC

TODD STANGER
NOTARY PUBLIC • STATE of UTAH
COMMISSION NO. 660130
COMM. EXP. 11/15/2018

Ent 12737096 BK 10657 PG 269

Exhibit "A"

Tax ID # 22-05-230-032

BEGINNING SOUTH 172.26 FEET FROM THE NORTHWEST CORNER OF LOT 4, BLOCK 2, TEN ACRE PLAT A, BIG FIELD SURVEY; AND RUNNING THENCE SOUTH 114.84 FEET; THENCE EAST 220 FEET; THENCE NORTH 114.84 FEET; THENCE WEST 220 FEET TO THE POING OF BEGINNING.

SITUATE IN SALT LAKE COUNTY, STATE OF UTAH.

*BK 10657 PG 270*

| al Statement | | | B. Type of Loan | |
|---|---|---|---|---|
| | | | 1-5. Loan Type: Conventional Loan | |
| **FINAL Settlement Statement** | | | 6. File Number | |
| | | | | 201606 |
| | | | 7. Loan Number | |
| | | | 8. Mortgage Insurance Case Number | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown, Items marked '(POC)' were paid outside of this closing, they are shown here for informational purposes and are not included in the totals.

D. Name of Buyer/Borrower:
    H. Jolene Andrews

E. Name of Seller:
    Jeremy Andrews

F. Name of Lender:
    Security Investment Corporation

G. Property Description:
    4271 S 1300 E
    Salt Lake City, UT 84124

H. Settlement Agent:
    Address:

I. Place of Settlement Address:
    10 West Century Park Way, Salt Lake City, Utah 84115

| J. Summary of Buyer's Transactions | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100** | **Gross Amount Due From Buyer** | **400** | **Gross Amount Due To Seller** |
| 101 | Contract Sales Price | 1,250,245.69 | 401 | Contract Sales Price | 1,250,245.09 |
| 102 | Personal Property | | 402 | Personal Property | |
| 103 | Settlement Charges to borrower (line 1400) | 312.50 | 403 | Total Deposits | |
| 104 | | | 404 | | |
| | | | 405 | | |
| Adjustments for Items paid by seller in advance | | Adjustments for Items paid by seller in advance | |
| s for Items paid by seller in advance | | 406 | City/Town taxes | |
| lown taxes | | 407 | County taxes | |
| ity taxes | | 408 | Assessments | |
| 108 Assessments | | 409 | | |
| 109 | | 410 | | |
| 110 | | 411 | | |
| 111 | | 412 | | |
| 112 | | 413 | | |
| 113 | | 414 | | |
| 114 | | 415 | | |
| **120** | **Gross Amount Due From Buyer** | **1,250,558.19** | **420** | **Gross Amount Due To Seller** | **1,250,245.69** |
| **200** | **Amounts Paid By Or In Behalf Of Buyer** | | **500** | **Reductions In Amount Due to Seller** | |
| 201 | *Deposit or earnest money | | 501 | Excess deposit (see Instructions) | |
| 202 | Principal amount of new loan(s) | | 502 | Settlement charges (line 1400) | 157.50 |
| 203 | Existing loan(s) taken subject | 43258  1,250,245.69 | 503 | Existing loan(s) taken subject | 1,250,245.69 |
| 204 | | | 504 | Payoff of first mortgage loan | |
| 205 | | | 505 | Payoff of second mortgage loan | |
| 206 | | | 506 | | |
| 207 | Seller Financed Loan | | 507 | Seller Financed Loan | |
| 208 | Paid Outside of Closing | | 508 | Paid Outside of Closing | |
| 209 | | | 509 | | |
| Adjustments for items unpaid by seller | | Adjustments for Items unpaid by seller | |
| 210 | City/town taxes | | 510 | City/town taxes | |
| 211 | County taxes | | 511 | County taxes | |
| 212 | Assessments | | 512 | Assessments | |
| 213 | | | 513 | | |
| 214 | Inspection | | 514 | Inspection | |
| 215 | | | 515 | | |
| 216 | | | 516 | | |
| 217 | | | 517 | | |
| 218 | | | 518 | | |
| 219 | | | 519 | | |
| **220** | **Total Paid By/For Buyer** | **1,250,245.69** | **520** | **Total Reduction Amount Due Seller** | **1,250,403.19** |
| **300** | **Cash At Settlement From/To Buyer** | | **600** | **Cash At Settlement To/From Seller** | |
| 301 | Gross amt due from Buyer (line 120) | 1,250,558.19 | 601 | Gross amount due to Seller (line 420) | 1,250,245.69 |
| 302 | Less amts paid by/for Buyer (line 220) | 1,250,245.69 | 602 | Less reductions in amts due to Seller (line 520) | 1,250,403.19 |
| 303 | Cash From Buyer | 312.50 | 603 | Cash From Seller | 157.50 |

The Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.   Date:   8/7/16
Settlement Agent:

's supplemental Page for details

| | | | | | | Paid From Buyer's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|---|---|---|---|
| | nt Charges | | | | | | |
| | nt Sales/Broker's Commission based on price | $1,250,245.69 @ | 0.00% | = | $0.00 | | |
| | ivision of Commission (line 700) as follows | | | | | | |
| | ne | | | | | | |
| 70_ | Commission paid at Settlement | | | | | | |
| 704 | | | | | | | |
| 800 | Items Payable in Connection with Loan | | | | | | |
| 801 | Loan Origination Fee | | | | | 150.00 | |
| 802 | Loan Discount | | | | | | |
| 803 | Appraisal Fee | | | | | | |
| 804 | Credit Report | | | | | | |
| 805 | Lender's Inspection Fee | | | | | | |
| 806 | Mortgage Insurance Application Premium | | | | | | |
| 807 | Assumption Fee | | | | | | |
| 808 | Tax Service Contract | | | | | | |
| 809 | Underwriting Fee | | | | | | |
| 810 | Flood Certification Fee | | | | | | |
| 811 | Tax Research Fee | | | | | | |
| 812 | Inspection Fee | | | | | | |
| 813 | Document Processing Fee | | | | | | |
| 814 | | | | | | | |
| 815 | | | | | | | |
| | Supplemental Summary | | | | | | |
| 900 | Items Required by Lender to be Paid in Advance | | | | | | |
| 901 | Interest | | | | | | |
| 902 | Mortgage Insurance Premium | | | | | | |
| 903 | Hazard Insurance Premium | | | | | | |
| 904 | | | | | | | |
| 905 | | | | | | | |
| | Supplemental Summary | | | | | | |
| 1000 | Reserve Deposited with Lender | | | | | | |
| 1001 | Hazard Insurance | | | | | | |
| 1002 | Mortgage Insurance | | | | | | |
| 1003 | City Property Taxes | | | | | | |
| 1004 | County Property Taxes | | | | | | |
| 1005 | Annual assessments | | | | | | |
| 1006 | | | | | | | |
| 1007 | | | | | | | |
| 1008 | Aggregate Accounting Adjustment | | | | | | |
| 1100 | Title Charges | | | | | 20.00 | 20.00 |
| 1101 | Settlement or closing fee | | | | | 37.50 | 37.50 |
| 1102 | Abstract or title search | | | | | | |
| 1103 | Title examination | | | | | | |
| | Insurance Binder | | | | | | |
| | ument Fee | | | | | | |
| | ary Fee | | | | | 10.00 | 5.00 |
| | ney Fee | | | | | 50.00 | 50.00 |
| | udes above item numbers) | | | | | | |
| | e Insurance - See supplemental page for breakdown of individual fees and payees | | | | | | |
| | (includes above item number 100/118/8.1)" | | | | | | |
| 1109 | Lender's coverage | | | | | | |
| 1110 | Owner's coverage | | | | | | |
| 1111 | Incoming Wire Fee | | | | | | |
| 1112 | | | | | | | |
| 1113 | Compliance Fee | | | | | | |
| 1114 | | | | | | | |
| 1115 | | | | | | | |
| 1116 | | | | | | | |
| 1117 | | | | | | | |
| 1200 | Government Recording and Transfer Charges | | | | | | |
| 1201 | Recording fees : Deed        Mortgage:        Release: | | | | | 45.00 | 45.00 |
| 1202 | City/county tax/stamps: | | | | | | |
| 1203 | State tax/stamps: | | | | | | |
| 1204 | | | | | | | |
| 1205 | | | | | | | |
| 1206 | | | | | | | |
| 1300 | Additional Settlement Charges | | | | | | |
| 1301 | Survey to | | | | | | |
| 1302 | Pest Inspection to Termite, Insect & Rodent Control | | | | | | |
| 1303 | | | | | | | |
| 1304 | | | | | | | |
| 1305 | | | | | | | |
| 1306 | | | | | | | |
| 1307 | | | | | | | |
| 1308 | | | | | | | |
| 1309 | | | | | | | |
| 1310 | | | | | | | |
| 1311 | | | | | | | |
| 1312 | | | | | | | |
| 1313 | | | | | | | |
| 1314 | | | | | | | |
| | Supplemental Summary | | | | | | |
| 1400 | Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | | | | 312.50 | 157.50 |

| | File No. |
|---|---|
| Supplemental Page<br>Settlement Statement | |
| **Final Statement** | Loan No. |
| | Settlement Date:<br>6/7/18 |

**Borrower Name:** H. Jolene Andrews

**Seller Name:** Jeremy Andrews

| Section L. Settlement Charges Continued | Paid From<br>Buyer's<br>Funds at<br>Settlement | Paid From<br>Seller's<br>Funds at<br>Settlement |
|---|---|---|
| 1108          Supplemental Summary | | |
| a) Eagle Owner's Policy | | |
| b) Eagle Lender's Policy | | |

| Section J. Summary of Buyer's Transaction continue | Buyer Charges | Buyer Credits |
|---|---|---|
| 100 Gross Amount Due From Buyer | | |
| 200 Amounts Paid By Or In Behalf of Buyer | | |
| 201          Supplemental Summary | | |
| a) Funds For Closing | | |

The following Section is restated from the Settlement Statement Page 1

| 300 Cash At Settlement From/To Buyer | | | 600 Cash At Settlement To/From Seller | |
|---|---|---|---|---|
| 301 Gross amount due from Buyer (line 120) | 1,250,558.19 | | 601 Gross Amount Due to Seller (line 420) | 1,250,245.69 |
| 302 Less amounts paid by/for Buyer (line 220) | 1,250,245.69 | | 602 Less reductions in amounts due to Seller (line 520) | 1,250,403.19 |
| ...h From Buyer | 312.50 | | 603 Cash From Seller | 157.50 |

# ADDENDUM TO
# SETTLEMENT STATEMENT

NOTICE TO ALL PARTIES: If information is obtained which indicates that the source of the borrower's financial contribution is other than from the borrower or other than stated by the lender in its closing instructions, the settlement agent is to obtain written instructions from the lender before proceeding with settlement.

## CERTIFICATION OF BUYER IN A CONVENTIONAL LOAN TRANSACTION

I certify that I have no knowledge of any loans that have been or will be made to me (us) or loans that have been or will be assumed by me (us) for purposes of financing this transaction, other than those described in the sales contract dated _____ (including addenda). I certify that I (we) have not been paid or reimbursed for any of the cash down payment. I certify that I (we) have not and will not receive any payment or reimbursement for any of my (our) closing costs which have not been previously disclosed in the sales contract (including addenda) and/or my application for mortgage insurance submitted to my (our) mortgage lender.

| | | |
|---|---|---|
| _Signature_  6/7/18 | | _____ |
| Buyer   H. Jolene Andrews   Date | Buyer | Date |
| | | |
| _____ | _____ | |
| Buyer   Date | Buyer | Date |

## CERTIFICATION OF BUYER IN A CONVENTIONAL LOAN TRANSACTION

I certify that I have no knowledge of any loans that have been or will be made to the borrower(s), or loans that have been or will be assumed by the borrower(s), for purposes of financing this transaction, other that those described in the sales contract dated _____ (including addenda). I certify that I have not and will not pay or reimburse the borrower(s) for any part of the cash down payment. I certify that I have not and will not pay or reimburse the borrower(s) for any part of the borrower's closing costs which have not been previously disclosed in the sales contract (including and addenda).

| | | |
|---|---|---|
| _Signature_  6/7/18 | | _____ |
| Jeremy Andrews   Date | Seller | Date |
| | | |
| _____ | _____ | |
| Seller   Date | Seller | Date |

## CERTIFICATION OF BUYER IN A CONVENTIONAL LOAN TRANSACTION

To the best of my knowledge, the Settlement Statement which I have prepared is a true and accurate account of the funds which were (i) received, or (ii) paid outside closing, and the funds received have been or will be disbursed by the undersigned as part of the settlement of this transaction. I further certify that I have obtained the above certifications which were executed by the borrower(s) and seller(s) as indicated.

| | |
|---|---|
| _Signature_  6/7/18 | |
| Settlement Agent   Date | |

[ The certifications contained herein may be obtained from the respective parties at different times or may be obtained on separate addenda]

**WARNING:** It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment, For details, see: Title 18 U.S. Code Sections 1001 and 1010.

## SELLER'S AND/OR PURCHASER'S/BORROWER'S STATEMENT

I have carefully reviewed the Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the Settlement Statement.

I hereby authorize the Settlement Agent to make expenditures and disbursements as shown and approve same for payment.

ACCEPTED AND APPROVED:

Borrower(s)/Purchaser(s)                                              Seller(s)

_____                                   _____
H. Jolene Andrews                                                Jeremy Andrews

Date: 6/7/18                                                     Date: 6/7/18

_____                                   _____

Date:                                                           Date:

_____                                   _____

Date:                                                           Date:

The Settlement Statement which I have prepared is a true and accurate account of this transaction.  I have caused or will cause the funds to be disbursed in accordance with this statement.

Agent:

_____                                   6/7/18
                                                                Date

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form.  Penalties upon conviction can include a fine and imprisonment.  For details, see: Title 18 U.S. Code Sections 1001 and 1010.

# Exhibit C

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| ,250,245.69 | 06-07-2018 | 06-15-2023 | 400337-1 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** H. Jolene Andrews
4271 South 1300 East
Salt Lake City, UT 84124

**Lender:** Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

**Principal Amount: $1,250,245.69**        **Interest Rate: 3.800%**        **Date of Note: June 7, 2018**

**PROMISE TO PAY.** I ("Borrower") promise to pay to Security Investment Corporation ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Two Hundred Fifty Thousand Two Hundred Forty-five & 69/100 Dollars ($1,250,245.69), together with interest on the unpaid principal balance from June 4, 2018, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 3.800% per annum, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** I will pay this loan in 59 regular payments of $6,834.33 each and one irregular last payment estimated at $1,134,262.46. My first payment is due July 15, 2018, and all subsequent payments are due on the same day of each month after that. My final payment will be due on June 15, 2023, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs; then to any late charges; then to any accrued unpaid interest; and then to principal. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT.** I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in my making fewer payments. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Security Investment Corporation, 2970 South Main St., Suite 250, Salt Lake City, UT 84115.

**LATE CHARGE.** If my payment is more than 10 days late, I will be charged 5.000% of the regularly scheduled payment or $30.00, whichever is less.

**INTEREST AFTER DEFAULT.** Upon maturity, whether scheduled or accelerated by Lender because of my default, the interest rate on this Note shall be increased by 2.000 percentage points. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** I will be in default under this Note if any of the following happen:

**Payment Default.** I fail to make any payment when due under this Note.

**Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Collateral Damage or Loss.** Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then I will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if I do not pay. I will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including without limitation all reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Utah without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Utah.



# PROMISSORY NOTE
(Continued)

Page 2

Loan No: 400337-1

**HOICE OF VENUE.** If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of Salt Lake County, State of Utah.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** I acknowledge this Note is secured by the following collateral described in the security instrument listed herein: a Deed of Trust dated June 7, 2018, to a trustee in favor of Lender on real property located in Salt Lake County, State of Utah.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** I may notify Lender if Lender reports any inaccurate information about my account(s) to a consumer reporting agency. My written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: _____.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

PRIOR TO SIGNING THIS NOTE, I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. I AGREE TO THE TERMS OF THE NOTE.

I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

**BORROWER:**

x _H. Jolene Andrews_
H. Jolene Andrews

---

**Originator Names and Nationwide Mortgage Licensing System and Registry IDs:**

Organization:  Security Investment Corporation

NMLSR ID:  NA

Individual: _____

NMLSR ID: _____

LaserPro, Ver. 17.1.0.023  Copr. Ba-land D&H Corporation 1512, 2018   All Rights Reserved   UT   Z:\CFI\PL\D20.FC   PR-700

# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| ,250,245.69 | 06-07-2018 | 06-15-2023 | 400337-1 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

Borrower: H. Jolene Andrews
4271 South 1300 East
Salt Lake City, UT 84124

Lender: Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

LOAN TYPE. This is a Fixed Rate (3.800%) Disclosable Loan to an Individual for $1,250,245.69 due on June 15, 2023.

PRIMARY PURPOSE OF LOAN. The primary purpose of this loan is for:

☒ Personal, Family, or Household Purposes or Personal Investment.

☐ Business (Including Real Estate Investment).

SPECIFIC PURPOSE. The specific purpose of this loan is: Purchase Property.

DISBURSEMENT INSTRUCTIONS. I understand that no loan proceeds will be disbursed until any notice of the right to cancel time period specified has expired and all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $1,250,245.69 as follows:

| | |
|---|---|
| Amount paid to others on my behalf: | $1,250,245.69 |
| $1,250,245.69 to Chief Title | |
| Note Principal: | $1,250,245.69 |

CHARGES PAID IN CASH. I have paid or will pay in cash as agreed the following charges:

| | |
|---|---|
| Prepaid Finance Charges Paid in Cash: | $187.50 |
| $50.00 Attorney | |
| $30.00 Incoming Wire | |
| $5.00 Notary | |
| $45.00 Recording | |
| $37.50 Settlement / Closing | |
| $20.00 Title Review | |
| Total Charges Paid in Cash: | $187.50 |

TAX CONSEQUENCES. I understand that Lender makes no representation or warranty whatsoever concerning the tax consequences of this loan, including the deductibility of interest, and that I should consult with my own tax advisor for guidance on this subject. I also agree that Lender shall not be liable in any manner whatsoever should the interest paid on the loan not be deductible.

FINAL AGREEMENT. I understand that the loan documents signed in connection with this loan are the final expression of the agreement between Lender and me and may not be contradicted by evidence of any alleged oral agreement.

FINANCIAL CONDITION. BY SIGNING THIS AUTHORIZATION, I REPRESENT AND WARRANT TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN MY FINANCIAL CONDITION AS DISCLOSED IN MY MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED JUNE 7, 2018.

BORROWER:

X ______________________________
H. Jolene Andrews

DISBURSEMENT REQUEST AND AUTHORIZATION
(Continued)

Loan No: 400337-1

Page 2

## CREDIT INSURANCE DISCLOSURE

VOLUNTARY CREDIT INSURANCE.   CREDIT LIFE INSURANCE, CREDIT DISABILITY INSURANCE AND INVOLUNTARY UNEMPLOYMENT INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT.

By signing below, I acknowledge that I am not obtaining credit insurance for this loan for one of the following reasons:
    (A)  I am not eligible for credit insurance;
    (B)  Credit insurance is not available from Lender; or
    (C)  If I am eligible and credit insurance is available from Lender, I do not want it.

Prior to signing this Credit Insurance Notice on June 7, 2018, I read and understood all of the provisions of this Disclosure.

BORROWER:

X _____Jolene Andrews_____
H, Jolene Andrews

# NOTICE OF FINAL AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| ,250,245.69 | 06-07-2018 | 06-15-2023 | 400337-1 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "* * *" has been omitted due to text length limitations.

Borrower: H. Jolene Andrews
4271 South 1300 East
Salt Lake City, UT 84124

Lender: Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT: (A) THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, (B) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND (C) THE WRITTEN LOAN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.

As used in this Notice, the following terms have the following meanings:

**Loan.** The term "Loan" means the following described loan: a Fixed Rate (3.800%) Disclosable Loan to an Individual for $1,250,246.69 due on June 15, 2023.

**Loan Agreement.** The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

## LOAN DOCUMENTS

- Amortization Schedule
- Loan Option Presentation Acknowledgment
- UT Deed of Trust for Real Property located at 4271 South 1300 East, Salt Lake City, UT 84124
- Model Privacy Notice: H. Jolene Andrews
- Closing Disclosure
- Promissory Note
- Disbursement Request and Authorization
- Notice of Final Agreement

**Parties.** The term "Parties" means Security Investment Corporation and any and all entities or individuals who are obligated to repay the loan or have pledged property as security for the Loan, including without limitation the following:

Borrower: H. Jolene Andrews
Grantor(s): H. Jolene Andrews

Each Party who signs below, other than Security Investment Corporation, acknowledges, represents, and warrants to Security Investment Corporation that it has received, read and understood this Notice of Final Agreement. This Notice is dated June 7, 2018.

BORROWER:

X ______________________
H. Jolene Andrews

LENDER:

SECURITY INVESTMENT CORPORATION

X ______________________
Authorized Signer

LaserPro, Ver. 17.1.0.023 Copr. D+H USA Corporation 1997, 2018 All Rights Reserved. - UT Z:\CFI\LPL\I21.FC TR-790

## NOTICE OF FINAL AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| 250,245.69 | 06-07-2018 | 06-15-2023 | 400337-1 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Borrower:  H. Jolene Andrews
4271 South 1300 East
Salt Lake City, UT 84124

Lender:  Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

**BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT: (A) THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, (B) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND (C) THE WRITTEN LOAN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.**

As used in this Notice, the following terms have the following meanings:

Loan. The term "Loan" means the following described loan: a Fixed Rate (3.800%) Disclosable Loan to an Individual for $1,250,245.69 due on June 15, 2023.

Loan Agreement. The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

### LOAN DOCUMENTS

- Amortization Schedule
- Loan Option Presentation Acknowledgment
  UT Deed of Trust for Real Property located at 4271 South
  1300 East, Salt Lake City, UT 84124
- Model Privacy Notice: H. Jolene Andrews

- Closing Disclosure
- Promissory Note
- Disbursement Request and Authorization
- Notice of Final Agreement

Parties. The term "Parties" means Security Investment Corporation and any and all entities or individuals who are obligated to repay the loan or have pledged property as security for the Loan, including without limitation the following:

Borrower:  H. Jolene Andrews
Grantor(s):  H. Jolene Andrews

Each Party who signs below, other than Security Investment Corporation, acknowledges, represents, and warrants to Security Investment Corporation that it has received, read and understood this Notice of Final Agreement. This Notice is dated June 7, 2018.

BORROWER:

X _____
H. Jolene Andrews

LENDER:

SECURITY INVESTMENT CORPORATION

X _____
Authorized Signer

LaserPro, Ver. 17.1.0.023  Copr. D+H USA Corporation 1997, 2018.   All Rights Reserved.  - UT  Z:\CFI\LPL\D1.FC  TR-750

# LOAN REQUEST SUMMARY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| 1,250,245.69 | 06-07-2018 | 06-15-2023 | 400337-1 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

Borrower: H. Jolene Andrews
4271 South 1300 East
Salt Lake City, UT 84124

Lender: Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

BALLOON LOAN
(Fixed Rate)

| | Financed | In Cash |
|---|---|---|
| AMOUNT REQUESTED: | $1,250,245.69 | |
| PREPAID FINANCE CHARGES: | | |
| Attorney | | 50.00 |
| Incoming Wire | | 30.00 |
| Notary | | 5.00 |
| Recording | | 45.00 |
| Settlement / Closing | | 37.50 |
| Title Review | | 20.00 |
| SECURITY INTEREST CHARGES: | 0.00 | |
| NOTE AMOUNT: | $1,250,245.69 | $187.50 |

PAYMENT CALCULATION:

| | |
|---|---|
| Interest Method: | 365/365 |
| Disbursement Date: | 06-04-2018 |
| First Payment Date: | 07-15-2018 |
| Due Date: | 06-15-2023 |
| Payment Period: | Monthly |
| Periods to Amortize: | 360 |
| Total Number of Pmts: | 60 |
| Interest Rate: | 3.800% |
| Credit Insurance: | None |
| Amount of Reg Pmt: | $5,834.33 |
| Final Payment: | $1,134,262.46 |

Payment Schedule. Borrower's payment schedule consists of the following: 59 monthly consecutive payments of $5,834.33 each, beginning July 15, 2018, with interest calculated on the unpaid principal balances at an interest rate of 3.800% per annum; and one payment of $1,134,262.46 on June 15, 2023, with interest calculated on the unpaid principal balances at an interest rate of 3.800% per annum. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under the Note.

| APR | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| 3.805% | $228,429.74 | $1,250,058.19 | $1,478,487.93 |

COLLATERAL: Real Estate Collateral.

TRANSACTION NUMBER: 790

NOTICE: This Loan Request Summary is for informational purposes only and does not obligate Lender in any way to make this loan or any other loan to Borrower. The fees and charges listed above are estimates only; and, if a loan is made, different or additional fees and charges may be imposed. This is not a Truth in Lending Disclosure Statement. Borrower will receive such a statement containing all required disclosures prior to consummation of the loan.

# AMORTIZATION SCHEDULE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| 1,250,245.69 | 06-07-2018 | 06-15-2023 | 400337-1 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** H. Jolene Andrews
4271 South 1300 East
Salt Lake City, UT 84124

**Lender:** Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

Disbursement Date: June 4, 2018
Interest Rate: 3.800

Repayment Schedule: Balloon
Calculation Method: 365/365  U.S. Rule

| Payment Number | Payment Date | Payment Amount | Interest Paid | Principal Paid | Remaining Balance |
|---|---|---|---|---|---|
| 1 | 07-15-2018 | 5,834.33 | 5,336.67 | 497.66 | 1,249,748.03 |
| 2 | 08-15-2018 | 5,834.33 | 4,033.43 | 1,800.90 | 1,247,947.13 |
| 3 | 09-15-2018 | 5,834.33 | 4,027.62 | 1,806.71 | 1,246,140.42 |
| 4 | 10-15-2018 | 5,834.33 | 3,892.05 | 1,942.28 | 1,244,198.14 |
| 5 | 11-15-2018 | 5,834.33 | 4,015.52 | 1,818.81 | 1,242,379.33 |
| 6 | 12-15-2018 | 5,834.33 | 3,880.31 | 1,954.02 | 1,240,425.31 |
| **2018 TOTALS:** | | 35,005.98 | 25,185.60 | 9,820.38 | |
| 7 | 01-15-2019 | 5,834.33 | 4,003.35 | 1,830.98 | 1,238,594.33 |
| 8 | 02-15-2019 | 5,834.33 | 3,997.44 | 1,836.89 | 1,236,757.44 |
| 9 | 03-15-2019 | 5,834.33 | 3,605.23 | 2,229.10 | 1,234,628.34 |
| 10 | 04-15-2019 | 5,834.33 | 3,884.31 | 1,950.02 | 1,232,678.32 |
| 11 | 05-15-2019 | 5,834.33 | 3,850.01 | 1,984.32 | 1,230,694.00 |
| 12 | 06-15-2019 | 5,834.33 | 3,971.94 | 1,862.39 | 1,228,831.61 |
| 13 | 07-15-2019 | 5,834.33 | 3,837.99 | 1,996.34 | 1,226,835.27 |
| 14 | 08-15-2019 | 5,834.33 | 3,959.48 | 1,874.85 | 1,224,960.42 |
| 15 | 09-15-2019 | 5,834.33 | 3,953.43 | 1,880.90 | 1,223,079.52 |
| 16 | 10-15-2019 | 5,834.33 | 3,820.03 | 2,014.30 | 1,221,065.22 |
| 17 | 11-15-2019 | 5,834.33 | 3,940.86 | 1,893.47 | 1,219,171.75 |
| 18 | 12-15-2019 | 5,834.33 | 3,807.82 | 2,026.51 | 1,217,145.24 |
| **2019 TOTALS:** | | 70,011.96 | 46,731.89 | 23,280.07 | |
| 19 | 01-15-2020 | 5,834.33 | 3,928.21 | 1,906.12 | 1,215,239.12 |
| 20 | 02-15-2020 | 5,834.33 | 3,922.06 | 1,912.27 | 1,213,326.85 |
| 21 | 03-15-2020 | 5,834.33 | 3,663.25 | 2,171.08 | 1,211,155.77 |
| 22 | 04-15-2020 | 5,834.33 | 3,908.88 | 1,925.45 | 1,209,230.32 |
| 23 | 05-15-2020 | 5,834.33 | 3,776.77 | 2,057.56 | 1,207,172.76 |
| 24 | 06-15-2020 | 5,834.33 | 3,896.03 | 1,938.30 | 1,205,234.46 |
| 25 | 07-15-2020 | 5,834.33 | 3,764.29 | 2,070.04 | 1,203,164.42 |
| 26 | 08-15-2020 | 5,834.33 | 3,883.09 | 1,951.24 | 1,201,213.18 |
| 27 | 09-15-2020 | 5,834.33 | 3,876.79 | 1,957.54 | 1,199,255.64 |
| 28 | 10-15-2020 | 5,834.33 | 3,745.62 | 2,088.71 | 1,197,166.93 |
| 29 | 11-15-2020 | 5,834.33 | 3,863.73 | 1,970.60 | 1,195,196.33 |
| 30 | 12-15-2020 | 5,834.33 | 3,732.94 | 2,101.39 | 1,193,094.94 |
| **2020 TOTALS:** | | 70,011.96 | 45,961.66 | 24,050.30 | |
| 31 | 01-15-2021 | 5,834.33 | 3,850.59 | 1,983.74 | 1,191,111.20 |
| 32 | 02-15-2021 | 5,834.33 | 3,844.19 | 1,990.14 | 1,189,121.06 |
| 33 | 03-15-2021 | 5,834.33 | 3,466.37 | 2,367.96 | 1,186,753.10 |
| 34 | 04-15-2021 | 5,834.33 | 3,830.12 | 2,004.21 | 1,184,748.89 |
| 35 | 05-15-2021 | 5,834.33 | 3,700.31 | 2,134.02 | 1,182,614.87 |
| 36 | 06-15-2021 | 5,834.33 | 3,816.77 | 2,017.56 | 1,180,597.31 |
| 37 | 07-15-2021 | 5,834.33 | 3,687.34 | 2,146.99 | 1,178,450.32 |
| 38 | 08-15-2021 | 5,834.33 | 3,803.33 | 2,031.00 | 1,176,419.32 |
| 39 | 09-15-2021 | 5,834.33 | 3,796.77 | 2,037.56 | 1,174,381.76 |
| 40 | 10-15-2021 | 5,834.33 | 3,667.93 | 2,166.40 | 1,172,215.36 |
| 41 | 11-15-2021 | 5,834.33 | 3,783.20 | 2,051.13 | 1,170,164.23 |
| 42 | 12-15-2021 | 5,834.33 | 3,654.76 | 2,179.57 | 1,167,984.66 |
| **2021 TOTALS:** | | 70,011.96 | 44,901.68 | 25,110.28 | |
| 43 | 01-15-2022 | 5,834.33 | 3,769.55 | 2,064.78 | 1,165,919.88 |
| 44 | 02-15-2022 | 5,834.33 | 3,762.89 | 2,071.44 | 1,163,848.44 |
| 45 | 03-15-2022 | 5,834.33 | 3,392.70 | 2,441.63 | 1,161,406.81 |
| 46 | 04-15-2022 | 5,834.33 | 3,748.32 | 2,086.01 | 1,159,320.80 |
| 47 | 05-15-2022 | 5,834.33 | 3,620.89 | 2,213.44 | 1,157,107.36 |
| 48 | 06-15-2022 | 5,834.33 | 3,734.45 | 2,099.88 | 1,155,007.48 |
| 49 | 07-15-2022 | 5,834.33 | 3,607.42 | 2,226.91 | 1,152,780.57 |
| 50 | 08-15-2022 | 5,834.33 | 3,720.48 | 2,113.85 | 1,150,666.72 |
| 51 | 09-15-2022 | 5,834.33 | 3,713.66 | 2,120.67 | 1,148,546.05 |
| 52 | 10-15-2022 | 5,834.33 | 3,587.24 | 2,247.09 | 1,146,298.96 |

# AMORTIZATION SCHEDULE
## (Continued)

Page 2

Loan No: 400337-1

| | | | | | |
|---|---|---|---|---|---|
| 53 | 11-15-2022 | 5,834.33 | 3,699.56 | 2,134.77 | 1,144,164.19 |
| 54 | 12-15-2022 | 5,834.33 | 3,573.55 | 2,260.78 | 1,141,903.41 |
| **2022 TOTALS:** | | 70,011.96 | 43,930.71 | 26,081.25 | |
| 55 | 01-15-2023 | 5,834.33 | 3,685.38 | 2,148.95 | 1,139,754.46 |
| 56 | 02-15-2023 | 5,834.33 | 3,678.44 | 2,155.89 | 1,137,598.57 |
| 57 | 03-15-2023 | 5,834.33 | 3,316.18 | 2,518.15 | 1,135,080.42 |
| 58 | 04-15-2023 | 5,834.33 | 3,663.36 | 2,170.97 | 1,132,909.45 |
| 59 | 05-15-2023 | 5,834.33 | 3,538.40 | 2,295.93 | 1,130,613.52 |
| 60 | 06-15-2023 | 1,134,262.46 | 3,648.94 | 1,130,613.52 | 0.00 |
| **2023 TOTALS:** | | 1,163,434.11 | 21,530.70 | 1,141,903.41 | |
| **TOTALS:** | | 1,478,487.93 | 228,242.24 | 1,250,245.69 | |

NOTICE: This is an estimated loan amortization schedule.  Actual amounts may vary if payments are made on different dates or in different amounts.

Laser/ed, Var. 17.1.0.023  Copr. D·H USA Corporation 1997, 2018.  All Rights Reserved.   UT 2\CFI\LPL\AMOR5.FC  TR-750

# Closing Disclosure

*This form is a statement of final loan terms and closing costs. Compare this document with your Loan Estimate.*

| Closing Information | | Transaction Information | | Loan Information | |
|---|---|---|---|---|---|
| Date Issued | 6/4/2018 | Borrower | Jolene Andrews | Loan Term | 5 years |
| Closing Date | 6/7/2018 | | 4271 South 1300 East | Purpose | Purchase |
| Disbursement Date | 6/4/2018 | | Salt Lake City, UT 84124 | Product | Year 5 Balloon Payment. |
| Settlement Agent | | Seller | Jeremy Andrews | | Fixed Rate |
| File # | | | 8511 South 1475 East | Loan Type | ☒ Conventional ☐ FHA |
| Property | 4271 South 1300 East | | Sandy, UT 84093 | | ☐ VA ☐ |
| | Salt Lake City, UT 84124 | Lender | Security Investment Corporation | Loan ID # | |
| Sale Price | $1,250,245.69 | | | MIC # | |

## Loan Terms

| Loan Terms | | Can this amount increase after closing? |
|---|---|---|
| Loan Amount | $1,250,245.69 | NO |
| Interest Rate | 3.80% | NO |
| Monthly Principal & Interest<br>*See Projected Payments below for your Estimated Total Monthly Payment* | $5,834.33 | NO |
| | | Does the loan have these features? |
| Prepayment Penalty | | NO |
| Balloon Payment | | YES • You will have to pay **$1,134,262** at the end of year 5 |

## Projected Payments

| Payment Calculation | | Years 1 – 5 | | Final Payment |
|---|---|---|---|---|
| Principal & Interest | | $5,834.33 | | $1,134,262.46 |
| Mortgage Insurance | + | 0 | + | 0 |
| Estimated Escrow<br>*Amount can increase over time* | + | 0 | + | 0 |
| **Estimated Total Monthly Payment** | | **$5,834.33** | | **$1,134,262.46** |

| Estimated Taxes, Insurance & Assessments<br>*Amount can increase over time*<br>*See page 4 for details* | $0.00<br>a month | This estimate includes<br>☐ Property Taxes<br>☐ Homeowner's Insurance<br>☐ Other:<br>*See Escrow Account on page 4 for details. You must pay for other property costs separately.* | In escrow? |
|---|---|---|---|

## Costs at Closing

| Closing Costs | $187.50 | Includes $187.50 in Loan Costs + $0.00 in Other Costs – $0.00 in Lender Credits. *See page 2 for details.* |
|---|---|---|
| Cash to Close | $187.50 | Includes Closing Costs. *See Calculating Cash to Close on page 3 for details.* |

## Closing Cost Details

| | Borrower-Paid | | Seller-Paid | | Paid by |
|---|---|---|---|---|---|
| **Loan Costs** | At Closing | Before Closing | At Closing | Before Closing | Others |
| A. Origination Charges | | | | | |
| % of Loan Amount (Points) | | | | | |
| | | | | | |
| | | | | | |
| | $187.50 | | | | |
| **B. Services Borrower Did Not Shop For** | $50.00 | | $50.00 | | |
| Attorney | $30.00 | | | | |
| Incoming Wire | $5.00 | | $5.00 | | |
| Notary | $45.00 | | $45.00 | | |
| Recording | $37.50 | | $37.50 | | |
| Settlement / Closing | $20.00 | | $20.00 | | |
| Title Review | | | | | |
| | | | | | |
| **C. Services Borrower Did Shop For** | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| **D. TOTAL LOAN COSTS (Borrower-Paid)** | $187.50 | | | | |
| Loan Costs Subtotals (A + B + C) | $187.50 | | | | |

| **Other Costs** | | | | | |
|---|---|---|---|---|---|
| E. Taxes and Other Government Fees | | | | | |
| Recording Fees | Deed: | Mortgage: | | | |
| | | | | | |
| F. Prepaids | | | | | |
| Homeowner's Insurance Premium (   mo.) | | | | | |
| Mortgage Insurance Premium (   mo.) | | $0 | | | |
| Prepaid Interest (     per day from    to   ) | | | | | |
| Property Taxes (   mo.) | | | | | |
| G. Initial Escrow Payment at Closing | | | | | |
| Homeowner's Insurance | per month for   mo. | | | | |
| Mortgage Insurance | per month for   mo. | | | | |
| Property Taxes | per month for   mo. | | | | |
| | | | | | |
| | | | | | |
| Aggregate Adjustment | | | | | |
| H. Other | | | | | |
| | | | | | |
| **I. TOTAL OTHER COSTS (Borrower-Paid)** | | | | | |
| Other Costs Subtotals (E + F + G + H) | $187.50 | | | | |
| **J. TOTAL CLOSING COSTS (Borrower-Paid)** | $187.50 | | $157.50 | | |
| Closing Costs Subtotals (D + I) | | | | | |
| Lender Credits | | | | | |

CLOSING DISCLOSURE

## Calculating Cash to Close
Use this table to see what has changed from your Loan Estimate.

| | Loan Estimate | Final | Did this change? |
|---|---|---|---|
| Total Closing Costs (J) | $0 | $187.50 | YES • See Total Loan Costs (D) and Total Other Costs (I) |
| Closing Costs Paid Before Closing | $0 | $0 | NO |
| Closing Costs Financed (Paid from your Loan Amount) | $0 | $0 | NO |
| Down Payment/Funds from Borrower | $0 | $0 | NO |
| Deposit | $0 | $0 | NO |
| Funds for Borrower | $0 | $0 | NO |
| Seller Credits | $0 | $0 | NO |
| Adjustments and Other Credits | $0 | $0 | NO |
| **Cash to Close** | $0 | $187.50 | |

## Summaries of Transactions
Use this table to see a summary of your transaction.

### BORROWER'S TRANSACTION

| K. Due from Borrower at Closing | $1,250,433.19 |
|---|---|
| 01 Sale Price of Property | $1,250,245.69 |
| 02 Sale Price of Any Personal Property Included in Sale | |
| 03 Closing Costs Paid at Closing (J) | $187.50 |
| **Adjustments** | |
| 05 | |
| 06 | |
| 07 | |
| **Adjustments for Items Paid by Seller in Advance** | |
| 08 City/Town Taxes | to |
| 09 County Taxes | to |
| 10 Assessments | to |
| 11 | |
| 12 | |
| 13 | |
| 14 | |

| L. Paid Already by or on Behalf of Borrower at Closing | $1,250,245.69 |
|---|---|
| 01 Deposit | |
| 02 Loan Amount | $1,250,245.69 |
| 03 Existing Loan(s) Assumed or Taken Subject to | |
| 04 | |
| 05 Seller Credit | |
| **Other Credits** | |
| 06 | |
| 07 | |
| **Adjustments** | |
| 08 | |
| 09 | |
| 10 | |
| **Adjustments for Items Unpaid by Seller** | |
| City/Town Taxes | to |
| County Taxes | to |
| Assessments | to |

### SELLER'S TRANSACTION

| M. Due to Seller at Closing | $1,250,245.69 |
|---|---|
| 01 Sale Price of Property | $1,250,245.69 |
| 02 Sale Price of Any Personal Property Included in Sale | |
| 03 | |
| 04 | |
| 05 | |
| 06 | |
| 07 | |
| 08 | |
| **Adjustments for Items Paid by Seller in Advance** | |
| 09 City/Town Taxes | to |
| 10 County Taxes | to |
| 11 Assessments | to |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |

| N. Due from Seller at Closing | $1,250,403.19 |
|---|---|
| 01 Excess Deposit | |
| 02 Closing Costs Paid at Closing (J) | $157.50 |
| 03 Existing Loan(s) Assumed or Taken Subject to | |
| 04 Payoff of First Mortgage Loan | $1,250,245.69 |
| 05 Payoff of Second Mortgage Loan | |
| 06 | |
| 07 | |
| 08 Seller Credit | |
| 09 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| **Adjustments for Items Unpaid by Seller** | |
| 14 City/Town Taxes | to |
| 15 County Taxes | to |
| 16 Assessments | to |
| 17 | |
| 18 | |

### CALCULATION

| | |
|---|---|
| Total Due from Borrower at Closing (K) | $1,250,433.19 |
| Total Paid Already by or on Behalf of Borrower at Closing (L) | -$1,250,245.69 |
| Cash to Close ☒ From ☐ To Borrower | $187.50 |

### CALCULATION

| | |
|---|---|
| Total Due to Seller at Closing (M) | $1,250,245.69 |
| Total Due from Seller at Closing (N) | -$1,250,403.19 |
| Cash to Close ☒ From ☐ To Seller | $157.50 |

## Additional Information About This Loan

### Loan Disclosures

**Assumption**

If you sell or transfer this property to another person, your lender
☐ will allow, under certain conditions, this person to assume this loan on the original terms.
☒ will not allow assumption of this loan on the original terms.

**Demand Feature**

Your loan
☐ has a demand feature, which permits your lender to require early repayment of the loan. You should review your note for details.
☒ does not have a demand feature.

**Late Payment**

If your payment is more than 10 days late, your lender will charge a late fee of *5% of the regularly scheduled payment or $30.00, whichever is less.*

**Negative Amortization (Increase in Loan Amount)**

Under your loan terms, you
☐ are scheduled to make monthly payments that do not pay all of the interest due that month. As a result, your loan amount will increase (negatively amortize), and your loan amount will likely become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.
☐ may have monthly payments that do not pay all of the interest due that month. If you do, your loan amount will increase (negatively amortize), and, as a result, your loan amount may become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.
☒ do not have a negative amortization feature.

**Partial Payments**

Your lender
☐ may accept payments that are less than the full amount due (partial payments) and apply them to your loan.
☐ may hold them in a separate account until you pay the rest of the payment, and then apply the full payment to your loan.
☒ does not accept any partial payments.
If this loan is sold, your new lender may have a different policy.

**Security Interest**

You are granting a security interest in *4271 South 1300 East, Salt Lake City, UT 84124*
You may lose this property if you do not make your payments or satisfy other obligations for this loan.

### Escrow Account

*For now, your loan*
☐ will have an escrow account (also called an "impound" or "trust" account) to pay the property costs listed below. Without an escrow account, you would pay them directly, possibly in one or two large payments a year. Your lender may be liable for penalties and interest for failing to make a payment.

| Escrow | | |
|---|---|---|
| Escrowed Property Costs over Year 1 | | Estimated total amount over year 1 for your escrowed property costs: |
| Non-Escrowed Property Costs over Year 1 | | Estimated total amount over year 1 for your non-escrowed property costs: |
| | | You may have other property costs. |
| Initial Escrow Payment | | A cushion for the escrow account you pay at closing. See Section G on page 2. |
| Monthly Escrow Payment | | The amount included in your total monthly payment. |

☒ will not have an escrow account because ☐ you declined it ☒ your lender does not offer one. You must directly pay your property costs, such as taxes and homeowner's insurance. Contact your lender to ask if your loan can have an escrow account.

| No Escrow | | |
|---|---|---|
| Estimated Property Costs over Year 1 | $0.00 | Estimated total amount over year 1. You must pay these costs directly, possibly in one or two large payments a year. |
| Escrow Waiver Fee | | |

*In the future,*

Your property costs may change and, as a result, your escrow payment may change. You may be able to cancel your escrow account, but if you do, you must pay your property costs directly. If you fail to pay your property taxes, your state or local government may (1) impose fines and penalties or (2) place a tax lien on this property. If you fail to pay any of your property costs, your lender may (1) add the amounts to your loan balance, (2) add an escrow account to your loan, or (3) require you to pay for property insurance that the lender buys on your behalf, which likely would cost more and provide fewer benefits than what you could buy on your own.

## Loan Calculations

| | |
|---|---|
| Total of Payments. Total you will have paid after you make all payments of principal, interest, mortgage insurance, and loan costs, as scheduled. | $1,478,675.43 |
| Finance Charge. The dollar amount the loan will cost you. | $228,429.74 |
| Amount Financed. The loan amount available after paying your upfront finance charge. | $1,250,058.19 |
| Annual Percentage Rate (APR). Your costs over the loan term expressed as a rate. This is not your interest rate. | 3.805% |
| Total Interest Percentage (TIP). The total amount of interest that you will pay over the loan term as a percentage of your loan amount. | 18.256% |

**Questions?** If you have questions about the loan terms or costs on this form, use the contact information below. To get more information or make a complaint, contact the Consumer Financial Protection Bureau at **www.consumerfinance.gov/mortgage-closing**

## Other Disclosures

**Appraisal**
If the property was appraised for your loan, your lender is required to give you a copy at no additional cost at least 3 days before closing. If you have not yet received it, please contact your lender at the information listed below.

**Contract Details**
See your note and security instrument for information about
- what happens if you fail to make your payments,
- what is a default on the loan,
- situations in which your lender can require early repayment of the loan, and
- the rules for making payments before they are due.

**Liability after Foreclosure**
If your lender forecloses on this property and the foreclosure does not cover the amount of unpaid balance on this loan,
☒ state law may protect you from liability for the unpaid balance. If you refinance or take on any additional debt on this property, you may lose this protection and have to pay any debt remaining even after foreclosure. You may want to consult a lawyer for more information.
☐ state law does not protect you from liability for the unpaid balance.

**Refinance**
Refinancing this loan will depend on your future financial situation, the property value, and market conditions. You may not be able to refinance this loan.

**Tax Deductions**
If you borrow more than this property is worth, the interest on the loan amount above this property's fair market value is not deductible from your federal income taxes. You should consult a tax advisor for more information.

## Contact Information

| | Lender | Mortgage Broker | Real Estate Broker (B) | Real Estate Broker (S) | Settlement Agent |
|---|---|---|---|---|---|
| Name | Security Investment Corporation | | | | |
| Address | See Addendum | | | | |
| NMLS ID | NA | | | | |
| UT License ID | | | | | |
| Contact | | | | | |
| Contact NMLS ID | | | | | |
| Contact UT License ID | | | | | |
| Email | | | | | |
| Phone | | | | | |

## Confirm Receipt

By signing, you are only confirming that you have received this form. You do not have to accept this loan because you have signed or received this form.

| | | | |
|---|---|---|---|
| _Jolene Andrews_ | Date | Co-Applicant Signature | Date |
| Jolene Andrews | | | |

## Closing Disclosure Addendum

### Contact Information

| | |
|---|---|
| Lender | |
| Address | 2970 South Main St., Suite 250 |
| | Salt Lake City, UT 84115 |

# LOAN OPTION PRESENTATION ACKNOWLEDGMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| ,250,245.69 | 06-07-2018 | 06-15-2023 | 400337-1 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** H. Jolene Andrews
4271 South 1300 East
Salt Lake City, UT  84124

**Lender:** Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT  84115

Origination Co. NMLSR ID: NA

**Application Date:** 06-04-2018

I have been presented with loan options for each of the types of loans that I have expressed interest in, for which
my loan originator has determined that I would likely qualify.  Except as set forth below, I acknowledge I was
presented with these loan options:

1. A loan option with the lowest interest rate;
2. A loan option with the lowest interest rate without negative amortization, a prepayment penalty,
   interest-only payments, a balloon payment in the first 7 years of the life of the loan, a demand feature,
   shared equity, or shared appreciation; or in the case of a reverse mortgage, a loan without a prepayment
   penalty, or shared equity or shared appreciation; and
3. The loan with the lowest total dollar amount of discount points, origination points or origination fees (or, if
   two or more loans have the same total dollar amount of discount points, origination points or origination
   fees, the loan with the lowest interest rate that has the lowest total dollar amount of discount points,
   origination points or origination fees).

I also acknowledge that I may have been presented with fewer than three loan options if the fewer than three loan
options presented:

1. Included all of the above listed loan features; or
2. My loan originator determined in good faith that I would not likely qualify for all three loan options and
   presented me with the loan options for which I likely qualify.

By signing below, I acknowledge that I have been provided the above information and understand the other
available options for this loan.

**BORROWER:**

X _____  6/7/18
H. Jolene J Andrews        Date

LaserPro, Ver. 17.1.0.023  Copr. D+H USA Corporation 1997, 2018.  All Rights Reserved.   UT  Z:\CFI\LPL\I061.FC  TR-790

## Security Investment Corporation
### 2970 South Main St.  Suite 250
### Salt Lake City, UT  84115

---

October 9, 2019

H. Jolene Andrews
4271 S. 1300 E.
Salt Lake City, UT 84124

Dear H. Jolene,

    As per your request, Security Investment Corporation (Lender) has agreed to defer your monthly payment amount of $5,834.33 for 8 months.

As consideration for this deferral, Borrower agrees to pay an Interest payment of $12,000.00 by October 31, 2019.

Except as expressly changed in the Change in Terms Agreement dated October 9, 2019, the terms of the obligation, including all agreements evidencing or securing it, remain unchanged and in full force and effect.

If you have any questions, please contact our office.

Sincerely,

Security Investment Corporation
R. Davis

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| 1,250,245.69 | 10-09-2019 | 06-15-2023 | 400337-1 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "* * * *" has been omitted due to text length limitations.

| | | |
|---|---|---|
| ower: | H. Jolene Andrews<br>4271 South 1300 East<br>Salt Lake City, UT 84124 | Lender:     Security Investment Corporation<br>2970 South Main St.<br>Suite 250<br>Salt Lake City, UT 84115 |

**Principal Amount: $1,250,245.69**      **Interest Rate: 3.800%**      **Date of Agreement: 10/9/19**

FOR VALUABLE CONSIDERATION, Lender and I agree to the following change in my obligation:

**DESCRIPTION OF EXISTING INDEBTEDNESS.** A promissory Note dated June 7, 2018, and all other documents from H. Jolene Andrews to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the same.

**DESCRIPTION OF COLLATERAL.** Real property located at 4271 South 1300 East, Salt Lake City, Utah 84124 listed on a Deed of Trust dated June 7, 2018 from H. Jolene Andrews to Lender.

**DESCRIPTION OF CHANGE IN TERMS.** Payments are deferred for 8 months from July 15, 2018 to April 15, 2019. All other terms remain unchanged. .

**PROMISE TO PAY.** I ("Borrower") promise to pay to Security Investment Corporation ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Two Hundred Fifty Thousand Two Hundred Forty-five & 69/100 Dollars ($1,250,245.69), together with interest on the unpaid principal balance from June 7, 2018, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 3.800% per annum, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** I will pay this loan in 59 regular payments of $5,834.33 each and one irregular last payment estimated at $1,133,791.89. My first payment is due July 15, 2018, and all subsequent payments are due on the same day of each month after that. My final payment will be due on June 15, 2023, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs; then to any late charges; then to any accrued unpaid interest; and then to principal. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

**REPAYMENT.** I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in my making fewer payments. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Security Investment Corporation, 2970 South Main St., Suite 250, Salt Lake City, UT 84115.

**LATE CHARGE.** If my payment is more than 10 days late, I will be charged 5.000% of the regularly scheduled payment or $30.00, whichever is less.

**INTEREST AFTER DEFAULT.** Upon maturity, whether scheduled or accelerated by Lender because of my default, the interest rate on this loan shall be increased by 2.000 percentage points. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** I will be in default under this Agreement if any of the following happen:

**Payment Default.** I fail to make any payment when due under the Indebtedness.

**Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Agreement or in any agreement related to this Agreement.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the Property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Property Damage or Loss.** The Property is lost, stolen, substantially damaged, sold, or borrowed against.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

LENDER'S RIGHTS. Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then I will pay that amount.

LOAN MODIFICATION AGREEMENT
(Continued)

Loan No: 400337-1                                                                                     Page 2

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Agreement if I do not pay. I will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including without limitation all reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

GOVERNING LAW. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Utah without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Utah.

CHOICE OF VENUE. If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of Salt Lake County, State of Utah.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

COLLATERAL. I acknowledge this Agreement is secured by the following collateral described in the security instrument listed herein: a Deed of Trust dated June 7, 2018, to a trustee in favor of Lender on real property located in Salt Lake County, State of Utah.

CONTINUING VALIDITY. Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

SUCCESSORS AND ASSIGNS. Subject to any limitations stated in this Agreement on transfer of my interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than me, Lender, without notice to me, may deal with my successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing me from the obligations of this Agreement or liability under the Indebtedness.

NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES. Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: _____.

MISCELLANEOUS PROVISIONS. If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. I and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

FINAL AGREEMENT. I understand that this Agreement and the related loan documents are the final expression of the agreement between Lender and me and may not be contradicted by evidence of any alleged oral agreement.

PRIOR TO SIGNING THIS AGREEMENT, I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. I AGREE TO THE TERMS OF THE AGREEMENT.

BORROWER:

X _H. Jolene Andrews_
H. Jolene Andrews

LENDER:

SECURITY INVESTMENT CORPORATION

X _____
Authorized Signer

Originator Names and Nationwide Mortgage Licensing System and Registry IDs:

Organization: Security Investment Corporation            NMLSR ID: NA

Individual:                                              NMLSR ID: _____

# Exhibit D

12787399
06/08/2018 08:44 AM $40.00
Book - 10682 Pg - 2367-2382
ADAM GARDINER
RECORDER, SALT LAKE COUNTY, UTAH
SECURITY INVESTMENT CORP
2970S MAIT ST
STE 250
SLC UT 84115
BY: SSA, DEPUTY - WI 16 P.

Tax Serial Number:
  22-05-230-032-0000

RECORDATION REQUESTED BY:
  Security Investment Corporation
  2970 South Main St.
  Suite 250
  Salt Lake City, UT  84115

WHEN RECORDED MAIL TO:
  Security Investment Corporation
  2970 South Main St.
  Suite 250
  Salt Lake City, UT  84115

SEND TAX NOTICES TO:
  Security Investment Corporation
  2970 South Main St.
  Suite 250
  Salt Lake City, UT  84115 _____

FOR RECORDER'S USE ONLY

## DEED OF TRUST

THIS DEED OF TRUST is dated June 7, 2018, among H. Jolene  Andrews, whose address is 4271  South  1300  East,  Salt  Lake  City,  UT    84124  ("Trustor");  Security  Investment Corporation,  whose address is 2970 South Main St., Suite 250, Salt Lake City, UT  84115 (referred  to  below  sometimes  as  "Lender"  and  sometimes  as  "Beneficiary");  and  Carl  E. Kingston, whose address is 3212 South State Street, Salt Lake City, UT  84115 (referred to below as "Trustee").

CONVEYANCE  AND  GRANT.    For  valuable  consideration,  Trustor  irrevocably  grants  and conveys to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all  existing  or  subsequently  erected  or  affixed  buildings,  improvements  and  fixtures;  all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Salt Lake  County, State of Utah:

*Ent 12787399 BK 10682 PG 2367*

**DEED OF TRUST**
**(Continued)**

Loan No: 400337-1                                                                 Page 2

═══════════════════════════════════════════════════════════

BEGINNING SOUTH 172.26 FEET FROM THE NORTHWEST CORNER OF LOT 4, BLOCK 2, TEN ACRE PLAT A, BIG FIELD SURVEY; AND RUNNING THENCE SOUTH 114.84 FEET; THENCE EAST 220 FEET; THENCE NORTH 114.84 FEET; THENCE WEST 220 FEET TO THE POINT OF BEGINNING.

SITUATE IN SALT LAKE COUNTY, STATE OF UTAH.

The Real Property or its address is commonly known as 4271 South 1300 East, Salt Lake City, UT 84124. The Real Property tax identification number is 22-05-230-032-0000.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note, this Deed of Trust, and the Related Documents.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

Possession and Use. Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property. The following provisions relate to the use of the Property or to other limitations on the Property. This instrument is a Trust Deed executed in conformity with the Utah Trust Deed Act, UCA 57-1-19, et seq.

Duty to Maintain. Trustor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Compliance With Environmental Laws. Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about

# DEED OF TRUST
**(Continued)**

Loan No: 400337-1                                                                              Page 3

or from the Property; and  (b)  any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws.  Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person.  The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances.  Trustor hereby  (1)  releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and  (2)  agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor.  The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.**  Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property.  Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.**  Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent.  As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.**  Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.**  Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property.  Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized.  Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.**  Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section,

*BK 10682 PG 2369*

# DEED OF TRUST
## (Continued)

which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a fair value basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender, together with such other hazard and liability insurance as Lender may reasonably require. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of

# DEED OF TRUST
## (Continued)

Loan No: 400337-1                                                                Page 5

insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**LENDER'S EXPENDITURES.** If Trustor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, or (C) to make repairs to the Property then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Trustor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**DEED OF TRUST**
**(Continued)**

Loan No: 400337-1                                                                                   Page 6

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Promises.** All promises, agreements, and statements Trustor has made in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature and shall remain in full force and effect until such time as Trustor's Indebtedness is paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to defend the action and obtain the award. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording,

**DEED OF TRUST**
**(Continued)**

Loan No: 400337-1                                                                    Page 7

perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Trustor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further

**DEED OF TRUST**
**(Continued)**

assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Trustor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Any reconveyance fee required by law shall be paid by Trustor, if permitted by applicable law.

**EVENTS OF DEFAULT.** At Lender's option, Trustor will be in default under this Deed of Trust if any of the following happen:

**Payment Default.** Trustor fails to make any payment when due under the Indebtedness.

**Break Other Promises.** Trustor breaks any promise made to Lender or fails to perform promptly at the time and strictly in the manner provided in this Deed of Trust or in any agreement related to this Deed of Trust.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**False Statements.** Any representation or statement made or furnished to Lender by Trustor or on Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Trustor, the insolvency of Trustor, the appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the

## DEED OF TRUST
### (Continued)

**Page 9**

Property or any other of Trustor's property in which Lender has a lien. This includes taking of, garnishing of or levying on Trustor's accounts with Lender. However, if Trustor disputes in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if Trustor gives Lender written notice of the claim and furnishes Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Trustor's obligations under this Deed of Trust, after Trustor's failure to do so, that decision by Lender will not affect Lender's right to declare Trustor in default and to exercise Lender's remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Trustor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Trustor would be required to pay.

**Foreclosure.** With respect to all or any part of the Real Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

## DEED OF TRUST
### (Continued)

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. Trustor hereby waives any requirement that the receiver be impartial and disinterested as to all of the parties and agrees that employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**DEED OF TRUST**
Loan No: 400337-1                    (Continued)                        Page 11

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender will have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Salt Lake County, State of Utah. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**NOTICES.** Unless otherwise provided by applicable law, any notice required to be given under this Deed of Trust or required by law, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered in accordance with the law or with this Deed of Trust, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Notwithstanding any other provision of this Deed of Trust, all notices given under Utah Code Ann. Section 57-1-26 shall be given as required therein. Any person may change his or her address for notices under this Deed of Trust by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided by applicable law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all

**DEED OF TRUST**
**(Continued)**

Trustors. It will be Trustor's responsibility to tell the others of the notice from Lender.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** What is written in this Deed of Trust and in the Related Documents is Trustor's entire agreement with Lender concerning the matters covered by this Deed of Trust. To be effective, any change or amendment to this Deed of Trust must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law. This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Utah without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of Utah.**

**Choice of Venue.** If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the courts of Salt Lake County, State of Utah.

**No Waiver by Lender.** Trustor understands Lender will not give up any of Lender's rights under this Deed of Trust unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Trustor will not have to comply with the other provisions of this Deed of Trust. Trustor also understands that if Lender does consent to a request, that does not mean that Trustor will not have to get Lender's consent again if the situation happens again. Trustor further understands that just because Lender consents to one or more of Trustor's requests, that does not mean Lender will be required to consent to any of Trustor's future requests. Trustor waives presentment, demand for payment, protest, and notice of dishonor. Trustor waives all rights of exemption from execution or similar law in the Property, and Trustor agrees that the rights of Lender in the Property under this Deed of Trust are prior to Trustor's rights while this Deed of Trust remains in effect.

**Severability.** If a court finds that any provision of this Deed of Trust is not valid or should not be enforced, that fact by itself will not mean that the rest of this Deed of Trust will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Deed of Trust even if a provision of this Deed of Trust may be found to be invalid or unenforceable.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of

**DEED OF TRUST**
**(Continued)**

Loan No: 400337-1                                                                                Page 13

Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waiver of Homestead Exemption.** Trustor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Utah as to all Indebtedness secured by this Deed of Trust.

**DEFINITIONS.** The following words shall have the following meanings when used in this Deed of Trust:

**Beneficiary.** The word "Beneficiary" means Security Investment Corporation, and its successors and assigns.

**Borrower.** The word "Borrower" means H. Jolene Andrews and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all

# DEED OF TRUST
## (Continued)

Loan No: 400337-1                                                                     Page 14

renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means Security Investment Corporation, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Note.** The word "Note" means the promissory note dated June 7, 2018, in the original principal amount of $1,250,245.69 from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means Carl E. Kingston, whose address is 3212 South State Street, Salt Lake City, UT 84115 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means H. Jolene Andrews.

*BK 10682 PG 2380*

**DEED OF TRUST**
**(Continued)**

Loan No: 400337-1                                                              Page 15

TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS.

TRUSTOR:

X  _Jolene Andrews_
H. Jolene  Andrews

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Utah_                                                      )
                                                                     ) SS
COUNTY OF _Salt Lake_                                                )

On this day before me, the undersigned Notary Public, personally appeared H. Jolene  Andrews, to me known to be the individual described in and who executed the Deed of Trust, and acknowledged that he or she signed the Deed of Trust as his or her free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this _____7_____ day of _June_ _____, 20 _18_ .

By _Lynn Kingston_                                     Residing at _Salt Lake_

Notary Public in and for the State of _Utah_          My commission expires _9/13/20_

> **LYNN KINGSTON**
> Notary Public - State of Utah
> My Commission Expires
> September 13, 2020
> Commission #690937

---

Originator Names and Nationwide Mortgage Licensing System and Registry IDs:

Organization:  Security Investment          NMLSR ID:  NA
               Corporation

Individual: _____       NMLSR ID:  _____

*BK 10682 PG 2381*

**DEED OF TRUST**
**(Continued)**

Loan No: 400337-1                                                            Page 16

## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____ , Trustee

The undersigned is the legal owner and holder of all Indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

_____

Date: _____    Beneficiary: _____

                                                          By: _____

                                                          Its: _____

LaserPro, Ver. 17.1.0.023  Copr. D+H USA Corporation 1997, 2018.  All Rights Reserved.  -
            UT  Z:\CFI\LPL\G01.FC  TR-790

*BK 10682 PG 2382*

# Exhibit E

## LOAN REQUEST SUMMARY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $363,650.50 | 11-08-2016 | 11-08-2019 | 4095683 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** ECO RANCHES
24050 N. 6000 W.
Plymouth, UT 84330

**Lender:** Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

### BALLOON LOAN
### (Fixed Rate)

| | Financed | In Cash |
|---|---|---|
| **AMOUNT REQUESTED:** | $360,050.00 | |
| **PREPAID FINANCE CHARGES:** | | |
| Loan Origination Fee (%) | 3,600.50 | |
| **SECURITY INTEREST CHARGES:** | 0.00 | |
| **NOTE AMOUNT:** | $363,650.50 | $0.00 |

**PAYMENT CALCULATION:**

| | |
|---|---|
| Interest Method: | 365/365 |
| Disbursement Date: | 11-09-2016 |
| First Payment Date: | 11-08-2017 |
| Due Date: | 11-08-2019 |
| Payment Period: | Annual |
| Periods to Amortize: | 30 |
| Total Number of Pmts: | 3 |
| Interest Rate: | 5.000% |
| Credit Insurance: | None |
| Amount of Reg Pmt: | $23,660.97 |
| Final Payment: | $369,985.75 |

**Payment Schedule.** Borrower's payment schedule consists of the following: 2 annual consecutive payments of $23,660.97 each, beginning November 8, 2017, with interest calculated on the unpaid principal balances at an interest rate of 5.000% per annum; and one payment of $369,985.75 on November 8, 2019, with interest calculated on the unpaid principal balances at an interest rate of 5.000% per annum. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled; the actual final payment will be for all principal and accrued interest not yet paid, together with any other amounts under the Note.

| APR 5.372% | FINANCE CHARGE $57,257.69 | AMOUNT FINANCED $360,050.00 | TOTAL OF PAYMENTS $417,307.69 |
|---|---|---|---|

**COLLATERAL:** Real Estate Collateral.

**TRANSACTION NUMBER:** 556

**NOTICE:** This Loan Request Summary is for informational purposes only and does not obligate Lender in any way to make this loan or any other loan to Borrower. The fees and charges listed above are estimates only; and, if a loan is made, different or additional fees and charges may be imposed.

LaserPro, Ver. 15.4.20.033 Copr. D+H USA Corporation 1997, 2016. All Rights Reserved. - UT Z:\CF\\PL\A10.FC TR-556

## BUSINESS LOAN AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $363,650.50 | 11-08-2016 | 11-08-2019 | 4095683 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**   ECO RANCHES
24050 N. 6000 W.
Plymouth, UT  84330

**Lender:**   Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT  84115

---

THIS BUSINESS LOAN AGREEMENT dated November 8, 2016, is made and executed between ECO RANCHES ("Borrower") and Security Investment Corporation ("Lender") on the following terms and conditions.  Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement.  Borrower understands and agrees that:  (A)  in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement;  (B)  the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and  (C)  all such Loans shall be and remain subject to the terms and conditions of this Agreement.

**TERM.**  This Agreement shall be effective as of November 8, 2016, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until November 8, 2019.

**CONDITIONS PRECEDENT TO EACH ADVANCE.**  Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

**Loan Documents.**  Borrower shall provide to Lender the following documents for the Loan:  (1)  the Note;  (2)  Security Agreements granting to Lender security interests in the Collateral;  (3)  financing statements and all other documents perfecting Lender's Security Interests;  (4)  evidence of insurance as required below;  (5)  together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

**Borrower's Authorization.**  Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents.  In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require.

**Payment of Fees and Expenses.**  Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Representations and Warranties.**  The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

**No Event of Default.**  There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**REPRESENTATIONS AND WARRANTIES.**  Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

**Organization.**  Borrower is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Utah.  Borrower is duly authorized to transact business in all other states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business.  Specifically, Borrower is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition.  Borrower has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage.  Borrower maintains an office at 24050 N. 6000 W., Plymouth, UT  84330.  Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral.  Borrower will notify Lender prior to any change in the location of Borrower's state of organization or any change in Borrower's name.  Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

**Assumed Business Names.**  Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower.  Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business:  **None.**

**Authorization.**  Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under  (1)  any provision of  (a)  Borrower's articles of organization or membership agreements, or  (b)  any agreement or other instrument binding upon Borrower or  (2)  any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

**Financial Information.**  Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender.  Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.**  This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

**Properties.**  Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties.  All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

**Hazardous Substances.**  Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that:  (1)  During

the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral.  (2)  Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws;  (b)  any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3)  Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws.  Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement.  Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person.  The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances.  Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral.  The provisions of this section of the Agreement, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation and Claims.**  No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

**Taxes.**  To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.**  Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.**  This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**AFFIRMATIVE COVENANTS.**  Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.**  Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.**  Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.**  Furnish Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**Additional Information.**  Furnish such additional information and statements, as Lender may request from time to time.

**Insurance.**  Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender.  Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender.  Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person.  In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.**  Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer;  (2) the risks insured;  (3) the amount of the policy;  (4) the properties insured;  (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and  (6) the expiration date of the policy.  In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral.  The cost of such appraisal shall be paid by Borrower.

**Other Agreements.**  Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.**  Use all Loan proceeds solely for Borrower's business operations, unless specifically consented to the contrary by Lender in writing.

**Taxes, Charges and Liens.**  Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits.  Provided however, Borrower will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (1) the legality of the same shall be contested in good faith by appropriate proceedings, and (2) Borrower shall have established on Borrower's books adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with GAAP.

**Performance.**  Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender.  Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.**  Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Environmental Studies.**  Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Compliance with Governmental Requirements.**  Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act.  Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized.  Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Inspection.**  Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records.  If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Compliance Certificates.**  Unless waived in writing by Lender, provide Lender at least annually, with a certificate executed by Borrower's chief financial officer, or other officer or person acceptable to Lender, certifying that the representations and warranties set forth in this Agreement are true and correct as of the date of the certificate and further certifying that, as of the date of the certificate, no Event of Default exists under this Agreement.

**Environmental Compliance and Reports.**  Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.**  Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**LENDER'S EXPENDITURES.**  If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral.  All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower.  All such expenses will become a part of the Indebtedness and, at Lender's option, will  (A)  be payable on demand;  (B)  be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (1)  the term of any applicable insurance policy; or  (2)  the remaining term of the Note; or  (C)  be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.**  Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Indebtedness and Liens.**  (1)  Except for trade debt incurred in the normal course of business and indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases,  (2)  sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as Permitted Liens), or  (3)  sell with recourse any of Borrower's accounts, except to Lender.

**Continuity of Operations.**  (1)  Engage in any business activities substantially different than those in which Borrower is presently engaged,  (2)  cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business, or  (3)  make any distribution with respect to any capital account, whether by reduction of capital or otherwise.

**Loans, Acquisitions and Guaranties.**  (1)  Loan, invest in or advance money or assets to any other person, enterprise or entity,  (2)  purchase, create or acquire any interest in any other enterprise or entity, or  (3)  incur any obligation as surety or guarantor other than in the ordinary course of business.

**Agreements.**  Enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

**CESSATION OF ADVANCES.**  If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if:  (A)  Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender;  (B)  Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt;  (C)  there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or  (D)  any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender.

**RIGHT OF SETOFF.**  To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account).  This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future.  However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law.  Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**BUSINESS LOAN AGREEMENT
(Continued)**

Loan No: 4095683

Page 4

---

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Loan.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**EFFECT OF AN EVENT OF DEFAULT.** If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not Lender's salaried employee and whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Utah without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Utah.

**Choice of Venue.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Salt Lake County, State of Utah.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement,

**BUSINESS LOAN AGREEMENT**
**(Continued)**

Loan No: 4095683                                                                                                                Page 5

the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Unless otherwise provided by applicable law, any notice required to be given under this Agreement or required by law shall be given in writing, and shall be effective when actually delivered in accordance with the law or with this Agreement, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided by applicable law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Subsidiaries and Affiliates of Borrower.** To the extent the context of any provisions of this Agreement makes it appropriate, including without limitation any representation, warranty or covenant, the word "Borrower" as used in this Agreement shall include all of Borrower's subsidiaries and affiliates. Notwithstanding the foregoing however, under no circumstances shall this Agreement be construed to require Lender to make any Loan or other financial accommodation to any of Borrower's subsidiaries or affiliates.

**Successors and Assigns.** All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.** Borrower understands and agrees that in making the Loan, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the making of the Loan and delivery to Lender of the Related Documents, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

**Borrower.** The word "Borrower" means ECO RANCHES and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any

## BUSINESS LOAN AGREEMENT
### (Continued)

Loan No: 4095683

Page 6

of the Related Documents.

**Lender.** The word "Lender" means Security Investment Corporation, its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

**Note.** The word "Note" means the Note dated November 8, 2016 and executed by ECO RANCHES in the principal amount of $363,650.50, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Permitted Liens.** The words "Permitted Liens" mean (1) liens and security interests securing Indebtedness owed by Borrower to Lender; (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (3) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (4) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens"; (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing; and (6) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

**FINAL AGREEMENT.** Borrower understands that this Agreement and the related loan documents are the final expression of the agreement between Lender and Borrower and may not be contradicted by evidence of any alleged oral agreement.

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED NOVEMBER 8, 2016.

BORROWER:

ECO RANCHES

By: _____
**Shain Stoddard, Member of ECO RANCHES**

LENDER:

SECURITY INVESTMENT CORPORATION

By: _____
**Authorized Signer**

LaserPro, Ver. 15.4.20.033  Copr. D + H USA Corporation 1997, 2016.  All Rights Reserved.  - UT  Z:\CFI\LPL\C40.FC  TR-556

# A    ICULTURAL LOAN AGREE    T

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $363,650.50 | 11-08-2016 | 11-08-2019 | 4095683 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** ECO RANCHES
24050 N. 6000 W.
Plymouth, UT 84330

**Lender:** Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

---

THIS AGRICULTURAL LOAN AGREEMENT dated November 8, 2016, is made and executed between ECO RANCHES ("Borrower") and Security Investment Corporation ("Lender") on the following terms and conditions. Borrower has applied to Lender for an agricultural loan as described below. Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement, and (B) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

**TERM.** This Agreement shall be effective as of November 8, 2016, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until November 8, 2019.

**THE LOAN.** The following terms and conditions apply to the Loan:

**The Loan Commitment.** On and after the date of this Agreement, or such earlier date as Lender and Borrower may agree, Lender will lend to Borrower the principal amount of $363,650.50.

**The Loan Documents.** The Loan will be evidenced by a promissory note in the form of an exhibit attached to and made a part of this Agreement, or if no exhibit is attached, then in form and substance satisfactory to Lender (the "Note"), together with such Related Documents as Lender may require for the Loan, all in form and substance satisfactory to Lender.

**Loan Disbursements.** Loan disbursements will be made upon Borrower's completing and delivering to Lender for each disbursement a disbursement request on Lender's form. In no event, however, will Lender be required to make any Loan advances after November 8, 2019.

**Disbursements of Proceeds.** Any Loan advance made under this Agreement shall be conclusively presumed to have been made to and for the benefit of Borrower whenever the proceeds of such advance are either (1) disbursed in accordance with the terms of this Agreement, (2) disbursed in accordance with instructions from Borrower or any of Borrower's authorized employees or agents, or (3) deposited into any demand, savings, or other account maintained by Borrower with Lender.

**No Renewal or Future Loan Obligation.** Lender has not committed, and is not committing at this time, to finance Borrower's next year's farm loan requirements. Any such future loan or loans may be made solely at the option of Lender and on such terms and conditions as Lender may then require. Borrower understands that no prior course of dealing, no usage of trade, no oral statements or comments by Lender or its employees or other agents will be deemed to be a commitment by Lender to lend money to Borrower or to any other person, unless the same is reduced to writing and signed by an authorized representative of Lender.

**SALE OF COLLATERAL AND APPLICATION OF PROCEEDS.** The following terms and conditions relate to any Collateral for the Loan and the application of proceeds of Collateral:

**Sale of Collateral.** Borrower may sell or otherwise dispose of Collateral only if (1) Borrower delivers the proceeds to Lender, and (2) Borrower complies with the other terms of this Agreement. If Borrower wants to use proceeds for other than delivery to Lender, Borrower may not sell the Collateral without Lender's prior written consent.

**Buyers, Consignees, and Other Transferees.** The following provisions relate to any sale, consignment or transfer of crops, livestock, or other farm products included as all or a part of the Collateral:

(1) To induce Lender to extend the Loan, Borrower represents, warrants and covenants to Lender that Borrower will sell, consign or transfer the Collateral only to those persons whose names and addresses have been set forth on sales schedules delivered to Lender. Each schedule shall be in such form as Lender may require, including identification of each type of Collateral. Borrower also shall notify Lender of the name and address of each additional person to whom or through whom the Collateral may be sold, consigned or transferred. All such schedules and notifications shall be in writing and shall be delivered to Lender not less than fourteen (14) days prior to any such sale, consignment or transfer of the Collateral.

(2) Borrower acknowledges that if the Collateral is sold, consigned, or transferred to any person not listed on a schedule delivered to Lender as provided above, at least seven (7) days prior to such sale, consignment, or transfer, and if Lender has not received an accounting (including the proceeds) of such sale, consignment or transfer within ten (10) days of the sale, consignment or transfer, then UNDER FEDERAL LAW, BORROWER SHALL BE SUBJECT TO A FINE WHICH IS THE GREATER OF $5,000 OR 15% OF THE VALUE OR BENEFIT RECEIVED FROM THE SALE, CONSIGNMENT OR TRANSFER TO AN UNLISTED BUYER, CONSIGNEE OR TRANSFEREE.

**Delivery of Proceeds and Payments.** Borrower will immediately deliver or otherwise make available to Lender all proceeds of any sale, consignment, lease, license, exchange or other disposition of the Collateral and all other proceeds of the Collateral, in a form acceptable to Lender. All chattel paper, contracts, warehouse receipts, documents, and other evidences of ownership or obligations relating to the Collateral, whether issued by a co-op, grain elevator, warehouse, marketing entity or bailee, and all accounts and other proceeds of the Collateral shall be immediately endorsed, assigned and delivered by Borrower to Lender, in a form acceptable to Lender, as security for the Loan. At any time before or after the occurrence of an Event of Default, Lender may collect all proceeds of the Collateral without notice to Borrower. All proceeds of the Collateral, when received by Lender, may at Lender's sole discretion be applied to the Loan. Borrower grants Lender a limited power of attorney to sign or endorse Borrower's name on all writings described in this section.

**Application of Proceeds and Payments.** Lender, in its sole discretion, may apply proceeds and payments of Collateral and any other payments Borrower may make on the Loan to either (1) accrued unpaid interest owing on the Note, (2) outstanding principal on the Note, or (3) any other amounts owing by Borrower to Lender in connection with the Loan.

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

**Loan Documents.** Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) Security Agreements granting to Lender security interests in the Collateral; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) Effective Financing Statements as required by any applicable state central filing system giving notice of Lender's security interests to prospective purchasers of Borrower's farm products; (5) evidence of insurance as required below; (6) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

**Borrower's Authorization.** Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require.

**Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Representations and Warranties.** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

**No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

**Organization.** Borrower is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Utah. Borrower is duly authorized to transact business in all other states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Specifically, Borrower is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Borrower has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Borrower maintains an office at 24050 N. 6000 W., Plymouth, UT 84330. Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's state of organization or any change in Borrower's name. Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

**Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: **None.**

**Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Borrower's articles of organization or membership agreements, or (b) any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

**Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

**Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

**Hazardous Substances.** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in

Loan No: 4095683         

writing.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**Additional Information.** Furnish such additional information and statements, as Lender may request from time to time.

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.** Use all Loan proceeds solely for the purposes specified in this Agreement.

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits. Provided however, Borrower will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (1) the legality of the same shall be contested in good faith by appropriate proceedings, and (2) Borrower shall have established on Borrower's books adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with GAAP.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Compliance with Governmental Requirements.** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Environmental Studies.** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Compliance Certificates.** Unless waived in writing by Lender, provide Lender at least annually, with a certificate executed by Borrower's chief financial officer, or other officer or person acceptable to Lender, certifying that the representations and warranties set forth in this Agreement are true and correct as of the date of the certificate and further certifying that, as of the date of the certificate, no Event of Default exists under this Agreement.

## AGRICULTURAL LOAN AGREEMENT
### (Continued)

**Environmental Compliance and Reports.** Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Indebtedness and Liens.** (1) Except for trade debt incurred in the normal course of business and indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases, (2) sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as Permitted Liens), or (3) sell with recourse any of Borrower's accounts, except to Lender.

**Continuity of Operations.** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business, or (3) make any distribution with respect to any capital account, whether by reduction of capital or otherwise.

**Loans, Acquisitions and Guaranties.** (1) Loan, invest in or advance money or assets to any other person, enterprise or entity, (2) purchase, create or acquire any interest in any other enterprise or entity, or (3) incur any obligation as surety or guarantor other than in the ordinary course of business.

**Agreements.** Enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

**CESSATION OF ADVANCES.** Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds under this Agreement or under any other agreement if: (A) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender; (B) Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or (D) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Loan.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**AGRICULTURAL LOAN AGREEMENT**
**(Continued)**

Loan No: 4095683                                                                                                                    Page 5

---

**Adverse Change.**  A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**EFFECT OF AN EVENT OF DEFAULT.**  If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional.  In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise.  Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently.  Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Agreement:

**Amendments.**  This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement.  No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.**  Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement.  Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement.  Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not Lender's salaried employee and whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services.  Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.**  Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.**  **This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Utah without regard to its conflicts of law provisions.  This Agreement has been accepted by Lender in the State of Utah.**

**Choice of Venue.**  If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Salt Lake County, State of Utah.

**No Waiver by Lender.**  Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender.  No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right.  A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement.  No prior waiver by Lender, nor any course of dealing between Lender and Borrower, shall constitute a waiver of any of Lender's rights or of any of Borrower's obligations as to any future transactions.  Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.**  Unless otherwise provided by applicable law, any notice required to be given under this Agreement or required by law shall be given in writing, and shall be effective when actually delivered in accordance with the law or with this Agreement, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement.  Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address.  For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address.  Unless otherwise provided by applicable law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**Severability.**  If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance.  If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable.  If the offending provision cannot be so modified, it shall be considered deleted from this Agreement.  Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Subsidiaries and Affiliates of Borrower.**  To the extent the context of any provisions of this Agreement makes it appropriate, including without limitation any representation, warranty or covenant, the word "Borrower" as used in this Agreement shall include all of Borrower's subsidiaries and affiliates.  Notwithstanding the foregoing however, under no circumstances shall this Agreement be construed to require Lender to make any Loan or other financial accommodation to any of Borrower's subsidiaries or affiliates.

**Successors and Assigns.**  All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns.  Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.**  Borrower understands and agrees that in making the Loan, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents.  Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the making of the Loan and delivery to Lender of the Related Documents, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.**  Time is of the essence in the performance of this Agreement.

**DEFINITIONS.**  The following capitalized words and terms shall have the following meanings when used in this Agreement.  Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America.  Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require.  Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code.  Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

**AGRICULTURAL LOAN AGREEMENT**
**(Continued)**

| Loan No: 4095683 | Page 6 |
|---|---|

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Agricultural Loan Agreement, as this Agricultural Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Agricultural Loan Agreement from time to time.

**Borrower.** The word "Borrower" means ECO RANCHES and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Security Investment Corporation, its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation, the loan described in the Section titled "The Loan."

**Note.** The word "Note" means the Note dated November 8, 2016 and executed by ECO RANCHES in the principal amount of $363,650.50, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Permitted Liens.** The words "Permitted Liens" mean (1) liens and security interests securing Indebtedness owed by Borrower to Lender; (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (3) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (4) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens"; (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing; and (6) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

**FINAL AGREEMENT.** Borrower understands that this Agreement and the related loan documents are the final expression of the agreement between Lender and Borrower and may not be contradicted by evidence of any alleged oral agreement.

AGRICULTURAL LOAN AGREEMENT
(Continued)

Loan No: 4095683          Page 7

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS AGRICULTURAL LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS AGRICULTURAL LOAN AGREEMENT IS DATED NOVEMBER 8, 2016.

BORROWER:

ECO RANCHES

By: _____
Shain Stoddard, Member of ECO RANCHES

LENDER:

SECURITY INVESTMENT CORPORATION

By: _____
Authorized Signer

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $363,650.50 | 11-08-2016 | 11-08-2019 | 4095683 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** ECO RANCHES
24050 N. 6000 W.
Plymouth, UT 84330

**Lender:** Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

**Principal Amount: $363,650.50** **Interest Rate: 5.000%** **Date of Note: November 8, 2016**

**PROMISE TO PAY.** ECO RANCHES ("Borrower") promises to pay to Security Investment Corporation ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Hundred Sixty-three Thousand Six Hundred Fifty & 50/100 Dollars ($363,650.50), together with interest on the unpaid principal balance from November 9, 2016, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 5.000% per annum, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 2 regular payments of $23,660.97 each and one irregular last payment estimated at $369,985.75. Borrower's first payment is due November 8, 2017, and all subsequent payments are due on the same day of each year after that. Borrower's final payment will be due on November 8, 2019, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs; then to any late charges; then to any accrued unpaid interest; and then to principal. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Security Investment Corporation, 2970 South Main St., Suite 250, Salt Lake City, UT 84115.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by 2.000 percentage points. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including without limitation all reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**PROMISSORY NOTE**
(Continued)

Loan No: 4095683                                                                                                      Page 2

---

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Utah without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Utah.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Salt Lake County, State of Utah.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: _____.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

ECO RANCHES

By: _____
     Shain Stoddard, Member of ECO RANCHES

# LIMITED LIABILITY COMPANY RESOLUTION TO BORROW / GRANT COLLATERAL

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $363,650.50 | 11-08-2016 | 11-08-2019 | 4095683 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Company:**   ECO RANCHES
24050 N. 6000 W.
Plymouth, UT  84330

**Lender:**   Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT  84115

---

WE, THE UNDERSIGNED, DO HEREBY CERTIFY THAT:

**THE COMPANY'S EXISTENCE.** The complete and correct name of the Company is ECO RANCHES ("Company"). The Company is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Utah. The Company is duly authorized to transact business in all other states in which the Company is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which the Company is doing business. Specifically, the Company is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. The Company has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. The Company maintains an office at 24050 N. 6000 W., Plymouth, UT  84330. Unless the Company has designated otherwise in writing, the principal office is the office at which the Company keeps its books and records. The Company will notify Lender prior to any change in the location of the Company's state of organization or any change in the Company's name. The Company shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to the Company and the Company's business activities.

**RESOLUTIONS ADOPTED.** At a meeting of the members of the Company, duly called and held on _____, at which a quorum was present and voting, or by other duly authorized action in lieu of a meeting, the resolutions set forth in this Resolution were adopted.

**MEMBER.** The following named person is a member of ECO RANCHES:

| NAMES | TITLES | AUTHORIZED | ACTUAL SIGNATURES |
|-------|--------|------------|-------------------|
| Shain Stoddard | Member | Y | X _____ |

**ACTIONS AUTHORIZED.** The authorized person listed above may enter into any agreements of any nature with Lender, and those agreements will bind the Company. Specifically, but without limitation, the authorized person is authorized, empowered, and directed to do the following for and on behalf of the Company:

**Borrow Money.** To borrow, as a cosigner or otherwise, from time to time from Lender, on such terms as may be agreed upon between the Company and Lender, such sum or sums of money as in his or her judgment should be borrowed, without limitation.

**Execute Notes.** To execute and deliver to Lender the promissory note or notes, or other evidence of the Company's credit accommodations, on Lender's forms, at such rates of interest and on such terms as may be agreed upon, evidencing the sums of money so borrowed or any of the Company's indebtedness to Lender, and also to execute and deliver to Lender one or more renewals, extensions, modifications, refinancings, consolidations, or substitutions for one or more of the notes, any portion of the notes, or any other evidence of credit accommodations.

**Grant Security.** To mortgage, pledge, transfer, endorse, hypothecate, or otherwise encumber and deliver to Lender any property now or hereafter belonging to the Company or in which the Company now or hereafter may have an interest, including without limitation all of the Company's real property and all of the Company's personal property (tangible or intangible), as security for the payment of any loans or credit accommodations so obtained, any promissory notes so executed (including any amendments to or modifications, renewals, and extensions of such promissory notes), or any other or further indebtedness of the Company to Lender at any time owing, however the same may be evidenced. Such property may be mortgaged, pledged, transferred, endorsed, hypothecated or encumbered at the time such loans are obtained or such indebtedness is incurred, or at any other time or times, and may be either in addition to or in lieu of any property theretofore mortgaged, pledged, transferred, endorsed, hypothecated or encumbered.

**Execute Security Documents.** To execute and deliver to Lender the forms of mortgage, deed of trust, pledge agreement, hypothecation agreement, and other security agreements and financing statements which Lender may require and which shall evidence the terms and conditions under and pursuant to which these liens and encumbrances, or any of them, are given; and also to execute and deliver to Lender any other written instruments, any chattel paper, or any other collateral, of any kind or nature, which Lender may deem necessary or proper in connection with or pertaining to the giving of the liens and encumbrances.

**Negotiate Items.** To draw, endorse, and discount with Lender all drafts, trade acceptances, promissory notes, or other evidences of indebtedness payable to or belonging to the Company or in which the Company may have an interest, and either to receive cash for the same or to cause such proceeds to be credited to the Company's account with Lender, or to cause such other disposition of the proceeds derived therefrom as he or she may deem advisable.

**Further Acts.** In the case of lines of credit, to designate additional or alternate individuals as being authorized to request advances under such lines, and in all cases, to do and perform such other acts and things, to pay any and all fees and costs, and to execute and deliver such other documents and agreements as the member may in his or her discretion deem reasonably necessary or proper in order to carry into effect the provisions of this Resolution.

**ASSUMED BUSINESS NAMES.** The Company has filed or recorded all documents or filings required by law relating to all assumed business names used by the Company. Excluding the name of the Company, the following is a complete list of all assumed business names under which the Company does business: **None.**

**NOTICES TO LENDER.** The Company will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (A) change in the Company's name; (B) change in the Company's assumed business name(s); (C) change in the management or in the Members of the Company; (D) change in the authorized signer(s); (E) change in the Company's principal office address; (F) change in the Company's state of organization; (G) conversion of the Company to a new or different type of business entity; or (H) change in any other aspect of the Company that directly or indirectly relates to any agreements between the Company and Lender. No change in the Company's name or state of organization will take effect until after Lender has received notice.

**CERTIFICATION CONCERNING MEMBERS AND RESOLUTIONS.** The member named above is duly elected, appointed, or employed by or for the

**LIMITED LIABILITY COMPANY RESOLUTION TO BORROW / GRANT COLLATERAL**
**(Continued)**

Loan No: 4095683                                                                                   Page 2

Company, as the case may be, and occupies the position set opposite his or her respective name.  This Resolution now stands of record on the books of the Company, is in full force and effect, and has not been modified or revoked in any manner whatsoever.

**CONTINUING VALIDITY.**  Any and all acts authorized pursuant to this Resolution and performed prior to the passage of this Resolution are hereby ratified and approved.  This Resolution shall be continuing, shall remain in full force and effect and Lender may rely on it until written notice of its revocation shall have been delivered to and received by Lender at Lender's address shown above (or such addresses as Lender may designate from time to time).  Any such notice shall not affect any of the Company's agreements or commitments in effect at the time notice is given.

**IN TESTIMONY WHEREOF, we have hereunto set our hand and attest that the signature set opposite the name listed above is his or her genuine signature.**

We each have read all the provisions of this Resolution, and we each personally and on behalf of the Company certify that all statements and representations made in this Resolution are true and correct.  This Limited Liability Company Resolution to Borrow / Grant Collateral is dated November 8, 2016.

CERTIFIED TO AND ATTESTED BY:

By: _____

Authorized Signer for ECO RANCHES

NOTE:  If the member signing this Resolution is designated by the foregoing document as one of the members authorized to act on the Company's behalf, it is advisable to have this Resolution signed by at least one non-authorized member of the Company.

LaserPro, Ver. 15.4.20.033  Copr. D+H USA Corporation 1997, 2016.  All Rights Reserved.  - UT  Z:\CFI\LPL\C15.FC  TR-566

# AMORTIZATION SCHEDULE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $363,650.50 | 11-08-2016 | 11-08-2019 | 4095683 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** ECO RANCHES
24050 N. 6000 W.
Plymouth, UT 84330

**Lender:** Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

**Disbursement Date:** November 9, 2016
**Interest Rate:** 5.000

**Repayment Schedule:** Balloon
**Calculation Method:** 365/365 U.S. Rule

| Payment Number | Payment Date | Payment Amount | Interest Paid | Principal Paid | Remaining Balance |
|---|---|---|---|---|---|
| 1 | 11-08-2017 | 23,660.97 | 18,132.71 | 5,528.26 | 358,122.24 |
| 2 | 11-08-2018 | 23,660.97 | 17,906.11 | 5,754.86 | 352,367.38 |
| 3 | 11-08-2019 | 369,985.75 | 17,618.37 | 352,367.38 | 0.00 |
| **TOTALS:** | | **417,307.69** | **53,657.19** | **363,650.50** | |

**NOTICE:** This is an estimated loan amortization schedule. Actual amounts may vary if payments are made on different dates or in different amounts.

LaserPro, Ver. 15.4.20.033 Copr. D+H USA Corporation 1997, 2016. All Rights Reserved. - UT Z:\CFI\LPL\AMORT.FC TR-556

# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $363,650.50 | 11-08-2016 | 11-08-2019 | 4095683 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** ECO RANCHES
24050 N. 6000 W.
Plymouth, UT 84330

**Lender:** Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

**LOAN TYPE.** This is a Fixed Rate (5.000%) Nondisclosable Loan to a Limited Liability Company for $363,650.50 due on November 8, 2019.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

☐ Personal, Family, or Household Purposes or Personal Investment.

☒ Business (Including Real Estate Investment).

**SPECIFIC PURPOSE.** The specific purpose of this loan is: Purchase land in Box Elder County.

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $363,650.50 as follows:

| | |
|---|---|
| **Amount paid to others on Borrower's behalf:** | $360,050.00 |
| $360,050.00 to Washakie Renewable Energy, LLC | |
| **Total Financed Prepaid Finance Charges:** | $3,600.50 |
| $3,600.50 Loan Origination Fee (%) | |
| **Note Principal:** | $363,650.50 |

**FINAL AGREEMENT.** Borrower understands that the loan documents signed in connection with this loan are the final expression of the agreement between Lender and Borrower and may not be contradicted by evidence of any alleged oral agreement.

**FINANCIAL CONDITION. BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED NOVEMBER 8, 2016.**

**BORROWER:**

**ECO RANCHES**

By: ______________________________
Shain Stoddard, Member of ECO RANCHES

LaserPro, Ver. 15.4.20.033 Copr. D+H USA Corporation 1997, 2016. All Rights Reserved. - UT Z:\CFI\LPL\I20.FC TR-556

## NOTICE OF FINAL AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $363,650.50 | 11-08-2016 | 11-08-2019 | 4095683 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** ECO RANCHES
24050 N. 6000 W.
Plymouth, UT  84330

**Lender:** Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT  84115

---

BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT:  (A) THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES,   (B) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND  (C) THE WRITTEN LOAN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.

As used in this Notice, the following terms have the following meanings:

**Loan.**  The term "Loan" means the following described loan:  a Fixed Rate (5.000%) Nondisclosable Loan to a Limited Liability Company for $363,650.50 due on November 8, 2019.

**Loan Agreement.**  The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

### LOAN DOCUMENTS

- LLC Resolution: ECO RANCHES
- Agricultural Loan Agreement
- UT Deed of Trust for Real Property located at Land in Box Elder County, Plymouth, UT  84330

- Business Loan Agreement
- Promissory Note
- Disbursement Request and Authorization
- Notice of Final Agreement

**Parties.**  The term "Parties" means Security Investment Corporation and any and all entities or individuals who are obligated to repay the loan or have pledged property as security for the Loan, including without limitation the following:

Borrower:      ECO RANCHES
Grantor(s):    ECO RANCHES

---

Each Party who signs below, other than Security Investment Corporation, acknowledges, represents, and warrants to Security Investment Corporation that it has received, read and understood this Notice of Final Agreement.  This Notice is dated November 8, 2016.

BORROWER:

ECO RANCHES

By: _____
Shain Stoddard, Member of ECO RANCHES

LENDER:

SECURITY INVESTMENT CORPORATION

X _____
Authorized Signer

LaserPro, Ver. 15.4.20.033 Copr. D + H USA Corporation 1997, 2016.  All Rights Reserved.  - UT  Z:\CFI\LPL\I21.FC  TR-556

## BOARDING DATA SHEET

| Principal $363,650.50 | Loan Date 11-08-2016 | Maturity 11-08-2019 | Loan No 4095683 | Call / Coll | Account | Officer 02 | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** ECO RANCHES
24050 N. 6000 W.
Plymouth, UT  84330

**Lender:** Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT  84115

### CUSTOMER DATA SUMMARY

ECO RANCHES
Street Address:24050 N. 6000 W.
Primary Phone:

81-3359868      Limited Liability Company
Plymouth        UT  84330
Ext:                        Instructions:

Borrower
County:Box Elder

Cust #:
Phone:

Resolution:  **New Resolution**

Member of ECO RANCHES:

Title: **Member**

Shain Stoddard
Street Address:1598 N. 600 W.
Mailing Address:
Primary Phone:

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    Individual
West Bountifu  UT  84087

Ext:                        Instructions:

Member
County: Davis
County:

Cust #:
Phone:
Birthday: 05-06-1968

### TRANSACTION SUMMARY

Transaction No.:  556
Product Category:
Loan Policy:  **Commercial**

Product Description:
Purpose:  **Loan is not for Personal, Family, Household Purposes or Personal Investment Purposes.**
Specific Loan Purpose:  **Purchase land in Box Elder County**

### CLASSIFICATION DATA

Application No:
Application Date:  **10-10-2016**
Loan No:  **4095683**
Loan Date:  **11-08-2016**
Officer:**02  Davis, Ruth**
Processor No:  **02  Davis, Ruth**
Collateral Code:
Charge Code:
Call Code:
User Code 3:
User Code 6:
Automatic Payments Account:

Branch:
Dept:
Division:
Region:
Loan Type:
Loan Class:  **New Loan**
Purpose Code:
Class Code:
User Code 1:
User Code 4:
User Code 7:

Employee Loan:  **No**
Restricted Access: **No**
Reg O Loan:
Comments:

Portfolio Code:
Host System:
User Code 2:
User Code 5:
User Code 8:

### COLLATERAL SUMMARY

| Type | SubType | Description | State | Value | Purchase Money | Collateral Code |
|---|---|---|---|---|---|---|
| Real Estate | Land | Land in Box Elder County, Plymouth, UT  84330 | UT | | N | |
| Owner(s): | | | | | | |

ECO RANCHES
Street Address:24050 N. 6000 W.
Primary Phone:

81-3359868      Limited Liability Company
Plymouth        UT  84330
Ext:                        Instructions:

County:Box Elder

Cust #:
Phone:

Resolution:  **New Resolution**

Member of ECO RANCHES:

Title: **Member**

Shain Stoddard
Street Address:1598 N. 600 W.
Mailing Address:
Primary Phone:

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    Individual
West Bountifu  UT  84087

Ext:                        Instructions:

Member
County: Davis
County:

Cust #:
Phone:
Birthday: 05-06-1968

**BOARDING DATA SHEET**
**(Continued)**

Loan No: 4095683                                                                                                    Page 2

## PAYMENT DATA

BALLOON LOAN
(Fixed Rate)

| | Financed | In Cash |
|---|---|---|
| AMOUNT REQUESTED: | $360,050.00 | |
| PREPAID FINANCE CHARGES: | | |
| Loan Origination Fee (%) | 3,600.50 | |
| SECURITY INTEREST CHARGES: | 0.00 | |
| NOTE AMOUNT: | $363,650.50 | $0.00 |

DISBURSEMENTS:
Payable:   Washakie Renewable Energy, LLC                                    $360,050.00

PAYMENT CALCULATION:

| No. of Pmts | Amount | Due |
|---|---|---|
| 2 | $23,660.97 | Annual beginning 11-08-2017 |
| 1 | $369,985.75 | Final Payment is due 11-08-2019 |

| | |
|---|---|
| Disbursement Date: | 11-09-2016 |
| Due Date: | 11-08-2019 |
| Periods to Amortize: | 30 |

INTEREST RATE SELECTION:

| | |
|---|---|
| Interest Method: | 365/365 |
| Interest Rate: | 5.000 |

| APR<br>5.372% | FINANCE CHARGE<br>$57,257.69 | AMOUNT FINANCED<br>$360,050.00 | TOTAL OF PAYMENTS<br>$417,307.69 |
|---|---|---|---|

## OFFICER COMMENTS

Primary Source of Repayment:   **Rental Income**

Secondary Source of Repayment:

| Grade | Date | Officer Number |
|---|---|---|

LaserPro, Ver. 16.4.20.033  Copr. D + H USA Corporation 1997, 2016.  All Rights Reserved.  - UT  Z:\CFI\LPL\I40.FC  TR-556

# LOAN REQUEST SUMMARY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| 64,226.00 | 11-21-2016 | 11-21-2019 | 4395683 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**　ECO RANCHES
24050 N. 6000 W.
Plymouth, UT  84330

**Lender:**　Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT  84115

## BALLOON LOAN
### (Fixed Rate)

| | Financed | In Cash |
|---|---|---|
| **AMOUNT REQUESTED:** | $162,600.00 | |
| **PREPAID FINANCE CHARGES:** | | |
| Loan Origination Fee (%) | 1,626.00 | |
| **SECURITY INTEREST CHARGES:** | 0.00 | |
| **NOTE AMOUNT:** | $164,226.00 | $0.00 |

**PAYMENT CALCULATION:**

| | |
|---|---|
| Interest Method: | 365/365 |
| Disbursement Date: | 11-21-2016 |
| First Payment Date: | 11-21-2017 |
| Due Date: | 11-21-2019 |
| Payment Period: | Annual |
| Periods to Amortize: | 30 |
| Total Number of Pmts: | 3 |
| Interest Rate: | 5.000% |
| Credit Insurance: | None |
| Amount of Reg Pmt: | $10,686.78 |
| Final Payment: | $167,108.83 |

**Payment Schedule.** Borrower's payment schedule consists of the following: 2 annual consecutive payments of $10,686.78 each, beginning November 21, 2017, with interest calculated on the unpaid principal balances at an interest rate of 5.000% per annum; and one payment of $167,108.83 on November 21, 2019, with interest calculated on the unpaid principal balances at an interest rate of 5.000% per annum.  This estimated final payment is based on the assumption that all payments will be made exactly as scheduled; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under the Note.

| APR 5.372% | FINANCE CHARGE $25,882.39 | AMOUNT FINANCED $162,600.00 | TOTAL OF PAYMENTS $188,482.39 |
|---|---|---|---|

**COLLATERAL:**　Real Estate Collateral.

**TRANSACTION NUMBER:**　591

**NOTICE:** This Loan Request Summary is for informational purposes only and does not obligate Lender in any way to make this loan or any other loan to Borrower.  The fees and charges listed above are estimates only; and, if a loan is made, different or additional fees and charges may be imposed.

LaserPro, Ver. 15.4.20.033  Copr. D-H USA Corporation 1997, 2016.  All Rights Reserved.  - UT  Z:\CFI\LPL\A10.FC  TR-591

# AMORTIZATION SCHEDULE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $164,226.00 | 11-21-2016 | 11-21-2019 | 4395683 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** ECO RANCHES
24050 N. 6000 W.
Plymouth, UT 84330

**Lender:** Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

**Disbursement Date:** November 21, 2016
**Interest Rate:** 5.000

**Repayment Schedule:** Balloon
**Calculation Method:** 365/365 U.S. Rule

| Payment Number | Payment Date | Payment Amount | Interest Paid | Principal Paid | Remaining Balance |
|---|---|---|---|---|---|
| 1 | 11-21-2017 | 10,686.78 | 8,211.30 | 2,475.48 | 161,750.52 |
| 2 | 11-21-2018 | 10,686.78 | 8,087.53 | 2,599.25 | 159,151.27 |
| 3 | 11-21-2019 | 167,108.83 | 7,957.56 | 159,151.27 | 0.00 |
| TOTALS: | | 188,482.39 | 24,256.39 | 164,226.00 | |

**NOTICE:** This is an estimated loan amortization schedule. Actual amounts may vary if payments are made on different dates or in different amounts.

[illegible] 2015 All Rights Reserved GY ZACFRLPL\AMORT FC TR-591

LIMITED LIABILITY COM   .NY RESOLUTION TO BORR   V / GRANT COLLATERAL

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $164,226.00 | 11-21-2016 | 11-21-2019 | 4395683 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Company:**  ECO RANCHES
24050 N. 6000 W.
Plymouth, UT 84330

**Lender:**  Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

---

WE, THE UNDERSIGNED, DO HEREBY CERTIFY THAT:

**THE COMPANY'S EXISTENCE.** The complete and correct name of the Company is ECO RANCHES ("Company"). The Company is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Utah. The Company is duly authorized to transact business in all other states in which the Company is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which the Company is doing business. Specifically, the Company is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. The Company has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. The Company maintains an office at 24050 N. 6000 W., Plymouth, UT 84330. Unless the Company has designated otherwise in writing, the principal office is the office at which the Company keeps its books and records. The Company will notify Lender prior to any change in the location of the Company's state of organization or any change in the Company's name. The Company shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to the Company and the Company's business activities.

**RESOLUTIONS ADOPTED.** At a meeting of the members of the Company, duly called and held on _____, at which a quorum was present and voting, or by other duly authorized action in lieu of a meeting, the resolutions set forth in this Resolution were adopted.

**MEMBER.** The following named person is a member of ECO RANCHES:

| NAMES | TITLES | AUTHORIZED | ACTUAL SIGNATURES |
|---|---|---|---|
| Shain Stoddard | Member | Y    X | |

**ACTIONS AUTHORIZED.** The authorized person listed above may enter into any agreements of any nature with Lender, and those agreements will bind the Company. Specifically, but without limitation, the authorized person is authorized, empowered, and directed to do the following for and on behalf of the Company:

**Borrow Money.** To borrow, as a cosigner or otherwise, from time to time from Lender, on such terms as may be agreed upon between the Company and Lender, such sum or sums of money as in his or her judgment should be borrowed, without limitation.

**Execute Notes.** To execute and deliver to Lender the promissory note or notes, or other evidence of the Company's credit accommodations, on Lender's forms, at such rates of interest and on such terms as may be agreed upon, evidencing the sums of money so borrowed or any of the Company's indebtedness to Lender, and also to execute and deliver to Lender one or more renewals, extensions, modifications, refinancings, consolidations, or substitutions for one or more of the notes, any portion of the notes, or any other evidence of credit accommodations.

**Grant Security.** To mortgage, pledge, transfer, endorse, hypothecate, or otherwise encumber and deliver to Lender any property now or hereafter belonging to the Company or in which the Company now or hereafter may have an interest, including without limitation all of the Company's real property and all of the Company's personal property (tangible or intangible), as security for the payment of any loans or credit accommodations so obtained, any promissory notes so executed (including any amendments to or modifications, renewals, and extensions of such promissory notes), or any other or further indebtedness of the Company to Lender at any time owing, however the same may be evidenced. Such property may be mortgaged, pledged, transferred, endorsed, hypothecated or encumbered at the time such loans are obtained or such indebtedness is incurred, or at any other time or times, and may be either in addition to or in lieu of any property theretofore mortgaged, pledged, transferred, endorsed, hypothecated or encumbered.

**Execute Security Documents.** To execute and deliver to Lender the forms of mortgage, deed of trust, pledge agreement, hypothecation agreement, and other security agreements and financing statements which Lender may require and which shall evidence the terms and conditions under and pursuant to which such liens and encumbrances, or any of them, are given; and also to execute and deliver to Lender any other written instruments, any chattel paper, or any other collateral, of any kind or nature, which Lender may deem necessary or proper in connection with or pertaining to the giving of the liens and encumbrances.

**Negotiate Items.** To draw, endorse, and discount with Lender all drafts, trade acceptances, promissory notes, or other evidences of indebtedness payable to or belonging to the Company or in which the Company may have an interest, and either to receive cash for the same or to cause such proceeds to be credited to the Company's account with Lender, or to cause such other disposition of the proceeds derived therefrom as he or she may deem advisable.

**Further Acts.** In the case of lines of credit, to designate additional or alternate individuals as being authorized to request advances under such lines, and in all cases, to do and perform such other acts and things, to pay any and all fees and costs, and to execute and deliver such other documents and agreements as the member may in his or her discretion deem reasonably necessary or proper in order to carry into effect the provisions of this Resolution.

**ASSUMED BUSINESS NAMES.** The Company has filed or recorded all documents or filings required by law relating to all assumed business names used by the Company. Excluding the name of the Company, the following is a complete list of all assumed business names under which the Company does business: None.

**NOTICES TO LENDER.** The Company will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (A) change in the Company's name; (B) change in the Company's assumed business name(s); (C) change in the management or in the Members of the Company; (D) change in the authorized signer(s); (E) change in the Company's principal office address; (F) change in the Company's state of organization; (G) conversion of the Company to a new or different type of business entity; or (H) change in any other aspect of the Company that directly or indirectly relates to any agreements between the Company and Lender. No change in the Company's name or state of organization will take effect until after Lender has received notice.

CERTIFICATION CONCERNING MEMBERS AND RESOLUTIONS. The member named above is duly elected, appointed, or employed by or for the

LIMITED LIABILITY C      PANY RESOLUTION TO BORRO'      GRANT COLLATERAL
(Continued)

Loan No: 4395683                                                                    Page 2

Company, as the case may be, and occupies the position set opposite his or her respective name. This Resolution now stands of record on the books of the Company, is in full force and effect, and has not been modified or revoked in any manner whatsoever.

CONTINUING VALIDITY. Any and all acts authorized pursuant to this Resolution and performed prior to the passage of this Resolution are hereby ratified and approved. This Resolution shall be continuing, shall remain in full force and effect and Lender may rely on it until written notice of its revocation shall have been delivered to and received by Lender at Lender's address shown above (or such addresses as Lender may designate from time to time). Any such notice shall not affect any of the Company's agreements or commitments in effect at the time notice is given.

IN TESTIMONY WHEREOF, we have hereunto set our hand and attest that the signature set opposite the name listed above is his or her genuine signature.

We each have read all the provisions of this Resolution, and we each personally and on behalf of the Company certify that all statements and representations made in this Resolution are true and correct. This Limited Liability Company Resolution to Borrow / Grant Collateral is dated November 21, 2016.

CERTIFIED TO AND ATTESTED BY:

By: _____

Authorized Signer for ECO RANCHES

NOTE: If the member signing this Resolution is designated by the foregoing document as one of the members authorized to act on the Company's behalf, it is advisable to have this Resolution signed by at least one non-authorized member of the Company.

# BUSINESS LOAN AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| 164,226.00 | 11-21-2016 | 11-21-2019 | 4395683 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| | | | |
|---|---|---|---|
| **Borrower:** | ECO RANCHES<br>24050 N. 6000 W.<br>Plymouth, UT 84330 | **Lender:** | Security Investment Corporation<br>2970 South Main St.<br>Suite 250<br>Salt Lake City, UT 84115 |

THIS BUSINESS LOAN AGREEMENT dated November 21, 2016, is made and executed between ECO RANCHES ("Borrower") and Security Investment Corporation ("Lender") on the following terms and conditions. Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement. Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

**TERM.** This Agreement shall be effective as of November 21, 2016, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this Agreement.

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

**Loan Documents.** Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) Security Agreements granting to Lender security interests in the Collateral; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) evidence of insurance as required below; (5) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

**Borrower's Authorization.** Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require.

**Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Representations and Warranties.** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

**No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

**Organization.** Borrower is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Utah. Borrower is duly authorized to transact business in all other states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Specifically, Borrower is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Borrower has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Borrower maintains an office at 24050 N. 6000 W., Plymouth, UT 84330. Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's state of organization or any change in Borrower's name. Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

**Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: None.

**Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Borrower's articles of organization or membership agreements, or (b) any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

**Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

**Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

**Hazardous Substances.** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During

Case 2:18-cr-00365-JNP   Document 1440   Filed 04/24/23   PageID.35627   Page 88 of 298
**BUSINESS LOAN AGREEMENT**
**(Continued)**

Loan No: 4395683                                                                                                                Page 2

the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**Additional Information.** Furnish such additional information and statements, as Lender may request from time to time.

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.** Use all Loan proceeds solely for Borrower's business operations, unless specifically consented to the contrary by Lender in writing.

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits. Provided however, Borrower will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (1) the legality of the same shall be contested in good faith by appropriate proceedings, and (2) Borrower shall have established on Borrower's books adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with GAAP.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**BUSINESS LOAN AGREEMENT**
**(Continued)**

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Environmental Studies.** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Compliance with Governmental Requirements.** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and as long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Environmental Compliance and Reports.** Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will  (A)  be payable on demand;  (B)  be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (1)  the term of any applicable insurance policy; or  (2)  the remaining term of the Note; or  (C)  be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Capital Expenditures.** Make or contract to make capital expenditures, including leasehold improvements, in any fiscal year in excess of $_____ or incur liability for rentals of property (including both real and personal property) in an amount which, together with capital expenditures, shall in any fiscal year exceed such sum.

**Continuity of Operations.**  (1)  Engage in any business activities substantially different than those in which Borrower is presently engaged,  (2)  cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business, or  (3)  make any distribution with respect to any capital account, whether by reduction of capital or otherwise.

**Agreements.** Enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

**CESSATION OF ADVANCES.** If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if:  (A)  Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender;  (B)  Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt;  (C)  there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or  (D)  any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Loan.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes

false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**EFFECT OF AN EVENT OF DEFAULT.** If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not Lender's salaried employee and whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Utah without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Utah.

**Choice of Venue.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Salt Lake County, State of Utah.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Unless otherwise provided by applicable law, any notice required to be given under this Agreement or required by law shall be given in writing, and shall be effective when actually delivered in accordance with the law or with this Agreement, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep

**BUSINESS LOAN AGREEMENT**
**(Continued)**

Page 5

Loan No: 4395683

Lender informed at all times of Borrower's current address. Unless otherwise provided by applicable law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Subsidiaries and Affiliates of Borrower.** To the extent the context of any provisions of this Agreement makes it appropriate, including without limitation any representation, warranty or covenant, the word "Borrower" as used in this Agreement shall include all of Borrower's subsidiaries and affiliates. Notwithstanding the foregoing however, under no circumstances shall this Agreement be construed to require Lender to make any Loan or other financial accommodation to any of Borrower's subsidiaries or affiliates.

**Successors and Assigns.** All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.** Borrower understands and agrees that in making the Loan, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the making of the Loan and delivery to Lender of the Related Documents, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

**Borrower.** The word "Borrower" means ECO RANCHES and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by law or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Security Investment Corporation, its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

**Note.** The word "Note" means the Note dated November 21, 2016 and executed by ECO RANCHES in the principal amount of $164,226.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the

# BUSINESS LOAN AGREEMENT
## (Continued)

Loan No: 4395683

Page 6

note or credit agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

**FINAL AGREEMENT.** Borrower understands that this Agreement and the related loan documents are the final expression of the agreement between Lender and Borrower and may not be contradicted by evidence of any alleged oral agreement.

**BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED NOVEMBER 21, 2016.**

**BORROWER:**

**ECO RANCHES**

By: _____
    Shain Stoddard, Member of ECO RANCHES

**LENDER:**

**SECURITY INVESTMENT CORPORATION**

By: _____
    Authorized Signer

# AGRICULTURAL LOAN AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $164,226.00 | 11 21 2016 | 11-21-2019 | 4396683 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "* * * *" has been omitted due to text length limitations.

Borrower:   ECO RANCHES
            24050 N. 6000 W.
            Plymouth, UT  84330

Lender:   Security Investment Corporation
          2970 South Main St.
          Suite 250
          Salt Lake City, UT  84115

---

**THIS AGRICULTURAL LOAN AGREEMENT** dated November 21, 2016, is made and executed between ECO RANCHES ("Borrower") and Security Investment Corporation ("Lender") on the following terms and conditions. Borrower has applied to Lender for an agricultural loan as described below. Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement, and (B) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

**TERM.** This Agreement shall be effective as of November 21, 2016, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this Agreement.

THE LOAN. The following terms and conditions apply to the Loan:

The **Loan Commitment.** On and after the date of this Agreement, or such earlier date as Lender and Borrower may agree, Lender, at its option and in its sole discretion, may lend to Borrower the principal amount of $164,226.00.

The **Loan Documents.** The Loan will be evidenced by a promissory note in the form of an exhibit attached to and made a part of this Agreement, or if no exhibit is attached, then in form and substance satisfactory to Lender (the "Note"), together with such Related Documents as Lender may require for the Loan, all in form and substance satisfactory to Lender.

**Loan Disbursements.** Loan disbursements will be made upon Borrower's completing and delivering to Lender for each disbursement a disbursement request on Lender's form. In no event, however, will Lender be required to make any Loan advances after such time as the parties may agree in writing to terminate this Agreement.

**Disbursements of Proceeds.** Any Loan advance made under this Agreement shall be conclusively presumed to have been made to and for the benefit of Borrower whenever the proceeds of such advance are either (1) disbursed in accordance with the terms of this Agreement, (2) disbursed in accordance with instructions from Borrower or any of Borrower's authorized employees or agents, or (3) deposited into any demand, savings, or other account maintained by Borrower with Lender.

**No Renewal or Future Loan Obligation.** Lender has not committed, and is not committing at this time, to finance Borrower's next year's farm loan requirements. Any such future loan or loans may be made solely at the option of Lender and on such terms and conditions as Lender may then require. Borrower understands that no prior course of dealing, no usage of trade, no oral statements or comments by Lender or its employees or other agents will be deemed to be a commitment by Lender to lend money to Borrower or to any other person, unless the same is reduced to writing and signed by an authorized representative of Lender.

SALE OF COLLATERAL AND APPLICATION OF PROCEEDS. The following terms and conditions relate to any Collateral for the Loan and the application of proceeds of Collateral:

**Sale of Collateral.** Borrower may sell or otherwise dispose of Collateral only if (1) Borrower delivers the proceeds to Lender, and (2) Borrower complies with the other terms of this Agreement. If Borrower wants to use proceeds for other than delivery to Lender, Borrower may not sell the Collateral without Lender's prior written consent.

**Buyers, Consignees, and Other Transferees.** The following provisions relate to any sale, consignment or transfer of crops, livestock, or other farm products included as all or a part of the Collateral:

(1)  To induce Lender to extend the Loan, Borrower represents, warrants and covenants to Lender that Borrower will sell, consign or transfer the Collateral only to those persons whose names and addresses have been set forth on sales schedules delivered to Lender. Each schedule shall be in such form as Lender may require, including identification of each type of Collateral. Borrower also shall notify Lender of the name and address of each additional person to whom or through whom the Collateral may be sold, consigned or transferred. All such schedules and notifications shall be in writing and shall be delivered to Lender not less than fourteen (14) days prior to any such sale, consignment or transfer of the Collateral.

(2)  Borrower acknowledges that if the Collateral is sold, consigned, or transferred to any person not listed on a schedule delivered to Lender as provided above, at least seven (7) days prior to such sale, consignment, or transfer, and if Lender has not received an accounting (including the proceeds) of such sale, consignment or transfer within ten (10) days of the sale, consignment or transfer, then UNDER FEDERAL LAW, BORROWER SHALL BE SUBJECT TO A FINE WHICH IS THE GREATER OF $5,000 OR 15% OF THE VALUE OR BENEFIT RECEIVED FROM THE SALE, CONSIGNMENT OR TRANSFER TO AN UNLISTED BUYER, CONSIGNEE OR TRANSFEREE.

**Delivery of Proceeds and Payments.** Borrower will immediately deliver or otherwise make available to Lender all proceeds of any sale, consignment, lease, license, exchange or other disposition of the Collateral and all other proceeds of the Collateral, in a form acceptable to Lender. All chattel paper, contracts, warehouse receipts, documents, and other evidences of ownership or obligations relating to the Collateral, whether issued by a co-op, grain elevator, warehouse, marketing entity or trustee, and all accounts and other proceeds of the Collateral shall be immediately endorsed, assigned and delivered by Borrower to Lender, in a form acceptable to Lender, as security for the Loan. At any time before or after the occurrence of an Event of Default, Lender may collect all proceeds of the Collateral without notice to Borrower. All proceeds of the Collateral, when received by Lender, may at Lender's sole discretion be applied to the Loan. Borrower grants Lender a limited power of attorney to sign or endorse Borrower's name on all writings described in this section.

**Application of Proceeds and Payments.** Lender, in its sole discretion, may apply proceeds and payments of Collateral and any other payments Borrower may make on the Loan to either (1) accrued unpaid interest owing on the Note, (2) outstanding principal on the Note, or (3) any other amounts owing by Borrower to Lender in connection with the Loan.

CONDITIONS PRECEDENT TO EACH ADVANCE. Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

GRICULTURAL LOAN AGREEME
(Continued)

Loan No: 4395683                                                                                           Page 2

**Loan Documents.** Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) Security Agreements granting to Lender security interests in the Collateral; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) Effective Financing Statements as required by any applicable state central filing system giving notice of Lender's security interests to prospective purchasers of Borrower's farm products; (5) evidence of insurance as required below; (6) together with all such Related Documents as Lender may require for the Loan, all in form and substance satisfactory to Lender and Lender's counsel.

**Borrower's Authorization.** Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require.

**Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Representations and Warranties.** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

**No Event of Default.** There shall not exist, at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

**Organization.** Borrower is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Utah. Borrower is duly authorized to transact business in all other states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Specifically, Borrower is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Borrower has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Borrower maintains an office at 24050 N. 6000 W., Plymouth, UT 84330. Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's state of organization or any change in Borrower's name. Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

**Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: None.

**Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Borrower's articles of organization or membership agreements, or (b) any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

**Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

**Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

**Hazardous Substances.** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in

GRICULTURAL LOAN AGREEME
(Continued)

writing.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**Additional Information.** Furnish such additional information and statements, as Lender may request from time to time.

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.** Use all Loan proceeds solely for the purposes specified in this Agreement.

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits. Provided however, Borrower will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (1) the legality of the same shall be contested in good faith by appropriate proceedings, and (2) Borrower shall have established on Borrower's books adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with GAAP.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Compliance with Governmental Requirements.** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Environmental Studies.** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Environmental Compliance and Reports.** Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental

**GRICULTURAL LOAN AGREEME**
**(Continued)**

Page 4

Loan No: 4395683

authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Capital Expenditures.** Make or contract to make capital expenditures, including leasehold improvements, in any fiscal year in excess of $_____ or incur liability for rentals of property (including both real and personal property) in an amount which, together with capital expenditures, shall in any fiscal year exceed such sum.

**Continuity of Operations.** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business, or (3) make any distribution with respect to any capital account, whether by reduction of capital or otherwise.

**Agreements.** Enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

**CESSATION OF ADVANCES.** Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds under this Agreement or under any other agreement if: (A) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender; (B) Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or (D) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Loan.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**EFFECT OF AN EVENT OF DEFAULT.** If Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies

**GRICULTURAL LOAN AGREEME**
(Continued)

Page 5

Loan No: 4395683

provided in the Related Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not Lender's salaried employee and whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Utah without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Utah.

**Choice of Venue.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Salt Lake County, State of Utah.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, shall constitute a waiver of any of Lender's rights or of any of Borrower's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Unless otherwise provided by applicable law, any notice required to be given under this Agreement or required by law shall be given in writing, and shall be effective when actually delivered in accordance with the law or with this Agreement, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided by applicable law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Subsidiaries and Affiliates of Borrower.** To the extent the context of any provisions of this Agreement makes it appropriate, including without limitation any representation, warranty or covenant, the word "Borrower" as used in this Agreement shall include all of Borrower's subsidiaries and affiliates. Notwithstanding the foregoing however, under no circumstances shall this Agreement be construed to require Lender to make any Loan or other financial accommodation to any of Borrower's subsidiaries or affiliates.

**Successors and Assigns.** All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.** Borrower understands and agrees that in making the Loan, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the making of the Loan and delivery to Lender of the Related Documents, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Agricultural Loan Agreement, as this Agricultural Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Agricultural Loan Agreement from time to time.

**Borrower.** The word "Borrower" means ECO RANCHES and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Security Investment Corporation, its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation, the loan described in the Section titled "The Loan."

**Note.** The word "Note" means the Note dated November 21, 2016 and executed by ECO RANCHES in the principal amount of $164,226.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

**FINAL AGREEMENT.** Borrower understands that this Agreement and the related loan documents are the final expression of the agreement between Lender and Borrower and may not be contradicted by evidence of any alleged oral agreement.

**BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS AGRICULTURAL LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS AGRICULTURAL LOAN AGREEMENT IS DATED NOVEMBER 21, 2016.**

BORROWER:

ECO RANCHES

By: _____
Shain Stoddard, Member of ECO RANCHES

**GRICULTURAL LOAN AGREEME**
**(Continued)**

Loan No: 4395683

Page 7

---

LENDER:

SECURITY INVESTMENT CORPORATION

By: _____
     Authorized Signer

---

LaserPro, Ver. 15.4.20.033  Copr. D • H USA Corporation 1997. 2016.   All Rights Reserved.   - UT  Z:\CFI\LPL\C42.FC  TR-531

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $164,226.00 | 11-21-2016 | 11-21-2019 | 4395683 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** ECO RANCHES
24050 N. 6000 W.
Plymouth, UT 84330

**Lender:** Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

---

**Principal Amount: $164,226.00**  **Interest Rate: 5.000%**  **Date of Note: November 21, 2016**

**PROMISE TO PAY.** ECO RANCHES ("Borrower") promises to pay to Security Investment Corporation ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Sixty-four Thousand Two Hundred Twenty-six & 00/100 Dollars ($164,226.00), together with interest on the unpaid principal balance from November 21, 2016, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 5.000% per annum, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 2 regular payments of $10,688.78 each and one irregular last payment estimated at $167,108.83. Borrower's first payment is due November 21, 2017, and all subsequent payments are due on the same day of each year after that. Borrower's final payment will be due on November 21, 2019, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs; then to any late charges; then to any accrued unpaid interest; and then to principal. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Security Investment Corporation, 2970 South Main St., Suite 250, Salt Lake City, UT 84115.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by 2.000 percentage points. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including without limitation all reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

# PROMISSORY NOTE
## (Continued)

Loan No: 4395683                                                                                      Page 2

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Utah without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Utah.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Salt Lake County, State of Utah.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: _____.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

ECO RANCHES

By: _____
   Shain Stoddard, Member of ECO RANCHES

LaserPro, Ver. 15.4.30.033  Copr., D+H USA Corporation 1997, 2016.  All Rights Reserved.   - UT  Z:\CFI\LPL\D20.FC  TR-551

# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $164,226.00 | 11-21-2016 | 11-21-2019 | 4395683 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

Borrower: ECO RANCHES
24050 N. 6000 W.
Plymouth, UT 84330

Lender: Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

**LOAN TYPE.** This is a Fixed Rate (5.000%) Nondisclosable Loan to a Limited Liability Company for $164,226.00 due on November 21, 2019.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

☐ Personal, Family, or Household Purposes or Personal Investment.

☒ Business (Including Real Estate Investment).

**SPECIFIC PURPOSE.** The specific purpose of this loan is: purchase land in Box Elder County.

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $164,226.00 as follows:

| | |
|---|---|
| Amount paid to others on Borrower's behalf: | $162,600.00 |
| $162,600.00 to WRE REAL ESTATE HOLDINGS, LLC | |
| Total Financed Prepaid Finance Charges: | $1,626.00 |
| $1,626.00 Loan Origination Fee (%) | |
| Note Principal: | $164,226.00 |

**FINAL AGREEMENT.** Borrower understands that the loan documents signed in connection with this loan are the final expression of the agreement between Lender and Borrower and may not be contradicted by evidence of any alleged oral agreement.

**FINANCIAL CONDITION.** BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED NOVEMBER 21, 2016.

BORROWER:

ECO RANCHES

By: ______________________________
Shain Stoddard, Member of ECO RANCHES

# OTICE OF FINAL AGREEME

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $164,226.00 | 11-21-2016 | 11-21-2019 | 4395683 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

Borrower: ECO RANCHES
24050 N. 6000 W.
Plymouth, UT 84330

Lender: Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

**BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT: (A) THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, (B) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND (C) THE WRITTEN LOAN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.**

As used in this Notice, the following terms have the following meanings:

**Loan.** The term "Loan" means the following described loan: a Fixed Rate (5.000%) Nondisclosable Loan to a Limited Liability Company for $164,226.00 due on November 21, 2019.

**Loan Agreement.** The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

LOAN DOCUMENTS

- LLC Resolution: ECO RANCHES
- Agricultural Loan Agreement
- UT Deed of Trust for Real Property located at Land in , Plymouth, UT 8484330
- Business Loan Agreement
- Promissory Note
- Disbursement Request and Authorization
- Notice of Final Agreement

**Parties.** The term "Parties" means Security Investment Corporation and any and all entities or individuals who are obligated to repay the loan or have pledged property as security for the Loan, including without limitation the following:

Borrower: ECO RANCHES
Grantor(s): ECO RANCHES

Each Party who signs below, other than Security Investment Corporation, acknowledges, represents, and warrants to Security Investment Corporation that it has received, read and understood this Notice of Final Agreement. This Notice is dated November 21, 2016.

BORROWER:

ECO RANCHES

By: ______________________
Shain Stoddard, Member of ECO RANCHES

LENDER:

SECURITY INVESTMENT CORPORATION

X ______________________
Authorized Signer

# OTICE OF FINAL AGREEME

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $164,226.00 | 11-21-2016 | 11-21-2019 | 4395683 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** ECO RANCHES
24050 N. 6000 W.
Plymouth, UT 84330

**Lender:** Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

**BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT: (A) THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, (B) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND (C) THE WRITTEN LOAN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.**

As used in this Notice, the following terms have the following meanings:

**Loan.** The term "Loan" means the following described loan: a Fixed Rate (5.000%) Nondisclosable Loan to a Limited Liability Company for $164,226.00 due on November 21, 2019.

**Loan Agreement.** The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

## LOAN DOCUMENTS

- LLC Resolution: ECO RANCHES
- Agricultural Loan Agreement
- UT Deed of Trust for Real Property located at Land in , Plymouth, UT 8484330
- Business Loan Agreement
- Promissory Note
- Disbursement Request and Authorization
- Notice of Final Agreement

**Parties.** The term "Parties" means Security Investment Corporation and any and all entities or individuals who are obligated to repay the loan or have pledged property as security for the Loan, including without limitation the following:

Borrower: ECO RANCHES
Grantor(s): ECO RANCHES

Each Party who signs below, other than Security Investment Corporation, acknowledges, represents, and warrants to Security Investment Corporation that it has received, read and understood this Notice of Final Agreement. This Notice is dated November 21, 2016.

BORROWER:

ECO RANCHES

By: ______________________
Shain Stoddard, Member of ECO RANCHES

LENDER:

SECURITY INVESTMENT CORPORATION

X ______________________
Authorized Signer

# BOARDING DATA SHEET

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $164,226.00 | 11-21-2016 | 11-21-2019 | 4395683 | | | 02 | - |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** ECO RANCHES
24050 N. 6000 W.
Plymouth, UT 84330

**Lender:** Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

## CUSTOMER DATA SUMMARY

ECO RANCHES
Street Address:24050 N. 6000 W.
Primary Phone:

81-3359868 Limited Liability Company
Plymouth UT 84330
Ext: Instructions:

Borrower
County: Box Elder

Cust #:
Phone:

Resolution: New Resolution

Member of ECO RANCHES:

Title: Member

Shain Stoddard
Street Address:1598 N. 600 W.
Mailing Address:
Primary Phone:

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 Individual
West Bountifu UT 84087
Ext Instructions:

Member
County: Davis
County:

Cust #:
Phone:
Birthday: 05-06-1968

## TRANSACTION SUMMARY

Transaction No.: 591
Product Category:
Loan Policy: Commercial

Product Description:
Purpose: Loan is not for Personal, Family, Household Purposes or Personal Investment Purposes.
Specific Loan Purpose: purchase land in Box Elder County

## CLASSIFICATION DATA

Application No:
pplication Date: 10-12-2016
.oan No: 4395683
Loan Date: 11-21-2016
Officer: 02 Davis, Ruth
Processor No: 02 Davis, Ruth
Collateral Code:
Charge Code:
Call Code:
User Code 3:
User Code 6:
Automatic Payments Account:

Branch:
Dept:
Division:
Region:
Loan Type:
Loan Class: New Loan
Purpose Code:
Class Code:
User Code 1:
User Code 4:
User Code 7:

Employee Loan: No
Restricted Access: No
Reg O Loan:
Comments:

Portfolio Code:
Host System:
User Code 2:
User Code 5:
User Code 8:

## COLLATERAL SUMMARY

| Type | SubType | Description | State | Value | Purchase Money | Collateral Code |
|---|---|---|---|---|---|---|
| Real Estate | Land | Land in , Plymouth, UT 8484330 | UT | | N | |

Owner(s):

ECO RANCHES
Street Address:24050 N. 6000 W.
Primary Phone:

81-3359868 Limited Liability Company
Plymouth UT 84330
Ext: Instructions:

County: Box Elder

Cust #:
Phone:

Resolution: New Resolution

Member of ECO RANCHES:

Title: Member

Shain Stoddard
Street Address:1598 N. 600 W.
Mailing Address:
Primary Phone:

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 Individual
West Bountifu UT 84087
Ext: Instructions:

Member
County: Davis
County:

Cust #:
Phone:
Birthday: 05-06-1968

BOARDING DATA SHEET
(Continued)

Loan No: 4395683

Page 2

## PAYMENT DATA

|  | BALLOON LOAN (Fixed Rate) | |
|---|---|---|
|  | Financed | In Cash |
| AMOUNT REQUESTED: | $162,600.00 | |
| PREPAID FINANCE CHARGES: | | |
| Loan Origination Fee (%) | 1,626.00 | |
| SECURITY INTEREST CHARGES: | 0.00 | |
| NOTE AMOUNT: | $164,226.00 | $0.00 |

DISBURSEMENTS:
    Payable:    WRE REAL ESTATE HOLDINGS, LLC                    $162,600.00

PAYMENT CALCULATION:

| No. of Pmts | Amount | Due |
|---|---|---|
| 2 | $10,686.78 | Annual beginning 11-21-2017 |
| 1 | $167,108.83 | Final Payment is due 11-21-2019 |

| Disbursement Date: | 11-21-2016 |
|---|---|
| Due Date: | 11-21-2019 |
| Periods to Amortize: | 30 |

INTEREST RATE SELECTION:

| Interest Method: | 365/365 |
|---|---|
| Interest Rate: | 5.000 |

| APR 5.372% | FINANCE CHARGE $25,882.39 | AMOUNT FINANCED $162,600.00 | TOTAL OF PAYMENTS $188,482.39 |
|---|---|---|---|

## OFFICER COMMENTS

Primary Source of Repayment:    Rental Income
Secondary Source of Repayment:

| Grade | Date | Officer Number |
|---|---|---|
| | | |

# LOAN REQUEST SUMMARY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| ,775.00 | 09-14-2016 | 10-14-2019 | 62-4000683 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** ECO RANCHES
24050 N. 6000 W.
Plymouth, UT 84330

**Lender:** Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

BALLOON LOAN
(Fixed Rate)

| | Financed | In Cash |
|---|---|---|
| **AMOUNT REQUESTED:** | $426,500.00 | |
| **PREPAID FINANCE CHARGES:** | | |
| Loan Origination Fee | 4,275.00 | |
| **SECURITY INTEREST CHARGES:** | 0.00 | |
| **NOTE AMOUNT:** | $430,775.00 | $0.00 |

**PAYMENT CALCULATION:**

| | |
|---|---|
| Interest Method: | 365/365 |
| Disbursement Date: | 09-14-2016 |
| First Payment Date: | 10-14-2017 |
| Due Date: | 10-14-2019 |
| Payment Period: | Annual |
| Periods to Amortize: | 30 |
| Total Number of Pmts: | 3 |
| Interest Rate: | 5.000% |
| Credit Insurance: | None |
| Amount of Reg Pmt: | $28,141.81 |
| Final Payment: | $440,052.43 |

**Payment Schedule.** Borrower's payment schedule consists of the following: 2 annual consecutive payments of $28,141.81 each, beginning October 14, 2017, with interest calculated on the unpaid principal balances at an interest rate of 5.000% per annum; and one payment of $440,052.43 on October 14, 2019, with interest calculated on the unpaid principal balances at an interest rate of 5.000% per annum. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under the Note.

| APR | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| 5.354% | $69,836.05 | $426,500.00 | $496,336.05 |

**COLLATERAL:** Real Estate Collateral.

**TRANSACTION NUMBER:** 554

**NOTICE:** This Loan Request Summary is for informational purposes only and does not obligate Lender in any way to make this loan or any other loan to Borrower. The fees and charges listed above are estimates only; and, if a loan is made, different or additional fees and charges may be imposed.

# USINESS LOAN AGREEMEN

| ncipal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer 02 | Initials |
|---|---|---|---|---|---|---|---|
| 775.00 | 09-14-2016 | 10-14-2019 | 62-4000683 | | | | |

arences in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** ECO RANCHES
24050 N. 6000 W.
Plymouth, UT 84330

**Lender:** Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

THIS BUSINESS LOAN AGREEMENT dated September 14, 2016, is made and executed between ECO RANCHES ("Borrower") and Security Investment Corporation ("Lender") on the following terms and conditions. Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement. Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

**TERM.** This Agreement shall be effective as of September 14, 2016, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this Agreement.

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

**Loan Documents.** Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) Security Agreements granting to Lender security interests in the Collateral; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) evidence of insurance as required below; (5) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

**Borrower's Authorization.** Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require.

**Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Representations and Warranties.** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

**No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times shall be, duly organized, validly existing, and in good

**Organization.** Borrower is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Utah. Borrower is duly authorized to transact business in all other states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Specifically, Borrower is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Borrower has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Borrower maintains an office at 24050 N. 6000 W., Plymouth, UT 84330. Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower shall notify Lender prior to any change in the location of Borrower's state of organization or any change in Borrower's name. Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

**Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: None.

**Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Borrower's articles of organization or membership agreements, or (b) any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

**Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

**Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

**Hazardous Substances.** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During

# BUSINESS LOAN AGREEMENT
## (Continued)

Page 2

Loan No: 62-4000683

period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**Additional Information.** Furnish such additional information and statements, as Lender may request from time to time.

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.** Use all Loan proceeds solely for Borrower's business operations, unless specifically consented to the contrary by Lender in writing.

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits. Provided however, Borrower will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (1) the legality of the same shall be contested in good faith by appropriate proceedings, and (2) Borrower shall have established on Borrower's books adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with GAAP.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

# BUSINESS LOAN AGREEMENT
## (Continued)

Page 3

Loan No: 62-4000683

perations.  Maintain executive and management personnel with substantially the same qualifications and experience as the present
cutive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its
usiness affairs in a reasonable and prudent manner.

**Environmental Studies.**  Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as
may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined
as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any
property or any facility owned, leased or used by Borrower.

**Compliance with Governmental Requirements.**  Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all
governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the
Collateral, including without limitation, the Americans With Disabilities Act.  Borrower may contest in good faith any such law, ordinance,
or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in
writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized.  Lender may
require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Inspection.**  Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and
Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of
Borrower's books, accounts, and records.  If Borrower now or at any time hereafter maintains any records (including without limitation
computer generated records and computer software programs for the generation of such records) in the possession of a third party,
Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to
provide Lender with copies of any records it may request, all at Borrower's expense.

**Environmental Compliance and Reports.**  Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to
exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property
owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental
activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental
authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons,
lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or
unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the
environment and/or other natural resources.

**Additional Assurances.**  Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements,
assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to
evidence and secure the Loans and to perfect all Security Interests.

**LENDER'S EXPENDITURES.**  If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if
ver fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to
ver fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to
rge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on
ver's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or
g all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for
insuring, maintaining and preserving any Collateral.  All such expenditures incurred or paid by Lender for such purposes will then bear interest at
the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower.  All such expenses will become
a part of the Indebtedness and, at Lender's option, will  (A)  be payable on demand;  (B)  be added to the balance of the Note and be
apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy;
or  (C)  the remaining term of the Note; or  (C)  be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.**  Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the
prior written consent of Lender:

**Capital Expenditures.**  Make or contract to make capital expenditures, including leasehold improvements, in any fiscal year in excess of
_____  or incur liability for rentals of property (including both real and
$_____  personal property) in an amount which, together with capital expenditures, shall in any fiscal year exceed such sum.

**Continuity of Operations.**  (1)  Engage in any business activities substantially different than those in which Borrower is presently engaged,
(2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change its name, dissolve or transfer or sell
Collateral out of the ordinary course of business, or  (3)  make any distribution with respect to any capital account, whether by reduction of
capital or otherwise.

**Agreements.**  Enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's
obligations under this Agreement or in connection herewith.

**CESSATION OF ADVANCES.**  If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any
other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if:  (A)  Borrower or any Guarantor is in
default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with
Lender;  (B)  Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings,
or is adjudged a bankrupt;  (C)  there occurs a material adverse change in Borrower's financial condition, in the financial condition of any
Guarantor, or in the value of any Collateral securing any Loan; or  (D)  any Guarantor seeks, claims or otherwise attempts to limit, modify or
revoke such Guarantor's guaranty of the Loan or any other loan with Lender.

**RIGHT OF SETOFF.**  To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether
checking, savings, or some other account).  This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may
open in the future.  However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by
law.  Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any
and all such accounts.

**ULT.**  Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.**  Borrower fails to make any payment when due under the Loan.

**Other Defaults.**  Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement
or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other
agreement between Lender and Borrower.

**False Statements.**  Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this
Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes

# BUSINESS LOAN AGREEMENT
## (Continued)

Loan No: 62-4000683

se or misleading at any time thereafter.

th or Insolvency.  The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from ...rrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Defective Collateralization.**  This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Creditor or Forfeiture Proceedings.**  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender.  However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.**  Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.**  A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**EFFECT OF AN EVENT OF DEFAULT.**  If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional.  In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise.  Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently.  Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Agreement:

**Amendments.**  This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement.  No alteration of or amendment to this Agreement shall be effective unless given in writing nd signed by the party or parties sought to be charged or bound by the alteration or amendment.

**ttorneys' Fees; Expenses.**  Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable ttorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement.  Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement.  Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not Lender's salaried employee and whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services.  Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.**  Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Consent to Loan Participation.**  Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender.  Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters.  Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests.  Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests.  Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan.  Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**Governing Law.**  This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Utah without regard to its conflicts of law provisions.  This Agreement has been accepted by Lender in the State of Utah.

**Choice of Venue.**  If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Salt Lake County, State of Utah.

**No Waiver by Lender.**  Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender.  No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right.  A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement.  No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions.  Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.**  Unless otherwise provided by applicable law, any notice required to be given under this Agreement or required by law shall be given in writing, and shall be effective when actually delivered in accordance with the law or with this Agreement, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement.  Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address.  For notice purposes, Borrower agrees to keep

**BUSINESS LOAN AGREEMENT**
(Continued)

Page 5

Loan No: 62-4000683

der informed at all times of Borrower's current address.  Unless otherwise provided by applicable law, if there is more than one ower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

.verability.  If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance.  If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable.  If the offending provision cannot be so modified, it shall be considered deleted from this Agreement.  Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Subsidiaries and Affiliates of Borrower.**  To the extent the context of any provisions of this Agreement makes it appropriate, including without limitation representation, warranty or covenant, the word "Borrower" as used in this Agreement shall include all of Borrower's subsidiaries and affiliates.  Notwithstanding the foregoing however, under no circumstances shall this Agreement be construed to require Lender to make any Loan or other financial accommodation to any of Borrower's subsidiaries or affiliates.

**Successors and Assigns.**  All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns.  Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.**  Borrower understands and agrees that in making the Loan, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents.  Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the making of the Loan and delivery to Lender of the Related Documents, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.**  Time is of the essence in the performance of this Agreement.

**DEFINITIONS.**  The following capitalized words and terms shall have the following meanings when used in this Agreement.  Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America.  Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require.  Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code.  Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

**Advance.**  The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

greement.  The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified om time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

orrower.  The word "Borrower" means ECO RANCHES and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.**  The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Environmental Laws.**  The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.**  The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.**  The word "GAAP" means generally accepted accounting principles.

**Grantor.**  The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.**  The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Guaranty.**  The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.**  The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled.  The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws.  The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.**  The word "indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.**  The word "Lender" means Security Investment Corporation, its successors and assigns.

**Loan.**  The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

**Note.**  The word "Note" means the Note dated September 14, 2016 and executed by ECO RANCHES in the principal amount of $430,775.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the

**BUSINESS LOAN AGREEMENT**
**(Continued)**

Loan No: 62-4000683                                                                 Page 6

.te or credit agreement.

'ated Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental
.;eements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments,
agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

Security Agreement. The words "Security Agreement" mean and include without limitation any agreements, promises, covenants,
arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or
creating a Security Interest.

Security Interest. The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future,
whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel
mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention
contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law,
contract, or otherwise.

FINAL AGREEMENT. Borrower understands that this Agreement and the related loan documents are the final expression of the agreement
between Lender and Borrower and may not be contradicted by evidence of any alleged oral agreement.

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO
ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED SEPTEMBER 14, 2016.

BORROWER:

ECO RANCHES

By: _____
Isaac Martin, Member of ECO RANCHES

LENDER:

SECURITY INVESTMENT CORPORATION

_____
.horized Signer

LaserPro, Ver. 15.4.20.033 Copr. D+H USA Corporation 1997, 2016.  All Rights Reserved.  - UT  Z:\CFI\LPL\C40.FC  TR-554

# PROMISSORY NOTE

| cipal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| 775.00 | 09-14-2016 | 10-14-2019 | 62-4000683 | | | 02 | |

rances in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** ECO RANCHES
24050 N. 6000 W.
Plymouth, UT  84330

**Lender:** Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT  84115

**Principal Amount: $430,775.00**      **Interest Rate: 5.000%**      **Date of Note: September 14, 2016**

**PROMISE TO PAY.** ECO RANCHES ("Borrower") promises to pay to Security Investment Corporation ("Lender"), or order, in lawful money of the United States of America, the principal amount of Four Hundred Thirty Thousand Seven Hundred Seventy-five & 00/100 Dollars ($430,775.00), together with interest on the unpaid principal balance from September 14, 2016, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 5.000% per annum, until paid in full.  The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 2 regular payments of $28,141.81 each and one irregular last payment estimated at $440,052.43. Borrower's first payment is due October 14, 2017, and all subsequent payments are due on the same day of each year after that.  Borrower's final payment will be due on October 14, 2019, and will be for all principal and all accrued interest not yet paid.  Payments include principal and interest.  Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs; then to any late charges; then to any accrued unpaid interest; and then to principal.  Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.  All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law.  Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due.  Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule.  Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments.  Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language.  If Borrower sends such a payment, Lender may accept it without ___ng any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender.  All written ___munications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes ___ ___ent in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be ___ ___ed or delivered to:  Security Investment Corporation, 2970 South Main St., Suite 250, Salt Lake City, UT  84115.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by 2.000 percentage points.  However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender.  However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**___NDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest ___mediately due, and then Borrower will pay that amount.

**___TTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay.  Borrower will pay Lender that amount.  This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including without limitation all reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals.  If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**PROMISSORY NOTE**
(Continued)

Loan No: 62-4000683

Page 2

VERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of tate of Utah without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Utah.

.CE OF VENUE. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Salt Lake County, State of Utah.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES. Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: _____.

GENERAL PROVISIONS. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

RANCHES

_____

Isaac Martin, Member of ECO RANCHES

## AMORTIZATION SCHEDULE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| ),775.00 | 09-14-2016 | 10-14-2019 | 62-4000683 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:**  ECO RANCHES
24050 N. 6000 W.
Plymouth, UT 84330

**Lender:**  Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

Disbursement Date: September 14, 2016
Interest Rate: 5.000

Repayment Schedule: Balloon
Calculation Method: 365/365 U.S. Rule

| Payment Number | Payment Date | Payment Amount | Interest Paid | Principal Paid | Remaining Balance |
|----------------|--------------|----------------|---------------|----------------|-------------------|
| 1 | 10-14-2017 | 28,141.81 | 23,309.06 | 4,832.75 | 425,942.25 |
| 2 | 10-14-2018 | 28,141.81 | 21,297.11 | 6,844.70 | 419,097.55 |
| 3 | 10-14-2019 | 440,052.43 | 20,954.88 | 419,097.55 | 0.00 |

| TOTALS: | | 496,336.05 | 65,561.05 | 430,775.00 | |

NOTICE:  This is an estimated loan amortization schedule.  Actual amounts may vary if payments are made on different dates or in different amounts.

## AMORTIZATION SCHEDULE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| ,775.00 | 09-14-2016 | 10-14-2019 | 62-4000683 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item
Any item above containing "* * * *" has been omitted due to text length limitations

Borrower:   ECO RANCHES
24050 N. 6000 W.
Plymouth, UT  84330

Lender:   Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT  84115

Disbursement Date: September 14, 2016
Interest Rate: 5.000

Repayment Schedule: Balloon
Calculation Method: 365/365  U.S. Rule

| Payment Number | Payment Date | Payment Amount | Interest Paid | Principal Paid | Remaining Balance |
|---|---|---|---|---|---|
| 1 | 10-14-2017 | 28,141.81 | 23,309.06 | 4,832.75 | 425,942.25 |
| 2 | 10-14-2018 | 28,141.81 | 21,297.11 | 6,844.70 | 419,097.55 |
| 3 | 10-14-2019 | 440,052.43 | 20,954.88 | 419,097.55 | 0.00 |

| TOTALS: | | 496,336.05 | 65,561.05 | 430,775.00 | |

NOTICE:   This is an estimated loan amortization schedule.  Actual amounts may vary if payments are made on different dates or in different amounts.

# BOARDING DATA SHEET

| incipal | Loan Date | Maturity | Loan No 62-4000683 | Call / Coll | Account | Officer 02 | Initials |
|---------|-----------|----------|--------------------|-------------|---------|-----------|----------|
| ,775.00 | 09-14-2016 | 10-14-2019 | | | | | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Borrower:   ECO RANCHES
24050 N. 6000 W.
Plymouth, UT 84330

Lender:   Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

## CUSTOMER DATA SUMMARY

ECO RANCHES
Street Address: 24050 N. 6000 W.
Primary Phone:

81-3359868
Plymouth
Ext:

Limited Liability Company
UT 84330
Instructions:

Borrower
County: Box Elder

Cust #:
Phone:

Resolution:

Title: Member

Member of ECO RANCHES:

Isaac  Martin
Street Address: 24050 N. 6000 W.
Primary Phone:

Plymouth
Ext:

Individual
UT 84330
Instructions:

Member
County: Box Elder

Cust #
Phone:

## TRANSACTION SUMMARY

Transaction No.: 554
Product Category:
Loan Policy:  Commercial

Product Description:
Purpose: Loan is not for Personal, Family, Household Purposes or Personal Investment Purposes.
Specific Loan Purpose:  Purchase Property in Box Elder County

## CLASSIFICATION DATA

Application No:
Application Date: 07-29-2016
Loan No: 62-4000683
Date: 09-14-2016
r: 02 Davis, Ruth
essor No 02 Davis, Ruth
Collateral Code:
Charge Code:
Call Code:
User Code 3:
User Code 6:
Automatic Payments Account:

Branch:
Dept:
Division:
Region:
Loan Type:
Loan Class:  New Loan
Purpose Code:
Class Code:
User Code 1:
User Code 4:
User Code 7:

Employee Loan:  No
Restricted Access: No
Reg O Loan:
Comments:

Portfolio Code:
Host System:
User Code 2:
User Code 5:
User Code 8:

## COLLATERAL SUMMARY

| Type | SubType | Description | State | Value | Purchase Money | Collateral Code |
|------|---------|-------------|-------|-------|----------------|-----------------|
| Real Estate | Land | Land in Box Elder County, Plymouth, UT 84330 | UT | | | |

Owner(s):

ECO RANCHES
Street Address: 24050 N. 6000 W.
Primary Phone:

81-3359868
Plymouth
Ext:

Limited Liability Company
UT 84330
Instructions:

County: Box Elder

Cust #:
Phone:

Resolution:

Title: Member

Member of ECO RANCHES:

Isaac  Martin
Street Address: 24050 N. 6000 W.
Primary Phone:

Plymouth
Ext:

Individual
UT 84330
Instructions:

Member
County: Box Elder

Cust #:
Phone:

# BOARDING DATA SHEET
## (Continued)

Loan No: 62-4000683

Page 2

## AYMENT DATA

### BALLOON LOAN
(Fixed Rate)

|  | Financed | In Cash |
|---|---|---|
| AMOUNT REQUESTED: | $426,500.00 | |
| PREPAID FINANCE CHARGES: | | |
| Loan Origination Fee | 4,275.00 | |
| SECURITY INTEREST CHARGES. | 0.00 | $0.00 |
| NOTE AMOUNT: | $430,775.00 | |
| DISBURSEMENTS: | | $426,500.00 |
| Payable:   WRE REAL ESTATE HOLDINGS, LLC | | |

PAYMENT CALCULATION:

| No. of Pmts | Amount | Due |
|---|---|---|
| 2 | $28,141.81 | Annual beginning 10-14-2017 |
| 1 | $440,052.43 | Final Payment is due 10-14-2019 |

| Disbursement Date: | 09-14-2016 |
|---|---|
| Due Date: | 10-14-2019 |
| Periods to Amortize: | 30 |

INTEREST RATE SELECTION:

| Interest Method: | 365/365 |
|---|---|
| Interest Rate: | 5.000 |

| APR 5.354% | FINANCE CHARGE $69,836.05 | AMOUNT FINANCED $426,500.00 | TOTAL OF PAYMENTS $496,336.05 |
|---|---|---|---|

## OFFICER COMMENTS

Primary Source of Repayment:   Rental Income

Secondary Source of Repayment:

| Grade | Date | Officer Number |
|---|---|---|

## DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| ...775.00 | 09-14-2016 | 10-14-2019 | 62-4000683 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** ECO RANCHES
24050 N. 6000 W.
Plymouth, UT 84330

**Lender:** Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

**LOAN TYPE.** This is a Fixed Rate (5.000%) Nondisclosable Loan to a Limited Liability Company for $430,775.00 due on October 14, 2019.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

☐ Personal, Family, or Household Purposes or Personal Investment.

☒ Business (Including Real Estate Investment).

**SPECIFIC PURPOSE.** The specific purpose of this loan is: Purchase Property in Box Elder County.

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $430,775.00 as follows:

| | |
|---|---|
| **Amount paid to others on Borrower's behalf:** | $426,500.00 |
| $426,500.00 to WRE REAL ESTATE HOLDINGS, LLC | |
| **Total Financed Prepaid Finance Charges:** | $4,275.00 |
| $4,275.00 Loan Origination Fee | |
| | ———————— |
| **Note Principal:** | $430,775.00 |

**FINAL AGREEMENT.** Borrower understands that the loan documents signed in connection with this loan are the final expression of the agreement between Lender and Borrower and may not be contradicted by evidence of any alleged oral agreement.

**FINANCIAL CONDITION.** BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED SEPTEMBER 14, 2016.

**BORROWER:**

ECO RANCHES

By: _____
Isaac Martin, Member of ECO RANCHES

LaserPro, Ver. 16.4.20.033  Copr. D+H USA Corporation 1997, 2016.  All Rights Reserved.  UT  Z:\CFI\PL\I30.FC  TR-554

# NOTICE OF FINAL AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $430,775.00 | 09-14-2016 | 10-14-2019 | 62-4000683 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** ECO RANCHES
24050 N. 6000 W.
Plymouth, UT 84330

**Lender:** Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT:  (A) THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES,  (B) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND  (C) THE WRITTEN LOAN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.

As used in this Notice, the following terms have the following meanings:

**Loan.**  The term "Loan" means the following described loan:  a Fixed Rate (5.000%) Nondisclosable Loan to a Limited Liability Company for $430,775.00 due on October 14, 2019.

**Loan Agreement.**  The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

### LOAN DOCUMENTS

- Business Loan Agreement
- UT Deed of Trust for Real Property located at Land in Box Elder County

- Promissory Note
- Disbursement Request and Authorization
- Notice of Final Agreement

**Parties.**  The term "Parties" means Security Investment Corporation and any and all entities or individuals who are obligated to repay the loan or have pledged property as security for the Loan, including without limitation the following:

Borrower:     ECO RANCHES
Grantor(s):   ECO RANCHES

Each Party who signs below, other than Security Investment Corporation, acknowledges, represents, and warrants to Security Investment Corporation that it has received, read and understood this Notice of Final Agreement.  This Notice is dated September 14, 2016.

BORROWER:

ECO RANCHES

By: _____
Isaac Martin, Member of ECO RANCHES

LENDER:

SECURITY INVESTMENT CORPORATION

X_____
Authorized Signer

# ~~N~~OTICE OF FINAL AGREEMEN~~T~~

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| 30,775.00 | 09-14-2016 | 10-14-2019 | 62-4000683 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| Borrower: | ECO RANCHES<br>24050 N. 6000 W.<br>Plymouth, UT 84330 | Lender: | Security Investment Corporation<br>2970 South Main St.<br>Suite 250<br>Salt Lake City, UT 84115 |
|---|---|---|---|

**BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT:  (A) THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES,  (B) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND  (C) THE WRITTEN LOAN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.**

As used in this Notice, the following terms have the following meanings:

**Loan.** The term "Loan" means the following described loan:  a Fixed Rate (5.000%) Nondisclosable Loan to a Limited Liability Company for $430,775.00 due on October 14, 2019.

**Loan Agreement.** The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

### LOAN DOCUMENTS

- Business Loan Agreement
- UT Deed of Trust for Real Property located at Land in Box Elder County

- Promissory Note
- Disbursement Request and Authorization
- Notice of Final Agreement

**Parties.** The term "Parties" means Security Investment Corporation and any and all entities or individuals who are obligated to repay the loan or have pledged property as security for the Loan, including without limitation the following:

Borrower:        ECO RANCHES
Grantor(s):      ECO RANCHES

Each Party who signs below, other than Security Investment Corporation, acknowledges, represents, and warrants to Security Investment Corporation that it has received, read and understood this Notice of Final Agreement.  This Notice is dated September 14, 2016.

BORROWER:

ECO RANCHES

By: _____
    Isaac Martin, Member of ECO RANCHES

LENDER:

SECURITY INVESTMENT CORPORATION

X _____
  Authorized Signer

## LOAN REQUEST SUMMARY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| 93,031.30 | 11-17-2016 | 11-17-2019 | 4295683 | | | 02 | |

eferences in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  ECO RANCHES
24050 N. 6000 W.
Plymouth, UT 84330

**Lender:**  Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

### BALLOON LOAN
### (Fixed Rate)

| | Financed | In Cash |
|---|---|---|
| **AMOUNT REQUESTED:** | $290,130.00 | |
| **PREPAID FINANCE CHARGES:** | | |
| Loan Origination Fee (%) | 2,901.30 | |
| **SECURITY INTEREST CHARGES:** | 0.00 | |
| **NOTE AMOUNT:** | $293,031.30 | $0.00 |

### PAYMENT CALCULATION:

| | |
|---|---|
| Interest Method: | 365/365 |
| Disbursement Date: | 11-18-2016 |
| First Payment Date: | 11-17-2017 |
| Due Date: | 11-17-2019 |
| Payment Period: | Annual |
| Periods to Amortize: | 30 |
| Total Number of Pmts: | 3 |
| Interest Rate: | 5.000% |
| Credit Insurance: | None |
| Amount of Reg Pmt: | $19,066.12 |
| Final Payment: | $298,136.28 |

**Payment Schedule.** Borrower's payment schedule consists of the following: 2 annual consecutive payments of $19,066.12 each, beginning November 17, 2017, with interest calculated on the unpaid principal balances at an interest rate of 5.000% per annum; and one payment of $298,136.28 on November 17, 2019, with interest calculated on the unpaid principal balances at an interest rate of 5.000% per annum. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under the Note.

| APR 5.372% | FINANCE CHARGE $46,138.52 | AMOUNT FINANCED $290,130.00 | TOTAL OF PAYMENTS $336,268.52 |
|---|---|---|---|

**COLLATERAL:**  Real Estate Collateral.

**TRANSACTION NUMBER:** 589

**NOTICE:** This Loan Request Summary is for informational purposes only and does not obligate Lender in any way to make this loan or any other loan to Borrower. The fees and charges listed above are estimates only; and, if a loan is made, different or additional fees and charges may be imposed.

# USINESS LOAN AGREEMEN'

| rincipal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| 03,031.30 | 11-17-2016 | 11-17-2019 | 4295683 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  ECO RANCHES
24050 N. 6000 W.
Plymouth, UT 84330

**Lender:**  Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

THIS BUSINESS LOAN AGREEMENT dated November 17, 2016, is made and executed between ECO RANCHES ("Borrower") and Security Investment Corporation ("Lender") on the following terms and conditions. Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement. Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

**TERM.** This Agreement shall be effective as of November 17, 2016, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this Agreement.

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

**Loan Documents.** Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) Security Agreements granting to Lender security interests in the Collateral; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) evidence of insurance as required below; (5) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

**Borrower's Authorization.** Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require.

**Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Representations and Warranties.** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

**No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

**Organization.** Borrower is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Utah. Borrower is duly authorized to transact business in all other states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Specifically, Borrower is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Borrower has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Borrower maintains an office at 24050 N. 6000 W., Plymouth, UT 84330. Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's state of organization or any change in Borrower's name. Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

**Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: **None.**

**Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Borrower's articles of organization or membership agreements, or (b) any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

**Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

**Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

**Hazardous Substances.** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During

## BUSINESS LOAN AGREEMENT
### (Continued)

the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**Additional Information.** Furnish such additional information and statements, as Lender may request from time to time.

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.** Use all Loan proceeds solely for Borrower's business operations, unless specifically consented to the contrary by Lender in writing.

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits. Provided however, Borrower will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (1) the legality of the same shall be contested in good faith by appropriate proceedings, and (2) Borrower shall have established on Borrower's books adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with GAAP.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

# BUSINESS LOAN AGREEMENT
## (Continued)

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Environmental Studies.** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Compliance with Governmental Requirements.** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Environmental Compliance and Reports.** Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

'NDER'S EXPENDITURES. If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if ⠀rrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to ⠀scharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on ⠀rrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Capital Expenditures.** Make or contract to make capital expenditures, including leasehold improvements, in any fiscal year in excess of $_____ or incur liability for rentals of property (including both real and personal property) in an amount which, together with capital expenditures, shall in any fiscal year exceed such sum.

**Continuity of Operations.** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business, or (3) make any distribution with respect to any capital account, whether by reduction of capital or otherwise.

**Agreements.** Enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

**CESSATION OF ADVANCES.** If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if: (A) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender; (B) Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or (D) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may ⠀pen in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by w. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any ⠀d all such accounts.

'EFAULT. Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Loan.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes

**BUSINESS LOAN AGREEMENT**
**(Continued)**

false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**EFFECT OF AN EVENT OF DEFAULT.** If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not Lender's salaried employee and whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Utah without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Utah.

**Choice of Venue.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Salt Lake County, State of Utah.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Unless otherwise provided by applicable law, any notice required to be given under this Agreement or required by law shall be given in writing, and shall be effective when actually delivered in accordance with the law or with this Agreement, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the

# BUSINESS LOAN AGREEMENT
## (Continued)

Lender informed at all times of Borrower's current address. Unless otherwise provided by applicable law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Subsidiaries and Affiliates of Borrower.** To the extent the context of any provisions of this Agreement makes it appropriate, including without limitation any representation, warranty or covenant, the word "Borrower" as used in this Agreement shall include all of Borrower's subsidiaries and affiliates. Notwithstanding the foregoing however, under no circumstances shall this Agreement be construed to require Lender to make any Loan or other financial accommodation to any of Borrower's subsidiaries or affiliates.

**Successors and Assigns.** All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.** Borrower understands and agrees that in making the Loan, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the making of the Loan and delivery to Lender of the Related Documents, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

**Borrower.** The word "Borrower" means ECO RANCHES and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Security Investment Corporation, its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

**Note.** The word "Note" means the Note dated November 17, 2016 and executed by ECO RANCHES in the principal amount of

# BUSINESS LOAN AGREEMENT
## (Continued)

note or credit agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

**FINAL AGREEMENT.** Borrower understands that this Agreement and the related loan documents are the final expression of the agreement between Lender and Borrower and may not be contradicted by evidence of any alleged oral agreement.

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED NOVEMBER 17, 2016.

BORROWER:

ECO RANCHES

By: _____
   Shain Stoddard, Member of ECO RANCHES

LENDER:

CURITY INVESTMENT CORPORATION

_____
Authorized Signer

## A. RICULTURAL LOAN AGREEN IT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| 93,031.30 | 11-17-2016 | 11-17-2019 | 4295683 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** ECO RANCHES
24050 N. 6000 W.
Plymouth, UT 84330

**Lender:** Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

**THIS AGRICULTURAL LOAN AGREEMENT** dated November 17, 2016, is made and executed between ECO RANCHES ("Borrower") and Security Investment Corporation ("Lender") on the following terms and conditions. Borrower has applied to Lender for an agricultural loan as described below. Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement, and (B) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

**TERM.** This Agreement shall be effective as of November 17, 2016, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this Agreement.

**THE LOAN.** The following terms and conditions apply to the Loan:

**The Loan Commitment.** On and after the date of this Agreement, or such earlier date as Lender and Borrower may agree, Lender, at its option and in its sole discretion, may lend to Borrower the principal amount of **$293,031.30**.

**The Loan Documents.** The Loan will be evidenced by a promissory note in the form of an exhibit attached to and made a part of this Agreement, or if no exhibit is attached, then in form and substance satisfactory to Lender (the "Note"), together with such Related Documents as Lender may require for the Loan, all in form and substance satisfactory to Lender.

**Loan Disbursements.** Loan disbursements will be made upon Borrower's completing and delivering to Lender for each disbursement a disbursement request on Lender's form. In no event, however, will Lender be required to make any Loan advances after such time as the parties may agree in writing to terminate this Agreement.

**Disbursements of Proceeds.** Any Loan advance made under this Agreement shall be conclusively presumed to have been made to and for the benefit of Borrower whenever the proceeds of such advance are either (1) disbursed in accordance with the terms of this Agreement, (2) disbursed in accordance with instructions from Borrower or any of Borrower's authorized employees or agents, or (3) deposited into any demand, savings, or other account maintained by Borrower with Lender.

**No Renewal or Future Loan Obligation.** Lender has not committed, and is not committing at this time, to finance Borrower's next year's farm loan requirements. Any such future loan or loans may be made solely at the option of Lender and on such terms and conditions as Lender may then require. Borrower understands that no prior course of dealing, no usage of trade, no oral statements or comments by Lender or its employees or other agents will be deemed to be a commitment by Lender to lend money to Borrower or to any other person, unless the same is reduced to writing and signed by an authorized representative of Lender.

**SALE OF COLLATERAL AND APPLICATION OF PROCEEDS.** The following terms and conditions relate to any Collateral for the Loan and the application of proceeds of Collateral:

**Sale of Collateral.** Borrower may sell or otherwise dispose of Collateral only if (1) Borrower delivers the proceeds to Lender, and (2) Borrower complies with the other terms of this Agreement. If Borrower wants to use proceeds for other than delivery to Lender, Borrower may not sell the Collateral without Lender's prior written consent.

**Buyers, Consignees, and Other Transferees.** The following provisions relate to any sale, consignment or transfer of crops, livestock, or other farm products included as all or a part of the Collateral:

(1) To induce Lender to extend the Loan, Borrower represents, warrants and covenants to Lender that Borrower will sell, consign or transfer the Collateral only to those persons whose names and addresses have been set forth on sales schedules delivered to Lender. Each schedule shall be in such form as Lender may require, including identification of each type of Collateral. Borrower also shall notify Lender of the name and address of each additional person to whom or through whom the Collateral may be sold, consigned or transferred. All such schedules and notifications shall be in writing and shall be delivered to Lender not less than fourteen (14) days prior to any such sale, consignment or transfer of the Collateral.

(2) Borrower acknowledges that if the Collateral is sold, consigned, or transferred to any person not listed on a schedule delivered to Lender as provided above, at least seven (7) days prior to such sale, consignment, or transfer, and if Lender has not received an accounting (including the proceeds) of such sale, consignment or transfer within ten (10) days of the sale, consignment or transfer, then UNDER FEDERAL LAW, BORROWER SHALL BE SUBJECT TO A FINE WHICH IS THE GREATER OF $5,000 OR 15% OF THE VALUE OR BENEFIT RECEIVED FROM THE SALE, CONSIGNMENT OR TRANSFER TO AN UNLISTED BUYER, CONSIGNEE OR TRANSFEREE.

**Delivery of Proceeds and Payments.** Borrower will immediately deliver or otherwise make available to Lender all proceeds of any sale, consignment, lease, license, exchange or other disposition of the Collateral and all other proceeds of the Collateral, in a form acceptable to Lender. All chattel paper, contracts, warehouse receipts, documents, and other evidences of ownership or obligations relating to the Collateral, whether issued by a co-op, grain elevator, warehouse, marketing entity or bailee, and all accounts and other proceeds of the Collateral shall be immediately endorsed, assigned and delivered by Borrower to Lender, in a form acceptable to Lender, as security for the Loan. At any time before or after the occurrence of an Event of Default, Lender may collect all proceeds of the Collateral without notice to Borrower. All proceeds of the Collateral, when received by Lender, may at Lender's sole discretion be applied to the Loan. Borrower grants Lender a limited power of attorney to sign or endorse Borrower's name on all writings described in this section.

**Application of Proceeds and Payments.** Lender, in its sole discretion, may apply proceeds and payments of Collateral and any other payments Borrower may make on the Loan to either (1) accrued unpaid interest owing on the Note, (2) outstanding principal on the Note, or (3) any other amounts owing by Borrower to Lender in connection with the Loan.

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

## AGRICULTURAL LOAN AGREEMEl

**Loan Documents.** Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) Security Agreements granting to Lender security interests in the Collateral; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) Effective Financing Statements as required by any applicable state central filing system giving notice of Lender's security interests to prospective purchasers of Borrower's farm products; (5) evidence of insurance as required below; (6) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

**Borrower's Authorization.** Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require.

**Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Representations and Warranties.** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

**No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

**Organization.** Borrower is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Utah. Borrower is duly authorized to transact business in all other states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Specifically, Borrower is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Borrower has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Borrower maintains an office at 24050 N. 6000 W., Plymouth, UT 84330. Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's state of organization or any change in Borrower's name. Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

**Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: None.

**Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Borrower's articles of organization or membership agreements, or (b) any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

**Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

**Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

**Hazardous Substances.** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in

AGRICULTURAL LOAN AGREEMENT
(Continued)

writing.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**Additional Information.** Furnish such additional information and statements, as Lender may request from time to time.

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.** Use all Loan proceeds solely for the purposes specified in this Agreement.

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits. Provided however, Borrower will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (1) the legality of the same shall be contested in good faith by appropriate proceedings, and (2) Borrower shall have established on Borrower's books adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with GAAP.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Compliance with Governmental Requirements.** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Environmental Studies.** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Environmental Compliance and Reports.** Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental

AGRICULTURAL LOAN AGREEMENT
(Continued)

authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will  (A)  be payable on demand;  (B)  be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (1)  the term of any applicable insurance policy; or  (2)  the remaining term of the Note; or  (C)  be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Capital Expenditures.** Make or contract to make capital expenditures, including leasehold improvements, in any fiscal year in excess of $_____ or incur liability for rentals of property (including both real and personal property) in an amount which, together with capital expenditures, shall in any fiscal year exceed such sum.

**Continuity of Operations.** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business, or (3) make any distribution with respect to any capital account, whether by reduction of capital or otherwise.

**Agreements.** Enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

**CESSATION OF ADVANCES.** Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds under this Agreement or under any other agreement if: (A) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender;  (B)  Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or (D) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Loan.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**EFFECT OF AN EVENT OF DEFAULT.** If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies

rovided in the Related Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's
ts and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not
iude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any
.. antor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties
as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing
and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable
attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay
someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses
include Lender's reasonable attorneys' fees and legal expenses whether or not Lender's salaried employee and whether or not there is a
lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any
automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and
such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the
provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the
laws of the State of Utah without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of
Utah.

**Choice of Venue.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Salt Lake
County, State of Utah.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing
and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any
other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to
demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of
dealing between Lender and Borrower, shall constitute a waiver of any of Lender's rights or of any of Borrower's obligations as to any
future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any
instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may
be granted or withheld in the sole discretion of Lender.

**Notices.** Unless otherwise provided by applicable law, any notice required to be given under this Agreement or required by law shall be
given in writing, and shall be effective when actually delivered in accordance with the law or with this Agreement, when actually received
by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when
deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the
beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the
other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep
Lender informed at all times of Borrower's current address. Unless otherwise provided by applicable law, if there is more than one
Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any
circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible,
the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so
modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability
of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Subsidiaries and Affiliates of Borrower.** To the extent the context of any provisions of this Agreement makes it appropriate, including
without limitation any representation, warranty or covenant, the word "Borrower" as used in this Agreement shall include all of Borrower's
subsidiaries and affiliates. Notwithstanding the foregoing however, under no circumstances shall this Agreement be construed to require
Lender to make any Loan or other financial accommodation to any of Borrower's subsidiaries or affiliates.

**Successors and Assigns.** All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related
Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower
shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written
consent of Lender.

**Survival of Representations and Warranties.** Borrower understands and agrees that in making the Loan, Lender is relying on all
representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by
Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by
Lender, all such representations, warranties and covenants will survive the making of the Loan and delivery to Lender of the Related
Documents, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid
in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically
ated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms
ed in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise
efined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not
therwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in
ffect on the date of this Agreement:

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line
of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Agricultural Loan Agreement, as this Agricultural Loan Agreement may be amended or
modified from time to time, together with all exhibits and schedules attached to this Agricultural Loan Agreement from time to time.

**Borrower.** The word "Borrower" means ECO RANCHES and includes all co-signers and co-makers signing the Note and all their successors

## RICULTURAL LOAN AGREEME
## (Continued)

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Security Investment Corporation, its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation, the loan described in the Section titled "The Loan."

**Note.** The word "Note" means the Note dated November 17, 2016 and executed by ECO RANCHES in the principal amount of $293,031.30, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

**FINAL AGREEMENT.** Borrower understands that this Agreement and the related loan documents are the final expression of the agreement between Lender and Borrower and may not be contradicted by evidence of any alleged oral agreement.

**BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS AGRICULTURAL LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS AGRICULTURAL LOAN AGREEMENT IS DATED NOVEMBER 17, 2016.**

**BORROWER:**

**ECO RANCHES**

By: _____

Shain Stoddard, Member of ECO RANCHES

Loan No: 4295683

## AGRICULTURAL LOAN AGREEMENT
(Continued)

Page 7

LDER:

**SECURITY INVESTMENT CORPORATION**

By: _____
    Authorized Signer

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| 293,031.30 | 11-17-2016 | 11-17-2019 | 4295683 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

| Borrower: | ECO RANCHES<br>24050 N. 6000 W.<br>Plymouth, UT 84330 | Lender: | Security Investment Corporation<br>2970 South Main St.<br>Suite 250<br>Salt Lake City, UT 84115 |
|---|---|---|---|

**Principal Amount: $293,031.30**     **Interest Rate: 5.000%**     **Date of Note: November 17, 2016**

**PROMISE TO PAY.** ECO RANCHES ("Borrower") promises to pay to Security Investment Corporation ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Ninety-three Thousand Thirty-one & 30/100 Dollars ($293,031.30), together with interest on the unpaid principal balance from November 18, 2016, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 5.000% per annum, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 2 regular payments of $19,066.12 each and one irregular last payment estimated at $298,136.28. Borrower's first payment is due November 17, 2017, and all subsequent payments are due on the same day of each year after that. Borrower's final payment will be due on November 17, 2019, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs; then to any late charges; then to any accrued unpaid interest; and then to principal. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Security Investment Corporation, 2970 South Main St., Suite 250, Salt Lake City, UT 84115.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by 2.000 percentage points. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including without limitation all reasonable attorneys' fees and legal expenses for bankruptcy proceeding (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay

**PROMISSORY NOTE**
(Continued)

Loan No: 4295683

Page 2

---

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of State of Utah without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Utah.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Salt Lake County, State of Utah.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: _____.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

ECO RANCHES

By: _____
Shain Stoddard, Member of ECO RANCHES

# BOARDING DATA SHEET

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| 293,031.30 | 11-17-2016 | 11-17-2019 | 4295683 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** ECO RANCHES
24050 N. 6000 W.
Plymouth, UT 84330

**Lender:** Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

## CUSTOMER DATA SUMMARY

ECO RANCHES — 81-3359868 — Limited Liability Company — Borrower — Cust #
Street Address:24050 N. 6000 W. — Plymouth — UT 84330 — County: Box Elder — Phone:
Primary Phone: — Ext: — Instructions:

Resolution: New Resolution

Member of ECO RANCHES: — Title: Member

Shain Stoddard — 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 — Individual — Member — Cust #:
Street Address:1598 N. 600 W. — West Bountifu — UT 84087 — County: Davis — Phone:
Mailing Address: — County: — Birthday: 05-06-1968
Primary Phone: — Ext: — Instructions:

## TRANSACTION SUMMARY

Transaction No.: 589
Product Category:
Loan Policy: Commercial

Product Description:
Purpose: Loan is not for Personal, Family, Household Purposes or Personal Investment Purposes.
Specific Loan Purpose: Purchase property in Box Elder County

## CLASSIFICATION DATA

Application No:
…plication Date: 10-15-2016
…n No: 4295683
…n Date: 11-17-2016
Officer: 02 Davis, Ruth
Processor No: 02 Davis, Ruth
Collateral Code:
Charge Code:
Call Code:
User Code 3:
User Code 6:
Automatic Payments Account:

Branch:
Dept:
Division:
Region:
Loan Type:
Loan Class: New Loan
Purpose Code:
Class Code:
User Code 1:
User Code 4:
User Code 7:

Employee Loan: No
Restricted Access: No
Reg O Loan:
Comments:

Portfolio Code:
Host System:
User Code 2:
User Code 5:
User Code 8:

## COLLATERAL SUMMARY

| Type | SubType | Description | State | Value | Purchase Money | Collateral Code |
|---|---|---|---|---|---|---|
| Real Estate | Farm Land | Mound Spring Parcels in Box Elder County, Plymouth, UT 84330 | UT | | | |

Owner(s):

ECO RANCHES — 81-3359868 — Limited Liability Company — Cust #:
Street Address:24050 N. 6000 W. — Plymouth — UT 84330 — County: Box Elder — Phone:
Primary Phone: — Ext: — Instructions:

Resolution: New Resolution

Member of ECO RANCHES: — Title: Member

Shain Stoddard — 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 — Individual — Member — Cust #:
Street Address:1598 N. 600 W. — West Bountifu — UT 84087 — County: Davis — Phone:
Mailing Address: — County: — Birthday: 05-06-1968
Primary Phone: — Ext: — Instructions:

# BOARDING DATA SHEET
## (Continued)

Page 2

Loan No: 4295683

## PAYMENT DATA

|  | BALLOON LOAN (Fixed Rate) | |
| --- | --- | --- |
|  | Financed | In Cash |
| AMOUNT REQUESTED: | $290,130.00 | |
| PREPAID FINANCE CHARGES: | | |
| Loan Origination Fee (%) | 2,901.30 | |
| SECURITY INTEREST CHARGES: | 0.00 | |
| NOTE AMOUNT: | $293,031.30 | $0.00 |

DISBURSEMENTS:
Payable:   WRE REAL ESTATE HOLDINGS, LLC          $290,130.00

PAYMENT CALCULATION:

| No. of Pmts | Amount | Due |
| --- | --- | --- |
| 2 | $19,066.12 | Annual beginning 11-17-2017 |
| 1 | $298,136.28 | Final Payment is due 11-17-2019 |

Disbursement Date:    11-18-2016
Due Date:             11-17-2019
Periods to Amortize:  30

INTEREST RATE SELECTION:

Interest Method:      365/365

Interest Rate:        5.000

| APR | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
| --- | --- | --- | --- |
| 5.372% | $46,138.52 | $290,130.00 | $336,268.52 |

## OFFICER COMMENTS

Primary Source of Repayment:     Rental Income
Secondary Source of Repayment:

| Grade | Date | Officer Number |
| --- | --- | --- |
|  |  |  |

# AMORTIZATION SCHEDULE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $293,031.30 | 11-17-2016 | 11-17-2019 | 4295683 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** ECO RANCHES
24050 N. 6000 W.
Plymouth, UT 84330

**Lender:** Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

**Disbursement Date:** November 18, 2016
**Interest Rate:** 5.000

**Repayment Schedule:** Balloon
**Calculation Method:** 365/365 U.S. Rule

| Payment Number | Payment Date | Payment Amount | Interest Paid | Principal Paid | Remaining Balance |
|---|---|---|---|---|---|
| 1 | 11-17-2017 | 19,066.12 | 14,611.42 | 4,454.70 | 288,576.60 |
| 2 | 11-17-2018 | 19,066.12 | 14,428.83 | 4,637.29 | 283,939.31 |
| 3 | 11-17-2019 | 298,136.28 | 14,196.97 | 283,939.31 | 0.00 |
| TOTALS: | | 336,268.52 | 43,237.22 | 293,031.30 | |

NOTICE: This is an estimated loan amortization schedule. Actual amounts may vary if payments are made on different dates or in different amounts.

LaserPro, Ver. 15.4.20.033 Copr. D+H USA Corporation 1997, 2016. All Rights Reserved.

## DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $293,031.30 | 11-17-2016 | 11-17-2019 | 4295683 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** ECO RANCHES
24050 N. 6000 W.
Plymouth, UT 84330

**Lender:** Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

**LOAN TYPE.** This is a Fixed Rate (5.000%) Nondisclosable Loan to a Limited Liability Company for $293,031.30 due on November 17, 2019.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

☐ Personal, Family, or Household Purposes or Personal Investment.

☒ Business (Including Real Estate Investment).

**SPECIFIC PURPOSE.** The specific purpose of this loan is: Purchase property in Box Elder County.

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $293,031.30 as follows:

| | |
|---|---|
| Amount paid to others on Borrower's behalf: | $290,130.00 |
| $290,130.00 to WRE REAL ESTATE HOLDINGS, LLC | |
| Total Financed Prepaid Finance Charges: | $2,901.30 |
| $2,901.30 Loan Origination Fee (%) | |
| | |
| Note Principal: | $293,031.30 |

**FINAL AGREEMENT.** Borrower understands that the loan documents signed in connection with this loan are the final expression of the agreement between Lender and Borrower and may not be contradicted by evidence of any alleged oral agreement.

**FINANCIAL CONDITION.** BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED NOVEMBER 17, 2016.

BORROWER:

ECO RANCHES

By: _____
Shain Stoddard, Member of ECO RANCHES

# OTICE OF FINAL AGREEME

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| 293,031.30 | 11-17-2016 | 11-17-2019 | 4295683 | | | C2 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** ECO RANCHES
24050 N. 6000 W.
Plymouth, UT 84330

**Lender:** Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

**BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT: (A) THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, (B) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND (C) THE WRITTEN LOAN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.**

As used in this Notice, the following terms have the following meanings:

**Loan.** The term "Loan" means the following described loan: a Fixed Rate (5.000%) Nondisclosable Loan to a Limited Liability Company for $293,031.30 due on November 17, 2019.

**Loan Agreement.** The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

## LOAN DOCUMENTS

- LLC Resolution: ECO RANCHES
- Agricultural Loan Agreement
- UT Deed of Trust for Real Property located at Mound Spring Parcels in Box Elder County, Plymouth, UT 84330
- Business Loan Agreement
- Promissory Note
- Disbursement Request and Authorization
- Notice of Final Agreement

**Parties.** The term "Parties" means Security Investment Corporation and any and all entities or individuals who are obligated to repay the loan or have pledged property as security for the Loan, including without limitation the following:

Borrower: ECO RANCHES
Grantor(s): ECO RANCHES

Each Party who signs below, other than Security Investment Corporation, acknowledges, represents, and warrants to Security Investment Corporation that it has received, read and understood this Notice of Final Agreement. This Notice is dated November 17, 2016.

BORROWER:

ECO RANCHES

By: ______________________________
Shain Stoddard, Member of ECO RANCHES

LENDER:

SECURITY INVESTMENT CORPORATION

X ______________________________
Authorized Signer

# OTICE OF FINAL AGREEMEI

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $293,031.30 | 11-17-2016 | 11-17-2019 | 4295683 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** ECO RANCHES
24050 N. 6000 W.
Plymouth, UT 84330

**Lender:** Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

**BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT: (A) THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, (B) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND (C) THE WRITTEN LOAN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.**

As used in this Notice, the following terms have the following meanings:

**Loan.** The term "Loan" means the following described loan: a Fixed Rate (5.000%) Nondisclosable Loan to a Limited Liability Company for $293,031.30 due on November 17, 2019.

**Loan Agreement.** The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

**LOAN DOCUMENTS**

- LLC Resolution: ECO RANCHES
- Agricultural Loan Agreement
- UT Deed of Trust for Real Property located at Mound Spring Parcels in Box Elder County, Plymouth, UT 84330
- Business Loan Agreement
- Promissory Note
- Disbursement Request and Authorization
- Notice of Final Agreement

**Parties.** The term "Parties" means Security Investment Corporation and any and all entities or individuals who are obligated to repay the loan or have pledged property as security for the Loan, including without limitation the following:

Borrower: ECO RANCHES
Grantor(s): ECO RANCHES

Each Party who signs below, other than Security Investment Corporation, acknowledges, represents, and warrants to Security Investment Corporation that it has received, read and understood this Notice of Final Agreement. This Notice is dated November 17, 2016.

BORROWER:

ECO RANCHES

By: ______________________________
Shain Stoddard, Member of ECO RANCHES

LENDER:

SECURITY INVESTMENT CORPORATION

X ______________________________
Authorized Signer

# LIMITED LIABILITY COMPANY RESOLUTION TO BORROW / GRANT COLLATERAL

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| 293,031.30 | 11-17-2016 | 11-17-2019 | 4295683 | | | 02 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Company:** ECO RANCHES
24050 N. 6000 W.
Plymouth, UT 84330

**Lender:** Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

## WE, THE UNDERSIGNED, DO HEREBY CERTIFY THAT:

**THE COMPANY'S EXISTENCE.** The complete and correct name of the Company is ECO RANCHES ("Company"). The Company is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Utah. The Company is duly authorized to transact business in all other states in which the Company is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which the Company is doing business. Specifically, the Company is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. The Company has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. The Company maintains an office at 24050 N. 6000 W., Plymouth, UT 84330. Unless the Company has designated otherwise in writing, the principal office is the office at which the Company keeps its books and records. The Company will notify Lender prior to any change in the location of the Company's state of organization or any change in the Company's name. The Company shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to the Company and the Company's business activities.

**RESOLUTIONS ADOPTED.** At a meeting of the members of the Company, duly called and held on _____, at which a quorum was present and voting, or by other duly authorized action in lieu of a meeting, the resolutions set forth in this Resolution were adopted.

**MEMBER.** The following named person is a member of ECO RANCHES:

| NAMES | TITLES | AUTHORIZED | ACTUAL SIGNATURES |
|-------|--------|------------|-------------------|
| Shain Stoddard | Member | Y | X |

**ACTIONS AUTHORIZED.** The authorized person listed above may enter into any agreements of any nature with Lender, and those agreements will bind the Company. Specifically, but without limitation, the authorized person is authorized, empowered, and directed to do the following for and on behalf of the Company:

**Borrow Money.** To borrow, as a cosigner or otherwise, from time to time from Lender, on such terms as may be agreed upon between the Company and Lender, such sum or sums of money as in his or her judgment should be borrowed, without limitation.

**Execute Notes.** To execute and deliver to Lender the promissory note or notes, or other evidence of the Company's credit accommodations, on Lender's forms, at such rates of interest and on such terms as may be agreed upon, evidencing the sums of money so borrowed or any of the Company's indebtedness to Lender, and also to execute and deliver to Lender one or more renewals, extensions, modifications, refinancings, consolidations, or substitutions for one or more of the notes, any portion of the notes, or any other evidence of credit accommodations.

**Grant Security.** To mortgage, pledge, transfer, endorse, hypothecate, or otherwise encumber and deliver to Lender any property now or hereafter belonging to the Company or in which the Company now or hereafter may have an interest, including without limitation all of the Company's real property and all of the Company's personal property (tangible or intangible), as security for the payment of any loans or credit accommodations so obtained, any promissory notes so executed (including any amendments to or modifications, renewals, and extensions of such promissory notes), or any other or further indebtedness of the Company to Lender at any time owing, however the same may be evidenced. Such property may be mortgaged, pledged, transferred, endorsed, hypothecated or encumbered at the time such loans are obtained or such indebtedness is incurred, or at any other time or times, and may be either in addition to or in lieu of any property theretofore mortgaged, pledged, transferred, endorsed, hypothecated or encumbered.

**Execute Security Documents.** To execute and deliver to Lender the forms of mortgage, deed of trust, pledge agreement, hypothecation agreement, and other security agreements and financing statements which Lender may require and which shall evidence the terms and conditions under and pursuant to which these liens and encumbrances, or any of them, are given; and also to execute and deliver to Lender any other written instruments, any chattel paper, or any other collateral, of any kind or nature, which Lender may deem necessary or proper in connection with or pertaining to the giving of the liens and encumbrances.

**Negotiate Items.** To draw, endorse, and discount with Lender all drafts, trade acceptances, promissory notes, or other evidences of indebtedness payable to or belonging to the Company or in which the Company may have an interest, and either to receive cash for the same or to cause such proceeds to be credited to the Company's account with Lender, or to cause such other disposition of the proceeds derived therefrom as he or she may deem advisable.

**Further Acts.** In the case of lines of credit, to designate additional or alternate individuals as being authorized to request advances under such lines, and in all cases, to do and perform such other acts and things, to pay any and all fees and costs, and to execute and deliver such other documents and agreements as the member may in his or her discretion deem reasonably necessary or proper in order to carry into effect the provisions of this Resolution.

**ASSUMED BUSINESS NAMES.** The Company has filed or recorded all documents or filings required by law relating to all assumed business names used by the Company. Excluding the name of the Company, the following is a complete list of all assumed business names under which the Company does business: **None.**

**NOTICES TO LENDER.** The Company will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (A) change in the Company's name; (B) change in the Company's assumed business name(s); (C) change in the management or in the Members of the Company; (D) change in the authorized signer(s); (E) change in the Company's principal office address; (F) change in the Company's state of organization; (G) conversion of the Company to a new or different type of business entity; or (H) change in any other aspect of the Company that directly or indirectly relates to any agreements between the Company and Lender. No change in the Company's name or state of organization will take effect until after Lender has received notice.

**LIMITED LIABILITY COMPANY RESOLUTION TO BORROW / GRANT COLLATERAL**

| Loan No: 4295683 | (Continued) | Page 2 |
|---|---|---|

company, as the case may be, and occupies the position set opposite his or her respective name. This Resolution now stands of record on the books of the Company, is in full force and effect, and has not been modified or revoked in any manner whatsoever.

**CONTINUING VALIDITY.** Any and all acts authorized pursuant to this Resolution and performed prior to the passage of this Resolution are hereby ratified and approved. This Resolution shall be continuing, shall remain in full force and effect and Lender may rely on it until written notice of its revocation shall have been delivered to and received by Lender at Lender's address shown above (or such addresses as Lender may designate from time to time). Any such notice shall not affect any of the Company's agreements or commitments in effect at the time notice is given.

**IN TESTIMONY WHEREOF,** we have hereunto set our hand and attest that the signature set opposite the name listed above is his or her genuine signature.

**We each have read all the provisions of this Resolution, and we each personally and on behalf of the Company certify that all statements and representations made in this Resolution are true and correct. This Limited Liability Company Resolution to Borrow / Grant Collateral is dated November 17, 2016.**

CERTIFIED TO AND ATTESTED BY:

By: _____
      Authorized Signer for ECO RANCHES

NOTE: If the member signing this Resolution is designated by the foregoing document as one of the members authorized to act on the Company's behalf, it is advisable to have this Resolution signed by at least one non-authorized member of the Company.

LaserPro, Ver. 15.4.20.033 Copr. D+H USA Corporation 1997, 2016. All Rights Reserved. - UT Z:\CPR\PL\C15.FC TR-589

# Exhibit F

Settlement Statement

Packet Ref #
1 of 5

## FINAL Settlement Statement

| | B. Type of Loan |
|---|---|
| | 1-5. Loan Type: Conventional Loan |
| | 6. File Number |
| | c16-98 |
| | 7. Loan Number |
| | 8. Mortgage Insurance Case Number |

**C.** Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown, items marked '(POC)' were paid outside this closing, they are shown here for informational purposes and are not included in the totals.

**D.** Name of Buyer/Borrower:
ECO RANCHES
(Shain Stoddard, Manager)

**E.** Name of Seller:
Washakie Renewable Energy, LLC

**F.** Name of Lender:
Security Investment Corporation

**G.** Property Description:
Land Plymonth, Utah see exhibit "a"
Plymonth, Utah

**H.** Settlement Agent:
Address:

**I.** Place of Settlement Address:
10 W. Century Parkway, Salt Lake City, UT 84115

| J. Summary of Borrower's Transactions | | | K. Summary of Seller's Transaction | | |
|---|---|---|---|---|---|
| 100 Gross Amount Due From Borrower | | | 400 Gross Amount Due To Seller | | |
| 101 Contract Sales Price | | 379,000.00 | 401 Contract Sales Price | | 379,000.00 |
| 102 Personal Property | | | 402 Personal Property | | |
| 103 Settlement Charges to borrower (line 1400) | | 4,690.00 | 403 Total Deposits | | |
| 104 | | | 404 | | |
| 105 | | | 405 | | |
| Adjustments for items paid by seller in advance | | | Adjustments for items paid by seller in advance | | |
| 106 City/town taxes | | | 406 City/Town taxes | | |
| 107 County taxes | 1/0/00 | | 407 County taxes | 1/0/00 | |
| 108 Assessments | | | 408 Assessments | | |
| 109 | | | 409 | | |
| 110 | | | 410 | | |
| 111 | | | 411 | | |
| 112 | | | 412 | | |
| 113 | | | 413 | | |
| 114 | | | 414 | | |
| 115 | | | 415 | | |
| 120 Gross Amount Due From Borrower | | 383,690.00 | 420 Gross Amount Due To Seller | | 379,000.00 |
| 200 Amounts Paid By Or In Behalf of Borrower | | | 500 Reductions In Amount Due to Seller | | |
| 201 *Deposit or earnest money | | 500.00 | 501 Excess deposit (see instructions) | | |
| 202 Principal amount of new loan(s) | | 379,450.50 | 502 Settlement charges (line 1400) | | 600.00 |
| 203 Existing loan(s) taken subject | | | 503 Existing loan(s) taken subject | | |
| 204 | | | 504 Payoff of first mortgage loan | | |
| 205 | | | 505 Payoff of second mortgage loan | | |
| 206 | | | 506 | | |
| 207 | | | 507 | | |
| 208 | | | 508 | | |
| 209 | | | 509 | | |
| Adjustments for items unpaid by seller | | | Adjustments for items unpaid by seller | | |
| 210 City/town taxes | | | 510 City/town taxes | | |
| 211 County taxes | 1/1/16 - 11/8/16 | 3,693.89 | 511 County taxes | 1/1/16 - 11/8/16 | 3,693.89 |
| 212 Assessments | | | 512 Assessments | | |
| 213 | | | 513 | | |
| 214 Inspection | | | 514 Inspection | | |
| 215 | | | 515 | | |
| 216 | | | 516 | | |
| 217 | | | 517 | | |
| 218 | | | 518 | | |
| 219 | | | 519 | | |
| 220 Total Paid By/For Borrower | | 383,644.39 | 520 Total Reduction Amount Due Seller | | 4,293.89 |
| 300 Cash At Settlement From/To Borrower | | | 600 Cash At Settlement To/From Seller | | |
| 301 Gross amt due from Borrower (line 120) | | 383,690.00 | 601 Gross amount due to Seller (line 420) | | 379,000.00 |
| 302 Less amts paid by/for Borrower (line 220) | | 383,644.39 | 602 Less reductions in amts due to Seller (line 520) | | 4,293.89 |
| 303 Cash (X From) ( To) Borrower | | 45.61 | 603 Cash (X To) ( From) Seller | | 374,706.11 |

The Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.   Date:   11/8/16

Settlement Agent:

* See supplemental Page for details

Settlement Statement

| | | | | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|---|---|---|
| | Charges | | | | | |
| | ...ial Sales/Broker's Commission based on price | $379,000.00 @ | = | #VALUE! | | |
| | Division of Commission (line 700) as follows | | | | | |
| 701 | | | | | | |
| 702 | less Earnest Money    ($500.00) | | | | | |
| 703 | Commission paid at Settlement | | | | | |
| 704 | | | | | | |
| 800 | Items Payable in Connection with Loan | | | | | |
| 801 | Loan Origination Fee | | | | 3790.00 | |
| 802 | Loan Discount | | | | | |
| 803 | Appraisal Fee | | | | | |
| 804 | Credit Report | | | | | |
| 805 | Lender's Inspection Fee | | | | | |
| 806 | Mortgage Insurance Application Premium | | | | | |
| 807 | Assumption Fee | | | | | |
| 808 | Tax Service Contract | | | | | |
| 809 | Underwriting Fee | | | | | |
| 810 | Flood Certification Fee | | | | | |
| 811 | Tax Research Fee | | | | | |
| 812 | Inspection Fee | | | | | |
| 813 | Document Processing Fee | | | | | |
| 814 | | | | | | |
| 815 | | | | | | |
| Supplemental Summary | | | | | | |
| 900 | Items Required by Lender to be Paid in Advance | | | | | |
| 901 | Interest | | | | | |
| 902 | Mortgage Insurance Premium | | | | | |
| 903 | Hazard Insurance Premium | | | | | |
| 904 | | | | | | |
| 905 | | | | | | |
| Supplemental Summary | | | | | | |
| 1000 | Reserve Deposited with Lender | | | | | |
| 1001 | Hazard Insurance | | | | | |
| 1002 | Mortgage Insurance | | | | | |
| 1003 | City Property Taxes | | | | | |
| 1004 | ...nty Property Taxes | | | | | |
| 100... | ...al assessments | | | | | |
| 1... | | | | | | |
| 1... | | | | | | |
| ... | ...egate Accounting Adjustment | | | | | |
| ... | ...de Charges | | | | 500.00 | 500.00 |
| 110. | Settlement or closing fee | | | | | |
| 1102 | Abstract or title search | | | | | |
| 1103 | Title examination | | | | | |
| 1104 | Title Insurance Binder | | | | 300.00 | |
| 1105 | Document Fee | | | | | |
| 1106 | Notary Fee | | | | | |
| 1107 | Attorney Fee | | | | | |
| | (includes above item numbers) | | | | | |
| 1108 | Title Insurance - See supplemental page for breakdown of individual fees and payees | | | | | |
| | (Includes above item number 100/116/8.1)* | | | | | |
| 1109 | Lender's coverage | | | | | |
| 1110 | Owner's coverage | | | | | |
| 1111 | Incoming Wire Fee | | | | | |
| 1112 | | | | | | |
| 1113 | Compliance Fee | | | | | |
| 1114 | | | | | | |
| 1115 | | | | | | |
| 1116 | | | | | | |
| 1117 | | | | | | |
| 1200 | Government Recording and Transfer Charges | | | | 100.00 | 100.00 |
| 1201 | Recording fees : Deed          Mortgage:          Release: | | | | | |
| 1202 | City/county tax/stamps: | | | | | |
| 1203 | State tax/stamps: | | | | | |
| 1204 | | | | | | |
| 1205 | | | | | | |
| 1206 | | | | | | |
| 1300 | Additional Settlement Charges | | | | | |
| 1301 | Survey to | | | | | |
| 1302 | Pest Inspection to Termite, Insect & Rodent Control | | | | | |
| 1303 | | | | | | |
| 1304 | | | | | | |
| 1305 | | | | | | |
| 1306 | | | | | | |
| 1307 | | | | | | |
| 130... | | | | | | |
| 1... | | | | | | |
| 1... | | | | | | |
| 1... | | | | | | |
| 1... | | | | | | |
| 131... | | | | | | |
| 1314 | | | | | | |
| Supplemental Summary | | | | | | |
| 1400 | Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | | | 4690.00 | 600.00 |

|  |  |  |
|---|---|---|
| Supplemental Page<br>Settlement Statement | File No. | |
| **Final Statement** | Loan No. | |
|  | Settlement Date:<br>11/8/16 | |

**Borrower Name:**

ECO RANCHES
(Shain Stoddard, Manager)

**Seller Name:**

Washakie Renewable Energy, LLC

| Section L. Settlement Charges Continued | Paid From<br>Borrower's<br>Funds at<br>Settlement | Paid From<br>Seller's<br>Funds at<br>Settlement |
|---|---|---|
| 1° | Supplemental Summary | | |
| gle Owner's Policy | | |
| gle Lender's Policy | | |

| ummary of Borrower's Transaction continue | Borrower Charges | Borrower Credits |
|---|---|---|
| Gross Amount Due From Borrower | | |
| 200 Amounts Paid By Or In Behalf of Borrower | | |
| 201 | Supplemental Summary | | |
| a) Funds For Closing | | |

| The following Section is restated from the Settlement Statement Page 1 | | | | |
|---|---|---|---|---|
| 300 Cash At Settlement From/To Borrower | | 600 Cash At Settlement To/From Seller | | |
| 301 Gross amount due from Borrower (line 120) | 383,690.00 | 601 Gross Amount Due to Seller (line 420) | | 379,000.00 |
| 302 Less amounts paid by/for Borrower (line 220) | 383,644.39 | 602 Less reductions in amounts due to Seller (line 520) | | 4,293.89 |
| 303 Cash (X From) ( To) Borrower | 45.61 | 603 Cash (X To) ( From) Seller | | 374,706.11 |

Settlement Statement

Packet Ref #
5 of 5

## SELLER'S AND/OR PURCHASER'S/BORROWER'S STATEMENT

I have carefully reviewed the Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction, I further certify that I have received a copy of the Settlement Statement.
I hereby authorize the Settlement Agent to make expenditures and disbursements as shown and approve same for payment.

**ACCEPTED AND APPROVED:**

Borrower(s)/Purchaser(s)

_____

ECO RANCHES

Date: 11/8/16

_____

(Shain Stoddard, Manager)

Date: 11/8/16

_____

_____

Seller(s)

_____

Washakie Renewable Energy, LLC

Date: 11/8/16

_____

Date:

_____

Date:

...dlement Statement which I have prepared is a true and accurate account of this transaction.  I have caused or will cause the funds to be disbursed in accordance with this statement.

**Settlement Agent:**

_____

_____

Date

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form.  Penalties upon conviction can include a fine and Imprisonment.  For details, see: Title 18 U.S. Code Sections 1001 and 1010.



**REAL ESTATE PURCHASE CONTRACT
FOR LAND**



This is a legally binding Real Estate Purchase Contract ("REPC"). If you desire legal or tax advice, consult your attorney or tax advisor.

### OFFER TO PURCHASE AND EARNEST MONEY DEPOSIT

On this <u>29th day of July, 2016</u> ("Offer Reference Date") <u>ECO RANCHES</u> ("Buyer") offers to purchase from <u>Washakie Renewable Energy, LLC</u> ("Seller") the Property described below and **[ ] delivers to the Buyer's Brokerage with this offer, or [X] agrees to deliver no later than four (4) calendar days after Acceptance (as defined in Section 23)**, Earnest Money in the amount of $<u>500.00</u> in the form of <u>check</u>. After Acceptance of the REPC by Buyer and Seller, and receipt of the Earnest Money by the Brokerage, the Brokerage shall have four (4) calendar days in which to deposit the Earnest Money into the Brokerage Real Estate Trust Account.

Buyer's Brokerage _____   Phone: _____

Received by: _____ on _____
   (Signature above acknowledges receipt of Earnest Money)                                          (Date)

### OTHER PROVISIONS

**1. PROPERTY:** <u>Approximately 472 Acres in Plymouth, Box Elder County, Utah</u>

also described as: <u>Parcel #08-045-0005 & 08-044-0004</u>

City of <u>Plymouth</u>, County of <u>Box Elder</u> State of Utah, Zip <u>84330</u> (the "Property"). Any reference below to the term "Property" shall include the Property described above, together with the Included Items and water rights/water shares, if any, referenced in Sections 1.1, and 1.3.

**1.1 Included Items. (specify)**_____

_____

**1.2 Excluded Items. (specify)**<u>None</u>_____

_____

**1.3 Water Service.** The Purchase Price for the Property shall include all water rights/water shares, if any, that are the legal source for Seller's current culinary water service and irrigation water service, if any, to the Property. The water rights/water shares will be conveyed or otherwise transferred to Buyer at Closing by applicable deed or legal instruments. The following water rights/ water shares, if applicable, are specifically excluded from this sale: _____

_____

**2. PURCHASE PRICE.** The Purchase Price for the Property is $<u>379,000.00</u>. Except as provided in this Section, the Purchase Price shall be paid as provided in Sections 2(a) through 2(d) below. Any amounts shown in 2(b) and 2(d) may be adjusted as deemed necessary by Buyer and the Lender.

   $<u>500.00</u> **(a) Earnest Money Deposit.** Under certain conditions described in the REPC, this deposit may become totally non-refundable.

$<u>TBD by Lender</u> **(b) New Loan.** Buyer may apply for mortgage loan financing (the "Loan") on terms acceptable to Buyer.

   $_____ **(c) Seller Financing.** (see attached Seller Financing Addendum)

$<u>TBD by Lender</u> **(d) Balance of Purchase Price in Cash at Settlement**

   $<u>379,000.00</u> **PURCHASE PRICE. Total of lines (a) through (d)**

**3. SETTLEMENT AND CLOSING.**

   **3.1 Settlement.** Settlement shall take place no later than the Settlement Deadline referenced in Section 24(d), or as otherwise mutually agreed by Buyer and Seller in writing. "Settlement" shall occur only when all of the following have been completed: (a) Buyer and Seller have signed and delivered to each other or to the escrow/closing office all documents required by the REPC, by the Lender, by the title insurance and escrow/closing offices, by written escrow instructions (including any split closing instructions, if applicable), or by applicable law; (b) any monies required to be paid by Buyer or Seller under these documents

(except for the proceeds of any new loan) have been delivered by Buyer or Seller to the other party, or to the escrow/closing office, in the form of cash, wire transfer, cashier's check, or other form acceptable to the escrow/closing office.

**3.2 Prorations.** All prorations, including, but not limited to, homeowner's association dues, property taxes for the current year, rents, and interest on assumed obligations, if any, shall be made as of the Settlement Deadline referenced in Section 24(d), unless otherwise agreed to in writing by the parties. Such writing could include the settlement statement. The provisions of this Section 3.2 shall survive Closing.

**3.3 Greenbelt.** If any portion of the Property is presently assessed as "Greenbelt" the payment of any roll-back taxes assessed against the Property shall be paid for by: **[X]** Seller **[ ]** Buyer **[ ]** Split Equally Between Buyer and Seller **[ ]** Other (explain)

_____

**3.4 Special Assessments.** Any assessments for capital improvements as approved by the HOA (pursuant to HOA governing documents) or as assessed by a municipality or special improvement district, prior to the Settlement Deadline shall be paid for by: **[X]** Seller **[ ]** Buyer **[ ]** Split Equally Between Buyer and Seller **[ ]** Other (explain) _____

_____
The provisions of this Section 3.4 shall survive Closing.

**3.5 Fees/Costs/Payment Obligations.** Unless otherwise agreed to in writing, Seller and Buyer shall each pay one-half (1/2) of the fee charged by the escrow/closing office for its services in the settlement/closing process. Tenant deposits (including any prepaid rents) shall be paid or credited by Seller to Buyer at Settlement. Buyer agrees to be responsible for homeowners' association and private and public utility service transfer fees, if any, and all utilities and other services provided to the Property after the Settlement Deadline. The escrow/closing office is authorized and directed to withhold from Seller's proceeds at Closing, sufficient funds to pay off on Seller's behalf all mortgages, trust deeds, judgments, mechanic's liens, tax liens and warrants. The provisions of this Section 3.5 shall survive Closing.

**3.6 Closing.** For purposes of the REPC, "Closing" means that: (a) Settlement has been completed; (b) the proceeds of any new loan have been delivered by the Lender to Seller or to the escrow/closing office; and (c) the applicable Closing documents have been recorded in the office of the county recorder. The actions described in 3.6 (b) and (c) shall be completed within four calendar days after Settlement.

**4. POSSESSION.** Seller shall deliver physical possession of the Property to Buyer as follows: **[X] Upon Closing;**

**[ ] ___ Hours after Closing; [ ] ___ Calendar Days after Closing; [ ] Other (explain)**

_____
Any contracted rental of the Property prior to or after Closing, between Seller and Buyer, shall be by separate written agreement. Seller and Buyer shall each be responsible for any insurance coverage each party deems necessary for the Property. Seller agrees to deliver the Property to Buyer free of debris and personal belongings. The provisions of this Section 4 shall survive Closing.

**5. CONFIRMATION OF AGENCY DISCLOSURE.** Buyer and Seller acknowledge prior written receipt of agency disclosure provided by their respective agent that has disclosed the agency relationships confirmed below. At the signing of the REPC:

| | | |
|---|---|---|
| Seller's Agent | _____, represents | **[ ] Seller [ ]** both Buyer and Seller as a Limited Agent; |
| Seller's Brokerage | _____, represents | **[ ] Seller [ ]** both Buyer and Seller as a Limited Agent; |
| Buyer's Agent | _____, represents | **[X] Buyer[ ]** both Buyer and Seller as a Limited Agent; |
| Buyer's Brokerage | _____, represents | **[X] Buyer[ ]** both Buyer and Seller as a Limited Agent. |

**6. TITLE & TITLE INSURANCE.**
**6.1 Title to Property.** Seller represents that Seller has fee title to the Property and will convey marketable title to the Property to Buyer at Closing by general warranty deed. Buyer does agree to accept title to the Property subject to the contents of the Commitment for Title Insurance (the "Commitment") provided by Seller under Section 7, and as reviewed and approved by Buyer under Section 8. Buyer also agrees to accept title to the Property subject to any existing leases rental and property management agreements affecting the Property not expiring prior to Closing which were provided to Buyer pursuant to Section 7(e). The provisions of this Section 6.1 shall survive Closing.

**6.2 Title Insurance.** At Settlement, Seller agrees to pay for and cause to be issued in favor of Buyer, through the title insurance agency that issued the Commitment, the most current version of an ALTA standard coverage owner's policy of title insurance. Any additional title insurance coverage desired by Buyer shall be at Buyer's expense.

**7. SELLER DISCLOSURES.** No later than the Seller Disclosure Deadline referenced in Section 24(a), Seller shall provide to Buyer the following documents in hard copy or electronic format which are collectively referred to as the "Seller Disclosures":

**(a)** a written Seller Property Condition Disclosure (Land) for the Property, completed, signed and dated by Seller as provided in Section10.2;
**(b)** a Commitment for Title Insurance as referenced in Section 6.1;
**(c)** a copy of any restrictive covenants (CC&R's), rules and regulations affecting the Property;

(d) a copy of the most recent minutes, budget and financial statement for the homeowners' association, if any;

(e) a copy of any lease, rental, and property management agreements affecting the Property not expiring prior to Closing;

(f) evidence of any water rights and/or water shares referenced in Section 1.3;

(g) written notice of any claims and/or conditions known to Seller relating to environmental problems; and violation of any CC&R's, federal, state or local laws, and building or zoning code violations; and

(h) Other (specify) _____

## 8. BUYER'S CONDITIONS OF PURCHASE.

**8.1   DUE DILIGENCE CONDITION.** Buyer's obligation to purchase the Property: **[X] IS [ ] IS NOT** conditioned upon Buyer's Due Diligence as defined in this Section 8.1(a) below. This condition is referred to as the "Due Diligence Condition." If checked in the affirmative, Sections 8.1(a) through 8.1(c) apply; otherwise they do not.

**(a) Due Diligence Items.** Buyer's Due Diligence shall consist of Buyer's review and approval of the contents of the Seller Disclosures referenced in Section 7, and any other tests, evaluations and verifications of the Property deemed necessary or appropriate by Buyer, such as: the physical condition of the Property; the existence of any hazardous substances, environmental issues or geologic conditions; the square footage or acreage of the Property; the costs and availability of flood insurance, if applicable; water source, availability and quality; the location of property lines; regulatory use restrictions or violations; fees for services such as HOA dues, municipal services, and utility costs; convicted sex offenders residing in proximity to the Property; and any other matters deemed material to Buyer in making a decision to purchase the Property. Unless otherwise provided in the REPC, all of Buyer's Due Diligence shall be paid for by Buyer and shall be conducted by individuals or entities of Buyer's choice. Seller agrees to cooperate with Buyer's Due Diligence. Buyer agrees to pay for any damage to the Property resulting from any such inspections or tests during the Due Diligence.

**(b) Buyer's Right to Cancel or Resolve Objections.** If Buyer determines, in Buyer's sole discretion, that the results of the Due Diligence are unacceptable, Buyer may either: (i) no later than the Due Diligence Deadline referenced in Section 24(b), cancel the REPC by providing written notice to Seller, whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller; or (ii) no later than the Due Diligence Deadline referenced in Section 24(b), resolve in writing with Seller any objections Buyer has arising from Buyer's Due Diligence.

**(c) Failure to Cancel or Resolve Objections.** If Buyer fails to cancel the REPC or fails to resolve in writing any objections Buyer has arising from Buyer's Due Diligence, as provided in Section 8.1(b), Buyer shall be deemed to have waived the Due Diligence Condition.

**8.2   APPRAISAL CONDITION.** Buyer's obligation to purchase the Property: **[X] IS [ ] IS NOT** conditioned upon the Property appraising for not less than the Purchase Price. This condition is referred to as the "Appraisal Condition." If checked in the affirmative, Sections 8.2(a) and 8.2(b) apply; otherwise they do not.

**(a) Buyer's Right to Cancel.** If after completion of an appraisal by a licensed appraiser, Buyer receives written notice from the Lender or the appraiser that the Property has appraised for less than the Purchase Price (a "Notice of Appraised Value"), Buyer may cancel the REPC by providing written notice to Seller (with a copy of the Notice of Appraised Value) no later than the Financing & Appraisal Deadline referenced in Section 24(c); whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller.

**(b) Failure to Cancel.** If the REPC is not cancelled as provided in this section 8.2(a), Buyer shall be deemed to have waived the Appraisal Condition.

**8.3   FINANCING CONDITION.** Buyer's obligation to purchase the property: **[X] IS [ ] IS NOT** conditioned upon Buyer obtaining the Loan referenced in Section 2(b). This condition is referred to as the "Financing Condition." If checked in the affirmative, Sections 8.3(a) and 8.3(b) apply; otherwise they do not. If the Financing Condition applies, Buyer agrees to work diligently and in good faith to obtain the Loan.

**(a) Buyer's Right to Cancel Before the Financing & Appraisal Deadline.** If Buyer, in Buyer's sole discretion, is not satisfied with the terms and conditions of the Loan, Buyer may cancel the REPC by providing written notice to Seller no later than the Financing & Appraisal Deadline referenced in Section 24(c); whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller.

**(b) Buyer's Right to Cancel After the Financing & Appraisal Deadline.** If after expiration of the Financing & Appraisal Deadline referenced in Section 24(c), Buyer fails to obtain the Loan, meaning that the proceeds of the Loan have not been delivered by the Lender to Seller or to the escrow/closing office as required under Section 3.6 of the REPC, then Buyer or Seller may cancel the REPC by providing written notice to the other party; whereupon the Earnest Money Deposit, or Deposits, if applicable (see Section 8.4 below), shall be released to Seller without the requirement of further written authorization from Buyer. In the event of such cancellation, Seller agrees to accept as Seller's exclusive remedy, the Earnest Money Deposit, or Deposits, if applicable, as liquidated damages. Buyer and Seller agree that liquidated damages would be difficult and impractical to calculate, and the Earnest Money Deposit, or Deposits, if applicable, is a fair and reasonable estimate of Seller's damages in the event Buyer fails to obtain the Loan.

**8.4   ADDITIONAL EARNEST MONEY DEPOSIT.** If the REPC has not been previously cancelled by Buyer as provided in Sections 8.1, 8.2 or 8.3(a), then no later than the Due Diligence Deadline referenced in Section 24(b), or the Financing &

Appraisal Deadline referenced in Section 24(c), whichever is later, Buyer: **[ ] WILL [X] WILL NOT** deliver to the Buyer's Brokerage, an Additional Earnest Money Deposit in the amount of $_____. The Earnest Money Deposit and the Additional Earnest Money Deposit, if applicable, are sometimes referred to herein as the "Deposits". The Earnest Money Deposit, or Deposits, if applicable, shall be credited toward the Purchase Price at Closing.

**9. ADDENDA.** There **[X] ARE [ ] ARE NOT** addenda to the REPC containing additional terms. If there are, the terms of the following addenda are incorporated into the REPC by this reference: **[X] Addendum No. 1___ [ ] Seller Financing Addendum [ ] Other** (specify) _____

_____

**10. AS-IS CONDITION OF PROPERTY.**
    **10.1 Condition of Property/Buyer Acknowledgements.** Buyer acknowledges and agrees that in reference to the physical condition of the Property: (a) Buyer is purchasing the Property in its "As-Is" condition without expressed or implied warranties of any kind; (b) Buyer shall have, during Buyer's Due Diligence as referenced in Section 8.1, an opportunity to completely inspect and evaluate the condition of the Property; and (c) if based on the Buyer's Due Diligence, Buyer elects to proceed with the purchase of the Property, Buyer is relying wholly on Buyer's own judgment and that of any contractors or inspectors engaged by Buyer to review, evaluate and inspect the Property.
    **10.2 Condition of Property/Seller Acknowledgements.** Seller acknowledges and agrees that in reference to the physical condition of the Property, Seller agrees to: (a) disclose in writing to Buyer defects in the Property known to Seller that materially affect the value of the Property that cannot be discovered by a reasonable inspection by an ordinary prudent Buyer; (b) carefully review, complete, and provide to Buyer a written Seller Property Condition Disclosure (Land) as stated in Section 7(a); and (c) deliver the Property to Buyer in substantially the same general condition as it was on the date of Acceptance, as defined in Section 23. The provisions of Sections 10.1 and 10.2 shall survive Closing.

**11. FINAL PRE-SETTLEMENT INSPECTION.**
    **11.1 Pre-Settlement Inspection.** At any time prior to Settlement, Buyer may conduct a final pre-Settlement inspection of the Property to determine only that the Property is "as represented", meaning that the items referenced in Sections 1.1, 1.3 and 8.1(b)(ii) ("the items") are respectively present, repaired or corrected as agreed. The failure to conduct a pre-Settlement inspection or to claim that an item is not as represented shall not constitute a waiver by Buyer of the right to receive, on the date of possession, the items as represented. If the items are not as represented, Seller agrees to cause all applicable items to be corrected, repaired or replaced (the "Work") prior to the Settlement Deadline referenced in Section 24(d).
    **11.2 Escrow to Complete the Work.** If, as of Settlement, the Work has not been completed, then Buyer and Seller agree to withhold in escrow at Settlement a reasonable amount agreed to by Seller, Buyer (and Lender, if applicable), sufficient to pay for completion of the Work. If the Work is not completed within thirty (30) calendar days after the Settlement Deadline, the amount so escrowed may, subject to Lender's approval, be released to Buyer as liquidated damages for failure to complete the Work. The provisions of this Section 11.2 shall survive Closing.

**12. CHANGES DURING TRANSACTION.** Seller agrees that from the date of Acceptance until the date of Closing, none of the following shall occur without the prior written consent of Buyer: (a) no changes in any leases, rental or property management agreements shall be made; (b) no new lease, rental or property management agreements shall be entered into; (c) no substantial alterations or improvements to the Property shall be made or undertaken; (d) no further financial encumbrances to the Property shall be made, and (e) no changes in the legal title to the Property shall be made.

**13. AUTHORITY OF SIGNERS.** If Buyer or Seller is a corporation, partnership, trust, estate, limited liability company or other entity, the person signing the REPC on its behalf warrants his or her authority to do so and to bind Buyer and Seller.

**14. COMPLETE CONTRACT.** The REPC together with its addenda, any attached exhibits, and Seller Disclosures (collectively referred to as the "REPC"), constitutes the entire contract between the parties and supersedes and replaces any and all prior negotiations, representations, warranties, understandings or contracts between the parties whether verbal or otherwise. The REPC cannot be changed except by written agreement of the parties.

**15. MEDIATION.** Any dispute relating to the REPC arising prior to or after Closing: **[ ] SHALL [X] MAY AT THE OPTION OF THE PARTIES** first be submitted to mediation. Mediation is a process in which the parties meet with an impartial person who helps to resolve the dispute informally and confidentially. Mediators cannot impose binding decisions. The parties to the dispute must agree before any settlement is binding. The parties will jointly appoint an acceptable mediator and share equally in the cost of such mediation. If mediation fails, the other procedures and remedies available under the REPC shall apply. Nothing in this Section 15 prohibits any party from seeking emergency legal or equitable relief, pending mediation. The provisions of this Section 15 shall survive Closing.

**16. DEFAULT.**

Buyer's Initials _IM_____ Date _July 29_ Seller's Initials _____ Date _7/29_

**16.1 Buyer Default.** If Buyer defaults, Seller may elect one of the following remedies: (a) cancel the REPC and retain the Earnest Money Deposit, or Deposits, if applicable, as liquidated damages; (b) maintain the Earnest Money Deposit, or Deposits, if applicable, in trust and sue Buyer to specifically enforce the REPC; or (c) return the Earnest Money Deposit, or Deposits, if applicable, to Buyer and pursue any other remedies available at law.

**16.2 Seller Default.** If Seller defaults, Buyer may elect one of the following remedies: (a) cancel the REPC, and in addition to the return of the Earnest Money Deposit, or Deposits, if applicable, Buyer may elect to accept from Seller, as liquidated damages, a sum equal to the Earnest Money Deposit, or Deposits, if applicable; or (b) maintain the Earnest Money Deposit, or Deposits, if applicable, in trust and sue Seller to specifically enforce the REPC; or (c) accept a return of the Earnest Money Deposit, or Deposits, if applicable, and pursue any other remedies available at law. If Buyer elects to accept liquidated damages, Seller agrees to pay the liquidated damages to Buyer upon demand.

**17. ATTORNEY FEES AND COSTS/GOVERNING LAW.** In the event of litigation or binding arbitration to enforce the REPC, the prevailing party shall be entitled to costs and reasonable attorney fees. However, attorney fees shall not be awarded for participation in mediation under Section 15. This contract shall be governed by and construed in accordance with the laws of the State of Utah. The provisions of this Section 17 shall survive Closing.

**18. NOTICES.** Except as provided in Section 23, all notices required under the REPC must be:  (a) in writing; (b) signed by the Buyer or Seller giving notice; and (c) received by the Buyer or the Seller, or their respective agent, or by the brokerage firm representing the Buyer or Seller, no later than the applicable date referenced in the REPC.

**19. NO ASSIGNMENT.** The REPC and the rights and obligations of Buyer hereunder, are personal to Buyer. The REPC may not be assigned by Buyer without the prior written consent of Seller. Provided, however, the transfer of Buyer's interest in the REPC to any business entity in which Buyer holds a legal interest, including, but not limited to, a family partnership, family trust, limited liability company, partnership, or corporation (collectively referred to as a "Permissible Transfer"), shall not be treated as an assignment by Buyer that requires Seller's prior written consent. Furthermore, the inclusion of "and/or assigns" or similar language on the line identifying Buyer on the first page of the REPC shall constitute Seller's written consent only to a Permissible Transfer.

**20. INSURANCE & RISK OF LOSS.**

**20.1  Insurance Coverage.** As of Closing, Buyer shall be responsible to obtain such casualty and liability insurance coverage on the Property in amounts acceptable to Buyer and Buyer's Lender, if applicable.

**20.2  Risk of Loss.** If prior to Closing, any part of the Property is damaged or destroyed by fire, vandalism, flood, earthquake, or act of God, the risk of such loss or damage shall be borne by Seller; provided however, that if the cost of repairing such loss or damage would exceed ten percent (10%) of the Purchase Price referenced in Section 2, Buyer may elect to either: (i) cancel the REPC by providing written notice to the other party, in which instance the Earnest Money, or Deposits, if applicable, shall be returned to Buyer; or (ii) proceed to Closing, and accept the Property in its "As-Is" condition.

**21. TIME IS OF THE ESSENCE.** Time is of the essence regarding the dates set forth in the REPC. Extensions must be agreed to in writing by all parties. Unless otherwise explicitly stated in the REPC:  (a) performance under each Section of the REPC which references a date shall absolutely be required by 5:00 PM Mountain Time on the stated date; and (b) the term "days" and "calendar days" shall mean calendar days and shall be counted beginning on the day following the event which triggers the timing requirement (e.g. Acceptance). Performance dates and times referenced herein shall not be binding upon title companies, lenders, appraisers and others not parties to the REPC, except as otherwise agreed to in writing by such non-party.

**22. ELECTRONIC TRANSMISSION AND COUNTERPARTS.** Electronic transmission (including email and fax) of a signed copy of the REPC, any addenda and counteroffers, and the retransmission of any signed electronic transmission shall be the same as delivery of an original. The REPC and any addenda and counteroffers may be executed in counterparts.

**23. ACCEPTANCE.** "Acceptance" occurs **only** when **all** of the following have occurred: (a) Seller or Buyer has signed the offer or counteroffer where noted to indicate acceptance; and (b) Seller or Buyer or their agent has communicated to the other party or to the other party's agent that the offer or counteroffer has been signed as required.

**24. CONTRACT DEADLINES.** Buyer and Seller agree that the following deadlines shall apply to the REPC:

| | | |
|---|---|---|
| (a) Seller Disclosure Deadline | 5 days after acceptance | (Date) |
| (b) Due Diligence Deadline | 60 days after acceptance | (Date) |
| (c) Financing & Appraisal Deadline | 75 days after acceptance | (Date) |
| (d) Settlement Deadline | 90 days after acceptance | (Date) |

**25. OFFER AND TIME FOR ACCEPTANCE.** Buyer offers to purchase the Property on the above terms and conditions. If Seller does not accept this offer by: 5 : 00 [ ] AM [X] PM Mountain Time on July 30, 2016 (Date), this offer shall lapse; and the Brokerage shall return any Earnest Money Deposit to Buyer.

_Isaac Martin_ _7-29-16_ _____ _____
(Buyer's Signature) (Offer Date) (Buyer's Signature) (Offer Date)

_Isaac Martin_ _2 4050 N 6000 w, Plymouth, UT, 84330_ _____
(Buyer's Names) **(PLEASE PRINT)** (Notice Address) (Zip Code) (Phone)

_____ _____ _____ _____
(Buyer's Names) **(PLEASE PRINT)** (Notice Address) (Zip Code) (Phone)

### ACCEPTANCE/COUNTEROFFER/REJECTION

**CHECK ONE:**

**[ ] ACCEPTANCE OF OFFER TO PURCHASE:** Seller Accepts the foregoing offer on the terms and conditions specified above.

**[ ] COUNTEROFFER:** Seller presents for Buyer's Acceptance the terms of Buyer's offer subject to the exceptions or modifications as specified in the attached ADDENDUM NO. _____.

**[ ] REJECTION:** Seller rejects the foregoing offer.

_Jacob Kingston_ _7/29/16_ _____ _____
(Seller's Signature) (Date) (Time) (Seller's Signature) (Date) (Time)

_Jacob Kingston_ _____ _____ _____
(Seller's Names) **(PLEASE PRINT)** (Notice Address) (Zip Code) (Phone)

_____ _____ _____ _____
(Seller's Names) **(PLEASE PRINT)** (Notice Address) (Zip Code) (Phone)

This form is COPYRIGHTED by the UTAH ASSOCIATION OF REALTORS® for use solely by its members. Any unauthorized use, modification, copying or distribution without written consent is prohibited. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION. IF YOU DESIRE SPECIFIC LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

COPYRIGHT© UTAH ASSOCIATION OF REALTORS® - 7.4.04 - REVISED - 4.22.10 - ALL RIGHTS RESERVED         UAR FORM 19


REALTOR®


EQUAL HOUSING OPPORTUNITY

ADDENDUM NO. 1
TO
REAL ESTATE PURCHASE CONTRACT

THIS IS AN [X] ADDENDUM [ ] COUNTEROFFER to that REAL ESTATE PURCHASE CONTRACT (the "REPC") with an Offer Reference Date of 29th day of July, 2016  including all prior addenda and counteroffers, between Eco Ranches            as Buyer, and Washakie Renewable Energy, LLC as Seller, regarding the Property located at Box Elder Land See REPC for parcel numbers        . The following terms are hereby incorporated as part of the REPC:

1. Buyer and Seller agree that the Earnest Money Deposit shall not be required to be received until 4 days after Buyers Due Diligence Deadline as referenced in paragraph 24 (b) of the Real Estate Purchase Contract.

BUYER AND SELLER AGREE THAT THE CONTRACT DEADLINES REFERENCED IN SECTION 24 OF THE REPC (CHECK APPLICABLE BOX): [X] REMAIN UNCHANGED [ ] ARE CHANGED AS FOLLOWS: _____

_____

To the extent the terms of this ADDENDUM modify or conflict with any provisions of the REPC, including all prior addenda and counteroffers, these terms shall control. All other terms of the REPC, including all prior addenda and counteroffers, not modified by this ADDENDUM shall remain the same. [X] Seller [ ] Buyer shall have until 5 : 00 [ ] AM [X] PM Mountain Time on July 30, 2016        (Date), to accept the terms of this ADDENDUM in accordance with the provisions of Section 23 of the REPC. Unless so accepted, the offer as set forth in this ADDENDUM shall lapse.

_____   7-29-16        _____    7/29/16
[ ] Buyer [ ] Seller Signature      (Date)      (Time)   [ ] Buyer [✓] Seller Signature     (Date)      (Time)

ACCEPTANCE/COUNTEROFFER/REJECTION

[ ] ACCEPTANCE: [ ] Seller [ ] Buyer hereby accepts the terms of this ADDENDUM.
[ ] COUNTEROFFER: [ ] Seller [ ] Buyer presents as a counteroffer the terms of attached ADDENDUM NO. ___

_____  7-29-16  _____              _____
(Signature)         (Date)    (Time)              (Signature)            (Date)      (Time)

[ ] REJECTION: [ ] Seller [ ] Buyer rejects the foregoing ADDENDUM.

_____              _____
(Signature)         (Date)    (Time)              (Signature)            (Date)      (Time)

THIS FORM APPROVED BY THE UTAH REAL ESTATE COMMISSION AND THE OFFICE OF THE UTAH ATTORNEY GENERAL, EFFECTIVE AUGUST 5, 2003. IT REPLACES AND SUPERSEDES ALL PREVIOUSLY APPROVED VERSIONS OF THIS FORM.

Page 1 of 1        Buyer's Initials  I M        Seller's Initials July 29        Addendum No. 1 to REPC

3

**SECURITY INVESTMENTS CORP**
3140 S Main St
Salt Lake City, UT 84115-3750

108

31-297/1240

11/15/2016

PAY TO THE
ORDER OF_____ Washakie Renewable Energy LLC _____ | $ | 374,706.11

Three Hundred Seventy Four Thousand Seven Hundred Six Dollars And Eleven Cents ___ DOLLARS

**WELLS FARGO**

FOR_____

⑆124002971⑆ 99193228568⑈ 0108

| A. | Final Statement | | | B. Type of Loan |
|---|---|---|---|---|
| | | | | 1-5. Loan Type: Conventional Loan |
| | | | | 6. File Number   c16-100 |
| | **FINAL Settlement Statement** | | | 7. Loan Number |
| | | | | 8. Mortgage Insurance Case Number |

| C. | Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked '(POC)' were paid outside this closing; they are shown here for informational purposes and are not included in the totals. |
|---|---|
| D. | Name of Buyer/Borrower:   ECO RANCHES |
| E. | Name of Seller:   WRE REAL ESTATE HOLDINGS, LLC |
| F. | Name of Lender:   Security Investment Corporation |
| G. | Property Description:   Land Plymonth, Utah see exhibit "a"   Plymonth, Utah |
| H. | Settlement Agent:   Address: |
| I. | Place of Settlement Address:   10 W. Century Parkway, Salt Lake City, UT 84115 |

| J. Summary of Borrower's Transactions | | | K. Summary of Seller's Transaction | | |
|---|---|---|---|---|---|
| **100** | **Gross Amount Due From Borrower** | | **400** | **Gross Amount Due To Seller** | |
| 101 | Contract Sales Price | 163,600.00 | 401 | Contract Sales Price | 163,600.00 |
| 102 | Personal Property | | 402 | Personal Property | |
| 103 | Settlement Charges to borrower (line 1400) | 2,226.00 | 403 | Total Deposits | |
| 104 | | | 404 | | |
| 105 | | | 405 | | |
| Adjustments for items paid by seller in advance | | | Adjustments for items paid by seller in advance | | |
| 106 | City/town taxes | | 406 | City/town taxes | |
| 107 | County taxes | 1/0/00 | 407 | County taxes | 1/0/00 |
| 108 | Assessments | | 408 | Assessments | |
| 109 | | | 409 | | |
| 110 | | | 410 | | |
| 111 | | | 411 | | |
| 112 | | | 412 | | |
| 113 | | | 413 | | |
| 114 | | | 414 | | |
| 115 | | | 415 | | |
| **120** | **Gross Amount Due From Borrower** | 165,826.00 | **420** | **Gross Amount Due To Seller** | 163,600.00 |
| **200** | **Amounts Paid By Or In Behalf of Borrower** | | **500** | **Reductions in Amount Due to Seller** | |
| 201 | *Deposit or earnest money | 1,000.00 | 501 | Excess deposit (see instructions) | |
| 202 | Principal amount of new loan(s) | 164,226.00 | 502 | Settlement charges (line 1400) | 350.00 |
| 203 | Existing loan(s) taken subject | | 503 | Existing loan(s) taken subject | |
| 204 | | | 504 | Payoff of first mortgage loan | |
| 205 | | | 505 | Payoff of second mortgage loan | |
| 206 | | | 506 | | |
| 207 | | | 507 | | |
| 208 | | | 508 | | |
| 209 | | | 509 | | |
| Adjustments for items unpaid by seller | | | Adjustments for items unpaid by seller | | |
| 210 | City/town taxes | | 510 | City/town taxes | |
| 211 | County taxes | 1/1/16 - 11/21/16 | 132.33 | 511 | County taxes | 1/1/16 - 11/21/16 | 132.33 |
| 212 | Assessments | | 512 | Assessments | |
| 213 | | | 513 | | |
| 214 | Inspection | | 514 | Inspection | |
| 215 | | | 515 | | |
| 216 | | | 516 | | |
| 217 | | | 517 | | |
| 218 | | | 518 | | |
| 219 | | | 519 | | |
| **220** | **Total Paid By/For Borrower** | 165,358.33 | **520** | **Total Reduction Amount Due Seller** | 482.33 |
| **300** | **Cash At Settlement From/To Borrower** | | **600** | **Cash At Settlement To/From Seller** | |
| 301 | Gross amt due from Borrower (line 120) | 165,826.00 | 601 | Gross amount due to Seller (line 420) | 163,600.00 |
| 302 | Less amts paid by/for Borrower (line 220) | 165,358.33 | 602 | Less reductions in amts due to Seller (line 520) | 482.33 |
| 303 | Cash (X From) ( To) Borrower | 467.67 | 603 | Cash (X To) ( From) Seller | 163,117.67 |

The Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Settlement Agent:                                                                                                          Date:          11/21/16

* See supplemental Page for details

| | L. Settlement Charges | | | | |
|---|---|---|---|---|---|
| 700 | Total Sales/Broker's Commission based on price | $163,600.00 @ | = | #VALUE! | |
| | Division of Commission (line 700) as follows | | | **Paid From Borrower's Funds at Settlement** | **Paid From Seller's Funds at Settlement** |
| 701 | | | | | |
| 702 | less Earnest Money      ($1,000.00) | | | | |
| 703 | Commission paid at Settlement | | | | |
| 704 | | | | | |
| 800 | Items Payable in Connection with Loan | | | | |
| 801 | Loan Origination Fee | | | 1626.00 | |
| 802 | Loan Discount | | | | |
| 803 | Appraisal Fee | | | | |
| 804 | Credit Report | | | | |
| 805 | Lender's Inspection Fee | | | | |
| 806 | Mortgage Insurance Application Premium | | | | |
| 807 | Assumption Fee | | | | |
| 808 | Tax Service Contract | | | | |
| 809 | Underwriting Fee | | | | |
| 810 | Flood Certification Fee | | | | |
| 811 | Tax Research Fee | | | | |
| 812 | Inspection Fee | | | | |
| 813 | Document Processing Fee | | | | |
| 814 | | | | | |
| 815 | | | | | |
| | Supplemental Summary | | | | |
| 900 | Items Required by Lender to be Paid in Advance | | | | |
| 901 | Interest | | | | |
| 902 | Mortgage Insurance Premium | | | | |
| 903 | Hazard Insurance Premium | | | | |
| 904 | | | | | |
| 905 | | | | | |
| | Supplemental Summary | | | | |
| 1000 | Reserve Deposited with Lender | | | | |
| 1001 | Hazard Insurance | | | | |
| 1002 | Mortgage Insurance | | | | |
| 1003 | City Property Taxes | | | | |
| 1004 | County Property Taxes | | | | |
| 1005 | Annual assessments | | | | |
| 1006 | | | | | |
| 1007 | | | | | |
| 1008 | Aggregate Accounting Adjustment | | | | |
| 1100 | Title Charges | | | | |
| 1101 | Settlement or closing fee | | | 250.00 | 250.00 |
| 1102 | Abstract or title search | | | | |
| 1103 | Title examination | | | | |
| 1104 | Title Insurance Binder | | | | |
| 1105 | Document Fee | | | 250.00 | |
| 1106 | Notary Fee | | | | |
| 1107 | Attorney Fee | | | | |
| | (Includes above item numbers) | | | | |
| 1108 | Title Insurance - See supplemental page for breakdown of individual fees and payees | | | | |
| | (Includes above item number 100/116/8.1)* | | | | |
| 1109 | Lender's coverage | | | | |
| 1110 | Owner's coverage | | | | |
| 1111 | Incoming Wire Fee | | | | |
| 1112 | | | | | |
| 1113 | Compliance Fee | | | | |
| 1114 | | | | | |
| 1115 | | | | | |
| 1116 | | | | | |
| 1117 | | | | | |
| 1200 | Government Recording and Transfer Charges | | | | |
| 1201 | Recording fees : Deed          Mortgage:          Release: | | | 100.00 | 100.00 |
| 1202 | City/county tax/stamps: | | | | |
| 1203 | State tax/stamps: | | | | |
| 1204 | | | | | |
| 1205 | | | | | |
| 1206 | | | | | |
| 1300 | Additional Settlement Charges | | | | |
| 1301 | Survey to | | | | |
| 1302 | Pest Inspection to Termite, Insect & Rodent Control | | | | |
| 1303 | | | | | |
| 1304 | | | | | |
| 1305 | | | | | |
| 1306 | | | | | |
| 1307 | | | | | |
| 1308 | | | | | |
| 1309 | | | | | |
| 1310 | | | | | |
| 1311 | | | | | |
| 1312 | | | | | |
| 1313 | | | | | |
| 1314 | | | | | |
| | Supplemental Summary | | | | |
| 1400 | Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | | 2226.00 | 350.00 |

Settlement Statement

| | File No. |
|---|---|
| **Supplemental Page**<br>Settlement Statement | |
| **Final Statement** | Loan No. |
| | Settlement Date:<br>11/21/16 |

Borrower Name:  ECO RANCHES

Seller Name:  WRE REAL ESTATE HOLDINGS, LLC

| Section L. Settlement Charges Continued | | Paid From<br>Borrower's<br>Funds at<br>Settlement | Paid From<br>Seller's<br>Funds at<br>Settlement |
|---|---|---|---|
| 1108 | Supplemental Summary | | |
| a) Eagle Owner's Policy | | | |
| b) Eagle Lender's Policy | | | |

| Section J. Summary of Borrower's Transaction continue | | | |
|---|---|---|---|
| 100 Gross Amount Due From Borrower | | Borrower Charges | Borrower Credits |
| 200 Amounts Paid By Or In Behalf of Borrower | | | |
| 201 | Supplemental Summary | | |
| a) Funds For Closing | | | |

| The following Section is restated from the Settlement Statement Page 1 | | | | |
|---|---|---|---|---|
| 300 Cash At Settlement From/To Borrower | | 600 Cash At Settlement To/From Seller | | |
| 301 Gross amount due from Borrower (line 120) | 165,826.00 | 601 Gross Amount Due to Seller (line 420) | | 163,600.00 |
| 302 Less amounts paid by/for Borrower (line 220) | 165,358.33 | 602 Less reductions in amounts due to Seller (line 520) | | 482.33 |
| 303 Cash (X From) ( To) Borrower | 467.67 | 603 Cash (X To) ( From) Seller | | 163,117.67 |

Settlement Statement

Packet Ref #
4 of 5

# ADDENDUM TO
# SETTLEMENT STATEMENT

NOTICE TO ALL PARTIES: If information is obtained which indicates that the source of the borrower's financial contribution is other than from the borrower or other than stated by the lender in its closing instructions, the settlement agent is to obtain written instructions from the lender before proceeding with settlement.

## CERTIFICATION OF BUYER IN A CONVENTIONAL LOAN TRANSACTION

I certify that I have no knowledge of any loans that have been or will be made to me (us) or loans that have been or will be assumed by me (us) for purposes of financing this transaction, other than those described in the sales contract dated _____ (including addenda). I certify that I (we) have not been paid or reimbursed for any of the cash down payment. I certify that i (we) have not and will not receive any payment or reimbursement for any of my (our) closing costs which have not been previously disclosed in the sales contract (including addenda) and/or my application for mortgage insurance submitted to my (our) mortgage lender.

| | | | |
|---|---|---|---|
| Borrower   ECO RANCHES | Date  11/21 | Borrower | Date |
| Borrower | Date | Borrower | Date |

## CERTIFICATION OF BUYER IN A CONVENTIONAL LOAN TRANSACTION

I certify that I have no knowledge of any loans that have been or will be made to the borrower(s), or loans that have been or will be assumed by the borrower(s), for purposes of financing this transaction, other than those described in the sales contract dated _____ (including addenda). I certify that I have not and will not pay or reimburse the borrower(s) for any part of the cash down payment. I certify that I have not and will not pay or reimburse the borrower(s) for any part of the borrower's closing costs which have not been previously disclosed in the sales contract (including and addenda).

| | | | |
|---|---|---|---|
| Seller   WRE REAL ESTATE HOLDINGS, LLC | Date  11/21 | Seller | Date |
| Seller | Date | Seller | Date |

## CERTIFICATION OF BUYER IN A CONVENTIONAL LOAN TRANSACTION

To the best of my knowledge, the Settlement Statement which I have prepared is a true and accurate account of the funds which were (i) received, or (ii) paid outside closing, and the funds received have been or will be disbursed by the undersigned as part of the settlement of this transaction. I further certify that I have obtained the above certifications which were executed by the borrower(s) and seller(s) as indicated.

| | |
|---|---|
| Settlement Agent | Date |

[ The certifications contained herein may be obtained from the respective parties at different times or may be obtained on separate addenda]

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details, see: Title 18 U.S. Code Sections 1001 and 1010.

## SELLER'S AND/OR PURCHASER'S/BORROWER'S STATEMENT

I have carefully reviewed the Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction, I further certify that I have received a copy of the Settlement Statement.
I hereby authorize the Settlement Agent to make expenditures and disbursements as shown and approve same for payment.

**ACCEPTED AND APPROVED:**

Borrower(s)/Purchaser(s)

ECO RANCHES

Date: 11/21

Date:

Date:

Date:

Seller(s)

WRE REAL ESTATE HOLDINGS, LLC

Date: 11/21

Date:

Date:

Date:

The Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

**Settlement Agent:**

Date

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and Imprisonment. For details, see: Title 18 U.S. Code Sections 1001 and 1010.



# REAL ESTATE PURCHASE CONTRACT
# FOR LAND



This is a legally binding Real Estate Purchase Contract ("REPC"). If you desire legal or tax advice, consult your attorney or tax advisor.

## OFFER TO PURCHASE AND EARNEST MONEY DEPOSIT

On this <u>10th day of October, 2016</u> ("Offer Reference Date") <u>Eco Ranches</u> ("Buyer") offers to purchase from <u>WRE Real Estate Holdings LLC</u> ("Seller") the Property described below and **[ ] delivers to the Buyer's Brokerage with this offer, or [ ] agrees to deliver no later than four (4) calendar days after Acceptance (as defined in Section 23)**, Earnest Money in the amount of $<u>1,000.00</u> in the form of <u>Check</u>. After Acceptance of the REPC by Buyer and Seller, and receipt of the Earnest Money by the Brokerage, the Brokerage shall have four (4) calendar days in which to deposit the Earnest Money into the Brokerage Real Estate Trust Account.

Buyer's Brokerage _____ Phone: _____

Received by: _____ on _____
     (Signature above acknowledges receipt of Earnest Money)                                  (Date)

## OTHER PROVISIONS

**1. PROPERTY:** <u>Approximately 172.28 Acres of Land in Box Elder County</u>

also described as: <u>Parcel #07-037-0001, 07-090-0002</u>

City of <u>Plymouth</u>, County of <u>Box Elder</u> State of Utah, Zip <u>84330</u> (the "Property"). Any reference below to the term "Property" shall include the Property described above, together with the Included Items and water rights/water shares, if any, referenced in Sections 1.1, and 1.3.

**1.1 Included Items. (specify)**_____
_____

**1.2 Excluded Items. (specify)**_____

**1.3 Water Service.** The Purchase Price for the Property shall include all water rights/water shares, if any, that are the legal source for Seller's current culinary water service and irrigation water service, if any, to the Property. The water rights/water shares will be conveyed or otherwise transferred to Buyer at Closing by applicable deed or legal instruments. The following water rights/water shares, if applicable, are specifically excluded from this sale: _____
_____

**2. PURCHASE PRICE.** The Purchase Price for the Property is $<u>163,600.00</u>. Except as provided in this Section, the Purchase Price shall be paid as provided in Sections 2(a) through 2(d) below. Any amounts shown in 2(b) and 2(d) may be adjusted as deemed necessary by Buyer and the Lender.

$<u>1,000.00</u>   **(a) Earnest Money Deposit.** Under certain conditions described in the REPC, this deposit may become totally non-refundable.

$<u>162,600.00</u> **(b) New Loan.** Buyer may apply for mortgage loan financing (the "Loan") on terms acceptable to Buyer.

$_____ **(c) Seller Financing.** (see attached Seller Financing Addendum)

$_____ **(d) Balance of Purchase Price in Cash at Settlement**

$<u>163,600.00</u> **PURCHASE PRICE. Total of lines (a) through (d)**

**3. SETTLEMENT AND CLOSING.**

**3.1 Settlement.** Settlement shall take place no later than the Settlement Deadline referenced in Section 24(d), or as otherwise mutually agreed by Buyer and Seller in writing. "Settlement" shall occur only when all of the following have been completed: (a) Buyer and Seller have signed and delivered to each other or to the escrow/closing office all documents required by the REPC, by the Lender, by the title insurance and escrow/closing offices, by written escrow instructions (including any split closing instructions, if applicable), or by applicable law; (b) any monies required to be paid by Buyer or Seller under these documents

Page 1 of 6                    Buyer's Initials _____ Date _____ Seller's Initials _____ Date _____

(except for the proceeds of any new lo~ ~have been delivered by Buyer or Seller t~ ~e other party, or to the escrow/closing office, in the form of cash, wire transfer, ~ ~nier's check, or other form acceptable to t~ ~scrow/closing office.

**3.2 Prorations.** All prorations, including, but not limited to, homeowner's association dues, property taxes for the current year, rents, and interest on assumed obligations, if any, shall be made as of the Settlement Deadline referenced in Section 24(d), unless otherwise agreed to in writing by the parties. Such writing could include the settlement statement. The provisions of this Section 3.2 shall survive Closing.

**3.3 Greenbelt.** If any portion of the Property is presently assessed as "Greenbelt" the payment of any roll-back taxes assessed against the Property shall be paid for by: **[X] Seller [ ] Buyer [ ] Split Equally Between Buyer and Seller [ ] Other** (explain)

_____

**3.4 Special Assessments.** Any assessments for capital improvements as approved by the HOA (pursuant to HOA governing documents) or as assessed by a municipality or special improvement district, prior to the Settlement Deadline shall be paid for by: **[ ] Seller [ ] Buyer [ ] Split Equally Between Buyer and Seller [ ] Other** (explain) <u>None</u>_____

_____

The provisions of this Section 3.4 shall survive Closing.

**3.5 Fees/Costs/Payment Obligations.** Unless otherwise agreed to in writing, Seller and Buyer shall each pay one-half (1/2) of the fee charged by the escrow/closing office for its services in the settlement/closing process. Tenant deposits (including any prepaid rents) shall be paid or credited by Seller to Buyer at Settlement. Buyer agrees to be responsible for homeowners' association and private and public utility service transfer fees, if any, and all utilities and other services provided to the Property after the Settlement Deadline. The escrow/closing office is authorized and directed to withhold from Seller's proceeds at Closing, sufficient funds to pay off on Seller's behalf all mortgages, trust deeds, judgments, mechanic's liens, tax liens and warrants. The provisions of this Section 3.5 shall survive Closing.

**3.6 Closing.** For purposes of the REPC, "Closing" means that: (a) Settlement has been completed; (b) the proceeds of any new loan have been delivered by the Lender to Seller or to the escrow/closing office; and (c) the applicable Closing documents have been recorded in the office of the county recorder. The actions described in 3.6 (b) and (c) shall be completed within four calendar days after Settlement.

**4. POSSESSION.** Seller shall deliver physical possession of the Property to Buyer as follows: **[X] Upon Closing; [ ] __ Hours after Closing; [ ] __ Calendar Days after Closing; [ ] Other** (explain)

_____

Any contracted rental of the Property prior to or after Closing, between Buyer and Seller, shall be by separate written agreement. Seller and Buyer shall each be responsible for any insurance coverage each party deems necessary for the Property. Seller agrees to deliver the Property to Buyer free of debris and personal belongings. The provisions of this Section 4 shall survive Closing.

**5. CONFIRMATION OF AGENCY DISCLOSURE.** Buyer and Seller acknowledge prior written receipt of agency disclosure provided by their respective agent that has disclosed the agency relationships confirmed below. At the signing of the REPC:

Seller's Agent      _____, represents   **[ ] Seller [ ] both Buyer and Seller as a Limited Agent;**
Seller's Brokerage  _____, represents   **[ ] Seller [ ] both Buyer and Seller as a Limited Agent;**

Buyer's Agent       _____, represents   **[ ] Buyer [ ] both Buyer and Seller as a Limited Agent;**
Buyer's Brokerage   _____, represents   **[ ] Buyer [ ] both Buyer and Seller as a Limited Agent.**

**6. TITLE & TITLE INSURANCE.**

**6.1 Title to Property.** Seller represents that Seller has fee title to the Property and will convey marketable title to the Property to Buyer at Closing by general warranty deed. Buyer does agree to accept title to the Property subject to the contents of the Commitment for Title Insurance (the "Commitment") provided by Seller under Section 7, and as reviewed and approved by Buyer under Section 8. Buyer also agrees to accept title to the Property subject to any existing leases rental and property management agreements affecting the Property not expiring prior to Closing which were provided to Buyer pursuant to Section 7(e). The provisions of this Section 6.1 shall survive Closing.

**6.2 Title Insurance.** At Settlement, Seller agrees to pay for and cause to be issued in favor of Buyer, through the title insurance agency that issued the Commitment, the most current version of an ALTA standard coverage owner's policy of title insurance. Any additional title insurance coverage desired by Buyer shall be at Buyer's expense.

**7. SELLER DISCLOSURES.** No later than the Seller Disclosure Deadline referenced in Section 24(a), Seller shall provide to Buyer the following documents in hard copy or electronic format which are collectively referred to as the "Seller Disclosures":

**(a)** a written Seller Property Condition Disclosure (Land) for the Property, completed, signed and dated by Seller as provided in Section 10.2;

**(b)** a Commitment for Title Insurance as referenced in Section 6.1;

**(c)** a copy of any restrictive covenants (CC&R's), rules and regulations affecting the Property;

(d) a copy of the most recent minutes ⌐dget and financial statement for the home~ ers' association, if any;

(e) a copy of any lease, rental, and pro⌐ ⌐ty management agreements affecting the ⌐perty not expiring prior to Closing;

(f) evidence of any water rights and/or water shares referenced in Section 1.3;

(g) written notice of any claims and/or conditions known to Seller relating to environmental problems; and violation of any CC&R's, federal, state or local laws, and building or zoning code violations; and

(h) Other (specify) _____

## 8. BUYER'S CONDITIONS OF PURCHASE.

**8.1   DUE DILIGENCE CONDITION.** Buyer's obligation to purchase the Property: **[X] IS [ ] IS NOT** conditioned upon Buyer's Due Diligence as defined in this Section 8.1(a) below. This condition is referred to as the "Due Diligence Condition." If checked in the affirmative, Sections 8.1(a) through 8.1(c) apply; otherwise they do not.

**(a) Due Diligence Items.** Buyer's Due Diligence shall consist of Buyer's review and approval of the contents of the Seller Disclosures referenced in Section 7, and any other tests, evaluations and verifications of the Property deemed necessary or appropriate by Buyer, such as: the physical condition of the Property; the existence of any hazardous substances, environmental issues or geologic conditions; the square footage or acreage of the Property; the costs and availability of flood insurance, if applicable; water source, availability and quality; the location of property lines; regulatory use restrictions or violations; fees for services such as HOA dues, municipal services, and utility costs; convicted sex offenders residing in proximity to the Property; and any other matters deemed material to Buyer in making a decision to purchase the Property. Unless otherwise provided in the REPC, all of Buyer's Due Diligence shall be paid for by Buyer and shall be conducted by individuals or entities of Buyer's choice. Seller agrees to cooperate with Buyer's Due Diligence. Buyer agrees to pay for any damage to the Property resulting from any such inspections or tests during the Due Diligence.

**(b) Buyer's Right to Cancel or Resolve Objections.** If Buyer determines, in Buyer's sole discretion, that the results of the Due Diligence are unacceptable, Buyer may either: (i) no later than the Due Diligence Deadline referenced in Section 24(b), cancel the REPC by providing written notice to Seller, whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller; or (ii) no later than the Due Diligence Deadline referenced in Section 24(b), resolve in writing with Seller any objections Buyer has arising from Buyer's Due Diligence.

**(c) Failure to Cancel or Resolve Objections.** If Buyer fails to cancel the REPC or fails to resolve in writing any objections Buyer has arising from Buyer's Due Diligence, as provided in Section 8.1(b), Buyer shall be deemed to have waived the Due Diligence Condition.

**8.2   APPRAISAL CONDITION.** Buyer's obligation to purchase the Property: **[X] IS [ ] IS NOT** conditioned upon the Property appraising for not less than the Purchase Price. This condition is referred to as the "Appraisal Condition." If checked in the affirmative, Sections 8.2(a) and 8.2(b) apply; otherwise they do not.

**(a) Buyer's Right to Cancel.** If after completion of an appraisal by a licensed appraiser, Buyer receives written notice from the Lender or the appraiser that the Property has appraised for less than the Purchase Price (a "Notice of Appraised Value"), Buyer may cancel the REPC by providing written notice to Seller (with a copy of the Notice of Appraised Value) no later than the Financing & Appraisal Deadline referenced in Section 24(c); whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller.

**(b) Failure to Cancel.** If the REPC is not cancelled as provided in this section 8.2(a), Buyer shall be deemed to have waived the Appraisal Condition.

**8.3   FINANCING CONDITION.** Buyer's obligation to purchase the property: **[X] IS [ ] IS NOT** conditioned upon Buyer obtaining the Loan referenced in Section 2(b). This condition is referred to as the "Financing Condition." If checked in the affirmative, Sections 8.3(a) and 8.3(b) apply; otherwise they do not.  If the Financing Condition applies, Buyer agrees to work diligently and in good faith to obtain the Loan.

**(a) Buyer's Right to Cancel Before the Financing & Appraisal Deadline.** If Buyer, in Buyer's sole discretion, is not satisfied with the terms and conditions of the Loan, Buyer may cancel the REPC by providing written notice to Seller no later than the Financing & Appraisal Deadline referenced in Section 24(c); whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller.

**(b) Buyer's Right to Cancel After the Financing & Appraisal Deadline.** If after expiration of the Financing & Appraisal Deadline referenced in Section 24(c), Buyer fails to obtain the Loan, meaning that the proceeds of the Loan have not been delivered by the Lender to Seller or to the escrow/closing office as required under Section 3.6 of the REPC, then Buyer or Seller may cancel the REPC by providing written notice to the other party; whereupon the Earnest Money Deposit, or Deposits, if applicable (see Section 8.4 below), shall be released to Seller without the requirement of further written authorization from Buyer. In the event of such cancellation, Seller agrees to accept as Seller's exclusive remedy, the Earnest Money Deposit, or Deposits, if applicable, as liquidated damages. Buyer and Seller agree that liquidated damages would be difficult and impractical to calculate, and the Earnest Money Deposit, or Deposits, if applicable, is a fair and reasonable estimate of Seller's damages in the event Buyer fails to obtain the Loan.

**8.4   ADDITIONAL EARNEST MONEY DEPOSIT.** If the REPC has not been previously cancelled by Buyer as provided in Sections 8.1, 8.2 or 8.3(a), then no later than the Due Diligence Deadline referenced in Section 24(b), or the Financing &

Buyer's Initials _____   Date _10/11_   Seller's Initials _____   Date _10/11_

Appraisal Deadline referenced in Section 24(c), whichever is later, Buyer: **[ ] WILL** **[X] WILL NOT** deliver to the Buyer's Brokerage, an Additional Earnest Money Deposit in the amount of $_____. The Earnest Money Deposit and the Additional Earnest Money Deposit, if applicable, are sometimes referred to herein as the "Deposits". The Earnest Money Deposit, or Deposits, if applicable, shall be credited toward the Purchase Price at Closing.

**9. ADDENDA.** There **[ ] ARE [X] ARE NOT** addenda to the REPC containing additional terms. If there are, the terms of the following addenda are incorporated into the REPC by this reference: **[ ] Addendum No. ____ [ ] Seller Financing Addendum [ ] Other (specify)** _____

_____

**10. AS-IS CONDITION OF PROPERTY.**
    **10.1 Condition of Property/Buyer Acknowledgements.** Buyer acknowledges and agrees that in reference to the physical condition of the Property: (a) Buyer is purchasing the Property in its "As-Is" condition without expressed or implied warranties of any kind; (b) Buyer shall have, during Buyer's Due Diligence as referenced in Section 8.1, an opportunity to completely inspect and evaluate the condition of the Property; and (c) if based on the Buyer's Due Diligence, Buyer elects to proceed with the purchase of the Property, Buyer is relying wholly on Buyer's own judgment and that of any contractors or inspectors engaged by Buyer to review, evaluate and inspect the Property.
    **10.2 Condition of Property/Seller Acknowledgements.** Seller acknowledges and agrees that in reference to the physical condition of the Property, Seller agrees to: (a) disclose in writing to Buyer defects in the Property known to Seller that materially affect the value of the Property that cannot be discovered by a reasonable inspection by an ordinary prudent Buyer; (b) carefully review, complete, and provide to Buyer a written Seller Property Condition Disclosure (Land) as stated in Section 7(a); and (c) deliver the Property to Buyer in substantially the same general condition as it was on the date of Acceptance, as defined in Section 23. The provisions of Sections 10.1 and 10.2 shall survive Closing.

**11. FINAL PRE-SETTLEMENT INSPECTION.**
    **11.1 Pre-Settlement Inspection.** At any time prior to Settlement, Buyer may conduct a final pre-Settlement inspection of the Property to determine only that the Property is "as represented", meaning that the items referenced in Sections 1.1, 1.3 and 8.1(b)(ii) ("the items") are respectively present, repaired or corrected as agreed. The failure to conduct a pre-Settlement inspection or to claim that an item is not as represented shall not constitute a waiver by Buyer of the right to receive, on the date of possession, the items as represented. If the items are not as represented, Seller agrees to cause all applicable items to be corrected, repaired or replaced (the "Work") prior to the Settlement Deadline referenced in Section 24(d).
    **11.2 Escrow to Complete the Work.** If, as of Settlement, the Work has not been completed, then Buyer and Seller agree to withhold in escrow at Settlement a reasonable amount agreed to by Seller, Buyer (and Lender, if applicable), sufficient to pay for completion of the Work. If the Work is not completed within thirty (30) calendar days after the Settlement Deadline, the amount so escrowed may, subject to Lender's approval, be released to Buyer as liquidated damages for failure to complete the Work. The provisions of this Section 11.2 shall survive Closing.

**12. CHANGES DURING TRANSACTION.** Seller agrees that from the date of Acceptance until the date of Closing, none of the following shall occur without the prior written consent of Buyer: (a) no changes in any leases, rental or property management agreements shall be made; (b) no new lease, rental or property management agreements shall be entered into; (c) no substantial alterations or improvements to the Property shall be made or undertaken; (d) no further financial encumbrances to the Property shall be made, and (e) no changes in the legal title to the Property shall be made.

**13. AUTHORITY OF SIGNERS.** If Buyer or Seller is a corporation, partnership, trust, estate, limited liability company or other entity, the person signing the REPC on its behalf warrants his or her authority to do so and to bind Buyer and Seller.

**14. COMPLETE CONTRACT.** The REPC together with its addenda, any attached exhibits, and Seller Disclosures (collectively referred to as the "REPC"), constitutes the entire contract between the parties and supersedes and replaces any and all prior negotiations, representations, warranties, understandings or contracts between the parties whether verbal or otherwise. The REPC cannot be changed except by written agreement of the parties.

**15. MEDIATION.** Any dispute relating to the REPC arising prior to or after Closing: **[ ] SHALL [X] MAY AT THE OPTION OF THE PARTIES** first be submitted to mediation. Mediation is a process in which the parties meet with an impartial person who helps to resolve the dispute informally and confidentially. Mediators cannot impose binding decisions. The parties to the dispute must agree before any settlement is binding. The parties will jointly appoint an acceptable mediator and share equally in the cost of such mediation. If mediation fails, the other procedures and remedies available under the REPC shall apply. Nothing in this Section 15 prohibits any party from seeking emergency legal or equitable relief, pending mediation. The provisions of this Section 15 shall survive Closing.

**16. DEFAULT.**

Buyer's Initials _____ Date _10/11_ Seller's Initials _____ Date _10/11_

**16.1 Buyer Default.** If Buyer default, Seller may elect one of the following remedies: (a) cancel the REPC and retain the Earnest Money Deposit, or Deposits, if applicable, as liquidated damages; (b) maintain the Earnest Money Deposit, or Deposits, if applicable, in trust and sue Buyer to specifically enforce the REPC; or (c) return the Earnest Money Deposit, or Deposits, if applicable, to Buyer and pursue any other remedies available at law.

**16.2 Seller Default.** If Seller defaults, Buyer may elect one of the following remedies: (a) cancel the REPC, and in addition to the return of the Earnest Money Deposit, or Deposits, if applicable, Buyer may elect to accept from Seller, as liquidated damages, a sum equal to the Earnest Money Deposit, or Deposits, if applicable; or (b) maintain the Earnest Money Deposit, or Deposits, if applicable, in trust and sue Seller to specifically enforce the REPC; or (c) accept a return of the Earnest Money Deposit, or Deposits, if applicable, and pursue any other remedies available at law. If Buyer elects to accept liquidated damages, Seller agrees to pay the liquidated damages to Buyer upon demand.

**17. ATTORNEY FEES AND COSTS/GOVERNING LAW.** In the event of litigation or binding arbitration to enforce the REPC, the prevailing party shall be entitled to costs and reasonable attorney fees. However, attorney fees shall not be awarded for participation in mediation under Section 15. This contract shall be governed by and construed in accordance with the laws of the State of Utah. The provisions of this Section 17 shall survive Closing.

**18. NOTICES.** Except as provided in Section 23, all notices required under the REPC must be: (a) in writing; (b) signed by the Buyer or Seller giving notice; and (c) received by the Buyer or the Seller, or their respective agent, or by the brokerage firm representing the Buyer or Seller, no later than the applicable date referenced in the REPC.

**19. NO ASSIGNMENT.** The REPC and the rights and obligations of Buyer hereunder, are personal to Buyer. The REPC may not be assigned by Buyer without the prior written consent of Seller. Provided, however, the transfer of Buyer's interest in the REPC to any business entity in which Buyer holds a legal interest, including, but not limited to, a family partnership, family trust, limited liability company, partnership, or corporation (collectively referred to as a "Permissible Transfer"), shall not be treated as an assignment by Buyer that requires Seller's prior written consent. Furthermore, the inclusion of "and/or assigns" or similar language on the line identifying Buyer on the first page of the REPC shall constitute Seller's written consent only to a Permissible Transfer.

**20. INSURANCE & RISK OF LOSS.**
 **20.1   Insurance Coverage.** As of Closing, Buyer shall be responsible to obtain such casualty and liability insurance coverage on the Property in amounts acceptable to Buyer and Buyer's Lender, if applicable.
 **20.2   Risk of Loss.** If prior to Closing, any part of the Property is damaged or destroyed by fire, vandalism, flood, earthquake, or act of God, the risk of such loss or damage shall be borne by Seller; provided however, that if the cost of repairing such loss or damage would exceed ten percent (10%) of the Purchase Price referenced in Section 2, Buyer may elect to either: (i) cancel the REPC by providing written notice to the other party, in which instance the Earnest Money, or Deposits, if applicable, shall be returned to Buyer; or (ii) proceed to Closing, and accept the Property in its "As-Is" condition.

**21. TIME IS OF THE ESSENCE.** Time is of the essence regarding the dates set forth in the REPC. Extensions must be agreed to in writing by all parties. Unless otherwise explicitly stated in the REPC:  (a) performance under each Section of the REPC which references a date shall absolutely be required by 5:00 PM Mountain Time on the stated date; and (b) the term "days" and "calendar days" shall mean calendar days and shall be counted beginning on the day following the event which triggers the timing requirement (e.g. Acceptance). Performance dates and times referenced herein shall not be binding upon title companies, lenders, appraisers and others not parties to the REPC, except as otherwise agreed to in writing by such non-party.

**22. ELECTRONIC TRANSMISSION AND COUNTERPARTS.** Electronic transmission (including email and fax) of a signed copy of the REPC, any addenda and counteroffers, and the retransmission of any signed electronic transmission shall be the same as delivery of an original. The REPC and any addenda and counteroffers may be executed in counterparts.

**23. ACCEPTANCE.** "Acceptance" occurs **only** when **all** of the following have occurred: (a) Seller or Buyer has signed the offer or counteroffer where noted to indicate acceptance; and (b) Seller or Buyer or their agent has communicated to the other party or to the other party's agent that the offer or counteroffer has been signed as required.

**24. CONTRACT DEADLINES.** Buyer and Seller agree that the following deadlines shall apply to the REPC:

| | | |
|---|---|---|
| **(a) Seller Disclosure Deadline** | <u>7 days after acceptance</u> | (Date) |
| **(b) Due Diligence Deadline** | <u>50 days after acceptance</u> | (Date) |
| **(c) Financing & Appraisal Deadline** | <u>65 days after acceptance</u> | (Date) |
| **(d) Settlement Deadline** | <u>75 days after acceptance</u> | (Date) |

**25. OFFER AND TIME FOR ACCEPTANCE.** Buyer offers to purchase the Property on the above terms and conditions. If Seller does not accept this offer by: <u>5</u> : <u>00</u> **[ ] AM [X] PM** Mountain Time on <u>October 14, 2016</u> (Date), this offer shall lapse; and the Brokerage shall return any Earnest Money Deposit to Buyer.

_____    10/11    _____
(Buyer's Signature)                (Offer Date)     (Buyer's Signature)                (Offer Date)


_____    _____    _____    _____
(Buyer's Names) **(PLEASE PRINT)**    (Notice Address)    (Zip Code)    (Phone)


_____    _____    _____    _____
(Buyer's Names) **(PLEASE PRINT)**    (Notice Address)    (Zip Code)    (Phone)

<div align="center">ACCEPTANCE/COUNTEROFFER/REJECTION</div>

**CHECK ONE:**

[X] **ACCEPTANCE OF OFFER TO PURCHASE:** Seller Accepts the foregoing offer on the terms and conditions specified above.

**[ ] COUNTEROFFER:** Seller presents for Buyer's Acceptance the terms of Buyer's offer subject to the exceptions or modifications as specified in the attached ADDENDUM NO. _____.

**[ ] REJECTION:** Seller rejects the foregoing offer.

_____    10/11    _____
(Seller's Signature)          (Date)      (Time)    (Seller's Signature)              (Date)      (Time)


_____    _____    _____    _____
(Seller's Names) **(PLEASE PRINT)**    (Notice Address)    (Zip Code)    (Phone)


_____    _____    _____    _____
(Seller's Names) **(PLEASE PRINT)**    (Notice Address)    (Zip Code)    (Phone)

**This form is COPYRIGHTED by the UTAH ASSOCIATION OF REALTORS® for use solely by its members. Any unauthorized use, modification, copying or distribution without written consent is prohibited. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION. IF YOU DESIRE SPECIFIC LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.**

COPYRIGHT© UTAH ASSOCIATION OF REALTORS® - 7.4.04 - REVISED - 4.22.10 - ALL RIGHTS RESERVED                    UAR FORM 19

3  **SECURITY INVESTMENTS CORP**
3140 S Main St
Salt Lake City, UT 84115-3750

117
31-297/1240

11/21/2016

PAY TO THE
ORDER OF_____ WRE Real Estate Holding _____ | $  163,117.67

One Hundred Sixty Three Thousand One Hundred Seventeen Dollars And Sixty Seven Cents

**WELLS FARGO**

FOR_____

⑈124002971⑈ 99193228688⑈  0117

| A. | Final Statement | | B. Type of Loan | |
|---|---|---|---|---|
| | | | 1-5. Loan Type: Conventional Loan | |
| | | | 6. File Number | |
| | **FINAL Settlement Statement** | | c16-97 | |
| | | | 7. Loan Number | |
| | | | 8. Mortgage Insurance Case Number | |

| | Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown, items marked '(POC)' were paid outside this closing, they are shown here |
|---|---|
| C. | for informational purposes and are not included in the totals. |
| D. | Name of Buyer/Borrower:<br>ECO RANCHES<br>(Isaac Martin, Manager) |
| E. | Name of Seller:<br>WRE REAL ESTATE HOLDINGS, LLC |
| F. | Name of Lender:<br>Security Investment Corporation |
| G. | Property Description:  Land Plymouth, Utah see exhibit "a"<br>Plymouth, Utah |
| H. | Settlement Agent:<br>Address: |
| I. | Place of Settlement Address:<br>10 W. Century Parkway, Salt Lake City, UT 84115 |

| J. Summary of Borrower's Transactions | | | K. Summary of Seller's Transaction | | |
|---|---|---|---|---|---|
| **100** | **Gross Amount Due From Borrower** | | **400** | **Gross Amount Due To Seller** | |
| 101 | Contract Sales Price | 450,000.00 | 401 | Contract Sales Price | 450,000.00 |
| 102 | Personal Property | | 402 | Personal Property | |
| 103 | Settlement Charges to borrower (line 1400) | 4,850.00 | 403 | Total Deposits | |
| 104 | | | 404 | | |
| 105 | | | 405 | | |
| **Adjustments for items paid by seller in advance** | | | **Adjustments for items paid by seller in advance** | | |
| 106 | City/town taxes | | 406 | City/Town taxes | |
| 107 | County taxes | 1/0/00 | 407 | County taxes | 1/0/00 | |
| 108 | Assessments | | 408 | Assessments | |
| 109 | | | 409 | | |
| 110 | | | 410 | | |
| 111 | | | 411 | | |
| 112 | | | 412 | | |
| 113 | | | 413 | | |
| 114 | | | 414 | | |
| 115 | | | 415 | | |
| **120** | **Gross Amount Due From Borrower** | 454,850.00 | **420** | **Gross Amount Due To Seller** | 450,000.00 |
| **200** | **Amounts Paid By Or In Behalf Of Borrower** | | **500** | **Reductions in Amount Due to Seller** | |
| 201 | *Deposit or earnest money | 500.00 | 501 | Excess deposit (see instructions) | |
| 202 | Principal amount of new loan(s) | 453,500.00 | 502 | Settlement charges (line 1400) | 350.00 |
| 203 | Existing loan(s) taken subject | | 503 | Existing loan(s) taken subject | |
| 204 | | | 504 | Payoff of first mortgage loan | |
| 205 | | | 505 | Payoff of second mortgage loan | |
| 206 | | | 506 | | |
| 207 | | | 507 | | |
| 208 | | | 508 | | |
| 209 | | | 509 | | |
| **Adjustments for items unpaid by seller** | | | **Adjustments for items unpaid by seller** | | |
| 210 | City/town taxes | | 510 | City/town taxes | |
| 211 | County taxes | 1/1/16 -  9/19/16 | 756.63 | 511 | County taxes | 1/1/16 -  9/19/16 | 756.63 |
| 212 | Assessments | | 512 | Assessments | |
| 213 | | | 513 | | |
| 214 | Inspection | | 514 | Inspection | |
| 215 | | | 515 | | |
| 216 | | | 516 | | |
| 217 | | | 517 | | |
| 218 | | | 518 | | |
| 219 | | | 519 | | |
| **220** | **Total Paid By/For Borrower** | 454,756.63 | **520** | **Total Reduction Amount Due Seller** | 1,106.63 |
| **300** | **Cash At Settlement From/To Borrower** | | **600** | **Cash At Settlement To/From Seller** | |
| 301 | Gross amt due from Borrower (line 120) | 454,850.00 | 601 | Gross amount due to Seller (line 420) | 450,000.00 |
| 302 | Less amts paid by/for Borrower (line 220) | 454,756.63 | 602 | Less reductions in amts due to Seller (line 520) | 1,106.63 |
| 303 | Cash (X From) ( To) Borrower | 93.37 | 603 | Cash (X To) ( From) Seller | 448,893.37 |

The Settlement Statement which I have prepared is a true and accurate account of this transaction.  I have caused or will cause the funds to be disbursed in accordance with this statement.         Date:          9/19/16

Settlement Agent:

* See supplemental Page for details

| L. Settlement Charges | | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|---|
| 700 | Total Sales/Broker's Commission based on price | $450,000.00 @ | = #VALUE! | |
| | Division of Commission (line 700) as follows | | | |
| 701 | | | | |
| 702 | less Earnest Money  ($500.00) | | | |
| 703 | Commission paid at Settlement | | | |
| 704 | | | | |
| 800 | Items Payable in Connection with Loan | | | |
| 801 | Loan Origination Fee | | 4500.00 | |
| 802 | Loan Discount | | | |
| 803 | Appraisal Fee | | | |
| 804 | Credit Report | | | |
| 805 | Lender's Inspection Fee | | | |
| 806 | Mortgage Insurance Application Premium | | | |
| 807 | Assumption Fee | | | |
| 808 | Tax Service Contract | | | |
| 809 | Underwriting Fee | | | |
| 810 | Flood Certification Fee | | | |
| 811 | Tax Research Fee | | | |
| 812 | Inspection Fee | | | |
| 813 | Document Processing Fee | | | |
| 814 | | | | |
| 815 | | | | |
| Supplemental Summary | | | | |
| 900 | Items Required by Lender to be Paid in Advance | | | |
| 901 | Interest | | | |
| 902 | Mortgage Insurance Premium | | | |
| 903 | Hazard Insurance Premium | | | |
| 904 | | | | |
| 905 | | | | |
| Supplemental Summary | | | | |
| 1000 | Reserve Deposited with Lender | | | |
| 1001 | Hazard Insurance | | | |
| 1002 | Mortgage Insurance | | | |
| 1003 | City Property Taxes | | | |
| 1004 | County Property Taxes | | | |
| 1005 | Annual assessments | | | |
| 1006 | | | | |
| 1007 | | | | |
| 1008 | Aggregate Accounting Adjustment | | | |
| 1100 | Title Charges | | | |
| 1101 | Settlement or closing fee | | 250.00 | 250.00 |
| 1102 | Abstract or title search | | | |
| 1103 | Title examination | | | |
| 1104 | Title Insurance Binder | | | |
| 1105 | Document Fee | | | |
| 1106 | Notary Fee | | | |
| 1107 | Attorney Fee | | | |
| | (includes above item numbers) | | | |
| 1108 | Title Insurance - See supplemental page for breakdown of individual fees and payees | | | |
| | (includes above item number 100/116/8.1)* | | | |
| 1109 | Lender's coverage | | | |
| 1110 | Owner's coverage | | | |
| 1111 | Incoming Wire Fee | | | |
| 1112 | | | | |
| 1113 | Compliance Fee | | | |
| 1114 | | | | |
| 1115 | | | | |
| 1116 | | | | |
| 1117 | | | | |
| 1200 | Government Recording and Transfer Charges | | | |
| 1201 | Recording fees : Deed  Mortgage:  Release: | | 100.00 | 100.00 |
| 1202 | City/county tax/stamps: | | | |
| 1203 | State tax/stamps: | | | |
| 1204 | | | | |
| 1205 | | | | |
| 1206 | | | | |
| 1300 | Additional Settlement Charges | | | |
| 1301 | Survey to | | | |
| 1302 | Pest Inspection to Termite, Insect & Rodent Control | | | |
| 1303 | | | | |
| 1304 | | | | |
| 1305 | | | | |
| 1306 | | | | |
| 1307 | | | | |
| 1308 | | | | |
| 1309 | | | | |
| 1310 | | | | |
| 1311 | | | | |
| 1312 | | | | |
| 1313 | | | | |
| 1314 | | | | |
| Supplemental Summary | | | | |
| 1400 | Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | 4850.00 | 350.00 |

| Supplemental Page<br>Settlement Statement | File No. |
|---|---|
| **Final Statement** | Loan No. |
| | Settlement Date:<br>9/19/16 |

| Borrower Name: | |
|---|---|
| | ECO RANCHES<br>(Isaac Martin, Manager) |

| Seller Name: | |
|---|---|
| | WRE REAL ESTATE HOLDINGS, LLC |

| Section L. Settlement Charges Continued | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|
| 1108                           Supplemental Summary | | |
| a) Eagle Owner's Policy | | |
| b) Eagle Lender's Policy | | |

| Section J. Summary of Borrower's Transaction continue | Borrower Charges | Borrower Credits |
|---|---|---|
| 100 Gross Amount Due From Borrower | | |
| 200 Amounts Paid By Or In Behalf of Borrower | | |
| 201                           Supplemental Summary | | |
| a) Funds For Closing | | |

| The following Section is restated from the Settlement Statement Page 1 | | | | |
|---|---|---|---|---|
| 300 Cash At Settlement From/To Borrower | | 600 Cash At Settlement To/From Seller | | |
| 301 Gross amount due from Borrower (line 120) | 454,850.00 | 601 Gross Amount Due to Seller (line 420) | | 450,000.00 |
| 302 Less amounts paid by/for Borrower (line 220) | 454,756.63 | 602 Less reductions in amounts due to Seller (line 520) | | 1,106.63 |
| 303 Cash (X From) ( To) Borrower | 93.37 | 603 Cash (X To) ( From) Seller | | 448,893.37 |

# ADDENDUM TO
# SETTLEMENT STATEMENT

NOTICE TO ALL PARTIES: If information is obtained which indicates that the source of the borrower's financial contribution is other than from the borrower or other than stated by the lender in its closing instructions, the settlement agent is to obtain written instructions from the lender before proceeding with settlement.

## CERTIFICATION OF BUYER IN A CONVENTIONAL LOAN TRANSACTION

I certify that I have no knowledge of any loans that have been or will be made to me (us) or loans that have been or will be assumed by me (us) for purposes of financing this transaction, other than those described in the sales contract dated _____ (including addenda).  I certify that I (we) have not been paid or reimbursed for any of the cash down payment, I certify that i (we) have not and will not receive any payment or reimbursement for any of my (our) closing costs which have not been previously disclosed in the sales contract (including addenda) and/or my application for mortgage insurance submitted to my (our) mortgage lender.

| | | |
|---|---|---|
| _Isaac Martin_ | 9-19-16 | |
| Borrower      ECO RANCHES | Date | Borrower                    Date |
| _Isaac Martin_ | 9-19-16 | |
| Borrower      (Isaac Martin, Manager) | Date | Borrower                    Date |

## CERTIFICATION OF BUYER IN A CONVENTIONAL LOAN TRANSACTION

I certify that I have no knowledge of any loans that have been or will be made to the borrower(s), or loans that have been or will be assumed by the borrower(s), for purposes of financing this transaction, other that those described in the sales contract dated _____ (including addenda).  I certify that I have not and will not pay or reimburse the borrower(s) for any part of the cash down payment.  I certify that I have not and will not pay or reimburse the borrower(s) for any part of the borrower's closing costs which have not been previously disclosed in the sales contract (including and addenda).

| | | |
|---|---|---|
| _[signature]_ | 9/19/16 | |
| Seller      WRE REAL ESTATE HOLDINGS, LLC | Date | Seller                    Date |
| Seller | Date | Seller                    Date |

## CERTIFICATION OF BUYER IN A CONVENTIONAL LOAN TRANSACTION

To the best of my knowledge, the Settlement Statement which I have prepared is a true and accurate account of the funds which were (i) received, or (ii) paid outside closing, and the funds received have been or will be disbursed by the undersigned as part of the settlement of this transaction.  I further certify that I have obtained the above certifications which were executed by the borrower(s) and seller(s) as indicated.

| | |
|---|---|
| | |
| Settlement Agent | Date |

[ The certifications contained herein may be obtained from the respective parties at different times or may be obtained on separate addenda]

**WARNING**: It is a crime to knowingly make false statements to the United States on this or any other similar form.  Penalties upon conviction can include a fine and imprisonment, For details, see: Title 18 U.S. Code Sections 1001 and 1010.

## SELLER'S AND/OR PURCHASER'S/BORROWER'S STATEMENT

I have carefully reviewed the Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the Settlement Statement.
I hereby authorize the Settlement Agent to make expenditures and disbursements as shown and approve same for payment.

**ACCEPTED AND APPROVED:**

Borrower(s)/Purchaser(s)                                          Seller(s)

_____                    _____
ECO RANCHES                                                      WRE REAL ESTATE HOLDINGS, LLC

*9-19-16*                                                                *9/19/16*
Date:                                                                    Date:

_____                    _____
(Isaac Martin, Manager)

*9-19-16*
Date:                                                                    Date:

_____                    _____

Date:                                                                    Date:

The Settlement Statement which I have prepared is a true and accurate account of this transaction.  I have caused or will cause the funds to be disbursed in accordance with this statement.

**Settlement Agent:**

_____                    _____
                                                                        Date

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form.  Penalties upon conviction can include a fine and Imprisonment.  For details, see: Title 18 U.S. Code Sections 1001 and 1010.


Utah Association
of REALTORS®
REALTOR®

# REAL ESTATE PURCHASE CONTRACT
# FOR LAND


EQUAL HOUSING
OPPORTUNITY

This is a legally binding Real Estate Purchase Contract ("REPC"). If you desire legal or tax advice, consult your attorney or tax advisor.

### OFFER TO PURCHASE AND EARNEST MONEY DEPOSIT

On this <u>29th day of July, 2016</u> ("Offer Reference Date") <u>ECO RANCHES</u>          ("Buyer") offers to purchase from <u>WRE Real Estate Holdings LLC</u> ("Seller") the Property described below and **[ ] delivers to the Buyer's Brokerage with this offer, or [X] agrees to deliver no later than four (4) calendar days after Acceptance (as defined in Section 23)**, Earnest Money in the amount of $<u>500.00</u>      in the form of <u>check</u>      . After Acceptance of the REPC by Buyer and Seller, and receipt of the Earnest Money by the Brokerage, the Brokerage shall have four (4) calendar days in which to deposit the Earnest Money into the Brokerage Real Estate Trust Account.

Buyer's Brokerage _____  Phone: _____

Received by: _____  on _____
<div align="center">(Signature above acknowledges receipt of Earnest Money)                                    (Date)</div>

### OTHER PROVISIONS

**1. PROPERTY:** <u>Approximately 92 acres plus 3 1.2 acre lots in Plymouth, Utah</u>

also described as: <u>Parcel #'s Tract 1: 08-041-0025, 08-041-0026, 08-041-0027, 08-041-0028, 08-042-0018, Tract 2: 08-041-0019, 08-041-0004, 08-041-0020</u>

City of <u>Plymouth</u>      , County of <u>Box Elder</u>      State of Utah, Zip <u>84330</u>  (the "Property"). Any reference below to the term "Property" shall include the Property described above, together with the Included Items and water rights/water shares, if any, referenced in Sections 1.1, and 1.3.

**1.1 Included Items. (specify)**_____

**1.2 Excluded Items. (specify)** <u>None</u>_____

**1.3 Water Service.** The Purchase Price for the Property shall include all water rights/water shares, if any, that are the legal source for Seller's current culinary water service and irrigation water service, if any, to the Property. The water rights/water shares will be conveyed or otherwise transferred to Buyer at Closing by applicable deed or legal instruments. The following water rights/ water shares, if applicable, are specifically excluded from this sale: _____

**2. PURCHASE PRICE.** The Purchase Price for the Property is $<u>450,000.00</u>    . Except as provided in this Section, the Purchase Price shall be paid as provided in Sections 2(a) through 2(d) below. Any amounts shown in 2(b) and 2(d) may be adjusted as deemed necessary by Buyer and the Lender.

$<u>500.00</u>      **(a) Earnest Money Deposit.** Under certain conditions described in the REPC, this deposit may become totally non-refundable.

$<u>TBD by Lender</u> **(b) New Loan.** Buyer may apply for mortgage loan financing (the "Loan") on terms acceptable to Buyer.

$_____ **(c) Seller Financing.** (see attached Seller Financing Addendum)

$<u>TBD by Lender</u> **(d) Balance of Purchase Price in Cash at Settlement**

$<u>450,000.00</u> **PURCHASE PRICE. Total of lines (a) through (d)**

**3. SETTLEMENT AND CLOSING.**

**3.1 Settlement.** Settlement shall take place no later than the Settlement Deadline referenced in Section 24(d), or as otherwise mutually agreed by Buyer and Seller in writing. "Settlement" shall occur only when all of the following have been completed: (a) Buyer and Seller have signed and delivered to each other or to the escrow/closing office all documents required by the REPC, by the Lender, by the title insurance and escrow/closing offices, by written escrow instructions (including any split closing

instructions, if applicable), or by applicable law; (b) any monies required to be paid by Buyer or Seller under these documents (except for the proceeds of any new loan) have been delivered by Buyer or Seller to the other party, or to the escrow/closing office, in the form of cash, wire transfer, cashier's check, or other form acceptable to the escrow/closing office.

**3.2   Prorations**.  All prorations, including, but not limited to, homeowner's association dues, property taxes for the current year, rents, and interest on assumed obligations, if any, shall be made as of the Settlement Deadline referenced in Section 24(d), unless otherwise agreed to in writing by the parties. Such writing could include the settlement statement. The provisions of this Section 3.2 shall survive Closing.

**3.3   Greenbelt**.  If any portion of the Property is presently assessed as "Greenbelt" the payment of any roll-back taxes assessed against the Property shall be paid for by:  **[X]** Seller  **[ ]** Buyer  **[ ]** Split Equally Between Buyer and Seller  **[ ]** Other (explain)

_____

**3.4   Special Assessments**.  Any assessments for capital improvements as approved by the HOA (pursuant to HOA governing documents) or as assessed by a municipality or special improvement district, prior to the Settlement Deadline shall be paid for by: **[X]** Seller  **[ ]** Buyer  **[ ]** Split Equally Between Buyer and Seller  **[ ]** Other (explain) _____

_____
The provisions of this Section 3.4 shall survive Closing.

**3.5   Fees/Costs/Payment Obligations.**  Unless otherwise agreed to in writing, Seller and Buyer shall each pay one-half (1/2) of the fee charged by the escrow/closing office for its services in the settlement/closing process. Tenant deposits (including any prepaid rents) shall be paid or credited by Seller to Buyer at Settlement. Buyer agrees to be responsible for homeowners' association and private and public utility service transfer fees, if any, and all utilities and other services provided to the Property after the Settlement Deadline. The escrow/closing office is authorized and directed to withhold from Seller's proceeds at Closing, sufficient funds to pay off on Seller's behalf all mortgages, trust deeds, judgments, mechanic's liens, tax liens and warrants. The provisions of this Section 3.5 shall survive Closing.

**3.6   Closing.**  For purposes of the REPC, "Closing" means that: (a) Settlement has been completed; (b) the proceeds of any new loan have been delivered by the Lender to Seller or to the escrow/closing office; and (c) the applicable Closing documents have been recorded in the office of the county recorder. The actions described in 3.6 (b) and (c) shall be completed within four calendar days after Settlement.

**4. POSSESSION.**  Seller shall deliver physical possession of the Property to Buyer as follows:  **[X] Upon Closing;**
**[ ] __ Hours after Closing; [ ] __ Calendar Days after Closing; [ ] Other (explain)**

_____
Any contracted rental of the Property prior to or after Closing, between Buyer and Seller, shall be by separate written agreement. Seller and Buyer shall each be responsible for any insurance coverage each party deems necessary for the Property. Seller agrees to deliver the Property to Buyer free of debris and personal belongings. The provisions of this Section 4 shall survive Closing.

**5. CONFIRMATION OF AGENCY DISCLOSURE.**  Buyer and Seller acknowledge prior written receipt of agency disclosure provided by their respective agent that has disclosed the agency relationships confirmed below. At the signing of the REPC:

| | | |
|---|---|---|
| Seller's Agent | _____, represents | **[ ] Seller [ ]** both Buyer and Seller as a Limited Agent; |
| Seller's Brokerage | _____, represents | **[ ] Seller [ ]** both Buyer and Seller as a Limited Agent; |
| Buyer's Agent | _____, represents | **[X] Buyer [ ]** both Buyer and Seller as a Limited Agent; |
| Buyer's Brokerage | _____, represents | **[X] Buyer [ ]** both Buyer and Seller as a Limited Agent. |

**6. TITLE & TITLE INSURANCE.**

**6.1   Title to Property.**  Seller represents that Seller has fee title to the Property and will convey marketable title to the Property to Buyer at Closing by general warranty deed. Buyer does agree to accept title to the Property subject to the contents of the Commitment for Title Insurance (the "Commitment") provided by Seller under Section 7, and as reviewed and approved by Buyer under Section 8. Buyer also agrees to accept title to the Property subject to any existing leases rental and property management agreements affecting the Property not expiring prior to Closing which were provided to Buyer pursuant to Section 7(e).  The provisions of this Section 6.1 shall survive Closing.

**6.2   Title Insurance.**  At Settlement, Seller agrees to pay for and cause to be issued in favor of Buyer, through the title insurance agency that issued the Commitment, the most current version of an ALTA standard coverage owner's policy of title insurance. Any additional title insurance coverage desired by Buyer shall be at Buyer's expense.

**7. SELLER DISCLOSURES.**  No later than the Seller Disclosure Deadline referenced in Section 24(a), Seller shall provide to Buyer the following documents in hard copy or electronic format which are collectively referred to as the "Seller Disclosures":

(a) a written Seller Property Condition Disclosure (Land) for the Property, completed, signed and dated by Seller as provided in Section10.2;

(b) a Commitment for Title Insurance as referenced in Section 6.1;

(c) a copy of any restrictive covenants (CC&R's), rules and regulations affecting the Property;
(d) a copy of the most recent minutes, budget and financial statement for the homeowners' association, if any;
(e) a copy of any lease, rental, and property management agreements affecting the Property not expiring prior to Closing;
(f) evidence of any water rights and/or water shares referenced in Section 1.3;
(g) written notice of any claims and/or conditions known to Seller relating to environmental problems; and violation of any CC&R's, federal, state or local laws, and building or zoning code violations; and
(h) Other (specify) _____

## 8. BUYER'S CONDITIONS OF PURCHASE.

**8.1   DUE DILIGENCE CONDITION.** Buyer's obligation to purchase the Property: **[X] IS [ ] IS NOT** conditioned upon Buyer's Due Diligence as defined in this Section 8.1(a) below. This condition is referred to as the "Due Diligence Condition." If checked in the affirmative, Sections 8.1(a) through 8.1(c) apply; otherwise they do not.

(a) **Due Diligence Items.** Buyer's Due Diligence shall consist of Buyer's review and approval of the contents of the Seller Disclosures referenced in Section 7, and any other tests, evaluations and verifications of the Property deemed necessary or appropriate by Buyer, such as: the physical condition of the Property; the existence of any hazardous substances, environmental issues or geologic conditions; the square footage or acreage of the Property; the costs and availability of flood insurance, if applicable; water source, availability and quality; the location of property lines; regulatory use restrictions or violations; fees for services such as HOA dues, municipal services, and utility costs; convicted sex offenders residing in proximity to the Property; and any other matters deemed material to Buyer in making a decision to purchase the Property. Unless otherwise provided in the REPC, all of Buyer's Due Diligence shall be paid for by Buyer and shall be conducted by individuals or entities of Buyer's choice. Seller agrees to cooperate with Buyer's Due Diligence. Buyer agrees to pay for any damage to the Property resulting from any such inspections or tests during the Due Diligence.

(b) **Buyer's Right to Cancel or Resolve Objections.** If Buyer determines, in Buyer's sole discretion, that the results of the Due Diligence are unacceptable, Buyer may either: (i) no later than the Due Diligence Deadline referenced in Section 24(b), cancel the REPC by providing written notice to Seller, whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller; or (ii) no later than the Due Diligence Deadline referenced in Section 24(b), resolve in writing with Seller any objections Buyer has arising from Buyer's Due Diligence.

(c) **Failure to Cancel or Resolve Objections.** If Buyer fails to cancel the REPC or fails to resolve in writing any objections Buyer has arising from Buyer's Due Diligence, as provided in Section 8.1(b), Buyer shall be deemed to have waived the Due Diligence Condition.

**8.2   APPRAISAL CONDITION.** Buyer's obligation to purchase the Property: **[X] IS [ ] IS NOT** conditioned upon the Property appraising for not less than the Purchase Price. This condition is referred to as the "Appraisal Condition." If checked in the affirmative, Sections 8.2(a) and 8.2(b) apply; otherwise they do not.

(a) **Buyer's Right to Cancel.** If after completion of an appraisal by a licensed appraiser, Buyer receives written notice from the Lender or the appraiser that the Property has appraised for less than the Purchase Price (a "Notice of Appraised Value"), Buyer may cancel the REPC by providing written notice to Seller (with a copy of the Notice of Appraised Value) no later than the Financing & Appraisal Deadline referenced in Section 24(c); whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller.

(b) **Failure to Cancel.** If the REPC is not cancelled as provided in this section 8.2(a), Buyer shall be deemed to have waived the Appraisal Condition.

**8.3   FINANCING CONDITION.** Buyer's obligation to purchase the property: **[X] IS [ ] IS NOT** conditioned upon Buyer obtaining the Loan referenced in Section 2(b). This condition is referred to as the "Financing Condition." If checked in the affirmative, Sections 8.3(a) and 8.3(b) apply; otherwise they do not. If the Financing Condition applies, Buyer agrees to work diligently and in good faith to obtain the Loan.

(a) **Buyer's Right to Cancel Before the Financing & Appraisal Deadline.** If Buyer, in Buyer's sole discretion, is not satisfied with the terms and conditions of the Loan, Buyer may cancel the REPC by providing written notice to Seller no later than the Financing & Appraisal Deadline referenced in Section 24(c); whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller.

(b) **Buyer's Right to Cancel After the Financing & Appraisal Deadline.** If after expiration of the Financing & Appraisal Deadline referenced in Section 24(c), Buyer fails to obtain the Loan, meaning that the proceeds of the Loan have not been delivered by the Lender to Seller or to the escrow/closing office as required under Section 3.6 of the REPC, then Buyer or Seller may cancel the REPC by providing written notice to the other party; whereupon the Earnest Money Deposit, or Deposits, if applicable (see Section 8.4 below), shall be released to Seller without the requirement of further written authorization from Buyer. In the event of such cancellation, Seller agrees to accept as Seller's exclusive remedy, the Earnest Money Deposit, or Deposits, if applicable, as liquidated damages. Buyer and Seller agree that liquidated damages would be difficult and impractical to calculate, and the Earnest Money Deposit, or Deposits, if applicable, is a fair and reasonable estimate of Seller's damages in the event Buyer fails to obtain the Loan.

**8.4   ADDITIONAL EARNEST MONEY DEPOSIT.** If the REPC has not been previously cancelled by Buyer as provided in Sections 8.1, 8.2 or 8.3(a), then no later than the Due Diligence Deadline referenced in Section 24(b), or the Financing & Appraisal Deadline referenced in Section 24(c), whichever is later, Buyer:  **[ ] WILL [X] WILL NOT** deliver to the Buyer's Brokerage, an Additional Earnest Money Deposit in the amount of  $_____. The Earnest Money Deposit and the Additional Earnest Money Deposit, if applicable, are sometimes referred to herein as the "Deposits". The Earnest Money Deposit, or Deposits, if applicable, shall be credited toward the Purchase Price at Closing.

**9. ADDENDA.** There **[X] ARE [ ] ARE NOT** addenda to the REPC containing additional terms. If there are, the terms of the following addenda are incorporated into the REPC by this reference:  **[X] Addendum No.** 1___  **[ ] Seller Financing Addendum [ ] Other (specify)** _____
_____

**10. AS-IS CONDITION OF PROPERTY.**
    **10.1 Condition of Property/Buyer Acknowledgements.** Buyer acknowledges and agrees that in reference to the physical condition of the Property: (a) Buyer is purchasing the Property in its "As-Is" condition without expressed or implied warranties of any kind; (b) Buyer shall have, during Buyer's Due Diligence as referenced in Section 8.1, an opportunity to completely inspect and evaluate the condition of the Property; and (c) if based on the Buyer's Due Diligence, Buyer elects to proceed with the purchase of the Property, Buyer is relying wholly on Buyer's own judgment and that of any contractors or inspectors engaged by Buyer to review, evaluate and inspect the Property.
    **10.2 Condition of Property/Seller Acknowledgements.** Seller acknowledges and agrees that in reference to the physical condition of the Property, Seller agrees to: (a) disclose in writing to Buyer defects in the Property known to Seller that materially affect the value of the Property that cannot be discovered by a reasonable inspection by an ordinary prudent Buyer; (b) carefully review, complete, and provide to Buyer a written Seller Property Condition Disclosure (Land) as stated in Section 7(a); and (c) deliver the Property to Buyer in substantially the same general condition as it was on the date of Acceptance, as defined in Section 23. The provisions of Sections 10.1 and 10.2 shall survive Closing.

**11. FINAL PRE-SETTLEMENT INSPECTION.**
    **11.1   Pre-Settlement Inspection.** At any time prior to Settlement, Buyer may conduct a final pre-Settlement inspection of the Property to determine only that the Property is "as represented," meaning that the items referenced in Sections 1.1, 1.3 and 8.1(b)(ii) ("the items") are respectively present, repaired or corrected as agreed. The failure to conduct a pre-Settlement inspection or to claim that an item is not as represented shall not constitute a waiver by Buyer of the right to receive, on the date of possession, the items as represented. If the items are not as represented, Seller agrees to cause all applicable items to be corrected, repaired or replaced (the "Work") prior to the Settlement Deadline referenced in Section 24(d).
    **11.2   Escrow to Complete the Work.** If, as of Settlement, the Work has not been completed, then Buyer and Seller agree to withhold in escrow at Settlement a reasonable amount agreed to by Seller, Buyer (and Lender, if applicable), sufficient to pay for completion of the Work. If the Work is not completed within thirty (30) calendar days after the Settlement Deadline, the amount so escrowed may, subject to Lender's approval, be released to Buyer as liquidated damages for failure to complete the Work. The provisions of this Section 11.2 shall survive Closing.

**12. CHANGES DURING TRANSACTION.** Seller agrees that from the date of Acceptance until the date of Closing, none of the following shall occur without the prior written consent of Buyer: (a) no changes in any leases, rental or property management agreements shall be made; (b) no new lease, rental or property management agreements shall be entered into; (c) no substantial alterations or improvements to the Property shall be made or undertaken; (d) no further financial encumbrances to the Property shall be made, and (e) no changes in the legal title to the Property shall be made.

**13. AUTHORITY OF SIGNERS.** If Buyer or Seller is a corporation, partnership, trust, estate, limited liability company or other entity, the person signing the REPC on its behalf warrants his or her authority to do so and to bind Buyer and Seller.

**14. COMPLETE CONTRACT.** The REPC together with its addenda, any attached exhibits, and Seller Disclosures (collectively referred to as the "REPC"), constitutes the entire contract between the parties and supersedes and replaces any and all prior negotiations, representations, warranties, understandings or contracts between the parties whether verbal or otherwise. The REPC cannot be changed except by written agreement of the parties.

**15. MEDIATION.** Any dispute relating to the REPC arising prior to or after Closing: **[ ] SHALL [X] MAY AT THE OPTION OF THE PARTIES** first be submitted to mediation. Mediation is a process in which the parties meet with an impartial person who helps to resolve the dispute informally and confidentially. Mediators cannot impose binding decisions. The parties to the dispute must agree before any settlement is binding. The parties will jointly appoint an acceptable mediator and share equally in the cost of such mediation. If mediation fails, the other procedures and remedies available under the REPC shall apply. Nothing in this Section 15 prohibits any party from seeking emergency legal or equitable relief, pending mediation. The provisions of this Section 15 shall survive Closing.

Buyer's Initials _IM_____ Date _July 29_ Seller's Initials _____ Date _7/29_

**16. DEFAULT.**

    **16.1 Buyer Default.** If Buyer defaults, Seller may elect one of the following remedies: (a) cancel the REPC and retain the Earnest Money Deposit, or Deposits, if applicable, as liquidated damages; (b) maintain the Earnest Money Deposit, or Deposits, if applicable, in trust and sue Buyer to specifically enforce the REPC; or (c) return the Earnest Money Deposit, or Deposits, if applicable, to Buyer and pursue any other remedies available at law.

    **16.2 Seller Default.** If Seller defaults, Buyer may elect one of the following remedies: (a) cancel the REPC, and in addition to the return of the Earnest Money Deposit, or Deposits, if applicable, Buyer may elect to accept from Seller, as liquidated damages, a sum equal to the Earnest Money Deposit, or Deposits, if applicable; or (b) maintain the Earnest Money Deposit, or Deposits, if applicable, in trust and sue Seller to specifically enforce the REPC; or (c) accept a return of the Earnest Money Deposit, or Deposits, if applicable, and pursue any other remedies available at law. If Buyer elects to accept liquidated damages, Seller agrees to pay the liquidated damages to Buyer upon demand.

**17. ATTORNEY FEES AND COSTS/GOVERNING LAW.** In the event of litigation or binding arbitration to enforce the REPC, the prevailing party shall be entitled to costs and reasonable attorney fees. However, attorney fees shall not be awarded for participation in mediation under Section 15. This contract shall be governed by and construed in accordance with the laws of the State of Utah. The provisions of this Section 17 shall survive Closing.

**18. NOTICES.** Except as provided in Section 23, all notices required under the REPC must be: (a) in writing; (b) signed by the Buyer or Seller giving notice; and (c) received by the Buyer or the Seller, or their respective agent, or by the brokerage firm representing the Buyer or Seller, no later than the applicable date referenced in the REPC.

**19. NO ASSIGNMENT.** The REPC and the rights and obligations of Buyer hereunder, are personal to Buyer. The REPC may not be assigned by Buyer without the prior written consent of Seller. Provided, however, the transfer of Buyer's interest in the REPC to any business entity in which Buyer holds a legal interest, including, but not limited to, a family partnership, family trust, limited liability company, partnership, or corporation (collectively referred to as a "Permissible Transfer"), shall not be treated as an assignment by Buyer that requires Seller's prior written consent. Furthermore, the inclusion of "and/or assigns" or similar language on the line identifying Buyer on the first page of the REPC shall constitute Seller's written consent only to a Permissible Transfer.

**20. INSURANCE & RISK OF LOSS.**

    **20.1 Insurance Coverage.** As of Closing, Buyer shall be responsible to obtain such casualty and liability insurance coverage on the Property in amounts acceptable to Buyer and Buyer's Lender, if applicable.

    **20.2 Risk of Loss.** If prior to Closing, any part of the Property is damaged or destroyed by fire, vandalism, flood, earthquake, or act of God, the risk of such loss or damage shall be borne by Seller; provided however, that if the cost of repairing such loss or damage would exceed ten percent (10%) of the Purchase Price referenced in Section 2, Buyer may elect to either: (i) cancel the REPC by providing written notice to the other party, in which instance the Earnest Money, or Deposits, if applicable, shall be returned to Buyer; or (ii) proceed to Closing, and accept the Property in its "As-Is" condition.

**21. TIME IS OF THE ESSENCE.** Time is of the essence regarding the dates set forth in the REPC. Extensions must be agreed to in writing by all parties. Unless otherwise explicitly stated in the REPC: (a) performance under each Section of the REPC which references a date shall absolutely be required by 5:00 PM Mountain Time on the stated date; and (b) the term "days" and "calendar days" shall mean calendar days and shall be counted beginning on the day following the event which triggers the timing requirement (e.g. Acceptance). Performance dates and times referenced herein shall not be binding upon title companies, lenders, appraisers and others not parties to the REPC, except as otherwise agreed to in writing by such non-party.

**22. ELECTRONIC TRANSMISSION AND COUNTERPARTS.** Electronic transmission (including email and fax) of a signed copy of the REPC, any addenda and counteroffers, and the retransmission of any signed electronic transmission shall be the same as delivery of an original. The REPC and any addenda and counteroffers may be executed in counterparts.

**23. ACCEPTANCE.** "Acceptance" occurs **only** when **all** of the following have occurred: (a) Seller or Buyer has signed the offer or counteroffer where noted to indicate acceptance; and (b) Seller or Buyer or their agent has communicated to the other party or to the other party's agent that the offer or counteroffer has been signed as required.

    Buyer's Initials _IM___ Date _July 29_ Seller's Initials _____ Date _7/29_

**24. CONTRACT DEADLINES.** Buyer and Seller agree that the following deadlines shall apply to the REPC:

| | | |
|---|---|---|
| (a) Seller Disclosure Deadline | <u>5 days after acceptance</u> | (Date) |
| (b) Due Diligence Deadline | <u>60 days after acceptance</u> | (Date) |
| (c) Financing & Appraisal Deadline | <u>75 days after acceptance</u> | (Date) |
| (d) Settlement Deadline | <u>90 days after acceptance</u> | (Date) |

**25. OFFER AND TIME FOR ACCEPTANCE.** Buyer offers to purchase the Property on the above terms and conditions. If Seller does not accept this offer by: <u>5</u> : <u>00</u> [ ] AM [X] PM Mountain Time on <u>July 30, 2016</u> (Date), this offer shall lapse; and the Brokerage shall return any Earnest Money Deposit to Buyer.

_Isaac Martin_     _7-29-16_
_____
(Buyer's Signature)           (Offer Date)      (Buyer's Signature)           (Offer Date)

_Isaac Martin_        _24050 N 6000 W, Plymouth, UT,_   _84330_
_____
(Buyer's Names) (PLEASE PRINT)    (Notice Address)             (Zip Code)    (Phone)

_____
(Buyer's Names) (PLEASE PRINT)    (Notice Address)             (Zip Code)    (Phone)

<div align="center">

**ACCEPTANCE/COUNTEROFFER/REJECTION**

</div>

**CHECK ONE:**

[ ] **ACCEPTANCE OF OFFER TO PURCHASE:** Seller Accepts the foregoing offer on the terms and conditions specified above.

[ ] **COUNTEROFFER:** Seller presents for Buyer's Acceptance the terms of Buyer's offer subject to the exceptions or modifications as specified in the attached ADDENDUM NO. _____.

[ ] **REJECTION:** Seller rejects the foregoing offer.

_Jacob Kingston_
_____
(Seller's Signature)        (Date)     (Time)    (Seller's Signature)      (Date)     (Time)

_Jacob Kingston_
_____
(Seller's Names) (PLEASE PRINT)    (Notice Address)             (Zip Code)    (Phone)

_____
(Seller's Names) (PLEASE PRINT)    (Notice Address)             (Zip Code)    (Phone)

This form is COPYRIGHTED by the UTAH ASSOCIATION OF REALTORS® for use solely by its members. Any unauthorized use, modification, copying or distribution without written consent is prohibited. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION. IF YOU DESIRE SPECIFIC LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

COPYRIGHT© UTAH ASSOCIATION OF REALTORS® - 7.4.04 - REVISED - 4.22.10 - ALL RIGHTS RESERVED        UAR FORM 19




ADDENDUM NO. 1
TO
REAL ESTATE PURCHASE CONTRACT

THIS IS AN [X] ADDENDUM [ ] COUNTEROFFER to that REAL ESTATE PURCHASE CONTRACT (the "REPC") with an Offer Reference Date of 29th day of July, 2016 including all prior addenda and counteroffers, between Eco Ranches as Buyer, and WRE Real Estate Holdings LLC as Seller, regarding the Property located at Box Elder County . The following terms are hereby incorporated as part of the REPC:

1. Buyer and Seller agree that the Earnest Money Deposit shall not be required to be received until 4 days after Buyers Due Diligence Deadline as referenced in paragraph 24 (b) of the Real Estate Purchase Contract.

BUYER AND SELLER AGREE THAT THE CONTRACT DEADLINES REFERENCED IN SECTION 24 OF THE REPC (CHECK APPLICABLE BOX): [X] REMAIN UNCHANGED [ ] ARE CHANGED AS FOLLOWS: _____
_____

To the extent the terms of this ADDENDUM modify or conflict with any provisions of the REPC, including all prior addenda and counteroffers, these terms shall control. All other terms of the REPC, including all prior addenda and counteroffers, not modified by this ADDENDUM shall remain the same. [X] Seller [ ] Buyer shall have until 5 : 00 [ ] AM [X] PM Mountain Time on July 30, 2016 (Date), to accept the terms of this ADDENDUM in accordance with the provisions of Section 23 of the REPC. Unless so accepted, the offer as set forth in this ADDENDUM shall lapse.

| _Isaac Martin_ | 7-29-16 | | _signature_ | 7/29/16 | |
|---|---|---|---|---|---|
| [ ] Buyer [ ] Seller Signature | (Date) | (Time) | [ ] Buyer [ ] Seller Signature | (Date) | (Time) |

### ACCEPTANCE/COUNTEROFFER/REJECTION

CHECK ONE:

[ ] ACCEPTANCE: [ ] Seller [ ] Buyer hereby accepts the terms of this ADDENDUM.

[ ] COUNTEROFFER: [ ] Seller [ ] Buyer presents as a counteroffer the terms of attached ADDENDUM NO. ___

| _Isaac Martin_ | 7-29-16 | | | | |
|---|---|---|---|---|---|
| (Signature) | (Date) | (Time) | (Signature) | (Date) | (Time) |

[ ] REJECTION: [ ] Seller [ ] Buyer rejects the foregoing ADDENDUM.

| | | | | | |
|---|---|---|---|---|---|
| (Signature) | (Date) | (Time) | (Signature) | (Date) | (Time) |

THIS FORM APPROVED BY THE UTAH REAL ESTATE COMMISSION AND THE OFFICE OF THE UTAH ATTORNEY GENERAL, EFFECTIVE AUGUST 5, 2003. IT REPLACES AND SUPERSEDES ALL PREVIOUSLY APPROVED VERSIONS OF THIS FORM.

JEAN I MARTIN
DBA ECO RANCHES
PO BOX 65463
SALT LAKE CTY UT 84165-0463

107

DATE 9-14-16

PAY TO THE
ORDER OF Washakie Renuable energy LLC        $ 500.00

five hundred dollars                                 DOLLARS

**US bank.**

MEMO                                    Isaac Mato        MP

⑈124302150⑈ 153154198979⑈0107

3-1

TRAN  151  /62    31-297/1240 2180

9/27/2016

Date

448,893.37

**PAY** to the
order of    WRE Real Estate Holdings, LLC

Four Hundred Forty Eight Thousand Eight Hundred Ninety Three Dollars And Thirty Seven Cents

$

Dollars

WELLS FARGO    Wells Fargo Bank, N.A.
Utah
wellsfargo.com

For

⑈1240029711⑈ 9919322868⑈

Settlement Statement

| A. | Final Statement | | B. Type of Loan |
|---|---|---|---|
| | | | 1-5. Loan Type: Conventional Loan |
| | **FINAL Settlement Statement** | | 6. File Number    c16-100 |
| | | | 7. Loan Number |
| | | | 8. Mortgage Insurance Case Number |

| C. | Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked '(POC)' were paid outside this closing, they are shown here for informational purposes and are not included in the totals. |
|---|---|
| D. | **Name of Buyer/Borrower:** ECO RANCHES (Shain Stoddard, Manager) |
| E. | **Name of Seller:** WRE REAL ESTATE HOLDINGS, LLC |
| F. | **Name of Lender:** Security Investment Corporation |
| G. | **Property Description:** Land Plymouth, Utah see exhibit "a" Plymonth, Utah |
| H. | **Settlement Agent:** Address: |
| I. | **Place of Settlement Address:** 10 W. Century Parkway, Salt Lake City, UT 84115 |

| **J. Summary of Borrower's Transactions** | | | | **K. Summary of Seller's Transaction** | | | |
|---|---|---|---|---|---|---|---|
| 100 | **Gross Amount Due From Borrower** | | | 400 | **Gross Amount Due To Seller** | | |
| 101 | Contract Sales Price | | 306,400.00 | 401 | Contract Sales Price | | 306,400.00 |
| 102 | Personal Property | | | 402 | Personal Property | | |
| 103 | Settlement Charges to borrower (line 1400) | | 4,704.00 | 403 | Total Deposits | | |
| 104 | | | | 404 | | | |
| 105 | | | | 405 | | | |
| **Adjustments for items paid by seller in advance** | | | | **Adjustments for items paid by seller in advance** | | | |
| 106 | City/town taxes | | | 406 | City/town taxes | | |
| 107 | County taxes | 1/0/00 | | 407 | County taxes | 1/0/00 | |
| 108 | Assessments | | | 408 | Assessments | | |
| 109 | | | | 409 | | | |
| 110 | | | | 410 | | | |
| 111 | | | | 411 | | | |
| 112 | | | | 412 | | | |
| 113 | | | | 413 | | | |
| 114 | | | | 414 | | | |
| 115 | | | | 415 | | | |
| 120 | **Gross Amount Due From Borrower** | | 311,104.00 | 420 | **Gross Amount Due To Seller** | | 306,400.00 |
| 200 | **Amounts Paid By Or In Behalf of Borrower** | | | 500 | **Reductions in Amount Due to Seller** | | |
| 201 | *Deposit or earnest money | | 1,000.00 | 501 | Excess deposit (see instructions) | | |
| 202 | Principal amount of new loan(s) | | 306,454.00 | 502 | Settlement charges (line 1400) | | 350.00 |
| 203 | Existing loan(s) taken subject | | | 503 | Existing loan(s) taken subject | | |
| 204 | | | | 504 | Payoff of first mortgage loan | | |
| 205 | | | | 505 | Payoff of second mortgage loan | | |
| 206 | | | | 506 | | | |
| 207 | | | | 507 | | | |
| 208 | | | | 508 | | | |
| 209 | | | | 509 | | | |
| **Adjustments for items unpaid by seller** | | | | **Adjustments for items unpaid by seller** | | | |
| 210 | City/town taxes | | | 510 | City/town taxes | | |
| 211 | County taxes | 1/1/16 – 11/17/16 | 1,511.19 | 511 | County taxes | 1/1/16 – 11/17/16 | 1,511.19 |
| 212 | Assessments | | | 512 | Assessments | | |
| 213 | | | | 513 | | | |
| 214 | Inspection | | | 514 | Inspection | | |
| 215 | | | | 515 | | | |
| 216 | | | | 516 | | | |
| 217 | | | | 517 | | | |
| 218 | | | | 518 | | | |
| 219 | | | | 519 | | | |
| 220 | **Total Paid By/For Borrower** | | 310,965.19 | 520 | **Total Reduction Amount Due Seller** | | 1,861.19 |
| 300 | Cash At Settlement From/To Borrower | | | 600 | Cash At Settlement To/From Seller | | |
| 301 | Gross amt due from Borrower (line 120) | | 311,104.00 | 601 | Gross amount due to Seller (line 420) | | 306,400.00 |
| 302 | Less amts paid by/for Borrower (line 220) | | 310,965.19 | 602 | Less reductions in amts due to Seller (line 520) | | 1,861.19 |
| 303 | Cash (X From) ( To) Borrower | | 138.81 | 603 | Cash (X To) ( From) Seller | | 304,538.81 |

The Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Settlement Agent:                                                                                                 Date:          11/17/16

* See supplemental Page for details

Settlement Statement

| | L. Settlement Charges | | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|---|---|
| 700 | Total Sales/Broker's Commission based on price | $306,400.00 @ | = #VALUE! | | |
| | Division of Commission (line 700) as follows | | | | |
| 701 | | | | | |
| 702 | less Earnest Money      ($1,000.00) | | | | |
| 703 | Commission paid at Settlement | | | | |
| 704 | | | | | |
| 800 | Items Payable in Connection with Loan | | | | |
| 801 | Loan Origination Fee | | | | |
| 802 | Loan Discount | | | 3054.00 | |
| 803 | Appraisal Fee | | | | |
| 804 | Credit Report | | | | |
| 805 | Lender's Inspection Fee | | | | |
| 806 | Mortgage Insurance Application Premium | | | | |
| 807 | Assumption Fee | | | | |
| 808 | Tax Service Contract | | | | |
| 809 | Underwriting Fee | | | | |
| 810 | Flood Certification Fee | | | | |
| 811 | Tax Research Fee | | | | |
| 812 | Inspection Fee | | | | |
| 813 | Document Processing Fee | | | | |
| 814 | | | | | |
| 815 | | | | | |
| | Supplemental Summary | | | | |
| 900 | Items Required by Lender to be Paid in Advance | | | | |
| 901 | Interest | | | | |
| 902 | Mortgage Insurance Premium | | | | |
| 903 | Hazard Insurance Premium | | | | |
| 904 | | | | | |
| 905 | | | | | |
| | Supplemental Summary | | | | |
| 1000 | Reserve Deposited with Lender | | | | |
| 1001 | Hazard Insurance | | | | |
| 1002 | Mortgage Insurance | | | | |
| 1003 | City Property Taxes | | | | |
| 1004 | County Property Taxes | | | | |
| 1005 | Annual assessments | | | | |
| 1006 | | | | | |
| 1007 | | | | | |
| 1008 | Aggregate Accounting Adjustment | | | | |
| 1100 | Title Charges | | | | |
| 1101 | Settlement or closing fee | | | 500.00 | 250.00 |
| 1102 | Abstract or title search | | | | |
| 1103 | Title examination | | | | |
| 1104 | Title Insurance Binder | | | | |
| 1105 | Document Fee | | | 300.00 | |
| 1106 | Notary Fee | | | | |
| 1107 | Attorney Fee | | | 750.00 | |
| | (includes above item numbers) | | | | |
| 1108 | Title Insurance - See supplemental page for breakdown of individual fees and payees | | | | |
| | (Includes above item number 100/116/6.1)* | | | | |
| 1109 | Lender's coverage | | | | |
| 1110 | Owner's coverage | | | | |
| 1111 | Incoming Wire Fee | | | | |
| 1112 | | | | | |
| 1113 | Compliance Fee | | | | |
| 1114 | | | | | |
| 1115 | | | | | |
| 1116 | | | | | |
| 1117 | | | | | |
| 1200 | Government Recording and Transfer Charges | | | | |
| 1201 | Recording fees : Deed        Mortgage:        Release: | | | 100.00 | 100.00 |
| 1202 | City/county tax/stamps: | | | | |
| 1203 | State tax/stamps: | | | | |
| 1204 | | | | | |
| 1205 | | | | | |
| 1206 | | | | | |
| 1300 | Additional Settlement Charges | | | | |
| 1301 | Survey to | | | | |
| 1302 | Pest Inspection to Termite, Insect & Rodent Control | | | | |
| 1303 | | | | | |
| 1304 | | | | | |
| 1305 | | | | | |
| 1306 | | | | | |
| 1307 | | | | | |
| 1308 | | | | | |
| 1309 | | | | | |
| 1310 | | | | | |
| 1311 | | | | | |
| 1312 | | | | | |
| 1313 | | | | | |
| 1314 | | | | | |
| | Supplemental Summary | | | | |
| 1400 | Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | | 4704.00 | 350.00 |

| | File No. |
|---|---|
| **Supplemental Page**<br>Settlement Statement | |
| **Final Statement** | Loan No. |
| | Settlement Date:<br>11/17/16 |

**Borrower Name:**

ECO RANCHES
(Shain Stoddard, Manager)

**Seller Name:**

WRE REAL ESTATE HOLDINGS, LLC

| Section L. Settlement Charges Continued | | Paid From<br>Borrower's<br>Funds at<br>Settlement | Paid From<br>Seller's<br>Funds at<br>Settlement |
|---|---|---|---|
| 1108 | Supplemental Summary | | |
| a) Eagle Owner's Policy | | | |
| b) Eagle Lender's Policy | | | |

| Section J. Summary of Borrower's Transaction continue | | Borrower Charges | Borrower Credits |
|---|---|---|---|
| 100 Gross Amount Due From Borrower | | | |
| 200 Amounts Paid By Or In Behalf of Borrower | | | |
| 201 | Supplemental Summary | | |
| a) Funds For Closing | | | |

| The following Section is restated from the Settlement Statement Page 1 | | | | | |
|---|---|---|---|---|---|
| 300 Cash At Settlement From/To Borrower | | | 600 Cash At Settlement To/From Seller | | |
| 301 Gross amount due from Borrower (line 120) | | 311,104.00 | 601 Gross Amount Due to Seller (line 420) | | 306,400.00 |
| 302 Less amounts paid by/for Borrower (line 220) | | 310,965.19 | 602 Less reductions in amounts due to Seller (line 520) | | 1,861.19 |
| 303 Cash (X From) ( To) Borrower | | 138.81 | 603 Cash (X To) ( From) Seller | | 304,538.81 |

Settlement Statement

# ADDENDUM TO
# SETTLEMENT STATEMENT

NOTICE TO ALL PARTIES: If information is obtained which indicates that the source of the borrower's financial contribution is other than from the borrower or other than stated by the lender in its closing instructions, the settlement agent is to obtain written instructions from the lender before proceeding with settlement.

### CERTIFICATION OF BUYER IN A CONVENTIONAL LOAN TRANSACTION

I certify that I have no knowledge of any loans that have been or will be made to me (us) or loans that have been or will be assumed by me (us) for purposes of financing this transaction, other than those described in the sales contract dated _____ (including addenda).  I certify that I (we) have not been paid or reimbursed for any of the cash down payment, I certify that I (we) have not and will not receive any payment or reimbursement for any of my (our) closing costs which have not been previously disclosed in the sales contract (including addenda) and/or my application for mortgage insurance submitted to my (our) mortgage lender.

| | | | |
|---|---|---|---|
| Borrower | ECO RANCHES | Date  11/17 | |
| Borrower | | Date | |
| Borrower | (Shain Stoddard, Manager) | Date | |
| Borrower | | Date | |

### CERTIFICATION OF BUYER IN A CONVENTIONAL LOAN TRANSACTION

I certify that I have no knowledge of any loans that have been or will be made to the borrower(s), or loans that have been or will be assumed by the borrower(s), for purposes of financing this transaction, other that those described in the sales contract dated _____ (including addenda).  I certify that I have not and will not pay or reimburse the borrower(s) for any part of the cash down payment.  I certify that I have not and will not pay or reimburse the borrower(s) for any part of the borrower's closing costs which have not been previously disclosed in the sales contract (including and addenda).

| | | | |
|---|---|---|---|
| Seller | WRE REAL ESTATE HOLDINGS, LLC | Date  11/18 | |
| Seller | | Date | |
| Seller | | Date | |
| Seller | | Date | |

### CERTIFICATION OF BUYER IN A CONVENTIONAL LOAN TRANSACTION

To the best of my knowledge, the Settlement Statement which I have prepared is a true and accurate account of the funds which were (i) received, or (ii) paid outside closing, and the funds received have been or will be disbursed by the undersigned as part of the settlement of this transaction.  I further certify that I have obtained the above certifications which were executed by the borrower(s) and seller(s) as indicated.

| | |
|---|---|
| Settlement Agent | Date |

[ The certifications contained herein may be obtained from the respective parties at different times or may be obtained on separate addenda]

**WARNING:** It is a crime to knowingly make false statements to the United States on this or any other similar form.  Penalties upon conviction can include a fine and imprisonment, For details, see: Title 18 U.S. Code Sections 1001 and 1010.

## SELLER'S AND/OR PURCHASER'S/BORROWER'S STATEMENT

I have carefully reviewed the Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction, I further certify that I have received a copy of the Settlement Statement.
I hereby authorize the Settlement Agent to make expenditures and disbursements as shown and approve same for payment.

**ACCEPTED AND APPROVED:**

Borrower(s)/Purchaser(s)                           Seller(s)

_____                 _____
ECO RANCHES                                        WRE REAL ESTATE HOLDINGS, LLC

Date: _____11/17_____                         Date: _____11/17_____

_____                 _____
(Shain Stoddard, Manager)

Date: _____                      Date: _____

_____                 _____

Date: _____                      Date: _____

The Settlement Statement which I have prepared is a true and accurate account of this transaction.  I have caused or will cause the funds to be disbursed in accordance with this statement.

**Settlement Agent:**

_____                 _____
                                                   Date

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form.  Penalties upon conviction can include a fine and Imprisonment.  For details, see: Title 18 U.S. Code Sections 1001 and 1010.





# REAL ESTATE PURCHASE CONTRACT
# FOR LAND

This is a legally binding Real Estate Purchase Contract ("REPC"). If you desire legal or tax advice, consult your attorney or tax advisor.

### OFFER TO PURCHASE AND EARNEST MONEY DEPOSIT

On this <u>10th day of October, 2016</u> ("Offer Reference Date") <u>Eco Ranches</u> ("Buyer") offers to purchase from <u>Washakie Renewable Energy, LLC</u> ("Seller") the Property described below and **[ ] delivers to the Buyer's Brokerage with this offer, or [ ] agrees to deliver no later than four (4) calendar days after Acceptance (as defined in Section 23),** Earnest Money in the amount of $<u>1,000.00</u> in the form of <u>Check</u>. After Acceptance of the REPC by Buyer and Seller, and receipt of the Earnest Money by the Brokerage, the Brokerage shall have four (4) calendar days in which to deposit the Earnest Money into the Brokerage Real Estate Trust Account.

Buyer's Brokerage _____ Phone: _____

Received by: _____ on _____
            (Signature above acknowledges receipt of Earnest Money)           (Date)

### OTHER PROVISIONS

**1. PROPERTY:** <u>Approximately 472 Acres of Land in Box Elder County</u>

also described as: <u>Parcel #08-045-0005 & 08-044-0004</u>

City of <u>Plymouth</u>, County of <u>Box Elder</u> State of Utah, Zip <u>84330</u> (the "Property"). Any reference below to the term "Property" shall include the Property described above, together with the Included Items and water rights/water shares, if any, referenced in Sections 1.1, and 1.3.

    **1.1 Included Items. (specify)**<u>2 residential well permits/rights & Stock permit</u>
_____

    **1.2 Excluded Items. (specify)**_____
_____

    **1.3 Water Service.** The Purchase Price for the Property shall include all water rights/water shares, if any, that are the legal source for Seller's current culinary water service and irrigation water service, if any, to the Property. The water rights/water shares will be conveyed or otherwise transferred to Buyer at Closing by applicable deed or legal instruments. The following water rights/water shares, if applicable, are specifically excluded from this sale: _____
_____

**2. PURCHASE PRICE.** The Purchase Price for the Property is $<u>379,000.00</u>. Except as provided in this Section, the Purchase Price shall be paid as provided in Sections 2(a) through 2(d) below. Any amounts shown in 2(b) and 2(d) may be adjusted as deemed necessary by Buyer and the Lender.

$<u>1,000.00</u> **(a) Earnest Money Deposit.** Under certain conditions described in the REPC, this deposit may become totally non-refundable.

$<u>378,000.00</u> **(b) New Loan.** Buyer may apply for mortgage loan financing (the "Loan") on terms acceptable to Buyer.

$_____ **(c) Seller Financing.** (see attached Seller Financing Addendum)

$_____ **(d) Balance of Purchase Price in Cash at Settlement**

$<u>378,000.00</u> **PURCHASE PRICE. Total of lines (a) through (d)**

**3. SETTLEMENT AND CLOSING.**

    **3.1 Settlement.** Settlement shall take place no later than the Settlement Deadline referenced in Section 24(d), or as otherwise mutually agreed by Buyer and Seller in writing. "Settlement" shall occur only when all of the following have been completed: (a) Buyer and Seller have signed and delivered to each other or to the escrow/closing office all documents required by the REPC, by the Lender, by the title insurance and escrow/closing offices, by written escrow instructions (including any split closing instructions, if applicable), or by applicable law; (b) any monies required to be paid by Buyer or Seller under these documents

(except for the proceeds of any new loan) ~e been delivered by Buyer or Seller to th~ ther party, or to the escrow/closing office, in the form of cash, wire transfer, cashier's check, or other form acceptable to the escrow/closing office.

**3.2 Prorations.** All prorations, including, but not limited to, homeowner's association dues, property taxes for the current year, rents, and interest on assumed obligations, if any, shall be made as of the Settlement Deadline referenced in Section 24(d), unless otherwise agreed to in writing by the parties. Such writing could include the settlement statement. The provisions of this Section 3.2 shall survive Closing.

**3.3 Greenbelt.** If any portion of the Property is presently assessed as "Greenbelt" the payment of any roll-back taxes assessed against the Property shall be paid for by: **[X]** Seller **[ ]** Buyer **[ ]** Split Equally Between Buyer and Seller **[ ]** Other (explain)

_____

**3.4 Special Assessments.** Any assessments for capital improvements as approved by the HOA (pursuant to HOA governing documents) or as assessed by a municipality or special improvement district, prior to the Settlement Deadline shall be paid for by: **[ ]** Seller **[ ]** Buyer **[ ]** Split Equally Between Buyer and Seller **[ ]** Other (explain) <u>None</u>_____

_____

The provisions of this Section 3.4 shall survive Closing.

**3.5 Fees/Costs/Payment Obligations.** Unless otherwise agreed to in writing, Seller and Buyer shall each pay one-half (1/ 2) of the fee charged by the escrow/closing office for its services in the settlement/closing process. Tenant deposits (including any prepaid rents) shall be paid or credited by Seller to Buyer at Settlement. Buyer agrees to be responsible for homeowners' association and private and public utility service transfer fees, if any, and all utilities and other services provided to the Property after the Settlement Deadline. The escrow/closing office is authorized and directed to withhold from Seller's proceeds at Closing, sufficient funds to pay off on Seller's behalf all mortgages, trust deeds, judgments, mechanic's liens, tax liens and warrants. The provisions of this Section 3.5 shall survive Closing.

**3.6 Closing.** For purposes of the REPC, "Closing" means that: (a) Settlement has been completed; (b) the proceeds of any new loan have been delivered by the Lender to Seller or to the escrow/closing office; and (c) the applicable Closing documents have been recorded in the office of the county recorder. The actions described in 3.6 (b) and (c) shall be completed within four calendar days after Settlement.

**4. POSSESSION.** Seller shall deliver physical possession of the Property to Buyer as follows: **[X] Upon Closing;**
**[ ] ___ Hours after Closing; [ ] ___ Calendar Days after Closing; [ ] Other (explain)**

_____

Any contracted rental of the Property prior to or after Closing, between Buyer and Seller, shall be by separate written agreement. Seller and Buyer shall each be responsible for any insurance coverage each party deems necessary for the Property. Seller agrees to deliver the Property to Buyer free of debris and personal belongings. The provisions of this Section 4 shall survive Closing.

**5. CONFIRMATION OF AGENCY DISCLOSURE.** Buyer and Seller acknowledge prior written receipt of agency disclosure provided by their respective agent that has disclosed the agency relationships confirmed below. At the signing of the REPC:

Seller's Agent _____, represents **[ ] Seller [ ] both Buyer and Seller as a Limited Agent;**
Seller's Brokerage _____, represents **[ ] Seller [ ] both Buyer and Seller as a Limited Agent;**

Buyer's Agent _____, represents **[ ] Buyer [ ] both Buyer and Seller as a Limited Agent;**
Buyer's Brokerage _____, represents **[ ] Buyer [ ] both Buyer and Seller as a Limited Agent.**

**6. TITLE & TITLE INSURANCE.**

**6.1 Title to Property.** Seller represents that Seller has fee title to the Property and will convey marketable title to the Property to Buyer at Closing by general warranty deed. Buyer does agree to accept title to the Property subject to the contents of the Commitment for Title Insurance (the "Commitment") provided by Seller under Section 7, and as reviewed and approved by Buyer under Section 8. Buyer also agrees to accept title to the Property subject to any existing leases rental and property management agreements affecting the Property not expiring prior to Closing which were provided to Buyer pursuant to Section 7(e). The provisions of this Section 6.1 shall survive Closing.

**6.2 Title Insurance.** At Settlement, Seller agrees to pay for and cause to be issued in favor of Buyer, through the title insurance agency that issued the Commitment, the most current version of an ALTA standard coverage owner's policy of title insurance. Any additional title insurance coverage desired by Buyer shall be at Buyer's expense.

**7. SELLER DISCLOSURES.** No later than the Seller Disclosure Deadline referenced in Section 24(a), Seller shall provide to Buyer the following documents in hard copy or electronic format which are collectively referred to as the "Seller Disclosures":

**(a)** a written Seller Property Condition Disclosure (Land) for the Property, completed, signed and dated by Seller as provided in Section10.2;

**(b)** a Commitment for Title Insurance as referenced in Section 6.1;

**(c)** a copy of any restrictive covenants (CC&R's), rules and regulations affecting the Property;

(d) a copy of the most recent minutes, budget and financial statement for the homeowner' association, if any;

(e) a copy of any lease, rental, and property management agreements affecting the Property not expiring prior to Closing;

(f) evidence of any water rights and/or water shares referenced in Section 1.3;

(g) written notice of any claims and/or conditions known to Seller relating to environmental problems; and violation of any CC&R's, federal, state or local laws, and building or zoning code violations; and

(h) Other (specify) _____

## 8. BUYER'S CONDITIONS OF PURCHASE.

**8.1   DUE DILIGENCE CONDITION.** Buyer's obligation to purchase the Property: **[X] IS  [ ] IS NOT** conditioned upon Buyer's Due Diligence as defined in this Section 8.1(a) below. This condition is referred to as the "Due Diligence Condition." If checked in the affirmative, Sections 8.1(a) through 8.1(c) apply; otherwise they do not.

**(a) Due Diligence Items.** Buyer's Due Diligence shall consist of Buyer's review and approval of the contents of the Seller Disclosures referenced in Section 7, and any other tests, evaluations and verifications of the Property deemed necessary or appropriate by Buyer, such as: the physical condition of the Property; the existence of any hazardous substances, environmental issues or geologic conditions; the square footage or acreage of the Property; the costs and availability of flood insurance, if applicable; water source, availability and quality; the location of property lines; regulatory use restrictions or violations; fees for services such as HOA dues, municipal services, and utility costs; convicted sex offenders residing in proximity to the Property; and any other matters deemed material to Buyer in making a decision to purchase the Property. Unless otherwise provided in the REPC, all of Buyer's Due Diligence shall be paid for by Buyer and shall be conducted by individuals or entities of Buyer's choice. Seller agrees to cooperate with Buyer's Due Diligence. Buyer agrees to pay for any damage to the Property resulting from any such inspections or tests during the Due Diligence.

**(b) Buyer's Right to Cancel or Resolve Objections.** If Buyer determines, in Buyer's sole discretion, that the results of the Due Diligence are unacceptable, Buyer may either: (i) no later than the Due Diligence Deadline referenced in Section 24(b), cancel the REPC by providing written notice to Seller, whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller; or (ii) no later than the Due Diligence Deadline referenced in Section 24(b), resolve in writing with Seller any objections Buyer has arising from Buyer's Due Diligence.

**(c) Failure to Cancel or Resolve Objections.** If Buyer fails to cancel the REPC or fails to resolve in writing any objections Buyer has arising from Buyer's Due Diligence, as provided in Section 8.1(b), Buyer shall be deemed to have waived the Due Diligence Condition.

**8.2   APPRAISAL CONDITION.** Buyer's obligation to purchase the Property: **[X] IS  [ ] IS NOT** conditioned upon the Property appraising for not less than the Purchase Price. This condition is referred to as the "Appraisal Condition." If checked in the affirmative, Sections 8.2(a) and 8.2(b) apply; otherwise they do not.

**(a) Buyer's Right to Cancel.** If after completion of an appraisal by a licensed appraiser, Buyer receives written notice from the Lender or the appraiser that the Property has appraised for less than the Purchase Price (a "Notice of Appraised Value"), Buyer may cancel the REPC by providing written notice to Seller (with a copy of the Notice of Appraised Value) no later than the Financing & Appraisal Deadline referenced in Section 24(c); whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller.

**(b) Failure to Cancel.** If the REPC is not cancelled as provided in this section 8.2(a), Buyer shall be deemed to have waived the Appraisal Condition.

**8.3   FINANCING CONDITION.** Buyer's obligation to purchase the property: **[X] IS  [ ] IS NOT** conditioned upon Buyer obtaining the Loan referenced in Section 2(b). This condition is referred to as the "Financing Condition." If checked in the affirmative, Sections 8.3(a) and 8.3(b) apply; otherwise they do not. If the Financing Condition applies, Buyer agrees to work diligently and in good faith to obtain the Loan.

**(a) Buyer's Right to Cancel Before the Financing & Appraisal Deadline.** If Buyer, in Buyer's sole discretion, is not satisfied with the terms and conditions of the Loan, Buyer may cancel the REPC by providing written notice to Seller no later than the Financing & Appraisal Deadline referenced in Section 24(c); whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller.

**(b) Buyer's Right to Cancel After the Financing & Appraisal Deadline.** If after expiration of the Financing & Appraisal Deadline referenced in Section 24(c), Buyer fails to obtain the Loan, meaning that the proceeds of the Loan have not been delivered by the Lender to Seller or to the escrow/closing office as required under Section 3.6 of the REPC, then Buyer or Seller may cancel the REPC by providing written notice to the other party; whereupon the Earnest Money Deposit, or Deposits, if applicable (see Section 8.4 below), shall be released to Seller without the requirement of further written authorization from Buyer. In the event of such cancellation, Seller agrees to accept as Seller's exclusive remedy, the Earnest Money Deposit, or Deposits, if applicable, as liquidated damages. Buyer and Seller agree that liquidated damages would be difficult and impractical to calculate, and the Earnest Money Deposit, or Deposits, if applicable, is a fair and reasonable estimate of Seller's damages in the event Buyer fails to obtain the Loan.

**8.4   ADDITIONAL EARNEST MONEY DEPOSIT.** If the REPC has not been previously cancelled by Buyer as provided in Sections 8.1, 8.2 or 8.3(a), then no later than the Due Diligence Deadline referenced in Section 24(b), or the Financing &

Appraisal Deadline referenced in Section _____ )), whichever is later, Buyer: **[ ] WILL** **WILL NOT** deliver to the Buyer's Brokerage, an Additional Earnest Money Deposit in the amount of $_____. The Earnest Money Deposit and the Additional Earnest Money Deposit, if applicable, are sometimes referred to herein as the "Deposits". The Earnest Money Deposit, or Deposits, if applicable, shall be credited toward the Purchase Price at Closing.

**9. ADDENDA.** There **[ ] ARE [X] ARE NOT** addenda to the REPC containing additional terms. If there are, the terms of the following addenda are incorporated into the REPC by this reference: **[ ] Addendum No. _____  [ ] Seller Financing Addendum [ ] Other** (specify) _____

_____

**10. AS-IS CONDITION OF PROPERTY.**
    **10.1 Condition of Property/Buyer Acknowledgements.** Buyer acknowledges and agrees that in reference to the physical condition of the Property: (a) Buyer is purchasing the Property in its "As-Is" condition without expressed or implied warranties of any kind; (b) Buyer shall have, during Buyer's Due Diligence as referenced in Section 8.1, an opportunity to completely inspect and evaluate the condition of the Property; and (c) if based on the Buyer's Due Diligence, Buyer elects to proceed with the purchase of the Property, Buyer is relying wholly on Buyer's own judgment and that of any contractors or inspectors engaged by Buyer to review, evaluate and inspect the Property.
    **10.2 Condition of Property/Seller Acknowledgements.** Seller acknowledges and agrees that in reference to the physical condition of the Property, Seller agrees to: (a) disclose in writing to Buyer defects in the Property known to Seller that materially affect the value of the Property that cannot be discovered by a reasonable inspection by an ordinary prudent Buyer; (b) carefully review, complete, and provide to Buyer a written Seller Property Condition Disclosure (Land) as stated in Section 7(a); and (c) deliver the Property to Buyer in substantially the same general condition as it was on the date of Acceptance, as defined in Section 23. The provisions of Sections 10.1 and 10.2 shall survive Closing.

**11. FINAL PRE-SETTLEMENT INSPECTION.**
    **11.1 Pre-Settlement Inspection.** At any time prior to Settlement, Buyer may conduct a final pre-Settlement inspection of the Property to determine only that the Property is "as represented", meaning that the items referenced in Sections 1.1, 1.3 and 8.1(b)(ii) ("the items") are respectively present, repaired or corrected as agreed. The failure to conduct a pre-Settlement inspection or to claim that an item is not as represented shall not constitute a waiver by Buyer of the right to receive, on the date of possession, the items as represented. If the items are not as represented, Seller agrees to cause all applicable items to be corrected, repaired or replaced (the "Work") prior to the Settlement Deadline referenced in Section 24(d).
    **11.2 Escrow to Complete the Work.** If, as of Settlement, the Work has not been completed, then Buyer and Seller agree to withhold in escrow at Settlement a reasonable amount agreed to by Seller, Buyer (and Lender, if applicable), sufficient to pay for completion of the Work. If the Work is not completed within thirty (30) calendar days after the Settlement Deadline, the amount so escrowed may, subject to Lender's approval, be released to Buyer as liquidated damages for failure to complete the Work. The provisions of this Section 11.2 shall survive Closing.

**12. CHANGES DURING TRANSACTION.** Seller agrees that from the date of Acceptance until the date of Closing, none of the following shall occur without the prior written consent of Buyer: (a) no changes in any leases, rental or property management agreements shall be made; (b) no new lease, rental or property management agreements shall be entered into; (c) no substantial alterations or improvements to the Property shall be made or undertaken; (d) no further financial encumbrances to the Property shall be made, and (e) no changes in the legal title to the Property shall be made.

**13. AUTHORITY OF SIGNERS.** If Buyer or Seller is a corporation, partnership, trust, estate, limited liability company or other entity, the person signing the REPC on its behalf warrants his or her authority to do so and to bind Buyer and Seller.

**14. COMPLETE CONTRACT.** The REPC together with its addenda, any attached exhibits, and Seller Disclosures (collectively referred to as the "REPC"), constitutes the entire contract between the parties and supersedes and replaces any and all prior negotiations, representations, warranties, understandings or contracts between the parties whether verbal or otherwise. The REPC cannot be changed except by written agreement of the parties.

**15. MEDIATION.** Any dispute relating to the REPC arising prior to or after Closing: **[ ] SHALL [X] MAY AT THE OPTION OF THE PARTIES** first be submitted to mediation. Mediation is a process in which the parties meet with an impartial person who helps to resolve the dispute informally and confidentially. Mediators cannot impose binding decisions. The parties to the dispute must agree before any settlement is binding. The parties will jointly appoint an acceptable mediator and share equally in the cost of such mediation. If mediation fails, the other procedures and remedies available under the REPC shall apply. Nothing in this Section 15 prohibits any party from seeking emergency legal or equitable relief, pending mediation. The provisions of this Section 15 shall survive Closing.

**16. DEFAULT.**

Buyer's Initials _____ Date _____  Seller's Initials _____ Date _____

**16.1 Buyer Default.** If Buyer defaults, Seller may elect one of the following remedies: (a) cancel the REPC and retain the Earnest Money Deposit, or Deposits, if applicable, as liquidated damages; (b) maintain the Earnest Money Deposit, or Deposits, if applicable, in trust and sue Buyer to specifically enforce the REPC; or (c) return the Earnest Money Deposit, or Deposits, if applicable, to Buyer and pursue any other remedies available at law.

**16.2 Seller Default.** If Seller defaults, Buyer may elect one of the following remedies: (a) cancel the REPC, and in addition to the return of the Earnest Money Deposit, or Deposits, if applicable, Buyer may elect to accept from Seller, as liquidated damages, a sum equal to the Earnest Money Deposit, or Deposits, if applicable; or (b) maintain the Earnest Money Deposit, or Deposits, if applicable, in trust and sue Seller to specifically enforce the REPC; or (c) accept a return of the Earnest Money Deposit, or Deposits, if applicable, and pursue any other remedies available at law. If Buyer elects to accept liquidated damages, Seller agrees to pay the liquidated damages to Buyer upon demand.

**17. ATTORNEY FEES AND COSTS/GOVERNING LAW.** In the event of litigation or binding arbitration to enforce the REPC, the prevailing party shall be entitled to costs and reasonable attorney fees. However, attorney fees shall not be awarded for participation in mediation under Section 15. This contract shall be governed by and construed in accordance with the laws of the State of Utah. The provisions of this Section 17 shall survive Closing.

**18. NOTICES.** Except as provided in Section 23, all notices required under the REPC must be: (a) in writing; (b) signed by the Buyer or Seller giving notice; and (c) received by the Buyer or the Seller, or their respective agent, or by the brokerage firm representing the Buyer or Seller, no later than the applicable date referenced in the REPC.

**19. NO ASSIGNMENT.** The REPC and the rights and obligations of Buyer hereunder, are personal to Buyer. The REPC may not be assigned by Buyer without the prior written consent of Seller. Provided, however, the transfer of Buyer's interest in the REPC to any business entity in which Buyer holds a legal interest, including, but not limited to, a family partnership, family trust, limited liability company, partnership, or corporation (collectively referred to as a "Permissible Transfer"), shall not be treated as an assignment by Buyer that requires Seller's prior written consent. Furthermore, the inclusion of "and/or assigns" or similar language on the line identifying Buyer on the first page of the REPC shall constitute Seller's written consent only to a Permissible Transfer.

**20. INSURANCE & RISK OF LOSS.**

**20.1 Insurance Coverage.** As of Closing, Buyer shall be responsible to obtain such casualty and liability insurance coverage on the Property in amounts acceptable to Buyer and Buyer's Lender, if applicable.

**20.2 Risk of Loss.** If prior to Closing, any part of the Property is damaged or destroyed by fire, vandalism, flood, earthquake, or act of God, the risk of such loss or damage shall be borne by Seller; provided however, that if the cost of repairing such loss or damage would exceed ten percent (10%) of the Purchase Price referenced in Section 2, Buyer may elect to either: (i) cancel the REPC by providing written notice to the other party, in which instance the Earnest Money, or Deposits, if applicable, shall be returned to Buyer; or (ii) proceed to Closing, and accept the Property in its "As-Is" condition.

**21. TIME IS OF THE ESSENCE.** Time is of the essence regarding the dates set forth in the REPC. Extensions must be agreed to in writing by all parties. Unless otherwise explicitly stated in the REPC: (a) performance under each Section of the REPC which references a date shall absolutely be required by 5:00 PM Mountain Time on the stated date; and (b) the term "days" and "calendar days" shall mean calendar days and shall be counted beginning on the day following the event which triggers the timing requirement (e.g. Acceptance). Performance dates and times referenced herein shall not be binding upon title companies, lenders, appraisers and others not parties to the REPC, except as otherwise agreed to in writing by such non-party.

**22. ELECTRONIC TRANSMISSION AND COUNTERPARTS.** Electronic transmission (including email and fax) of a signed copy of the REPC, any addenda and counteroffers, and the retransmission of any signed electronic transmission shall be the same as delivery of an original. The REPC and any addenda and counteroffers may be executed in counterparts.

**23. ACCEPTANCE.** "Acceptance" occurs **only** when **all** of the following have occurred: (a) Seller or Buyer has signed the offer or counteroffer where noted to indicate acceptance; and (b) Seller or Buyer or their agent has communicated to the other party or to the other party's agent that the offer or counteroffer has been signed as required.

Buyer's Initials _____ Date _____  Seller's Initials _____ Date _____

**24. CONTRACT DEADLINES.** Buyer and Seller agree that the following deadlines shall apply to the REPC:

| | | |
|---|---|---|
| (a) **Seller Disclosure Deadline** | <u>7 days after acceptance</u> | (Date) |
| (b) **Due Diligence Deadline** | <u>50 days after acceptance</u> | (Date) |
| (c) **Financing & Appraisal Deadline** | <u>65 days after acceptance</u> | (Date) |
| (d) **Settlement Deadline** | <u>75 days after acceptance</u> | (Date) |

**25. OFFER AND TIME FOR ACCEPTANCE.** Buyer offers to purchase the Property on the above terms and conditions. If Seller does not accept this offer by: <u>5</u> : <u>00</u> [ ] AM [X] PM Mountain Time on <u>October 15, 2016</u> (Date), this offer shall lapse; and the Brokerage shall return any Earnest Money Deposit to Buyer.

_____     _____

(Buyer's Signature)                  (Offer Date)     (Buyer's Signature)                  (Offer Date)

*Shain Stoddard*

(Buyer's Names) **(PLEASE PRINT)**     (Notice Address)          (Zip Code)     (Phone)

_____     _____     _____     _____

(Buyer's Names) **(PLEASE PRINT)**     (Notice Address)          (Zip Code)     (Phone)

<center>ACCEPTANCE/COUNTEROFFER/REJECTION</center>

**CHECK ONE:**

[ ] **ACCEPTANCE OF OFFER TO PURCHASE:** Seller Accepts the foregoing offer on the terms and conditions specified above.

[ ] **COUNTEROFFER:** Seller presents for Buyer's Acceptance the terms of Buyer's offer subject to the exceptions or modifications as specified in the attached ADDENDUM NO. _____.

[ ] **REJECTION:** Seller rejects the foregoing offer.

_____     _____

(Seller's Signature)          (Date)     (Time)     (Seller's Signature)          (Date)     (Time)

*Jacob Kingston*

(Seller's Names) **(PLEASE PRINT)**     (Notice Address)          (Zip Code)     (Phone)

_____     _____     _____     _____

(Seller's Names) **(PLEASE PRINT)**     (Notice Address)          (Zip Code)     (Phone)

This form is COPYRIGHTED by the UTAH ASSOCIATION OF REALTORS® for use solely by its members. Any unauthorized use, modification, copying or distribution without written consent is prohibited. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION. IF YOU DESIRE SPECIFIC LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

COPYRIGHT© UTAH ASSOCIATION OF REALTORS® - 7.4.04 - REVISED - 4.22.10 - ALL RIGHTS RESERVED          UAR FORM 19



# REAL ESTATE PURCHASE CONTRACT
# FOR LAND



This is a legally binding Real Estate Purchase Contract ("REPC"). If you desire legal or tax advice, consult your attorney or tax advisor.

## OFFER TO PURCHASE AND EARNEST MONEY DEPOSIT

On this <u>10th day of October, 2016</u> ("Offer Reference Date") <u>Eco Ranches</u> ("Buyer") offers to purchase from <u>Washakie Renewable Energy, LLC</u> ("Seller") the Property described below and **[ ] delivers to the Buyer's Brokerage with this offer, or [ ] agrees to deliver no later than four (4) calendar days after Acceptance (as defined in Section 23),** Earnest Money in the amount of $<u>1,000.00</u> in the form of <u>Check</u>. After Acceptance of the REPC by Buyer and Seller, and receipt of the Earnest Money in the Brokerage, the Brokerage shall have four (4) calendar days in which to deposit the Earnest Money into the Brokerage Real Estate Trust Account.

Buyer's Brokerage _____   Phone: _____

Received by: _____ on _____
<div align="center">(Signature above acknowledges receipt of Earnest Money)          (Date)</div>

## OTHER PROVISIONS

**1. PROPERTY:** <u>Approximately 472 Acres of Land in Box Elder County</u>

also described as: <u>Parcel #08-045-0005 & 08-044-0004</u>

City of <u>Plymouth</u>, County of <u>Box Elder</u> State of Utah, Zip <u>84330</u> (the "Property"). Any reference below to the term "Property" shall include the Property described above, together with the Included Items and water rights/water shares, if any, referenced in Sections 1.1 and 1.3.

    **1.1 Included Items. (specify)** <u>2 residential well permits/rights & Stock permit</u>

    **1.2 Excluded Items. (specify)** _____

    **1.3 Water Service.** The Purchase Price for the Property shall include all water rights/water shares, if any, that are the legal source for Seller's current culinary water service and irrigation water service, if any, to the Property. The water rights/water shares will be conveyed or otherwise transferred to Buyer at Closing by applicable deed or legal instruments. The following water rights/water shares, if applicable, are specifically excluded from this sale: _____

**2. PURCHASE PRICE.** The Purchase Price for the Property is $<u>379,000.00</u>. Except as provided in this Section, the Purchase Price shall be paid as provided in Sections 2(a) through 2(d) below. Any amounts shown in 2(b) and 2(d) may be adjusted as deemed necessary by Buyer and the Lender.

$<u>1,000.00</u> **(a) Earnest Money Deposit.** Under certain conditions described in the REPC, this deposit may become totally non-refundable.

$<u>378,000.00</u> **(b) New Loan.** Buyer may apply for mortgage loan financing (the "Loan") on terms acceptable to Buyer.

$_____ **(c) Seller Financing.** (see attached Seller Financing Addendum)

$_____ **(d) Balance of Purchase Price in Cash at Settlement**

$<u>378,000.00</u> **PURCHASE PRICE. Total of lines (a) through (d)**

**3. SETTLEMENT AND CLOSING.**

    **3.1 Settlement.** Settlement shall take place no later than the Settlement Deadline referenced in Section 24(d), or as otherwise mutually agreed by Buyer and Seller in writing. "Settlement" shall occur only when all of the following have been completed: (a) Buyer and Seller have signed and delivered to each other or to the escrow/closing office all documents required by the REPC, by the Lender, by the title insurance and escrow/closing offices, by written escrow instructions (including any split closing instructions, if applicable), or by applicable law; (b) any monies required to be paid by Buyer or Seller under these documents

(except for the proceeds of any new loan) 〜e been delivered by Buyer or Seller to t〜 〜ther party, or to the escrow/closing office, in the form of cash, wire transfer, cashier's check, or other form acceptable to the escrow/closing office.

**3.2    Prorations**. All prorations, including, but not limited to, homeowner's association dues, property taxes for the current year, rents, and interest on assumed obligations, if any, shall be made as of the Settlement Deadline referenced in Section 24(d), unless otherwise agreed to in writing by the parties. Such writing could include the settlement statement. The provisions of this Section 3.2 shall survive Closing.

**3.3    Greenbelt**. If any portion of the Property is presently assessed as "Greenbelt" the payment of any roll-back taxes assessed against the Property shall be paid for by:  **[X]** Seller  **[ ]** Buyer  **[ ]** Split Equally Between Buyer and Seller  **[ ]** Other (explain)

_____

**3.4    Special Assessments**. Any assessments for capital improvements as approved by the HOA (pursuant to HOA governing documents) or as assessed by a municipality or special improvement district, prior to the Settlement Deadline shall be paid for by: **[ ]** Seller  **[ ]** Buyer  **[ ]** Split Equally Between Buyer and Seller  **[ ]** Other (explain) <u>None_____</u>

_____
The provisions of this Section 3.4 shall survive Closing.

**3.5    Fees/Costs/Payment Obligations.**  Unless otherwise agreed to in writing, Seller and Buyer shall each pay one-half (1/ 2) of the fee charged by the escrow/closing office for its services in the settlement/closing process. Tenant deposits (including any prepaid rents) shall be paid or credited by Seller to Buyer at Settlement. Buyer agrees to be responsible for homeowners' association and private and public utility service transfer fees, if any, and all utilities and other services provided to the Property after the Settlement Deadline. The escrow/closing office is authorized and directed to withhold from Seller's proceeds at Closing, sufficient funds to pay off on Seller's behalf all mortgages, trust deeds, judgments, mechanic's liens, tax liens and warrants. The provisions of this Section 3.5 shall survive Closing.

**3.6    Closing.**  For purposes of the REPC, "Closing" means that: (a) Settlement has been completed; (b) the proceeds of any new loan have been delivered by the Lender to Seller or to the escrow/closing office; and (c) the applicable Closing documents have been recorded in the office of the county recorder. The actions described in 3.6 (b) and (c) shall be completed within four calendar days after Settlement.

**4. POSSESSION.** Seller shall deliver physical possession of the Property to Buyer as follows:  **[X] Upon Closing;**
**[ ] ___ Hours after Closing; [ ] ___ Calendar Days after Closing; [ ] Other (explain)**

_____

Any contracted rental of the Property prior to or after Closing, between Buyer and Seller, shall be by separate written agreement. Seller and Buyer shall each be responsible for any insurance coverage each party deems necessary for the Property. Seller agrees to deliver the Property to Buyer free of debris and personal belongings. The provisions of this Section 4 shall survive Closing.

**5. CONFIRMATION OF AGENCY DISCLOSURE.** Buyer and Seller acknowledge prior written receipt of agency disclosure provided by their respective agent that has disclosed the agency relationships confirmed below. At the signing of the REPC:

Seller's Agent        _____, represents   **[ ] Seller [ ] both Buyer and Seller as a Limited Agent;**
Seller's Brokerage    _____, represents   **[ ] Seller [ ] both Buyer and Seller as a Limited Agent;**

Buyer's Agent        _____, represents   **[ ] Buyer [ ] both Buyer and Seller as a Limited Agent;**
Buyer's Brokerage    _____, represents   **[ ] Buyer [ ] both Buyer and Seller as a Limited Agent.**

**6. TITLE & TITLE INSURANCE.**

**6.1    Title to Property.**  Seller represents that Seller has fee title to the Property and will convey marketable title to the Property to Buyer at Closing by general warranty deed. Buyer does agree to accept title to the Property subject to the contents of the Commitment for Title Insurance (the "Commitment") provided by Seller under Section 7, and as reviewed and approved by Buyer under Section 8. Buyer also agrees to accept title to the Property subject to any existing leases rental and property management agreements affecting the Property not expiring prior to Closing which were provided to Buyer pursuant to Section 7(e). The provisions of this Section 6.1 shall survive Closing.

**6.2    Title Insurance.**  At Settlement, Seller agrees to pay for and cause to be issued in favor of Buyer, through the title insurance agency that issued the Commitment, the most current version of an ALTA standard coverage owner's policy of title insurance. Any additional title insurance coverage desired by Buyer shall be at Buyer's expense.

**7. SELLER DISCLOSURES.** No later than the Seller Disclosure Deadline referenced in Section 24(a), Seller shall provide to Buyer the following documents in hard copy or electronic format which are collectively referred to as the "Seller Disclosures":

   **(a)** a written Seller Property Condition Disclosure (Land) for the Property, completed, signed and dated by Seller as provided in Section10.2;

   **(b)** a Commitment for Title Insurance as referenced in Section 6.1;

   **(c)** a copy of any restrictive covenants (CC&R's), rules and regulations affecting the Property;

**(d)** a copy of the most recent minutes, bu~~~~t and financial statement for the homeow~~~~' association, if any;

**(e)** a copy of any lease, rental, and property management agreements affecting the Property not expiring prior to Closing;

**(f)** evidence of any water rights and/or water shares referenced in Section 1.3;

**(g)** written notice of any claims and/or conditions known to Seller relating to environmental problems; and violation of any CC&R's, federal, state or local laws, and building or zoning code violations; and

**(h)** Other (specify) _____

## 8. BUYER'S CONDITIONS OF PURCHASE.

**8.1  DUE DILIGENCE CONDITION.** Buyer's obligation to purchase the Property:  **[X] IS [ ] IS NOT** conditioned upon Buyer's Due Diligence as defined in Section 8.1(a) below. This condition is referred to as the "Due Diligence Condition." If checked in the affirmative, Sections 8.1(a) through 8.1(c) apply; otherwise they do not.

**(a) Due Diligence Items.** Buyer's Due Diligence shall consist of Buyer's review and approval of the contents of the Seller Disclosures referenced in Section 7, and any other tests, evaluations and verifications of the Property deemed necessary or appropriate by Buyer, such as: the physical condition of the Property; the existence of any hazardous substances, environmental issues or geologic conditions; the square footage or acreage of the Property; the costs and availability of flood insurance, if applicable; water source, availability and quality; the location of property lines; regulatory use restrictions or violations; fees for services such as HOA dues, municipal services, and utility costs; convicted sex offenders residing in proximity to the Property; and any other matters deemed material to Buyer in making a decision to purchase the Property. Unless otherwise provided in the REPC, all of Buyer's Due Diligence shall be paid for by Buyer and shall be conducted by individuals or entities of Buyer's choice. Seller agrees to cooperate with Buyer's Due Diligence. Buyer agrees to pay for any damage to the Property resulting from any such inspections or tests during the Due Diligence.

**(b) Buyer's Right to Cancel or Resolve Objections.** If Buyer determines, in Buyer's sole discretion, that the results of the Due Diligence are unacceptable, Buyer may either: (i) no later than the Due Diligence Deadline referenced in Section 24(b), cancel the REPC by providing written notice to Seller, whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller; or (ii) no later than the Due Diligence Deadline referenced in Section 24(b), resolve in writing with Seller any objections Buyer has arising from Buyer's Due Diligence.

**(c) Failure to Cancel or Resolve Objections.** If Buyer fails to cancel the REPC or fails to resolve in writing any objections Buyer has arising from Buyer's Due Diligence, as provided in Section 8.1(b), Buyer shall be deemed to have waived the Due Diligence Condition.

**8.2  APPRAISAL CONDITION.** Buyer's obligation to purchase the Property:  **[X] IS [ ] IS NOT** conditioned upon the Property appraising for not less than the Purchase Price. This condition is referred to as the "Appraisal Condition." If checked in the affirmative, Sections 8.2(a) and 8.2(b) apply; otherwise they do not.

**(a) Buyer's Right to Cancel.** If after completion of an appraisal by a licensed appraiser, Buyer receives written notice from the Lender or the appraiser that the Property has appraised for less than the Purchase Price (a "Notice of Appraised Value"), Buyer may cancel the REPC by providing written notice to Seller (with a copy of the Notice of Appraised Value) no later than the Financing & Appraisal Deadline referenced in Section 24(c); whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller.

**(b) Failure to Cancel.** If the REPC is not cancelled as provided in this section 8.2(a), Buyer shall be deemed to have waived the Appraisal Condition.

**8.3  FINANCING CONDITION.** Buyer's obligation to purchase the property:  **[X] IS [ ] IS NOT** conditioned upon Buyer obtaining the Loan referenced in Section 2(b). This condition is referred to as the "Financing Condition." If checked in the affirmative, Sections 8.3(a) and 8.3(b) apply; otherwise they do not. If the Financing Condition applies, Buyer agrees to work diligently and in good faith to obtain the Loan.

**(a) Buyer's Right to Cancel Before the Financing & Appraisal Deadline.** If Buyer, in Buyer's sole discretion, is not satisfied with the terms and conditions of the Loan, Buyer may cancel the REPC by providing written notice to Seller no later than the Financing & Appraisal Deadline referenced in Section 24(c); whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller.

**(b) Buyer's Right to Cancel After the Financing & Appraisal Deadline.** If after expiration of the Financing & Appraisal Deadline referenced in Section 24(c), Buyer fails to obtain the Loan, meaning that the proceeds of the Loan have not been delivered by the Lender to Seller or to the escrow/closing office as required under Section 3.6 of the REPC, then Buyer or Seller may cancel the REPC by providing written notice to the other party; whereupon the Earnest Money Deposit, or Deposits, if applicable (see Section 8.4 below), shall be released to Seller without the requirement of further written authorization from Buyer. In the event of such cancellation, Seller agrees to accept as Seller's exclusive remedy, the Earnest Money Deposit, or Deposits, if applicable, as liquidated damages. Buyer and Seller agree that liquidated damages would be difficult and impractical to calculate, and the Earnest Money Deposit, or Deposits, if applicable, is a fair and reasonable estimate of Seller's damages in the event Buyer fails to obtain the Loan.

**8.4  ADDITIONAL EARNEST MONEY DEPOSIT.** If the REPC has not been previously cancelled by Buyer as provided in Sections 8.1, 8.2 or 8.3(a), then no later than the Due Diligence Deadline referenced in Section 24(b), or the Financing &

Buyer's Initials _____ Date _____   Seller's Initials _____ Date _____

Appraisal Deadline referenced in Section ? ), whichever is later, Buyer: **[ ] WILL** **WILL NOT** deliver to the Buyer's Brokerage, an Additional Earnest Money Deposit in the amount of $_____. The Earnest Money Deposit and the Additional Earnest Money Deposit, if applicable, are sometimes referred to herein as the "Deposits". The Earnest Money Deposit, or Deposits, if applicable, shall be credited toward the Purchase Price at Closing.

**9. ADDENDA.** There **[ ] ARE [X] ARE NOT** addenda to the REPC containing additional terms. If there are, the terms of the following addenda are incorporated into the REPC by this reference: **[ ] Addendum No. ____ [ ] Seller Financing Addendum [ ] Other** (specify) _____

_____

**10. AS-IS CONDITION OF PROPERTY.**
    **10.1 Condition of Property/Buyer Acknowledgements.** Buyer acknowledges and agrees that in reference to the physical condition of the Property: (a) Buyer is purchasing the Property in its "As-Is" condition without expressed or implied warranties of any kind; (b) Buyer shall have, during Buyer's Due Diligence as referenced in Section 8.1, an opportunity to completely inspect and evaluate the condition of the Property; and (c) if based on the Buyer's Due Diligence, Buyer elects to proceed with the purchase of the Property, Buyer is relying wholly on Buyer's own judgment and that of any contractors or inspectors engaged by Buyer to review, evaluate and inspect the Property.
    **10.2 Condition of Property/Seller Acknowledgements.** Seller acknowledges and agrees that in reference to the physical condition of the Property, Seller agrees to: (a) disclose in writing to Buyer defects in the Property known to Seller that materially affect the value of the Property that cannot be discovered by a reasonable inspection by an ordinary prudent Buyer; (b) carefully review, complete, and provide to Buyer a written Seller Property Condition Disclosure (Land) as stated in Section 7(a); and (c) deliver the Property to Buyer in substantially the same general condition as it was on the date of Acceptance, as defined in Section 23. The provisions of Sections 10.1 and 10.2 shall survive Closing.

**11. FINAL PRE-SETTLEMENT INSPECTION.**
    **11.1 Pre-Settlement Inspection.** At any time prior to Settlement, Buyer may conduct a final pre-Settlement inspection of the Property to determine only that the Property is "as represented", meaning that the items referenced in Sections 1.1, 1.3 and 8.1(b)(ii) ("the items") are respectively present, repaired or corrected as agreed. The failure to conduct a pre-Settlement inspection or to claim that an item is not as represented shall not constitute a waiver by Buyer of the right to receive, on the date of possession, the items as represented. If the items are not as represented, Seller agrees to cause all applicable items to be corrected, repaired or replaced (the "Work") prior to the Settlement Deadline referenced in Section 24(d).
    **11.2 Escrow to Complete the Work.** If, as of Settlement, the Work has not been completed, then Buyer and Seller agree to withhold in escrow at Settlement a reasonable amount agreed to by Seller, Buyer (and Lender, if applicable), sufficient to pay for completion of the Work. If the Work is not completed within thirty (30) calendar days after the Settlement Deadline, the amount so escrowed may, subject to Lender's approval, be released to Buyer as liquidated damages for failure to complete the Work. The provisions of this Section 11.2 shall survive Closing.

**12. CHANGES DURING TRANSACTION.** Seller agrees that from the date of Acceptance until the date of Closing, none of the following shall occur without the prior written consent of Buyer: (a) no changes in any leases, rental or property management agreements shall be made; (b) no new lease, rental or property management agreements shall be entered into; (c) no substantial alterations or improvements to the Property shall be made or undertaken; (d) no further financial encumbrances to the Property shall be made, and (e) no changes in the legal title to the Property shall be made.

**13. AUTHORITY OF SIGNERS.** If Buyer or Seller is a corporation, partnership, trust, estate, limited liability company or other entity, the person signing the REPC on its behalf warrants his or her authority to do so and to bind Buyer and Seller.

**14. COMPLETE CONTRACT.** The REPC together with its addenda, any attached exhibits, and Seller Disclosures (collectively referred to as the "REPC"), constitutes the entire contract between the parties and supersedes and replaces any and all prior negotiations, representations, warranties, understandings or contracts between the parties whether verbal or otherwise. The REPC cannot be changed except by written agreement of the parties.

**15. MEDIATION.** Any dispute relating to the REPC arising prior to or after Closing: **[ ] SHALL [X] MAY AT THE OPTION OF THE PARTIES** first be submitted to mediation. Mediation is a process in which the parties meet with an impartial person who helps to resolve the dispute informally and confidentially. Mediators cannot impose binding decisions. The parties to the dispute must agree before any settlement is binding. The parties will jointly appoint an acceptable mediator and share equally in the cost of such mediation. If mediation fails, the other procedures and remedies available under the REPC shall apply. Nothing in this Section 15 prohibits any party from seeking emergency legal or equitable relief, pending mediation. The provisions of this Section 15 shall survive Closing.

**16. DEFAULT.**

Buyer's Initials _____ Date _____   Seller's Initials _____ Date _____

**16.1 Buyer Default.** If Buyer defaults, S̶ r may elect one of the following remedie ̶ a) cancel the REPC and retain the Earnest Money Deposit, or Deposits, if applicable, as liquidated damages; (b) maintain the Earnest Money Deposit, or Deposits, if applicable, in trust and sue Buyer to specifically enforce the REPC; or (c) return the Earnest Money Deposit, or Deposits, if applicable, to Buyer and pursue any other remedies available at law.

**16.2 Seller Default.** If Seller defaults, Buyer may elect one of the following remedies: (a) cancel the REPC, and in addition to the return of the Earnest Money Deposit, or Deposits, if applicable, Buyer may elect to accept from Seller, as liquidated damages, a sum equal to the Earnest Money Deposit, or Deposits, if applicable; or (b) maintain the Earnest Money Deposit, or Deposits, if applicable, in trust and sue Seller to specifically enforce the REPC; or (c) accept a return of the Earnest Money Deposit, or Deposits, if applicable, and pursue any other remedies available at law. If Buyer elects to accept liquidated damages, Seller agrees to pay the liquidated damages to Buyer upon demand.

**17. ATTORNEY FEES AND COSTS/GOVERNING LAW.** In the event of litigation or binding arbitration to enforce the REPC, the prevailing party shall be entitled to costs and reasonable attorney fees. However, attorney fees shall not be awarded for participation in mediation under Section 15. This contract shall be governed by and construed in accordance with the laws of the State of Utah. The provisions of this Section 17 shall survive Closing.

**18. NOTICES.** Except as provided in Section 23, all notices required under the REPC must be: (a) in writing; (b) signed by the Buyer or Seller giving notice; and (c) received by the Buyer or the Seller, or their respective agent, or by the brokerage firm representing the Buyer or Seller, no later than the applicable date referenced in the REPC.

**19. NO ASSIGNMENT.** The REPC and the rights and obligations of Buyer hereunder, are personal to Buyer. The REPC may not be assigned by Buyer without the prior written consent of Seller. Provided, however, the transfer of Buyer's interest in the REPC to any business entity in which Buyer holds a legal interest, including, but not limited to, a family partnership, family trust, limited liability company, partnership, or corporation (collectively referred to as a "Permissible Transfer"), shall not be treated as an assignment by Buyer that requires Seller's prior written consent. Furthermore, the inclusion of "and/or assigns" or similar language on the line identifying Buyer on the first page of the REPC shall constitute Seller's written consent only to a Permissible Transfer.

**20. INSURANCE & RISK OF LOSS.**

**20.1 Insurance Coverage.** As of Closing, Buyer shall be responsible to obtain such casualty and liability insurance coverage on the Property in amounts acceptable to Buyer and Buyer's Lender, if applicable.

**20.2 Risk of Loss.** If prior to Closing, any part of the Property is damaged or destroyed by fire, vandalism, flood, earthquake, or act of God, the risk of such loss or damage shall be borne by Seller; provided however, that if the cost of repairing such loss or damage would exceed ten percent (10%) of the Purchase Price referenced in Section 2, Buyer may elect to either: (i) cancel the REPC by providing written notice to the other party, in which instance the Earnest Money, or Deposits, if applicable, shall be returned to Buyer; or (ii) proceed to Closing, and accept the Property in its "As-Is" condition.

**21. TIME IS OF THE ESSENCE.** Time is of the essence regarding the dates set forth in the REPC. Extensions must be agreed to in writing by all parties. Unless otherwise explicitly stated in the REPC: (a) performance under each Section of the REPC which references a date shall absolutely be required by 5:00 PM Mountain Time on the stated date; and (b) the term "days" and "calendar days" shall mean calendar days and shall be counted beginning on the day following the event which triggers the timing requirement (e.g. Acceptance). Performance dates and times referenced herein shall not be binding upon title companies, lenders, appraisers and others not parties to the REPC, except as otherwise agreed to in writing by such non-party.

**22. ELECTRONIC TRANSMISSION AND COUNTERPARTS.** Electronic transmission (including email and fax) of a signed copy of the REPC, any addenda and counteroffers, and the retransmission of any signed electronic transmission shall be the same as delivery of an original. The REPC and any addenda and counteroffers may be executed in counterparts.

**23. ACCEPTANCE.** "Acceptance" occurs **only** when **all** of the following have occurred: (a) Seller or Buyer has signed the offer or counteroffer where noted to indicate acceptance; and (b) Seller or Buyer or their agent has communicated to the other party or to the other party's agent that the offer or counteroffer has been signed as required.

Buyer's Initials _____ Date _____   Seller's Initials _____ Date _____

**24. CONTRACT DEADLINES.** Buyer and Seller agree that the following deadlines shall apply to the REPC:

| | | |
|---|---|---|
| **(a) Seller Disclosure Deadline** | <u>7 days after acceptance</u> | (Date) |
| **(b) Due Diligence Deadline** | <u>50 days after acceptance</u> | (Date) |
| **(c) Financing & Appraisal Deadline** | <u>65 days after acceptance</u> | (Date) |
| **(d) Settlement Deadline** | <u>75 days after acceptance</u> | (Date) |

**25. OFFER AND TIME FOR ACCEPTANCE.** Buyer offers to purchase the Property on the above terms and conditions. If Seller does not accept this offer by: <u>5</u> : <u>00</u> [ ] AM [X] PM Mountain Time on <u>October 15, 2016</u> (Date), this offer shall lapse; and the Brokerage shall return any Earnest Money Deposit to Buyer.

_____    _____
(Buyer's Signature)                          (Offer Date)          (Buyer's Signature)                          (Offer Date)

*Shawn Stoddard*
(Buyer's Names) **(PLEASE PRINT)**    _____    _____  _____
                                     (Notice Address)         (Zip Code) (Phone)

_____    _____    _____  _____
(Buyer's Names) **(PLEASE PRINT)**    (Notice Address)         (Zip Code) (Phone)

<p align="center"><strong>ACCEPTANCE/COUNTEROFFER/REJECTION</strong></p>

**CHECK ONE:**
[ ] **ACCEPTANCE OF OFFER TO PURCHASE:** Seller Accepts the foregoing offer on the terms and conditions specified above.

[ ] **COUNTEROFFER:** Seller presents for Buyer's Acceptance the terms of Buyer's offer subject to the exceptions or modifications as specified in the attached ADDENDUM NO. _____.

[ ] **REJECTION:** Seller rejects the foregoing offer.

_____    _____
(Seller's Signature)          (Date)      (Time)    (Seller's Signature)          (Date)      (Time)

*Jacob Kingston*
(Seller's Names) **(PLEASE PRINT)**    _____    _____  _____
                                      (Notice Address)         (Zip Code) (Phone)

_____    _____    _____  _____
(Seller's Names) **(PLEASE PRINT)**    (Notice Address)         (Zip Code) (Phone)

This form is COPYRIGHTED by the UTAH ASSOCIATION OF REALTORS® for use solely by its members. Any unauthorized use, modification, copying or distribution without written consent is prohibited. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION. IF YOU DESIRE SPECIFIC LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

COPYRIGHT© UTAH ASSOCIATION OF REALTORS® - 7.4.04 - REVISED - 4.22.10 - ALL RIGHTS RESERVED          UAR FORM 19

**SECURITY INVESTMENTS CORP**
3140 S Main St
Salt Lake City, UT 84115-3750

112

31-297/1240

11/18/2016

PAY TO THE
ORDER OF _____ WRE Real Estate Holding _____ $ 304,538.81

Three Hundred Four Thousand Five Hundred Thirty Eight Dollars And Eighty One Cents _____ DOLLARS

**WELLS FARGO**

FOR _____

⑆1240029171⑆ 99193228680⑈ 0112

ECO RANCHES, LLC
24050 N 6000 W
Plymouth, UT 84330

1002

Date: 8/22/2019

PAY    Security Investment
To The Order Of

$  17,837.00

Seventeen, Eight hundred Thirty - Seven Dollars $ no/100*******DOLLARS

Mountain America Credit Union
www.macu.com

Memo: Loan Payment 624295683

⑈1002 ⑈ ⑈324079555⑈50⑈0⑈560⑈44⑈

Authorized Signature

ID Group 800-782-4277

Item to be Paid - Description

023 EMPLOYEE BENEFIT FUND EXP

Check Number:  1002
Check Date:  Jul 1, 2019
Duplicate
Check Amount:  $1.00
Amount Paid

Discount Taken             1.00

ECO RANCHES, LLC
24050 N 6000 W
Plymouth, UT 84330

# Exhibit G

WHEN RECORDED, MAIL TO:

ECO RANCHES
24050 N. 6000 W.
Plymouth, UT 84330

Entry #: 3594... 3495740
11/16/2016 03:24:52 P    1294 P: 1055 Pages: 2
FEE  $12.00 BY ECHO RANCH.
Chad Montgomery, Box Elder County Recorder

# **Warranty Deed**

WASHAKIE RENEWABLE ENERGY, LLC                    , grantor,

of        Salt Lake                     , County of        Salt Lake                        ,State of Utah,

hereby CONVEY and WARRANT to

ECO RANCHES                     , grantee,

of        Plymouth                    , County of        Box Elder                    , State of Utah,

for the sum of     TEN and no/100------------------------------------------------        DOLLARS,
    and other good and valuable consideration

the following described tract   of land in        Box Elder            County, State of Utah, to-wit:

See Attached Exhibit "A"

WITNESS the hand   of said grantor    , this 8      day of        November        , 2016

Signed in the presence of

By: _____
WASHAKIE RENEWABLE ENERGY,
LLC

STATE OF UTAH

                         } ss.

COUNTY OF

On the   8   day of    Nov        20 16 , personally appeared before me  Jacob Kingston
_____   Who being by me duly sworn did say that he/she is the  Manager    of Washakie Renewable
Energy, LLC, and that the within and foregoing instrument was signed in behalf of said LLC by authority of a resolution
 of its members and said   Manager    duly acknowledged to me that said LLC executed the same.

Notary Public
RACHEL A. KINGSTON
Commission #688025
My Commission Expires
March 18, 2020
State of Utah

_____
Notary Public

EXHIBIT "A"

PARCEL 1: 08-045-0005

LOTS 1, 2, AND 3, THE WEST HALF OF THE NORTHEAST QUARTER AND THE NORTHWEST
QUARTER OF THE SOUTHEAST QUARTER OF SECTION 15, TOWNSHIP 14 NORTH, RANGE 3 WEST,
SALT LAKE BASE AND MERIDIAN.

LESS: A PARCEL OF LAND IN FEE FOR A FREEWAY KNOWN AS PROJECT NO. 15-8, BEING PART OF
AN ENTIRE TRACT OF PROPERTY, IN THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER
AND THE WEST HALF OF THE NORTHEAST QUARTER OF SECTION 15, TOWNSHIP 14 NORTH,
RANGE 3 WEST, SALT LAKE BASE AND MERIDIAN.  THE BOUNDARIES OF SAID PARCEL OF LAND
ARE DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE SOUTHERLY BOUNDARY LINE OF SAID ENTIRE TRACT
AND THE EASTERLY RIGHT-OF-WAY FENCE LINE OF A COUNTY ROAD, FORMERLY A STATE ROAD
DESIGNATED AS PROJECT NO. S.P. 293, WHICH POINT IS 488.8 FEET EASTERLY ALONG THE 40
ACRE LINE FROM THE SOUTHWEST CORNER OF SAID NORTHWEST QUARTER OF THE
SOUTHEAST QUARTER OF SECTION 15; THENCE NORTH 11°08'33" WEST 60.48 FEET ALONG SAID
EASTERLY RIGHT-OF-WAY FENCE LINE TO AN ANGLE POINT; THENCE CONTINUING NORTH
12°29'56" WEST 145.22 FEET ALONG SAID EASTERLY RIGHT-OF-WAY FENCE LINE TO AN
INTERSECTION WITH AN EAST-WEST FENCE; THENCE CONTINUING NORTH 15°32'01" WEST 286.65
FEET ALONG SAID EASTERLY RIGHT-OF-WAY FENCE LINE TO AN ANGLE POINT; THENCE
CONTINUING NORTH 18°33'59" WEST 1242.18 FEET ALONG SAID EASTERLY RIGHT-OF-WAY FENCE
LINE TO THE WESTERLY BOUNDARY LINE OF SAID NORTHEAST QUARTER OF SECTION 15;
THENCE NORTH 0°55'08" WEST 2060.96 FEET ALONG SAID WESTERLY BOUNDARY LINE TO A POINT
WHICH IS 210.0 FEET, RADIALLY DISTANT EASTERLY FROM THE CENTER LINE OF SAID PROJECT
OPPOSITE ENGINEER STATION 3460+98.23; THENCE SOUTH 13°35'26" EAST 1579.15 FEET; THENCE
SOUTH 10°35'06" EAST 501.60 FEET; THENCE SOUTH 15°09'32" EAST 1744.69 FEET; THENCE SOUTH
89°25'26" WEST 371.77 FEET TO THE POINT OF BEGINNING AS SHOWN ON THE OFFICIAL MAP OF
SAID PROJECT ON FILE IN THE OFFICE OF THE STATE ROAD COMMISSION OF UTAH.

LESS:  A PARCEL OF LAND IN FEE FOR A FREEWAY KNOWN AS PROJECT NO. 15-8, BEING PART OF
AN ENTIRE TRACT OF PROPERTY, IN THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER
AND THE WEST HALF OF THE NORTHEAST QUARTER OF SECTION 15, TOWNSHIP 14 NORTH,
RANGE 3 WEST, SALT LAKE BASE AND MERIDIAN.  THE BOUNDARIES OF SAID PARCEL OF LAND
ARE DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE EASTERLY RIGHT-OF-WAY FENCE LINE OF A COUNTY
ROAD, FORMERLY A STATE ROAD DESIGNATED AS PROJECT NO. S.P. 293, AND AN EXISTING
EAST-WEST FENCE, WHICH POINT IS 488.8 FEET EASTERLY ALONG THE 40 ACRE LINE, 60.48 FEET
NORTH 11°08'33" WEST AND 145.22 FEET NORTH 12°29'56" WEST FROM THE SOUTHWEST CORNER
OF SAID NORTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SAID SECTION 15; THENCE
NORTH 15°32'01" WEST 286.65 FEET ALONG SAID EASTERLY RIGHT-OF-WAY FENCE LINE TO AN
ANGLE POINT; THENCE CONTINUING NORTH 18°33'59" WEST 1242.18 FEET ALONG SAID EASTERLY
RIGHT-OF-WAY FENCE LINE TO THE WESTERLY BOUNDARY LINE OF SAID NORTHEAST QUARTER
OF SECTION 15; THENCE NORTH 0°55'08" WEST 2060.956 FEET ALONG SAID WESTERLY BOUNDARY
LINE TO A POINT WHICH IS 210.0 FEET RADIALLY DISTANT EASTERLY FROM THE CENTER LINE OF
SAID PROJECT OPPOSITE ENGINEER STATION 3460+98.23; THENCE SOUTH 13°35'26" EAST 1579.15
FEET; THENCE SOUTH 10°35'06" EAST 501.60 FEET; THENCE SOUTH 15°09'32" EAST 1538.44 FEET
TO SAID EAST-WEST FENCE; THENCE SOUTH 89°38'22" WEST 359.98  FEET TO THE POINT OF
BEGINNING AS SHOWN ON THE OFFICIAL MAP OF SAID PROJECT ON FILE IN THE OFFICE OF THE
STATE ROAD COMMISSION OF UTAH.

PARCEL 2: 08-044-0004

LOTS 4, 5, 6, 7, WEST HALF OF THE SOUTHEAST QUARTER OF SECTION 10, TOWNSHIP 14 NORTH,
RANGE 3 WEST, SALT LAKE BASE AND MERIDIAN.

LESS THAT PORTION DEEDED TO STATE ROAD.

Entry No. 364937 TRUST DEED
11/18/2016 03:24:52   B: 1294 P: 1056 Pages: 18
FEE $46.00 BY ECHO RANCHES
Chad Montgomery, Box Elder County Recorder



Tax Serial Number:
    Parcel# 08-045-0005, 08-044-0004

**RECORDATION REQUESTED BY:**
    Security Investment Corporation
    2970 South Main St.
    Suite 250
    Salt Lake City, UT  84115

**WHEN RECORDED MAIL TO:**
    Security Investment Corporation
    2970 South Main St.
    Suite 250
    Salt Lake City, UT  84115

**SEND TAX NOTICES TO:**
    Security Investment Corporation
    2970 South Main St.
    Suite 250
    Salt Lake City, UT  84115

                                                         **FOR RECORDER'S USE ONLY**

## DEED OF TRUST

**THIS DEED OF TRUST** is dated November 8, 2016, among ECO RANCHES, whose address is 24050 N. 6000 W., Plymouth, UT  84330 ("Trustor"); Security Investment Corporation, whose address is 2970 South Main St., Suite 250, Salt Lake City, UT  84115 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Carl E. Kingston, whose address is 3212 S. State, Salt Lake City, UT  84115 (referred to below as "Trustee").

**CONVEYANCE AND GRANT.**   For valuable consideration, Trustor irrevocably grants and conveys to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "**Real Property**") located in Box Elder County County, State of Utah:

    **See Attached Exhibit "A"**

DEED OF TRUST

Loan No: 4095683                    (Continued)                    Page 2

The Real Property or its address is commonly known as  Land in Box Elder County, Plymouth, UT   84330.   The  Real  Property  tax  identification  number  is  Parcel#  08-045-0005, 08-044-0004.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST.  THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

> **Possession and Use.** Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.  The following provisions relate to the use of the Property or to other limitations on the Property.  This instrument is a Trust Deed executed in conformity with the Utah Trust Deed Act, UCA 57-1-19, et seq.

> **Duty to Maintain.** Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

> **Compliance With Environmental Laws.** Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws.  Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust.

DEED OF TRUST
(Continued)

Loan No: 4095683                                                              Page 3

Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

DEED OF TRUST
(Continued)

Loan No: 4095683

Page 4

**Payment.** Trustor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a fair value basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at

DEED OF TRUST
(Continued)

least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during

DEED OF TRUST
(Continued)

Loan No: 4095683                                                                  Page 6

---

either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Trustor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to defend the action and obtain the award. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

DEED OF TRUST
(Continued)

Loan No: 4095683                                                                                Page 7

## IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.

The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

## SECURITY AGREEMENT; FINANCING STATEMENTS.

The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Trustor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

## FURTHER ASSURANCES; ATTORNEY-IN-FACT.

The following provisions relating to further

DEED OF TRUST
(Continued)

Loan No: 4095683 Page 8

assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Trustor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Any reconveyance fee required by law shall be paid by Trustor, if permitted by applicable law.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Trustor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Trustor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Trustor or on Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Loan No: 4095683

## DEED OF TRUST
### (Continued)

Page 9

---

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Trustor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Trustor's existence as a going business or the death of any member, the insolvency of Trustor, the appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Trustor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Trustor would be required to pay.

**Foreclosure.** With respect to all or any part of the Real Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable

| | DEED OF TRUST | |
|---|---|---|
| Loan No: 4095683 | (Continued) | Page 10 |

law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. Trustor hereby waives any requirement that the receiver be impartial and disinterested as to all of the parties and agrees that employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses

## DEED OF TRUST
(Continued)

Loan No: 4095683

Page 11

Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Box Elder County County, State of Utah. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**NOTICES.** Unless otherwise provided by applicable law, any notice required to be given under

**DEED OF TRUST**
(Continued)

this Deed of Trust or required by law, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered in accordance with the law or with this Deed of Trust, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Notwithstanding any other provision of this Deed of Trust, all notices given under Utah Code Ann. Section 57-1-26 shall be given as required therein. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided by applicable law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law. This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Utah without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of Utah.**

**Choice of Venue.** If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the courts of Salt Lake County, State of Utah.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance

## DEED OF TRUST
Loan No: 4095683                    (Continued)                    Page 13

with that provision or any other provision of this Deed of Trust.  No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions.  Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.**  If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance.  If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable.  If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust.  Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.**  Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns.  If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.**  Time is of the essence in the performance of this Deed of Trust.

**Waiver of Homestead Exemption.**  Trustor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Utah as to all Indebtedness secured by this Deed of Trust.

**DEFINITIONS.**  The following capitalized words and terms shall have the following meanings when used in this Deed of Trust.  Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America.  Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require.  Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.**  The word "Beneficiary" means Security Investment Corporation, and its successors and assigns.

**Borrower.**  The word "Borrower" means ECO RANCHES and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.**  The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.**  The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.**  The words "Environmental Laws" mean any and all state, federal and

DEED OF TRUST
(Continued)

Loan No: 4095683

Page 14

local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means Security Investment Corporation, its successors and assigns.

**Note.** The word "Note" means the promissory note dated November 8, 2016, **in the original principal amount of $363,650.50** from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

### DEED OF TRUST
### (Continued)

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means Carl E. Kingston, whose address is 3212 S. State, Salt Lake City, UT 84115 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means ECO RANCHES.

**TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS.**

TRUSTOR:

ECO RANCHES

By: _____
Shain Stoddard, Member of ECO RANCHES

**DEED OF TRUST**
**(Continued)**

Loan No: 4095683

Page 16

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _____*Utah*_____ )
                                              ) SS
COUNTY OF _____*Salt Lake*_____ )

On this _____*8*_____ day of _____*Nov*_____, 20 *16*, before me, the undersigned Notary Public, personally appeared **Shain Stoddard, Member of ECO RANCHES**, and known to me to be a member or designated agent of the limited liability company that executed the Deed of Trust and acknowledged the Deed of Trust to be the free and voluntary act and deed of the limited liability company, by authority of statute, its articles of organization or its operating agreement, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this Deed of Trust and in fact executed the Deed of Trust on behalf of the limited liability company.

By _____*Rachel A Knight*_____          Residing at _____*Salt Lake County*_____

Notary Public in and for the State of _____*Utah*_____          My commission expires _____*March 18, 2020*_____

Notary Public
RACHEL A. KINGSTON
Commission #688026
My Commission Expires
March 18, 2020
State of Utah

## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all Indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

_____

Date: _____          Beneficiary: _____

                                                            By: _____

                                                            Its: _____

**DEED OF TRUST**
(Continued)

Loan No: 4095683                                                          Page 17

LaserPro, Ver. 15.4.20.033  Copr. D+H USA Corporation 1997, 2016.   All Rights Reserved.
- UT  Z:\CFI\LPL\G01.FC  TR-556

EXHIBIT "A"

PARCEL 1: 08-045-0005

LOTS 1, 2, AND 3, THE WEST HALF OF THE NORTHEAST QUARTER AND THE NORTHWEST
QUARTER OF THE SOUTHEAST QUARTER OF SECTION 15, TOWNSHIP 14 NORTH, RANGE 3 WEST,
SALT LAKE BASE AND MERIDIAN.

LESS: A PARCEL OF LAND IN FEE FOR A FREEWAY KNOWN AS PROJECT NO. 15-8, BEING PART OF
AN ENTIRE TRACT OF PROPERTY, IN THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER
AND THE WEST HALF OF THE NORTHEAST QUARTER OF SECTION 15, TOWNSHIP 14 NORTH,
RANGE 3 WEST, SALT LAKE BASE AND MERIDIAN.  THE BOUNDARIES OF SAID PARCEL OF LAND
ARE DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE SOUTHERLY BOUNDARY LINE OF SAID ENTIRE TRACT
AND THE EASTERLY RIGHT-OF-WAY FENCE LINE OF A COUNTY ROAD, FORMERLY A STATE ROAD
DESIGNATED AS PROJECT NO. S.P. 293, WHICH POINT IS 488.8 FEET EASTERLY ALONG THE 40
ACRE LINE FROM THE SOUTHWEST CORNER OF SAID NORTHWEST QUARTER OF THE
SOUTHEAST QUARTER OF SECTION 15; THENCE NORTH 11°08'33" WEST 60.48 FEET ALONG SAID
EASTERLY RIGHT-OF-WAY FENCE LINE TO AN ANGLE POINT; THENCE CONTINUING NORTH
12°29'56" WEST 145.22 FEET ALONG SAID EASTERLY RIGHT-OF-WAY FENCE LINE TO AN
INTERSECTION WITH AN EAST-WEST FENCE; THENCE CONTINUING NORTH 15°32'01" WEST 286.65
FEET ALONG SAID EASTERLY RIGHT-OF-WAY FENCE LINE TO AN ANGLE POINT; THENCE
CONTINUING NORTH 18°33'59" WEST 1242.18 FEET ALONG SAID EASTERLY RIGHT-OF-WAY FENCE
LINE TO THE WESTERLY BOUNDARY LINE OF SAID NORTHEAST QUARTER OF SECTION 15;
THENCE NORTH 0°55'08" WEST 2060.96 FEET ALONG SAID WESTERLY BOUNDARY LINE TO A POINT
WHICH IS 210.0 FEET, RADIALLY DISTANT EASTERLY FROM THE CENTER LINE OF SAID PROJECT
OPPOSITE ENGINEER STATION 3460+98.23; THENCE SOUTH 13°35'26" EAST 1579.15 FEET; THENCE
SOUTH 10°35'06" EAST 501.60 FEET; THENCE SOUTH 15°09'32" EAST 1744.69 FEET; THENCE SOUTH
89°25'26" WEST 371.77 FEET TO THE POINT OF BEGINNING AS SHOWN ON THE OFFICIAL MAP OF
SAID PROJECT ON FILE IN THE OFFICE OF THE STATE ROAD COMMISSION OF UTAH.

LESS: A PARCEL OF LAND IN FEE FOR A FREEWAY KNOWN AS PROJECT NO. 15-8, BEING PART OF
AN ENTIRE TRACT OF PROPERTY, IN THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER
AND THE WEST HALF OF THE NORTHEAST QUARTER OF SECTION 15, TOWNSHIP 14 NORTH,
RANGE 3 WEST, SALT LAKE BASE AND MERIDIAN.  THE BOUNDARIES OF SAID PARCEL OF LAND
ARE DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE EASTERLY RIGHT-OF-WAY FENCE LINE OF A COUNTY
ROAD, FORMERLY A STATE ROAD DESIGNATED AS PROJECT NO. S.P. 293, AND AN EXISTING
EAST-WEST FENCE, WHICH POINT IS 488.8 FEET EASTERLY ALONG THE 40 ACRE LINE, 60.48 FEET
NORTH 11°08'33" WEST AND 145.22 FEET NORTH 12°29'56" WEST FROM THE SOUTHWEST CORNER
OF SAID NORTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SAID SECTION 15; THENCE
NORTH 15°32'01" WEST 286.65 FEET ALONG SAID EASTERLY RIGHT-OF-WAY FENCE LINE TO AN
ANGLE POINT; THENCE CONTINUING NORTH 18°33'59" WEST 1242.18 FEET ALONG SAID EASTERLY
RIGHT-OF-WAY FENCE LINE TO THE WESTERLY BOUNDARY LINE OF SAID NORTHEAST QUARTER
OF SECTION 15; THENCE NORTH 0°55'08" WEST 2060.956 FEET ALONG SAID WESTERLY BOUNDARY
LINE TO A POINT WHICH IS 210.0 FEET RADIALLY DISTANT EASTERLY FROM THE CENTER LINE OF
SAID PROJECT OPPOSITE ENGINEER STATION 3460+98.23; THENCE SOUTH 13°35'26" EAST 1579.15
FEET; THENCE SOUTH 10°35'06" EAST 501.60 FEET; THENCE SOUTH 15°09'32" EAST 1538.44 FEET
TO SAID EAST-WEST FENCE; THENCE SOUTH 89°38'22" WEST 359.98  FEET TO THE POINT OF
BEGINNING AS SHOWN ON THE OFFICIAL MAP OF SAID PROJECT ON FILE IN THE OFFICE OF THE
STATE ROAD COMMISSION OF UTAH.

PARCEL 2: 08-044-0004

LOTS 4, 5, 6, 7, WEST HALF OF THE SOUTHEAST QUARTER OF SECTION 10, TOWNSHIP 14 NORTH,
RANGE 3 WEST, SALT LAKE BASE AND MERIDIAN.

LESS THAT PORTION DEEDED TO STATE ROAD.

WHEN RECORDED, MA:    ):



Entry No. 365180   WARRANTY DEED
11/28/2016  03:18:32 PM B: 1295 P: 0388 Pages: 2
FEE  $13.00 BY SECURITY INVESTMENT CORPORATION
Chad Montgomery, Box Elder County Recorder

ECO RANCHES
24050 N. 6000 W.
Plymouth, UT 84330

# **Warranty Deed**

WRE REAL ESTATE HOLDINGS, LLC                    , grantor,

of      Salt Lake                 , County of      Salt Lake                 ,State of Utah,

hereby CONVEY and WARRANT to

ECO RANCHES                 , grantee,

of      Plymouth                 , County of      Box Elder                 , State of Utah,

for the sum of      TEN and no/100--------------------------------------------------
and other good and valuable consideration                                DOLLARS,

the following described tract   of land in      Box Elder              County, State of Utah, to-wit:

See Attached Exhibit "A"

WITNESS the hand  of said grantor  , this 21     day of      November          , 2016__

Signed in the presence of

_____

_____          By: _____
                                   WRE REAL ESTATE HOLDINGS, LLC

_____

STATE OF UTAH

                    } ss.
COUNTY OF

On the   _21_  day of   _Nov_          20_16_ , personally appeared before me _Jacob Kingston_
           Who being by me duly sworn did say that he/she is the _Manager_    of _WRE Real Estate_
_Holdings_ , and that the within and foregoing instrument was signed in behalf of said LLC by authority of a resolution
of its members and said_____   duly acknowledged to me that said LLC executed the same.

Notary Public
RACHEL A. KINGSTON
Commission #668026
My Commission Expires
March 18, 2020
State of Utah

_____
Notary Public

## EXHIBIT "A"
## LEGAL DESCRIPTION

Parcel#07-090-0002

SOUTHEAST QUARTER OF SECTION THREE (3) TOWNSHIP THIRTEEN (13) NORTH, RANGE THREE (3) WEST, SALT LAKE MERIDIAN, EXCEPTING THEREFROM, BEGINNING AT NORTHEAST CORNER OF SAID SOUTHEAST QUARTER, RUNNING THENCE WEST 534.6 FEET, THENCE IN A SOUTHEASTERLY DIRECTION ALONG NORTH SIDE OF STATE HIGHWAY 864.6 FEET, THENCE NORTH 673.2 FEET TO THE POINT OF BEGINNING.

EXCEPTING FROM THE ABOVE DESCRIBED LAND ALL STATE AND COUNTY ROAD RIGHTS-OF-WAY. ALSO LESS: ALL PARCELS AS SET FORTH IN ORDER OF IMMEDIATE OCCUPANCY IN FAVOR OF UTAH DEPARTMENT OF TRANSPORTATION AS RECORDED NOVEMBER 7, 1985, AS ENTRY NO. 149395, IN BOOK 408, AT PAGE 770.

ALSO LESS: BEGINNING AT A POINT 1593 FEET NORTH ALONG THE SECTION LINE AND 33 FEET WEST OF THE SOUTHEAST CORNER OF SECTION 3, TOWNSHIP 13 NORTH, RANGE 3 WEST, SLB&M, AND RUNNING WEST 765.7 FEET TO THE EAST RIGHT-OF-WAY LINE OF THE INTERSTATE FREEWAY (NO ACCESS LINE); THENCE NORTH 1°09'53" WEST 978.0 FEET ALONG SAID LINE, MORE OR LESS, TO NORTH BOUNDARY OF SOUTHEAST QUARTER OF SAID SECTION; THENCE SOUTH 89°29'05" EAST 212.8 FEET ALONG THE NORTH BOUNDARY OF THE SOUTHEAST QUARTER OF SAID SECTION TO THE WEST RIGHT-OF-WAY LINE OF COUNTY ROAD; THENCE SOUTH 37°01'12" EAST 951.37 FEET ALONG SAID LINE; THENCE SOUTH 216.3 FEET ALONG SAID LINE TO THE POINT OF BEGINNING.

Parcel#07-037-0001

The West half of the Northwest Quarter of Section 11, Township 13 North, Range 3 West, Salt Lake Meridian.

LESS: Roads on the North and West sides, according to the official plat thereof, on file in the Office of the Recorder of BOX ELDER County, Utah.

Entry No. 365181  TRUST DEED
11/28/2016 03:16:32 PM B: 1295 P: 0330 Pages: 18
FEE $45.00 BY SECURITY INVESTMENT CORPORATION
Chad Montgomery Box Elder County Recorder

Tax Serial Number:
  Parcel# 07-037-0001, 07-090-0002

RECORDATION REQUESTED BY:
  Security Investment Corporation
  2970 South Main St.
  Suite 250
  Salt Lake City, UT  84115

WHEN RECORDED MAIL TO:
  Security Investment Corporation
  2970 South Main St.
  Suite 250
  Salt Lake City, UT  84115

SEND TAX NOTICES TO:
  Security Investment Corporation
  2970 South Main St.
  Suite 250
  Salt Lake City, UT  84115

FOR RECORDER'S USE ONLY

## DEED OF TRUST

THIS DEED OF TRUST is dated November 21, 2016, among ECO RANCHES, whose address is 24050 N. 6000 W., Plymouth, UT 84330 ("Trustor"); Security Investment Corporation, whose address is 2970 South Main St., Suite 250, Salt Lake City, UT  84115 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Carl E. Kingston, whose address is 3212 S. State, Salt Lake City, UT  84115 (referred to below as "Trustee").

CONVEYANCE AND GRANT.  For valuable consideration, Trustor irrevocably grants and conveys to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Box Elder County County, State of Utah:

    See Attached Exhibit "A"

**DEED OF TRUST**
(Continued)

Loan No: 4395683                                                                        Page 2

The Real Property or its address is commonly known as  Land in , Plymouth, UT  8484330. The Real Property tax identification number is Parcel# 07-037-0001, 07-090-0002.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B)  PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST.  THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE.  Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note, this Deed of Trust, and the Related Documents.

POSSESSION AND MAINTENANCE OF THE PROPERTY.   Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

Possession and Use.  Until the occurrence of an Event of Default, Trustor may  (1)  remain in possession and control of the Property;  (2)  use, operate or manage the Property; and (3)  collect the Rents from the Property.  The following provisions relate to the use of the Property or to other limitations on the Property.  This instrument is a Trust Deed executed in conformity with the Utah Trust Deed Act, UCA 57-1-19, et seq.

Duty to Maintain.  Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Compliance With Environmental Laws.  Trustor represents and warrants to Lender that:  (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property;  (2)  Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing,  (a)  any breach or violation of any Environmental Laws,  (b)  any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or  (c)  any actual or threatened litigation or claims of any kind by any person relating to such matters; and  (3)  Except as previously disclosed to and acknowledged by Lender in writing,  (a)  neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and  (b)  any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws.  Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not

**DEED OF TRUST**
**(Continued)**

be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**DEED OF TRUST**
(Continued)

**Payment.** Trustor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a fair value basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at

DEED OF TRUST
(Continued)

least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during

DEED OF TRUST
(Continued)

either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.**   The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.**  Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.**  Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.**  Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.**  All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Trustor's Indebtedness shall be paid in full.

**CONDEMNATION.**  The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.**  If any proceeding in condemnation is filed, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to defend the action and obtain the award. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.**  If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

DEED OF TRUST
(Continued)

Loan No: 4395683

Page 7

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Trustor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further

DEED OF TRUST
(Continued)

Loan No: 4395683                                                                          Page 8

assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2)   the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor.  Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.**  If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense.  For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.**  If Trustor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property.  Any reconveyance fee required by law shall be paid by Trustor, if permitted by applicable law.

**EVENTS OF DEFAULT.**  Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.**  Trustor fails to make any payment when due under the Indebtedness.

**Other Defaults.**  Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Trustor.

**Compliance Default.**  Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.**  Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**False Statements.**  Any warranty, representation or statement made or furnished to Lender by Trustor or on Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

DEED OF TRUST

Loan No: 4395683                          (Continued)                          Page 9

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Trustor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Trustor's existence as a going business or the death of any member, the insolvency of Trustor, the appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Trustor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Trustor would be required to pay.

**Foreclosure.** With respect to all or any part of the Real Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable

DEED OF TRUST

Loan No: 4395683 · (Continued) Page 10

law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. Trustor hereby waives any requirement that the receiver be impartial and disinterested as to all of the parties and agrees that employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses

## DEED OF TRUST
**. (Continued)**

Loan No: 4395683                                                                 Page 11

Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Box Elder County County, State of Utah. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**NOTICES.** Unless otherwise provided by applicable law, any notice required to be given under

DEED OF TRUST
-(Continued)

Loan No: 4395683

Page 12

this Deed of Trust or required by law, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered in accordance with the law or with this Deed of Trust, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Notwithstanding any other provision of this Deed of Trust, all notices given under Utah Code Ann. Section 57-1-26 shall be given as required therein. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided by applicable law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

MISCELLANEOUS PROVISIONS. The following miscellaneous provisions are a part of this Deed of Trust:

Amendments. This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

Annual Reports. If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

Caption Headings. Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

Merger. There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

Governing Law. This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Utah without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of Utah.

Choice of Venue. If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the courts of Salt Lake County, State of Utah.

No Waiver by Lender. Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance

DEED OF TRUST
(Continued)

Loan No: 4395683

Page 13

with that provision or any other provision of this Deed of Trust.  No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions.  Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.**  If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance.  If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable.  If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust.  Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.**  Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns.  If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.**  Time is of the essence in the performance of this Deed of Trust.

**Waiver of Homestead Exemption.**  Trustor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Utah as to all Indebtedness secured by this Deed of Trust.

**DEFINITIONS.**  The following capitalized words and terms shall have the following meanings when used in this Deed of Trust.  Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America.  Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require.  Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.**  The word "Beneficiary" means Security Investment Corporation, and its successors and assigns.

**Borrower.**  The word "Borrower" means ECO RANCHES and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.**  The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.**  The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.**  The words "Environmental Laws" mean any and all state, federal and

DEED OF TRUST
(Continued)

local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means Security Investment Corporation, its successors and assigns.

**Note.** The word "Note" means the promissory note dated November 21, 2016, in the original principal amount of $164,226.00 from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

DEED OF TRUST
(Continued)

Loan No: 4395683                                                                              Page 15

**Property.**  The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.**  The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.**  The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.**  The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.**  The word "Trustee" means Carl E. Kingston, whose address is 3212 S. State, Salt Lake City, UT 84115 and any substitute or successor trustees.

**Trustor.**  The word "Trustor" means ECO RANCHES.

**TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS.**

TRUSTOR:


ECO RANCHES

By: _____
     Shain Stoddard, Member of ECO RANCHES

**DEED OF TRUST**
**(Continued)**

Loan No: 4395683

Page 16

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _Utah_ )
) SS
COUNTY OF _Salt Lake_ )

On this __21__ day of __Nov__, 20 _16_, before me, the undersigned Notary Public, personally appeared Shain Stoddard, Member of ECO RANCHES, and known to me to be a member or designated agent of the limited liability company that executed the Deed of Trust and acknowledged the Deed of Trust to be the free and voluntary act and deed of the limited liability company, by authority of statute, its articles of organization or its operating agreement, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this Deed of Trust and in fact executed the Deed of Trust on behalf of the limited liability company.

By _Rachel A Kingston_

Notary Public in and for the State of _Utah_

Residing at _Salt Lake County_

My commission expires _March 18, 2020_

Notary Public
RACHEL A. KINGSTON
Commission #683026
My Commission Expires
March 18, 2020
State of Utah

## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

Date: _____

Beneficiary: _____

By: _____

Its: _____

DEED OF TRUST
(Continued)

Loan No: 4395683

Page 17

LaserPro, Ver. 15.4.20.033  Copr. D+H USA Corporation 1997, 2016   All Rights Reserved.
- UT  Z:\CFI\LPL\G01.FC  TR-591

EXHIBIT "A"
LEGAL DESCRIPTION

Parcel#07-090-0002

SOUTHEAST QUARTER OF SECTION THREE (3) TOWNSHIP THIRTEEN (13) NORTH, RANGE
THREE (3) WEST, SALT LAKE MERIDIAN, EXCEPTING THEREFROM, BEGINNING AT NORTHEAST
CORNER OF SAID SOUTHEAST QUARTER, RUNNING THENCE WEST 534.6 FEET, THENCE IN A
SOUTHEASTERLY DIRECTION ALONG NORTH SIDE OF STATE HIGHWAY 864.6 FEET, THENCE
NORTH 673.2 FEET TO THE POINT OF BEGINNING.

EXCEPTING FROM THE ABOVE DESCRIBED LAND ALL STATE AND COUNTY ROAD
RIGHTS-OF-WAY.  ALSO LESS:  ALL PARCELS AS SET FORTH IN ORDER OF IMMEDIATE
OCCUPANCY IN FAVOR OF UTAH DEPARTMENT OF TRANSPORTATION AS RECORDED
NOVEMBER 7, 1985, AS ENTRY NO. 149395, IN BOOK 408, AT PAGE 770.

ALSO LESS:  BEGINNING AT A POINT 1593 FEET NORTH ALONG THE SECTION LINE AND 33 FEET
WEST OF THE SOUTHEAST CORNER OF SECTION 3, TOWNSHIP 13 NORTH, RANGE 3 WEST,
SLB&M, AND RUNNING WEST 765.7 FEET TO THE EAST RIGHT-OF-WAY LINE OF THE
INTERSTATE FREEWAY (NO ACCESS LINE); THENCE NORTH 1°09'53" WEST 978.0 FEET ALONG
SAID LINE, MORE OR LESS, TO NORTH BOUNDARY OF SOUTHEAST QUARTER OF SAID SECTION;
THENCE SOUTH 89°29'05" EAST 212.8 FEET ALONG THE NORTH BOUNDARY OF THE SOUTHEAST
QUARTER OF SAID SECTION TO THE WEST RIGHT-OF-WAY LINE OF COUNTY ROAD; THENCE
SOUTH 37°01'12" EAST 951.37 FEET ALONG SAID LINE; THENCE SOUTH 216.3 FEET ALONG SAID
LINE TO THE POINT OF BEGINNING.

Parcel#07-037-0001

The West half of the Northwest Quarter of Section 11, Township 13 North, Range 3 West, Salt
Lake Meridian.

LESS:  Roads on the North and West sides, according to the official plat thereof, on file in the
Office of the Recorder of BOX ELDER County, Utah.

WHEN RECORDED, MAIL TO:

ECO RANCHES
24050 N. 6000 W.
Plymouth, UT 84330

Entry No. 362578   WARRANTY DEED
09/30/2016 02:31:47   M B: 1290 P: 0191 Pages: 3
FEE $21.00 BY ECO RA    S
Chad Montgomery  Box L    er County Recorder

# Warranty Deed

WRE REAL ESTATE HOLDINGS, LLC                              , grantor,

of        Salt Lake                    , County of        Salt Lake                    , State of Utah,

hereby CONVEY and WARRANT to

ECO RANCHES                              , grantee,

of        Plymouth                    , County of        Box Elder            , State of Utah,

for the sum of      TEN and no/100————————————————————————          DOLLARS,
and other good and valuable consideration

the following described tract   of land in        Box Elder                    County, State of Utah, to-wit:

See Attached Exhibit "A"

WITNESS the hand   of said grantor   , this /4      day of      ~~August~~ *Sept 14* , 2016___

Signed in the presence of

By: _____
WRE REAL ESTATE HOLDINGS, LLC

STATE OF UTAH

COUNTY OF Salt Lake } ss.

On the  14   day of  Sept          20 1 6 , personally appeared before me  Jacob Kingston
          Who being by me duly sworn did say that he/she is the  Manager          of WRE Real Estate
Holding LLC and that the within and foregoing instrument was signed in behalf of said LLC by authority of a resolution
of its members and said  Manager          duly acknowledged to me that said LLC executed the same.

Notary Public
RICHARD KINGSTON
Commission #689576
My Commission Expires
June 20, 2020
State of Utah

_____
Notary Public

EXHIBIT "A"
LEGAL DESCRIPTION

PARCEL 1:
Beginning 22 2/3 rods West of the North Quarter corner of Section 7, Township 14 North, Range 3 West, Salt Lake Meridian, thence running West 246 feet, thence South 17 rods, thence East 246 feet, thence North 17 rods, to beginning

LESS:  Tracts deeded to Raymond G. Yaworsky and William D. Marsh.

PARCEL 2:
Beginning at a point 538 feet West of the North Quarter corner of Section 7, Township 14 North, Range 3 West, Salt Lake Meridian, thence West 82 feet, thence South 280.5 feet, thence East 82 feet, thence North 280.5 feet to beginning.

PARCEL 3:
Beginning at a point 374 feet West of the North Quarter corner of Section 7, Township 14 North, Range 3 West, Salt Lake Meridian, thence West 82 feet, thence South 280.5 feet, thence East 82 feet, thence North 280.5 feet to beginning.

PARCEL 4:
Beginning at a point 1321.95 feet South of the North Quarter corner, Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, BOX ELDER County, Utah; running thence East 3,300 feet, plus or minus, to center line of Samaria Ditch; thence North along the center line of said ditch to a point 330 feet North of Grantor's South property line; thence West to West boundary of Grantor's property; thence South 330 feet, plus or minus, to point of beginning. (Lying within Portage City limits)

PARCEL 5:
The North half of the Northeast Quarter of Section 7, Township 14 North, Range 3 West, Salt Lake Meridian.

LESS:  The North half of the West half of the North half of the Northeast Quarter, Section 7, Township 14 North, Range 3 West, Salt Lake Meridian.

LESS:  A part of the North half of Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, BOX ELDER County, Utah:  Beginning at the North Quarter corner of Section 7 at a point West 34.8 feet from existing fence line; running thence North 89°57'38" East 2640.0 feet; thence South 0°28'34" West 660.0 feet; thence South 89°57'38" West 2640.0 feet; thence North 0°28'34" East 660.0 feet to the point of beginning.

Excepting therefrom:  Beginning at the North Quarter corner of Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, and running thence South 216 feet; thence East 327 feet; thence North 216 feet; thence West 327 feet to the point of beginning.

Also excepting therefrom:  That portion on the West of said property which lies within 8800 West Street.

LESS:  Beginning at a point 1321.95 feet South of the North Quarter corner, Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, BOX ELDER County, Utah; running thence East 3,300 feet, plus or minus, to center line of Samaria Ditch; thence North along the center line of said ditch to a point 330 feet North of Grantor's South property line; thence West to West boundary of Grantor's property; thence South 330 feet, plus or minus, to point of beginning.  (Lying within Portage City limits)

PARCEL 6
Beginning at a point 1321.95 feet South of the North Quarter corner, Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, BOX ELDER County, Utah; running thence East 3,300 feet, plus or minus, to center line of Samaria Ditch; thence North along the center line of said ditch to a point 330 feet North of Grantor's South property line; thence West to West boundary of Grantor's property; thence South 330 feet, plus or minus, to point of beginning.  (Lying outside Portage City limits)

PARCEL 7:
The North half of the Northeast Quarter of Section 7, Township 14 North, Range 3 West, Salt Lake Meridian.

LESS:  The North half of the West half of the North half of the Northeast Quarter, Section 7, Township 14 North, Range 3 West, Salt Lake Meridian.

LESS:  A part of the North half of Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, BOX ELDER County, Utah:  Beginning at the North Quarter corner of Section 7 at a point West 34.8 feet from existing fence line; running thence North 89°57'36" East 2640.0 feet; thence South 0°28'34" West 660.0 feet; thence South 89°57'38" West 2640.0 feet; thence North 0°28'34" East 660.0 feet to the point of beginning.

Excepting therefrom:  Beginning at the North Quarter corner of Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, and running thence South 216 feet; thence East 327 feet; thence North 216 feet; thence West 327 feet to the point of beginning.

Also excepting therefrom:  That portion on the West of said property which lies within 8800 West Street.

LESS:  Beginning at a point 1321.95 feet South of the North Quarter corner, Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, BOX ELDER County, Utah; running thence East 3,300 feet, plus or minus, to center line of Samaria Ditch; thence North along the center line of said ditch to a point 330 feet North of Grantor's South property line; thence West to West boundary of Grantor's property; thence South 330 feet, plus or minus, to point of beginning.  (Lying outside Portage City limits)

PARCEL 8:
The North half of the Northwest Quarter of Section 8, Township 14 North, Range 3 West, Salt Lake Meridian.

LESS:  All land lying East of the West boundary of OSLRR right of way.

LESS:  Beginning at a point 1321.95 feet South of the North Quarter corner, Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, BOX ELDER County, Utah; running thence East 3,300 feet, plus or minus, to center line of Samaria Ditch; thence North along the center line of said ditch to a point 330 feet North of Grantor's South property line; thence West to West boundary of Grantor's property; thence South 330 feet, plus or minus, to point of beginning.

Entry No. 362579   TRUST DEED
09/30/2016 02:31:45   B: 1290 P: 0194 Pages: 10
FEE $35.00 BY ECO RAN
Chad Montgomery, Box Elder County Recorder

Serial Number:
Parcel#'s Tract 1: 08-041-0025,
08-041-0026, 08-041-0027, 08-041-0028,
08-042-0018 Tract 2: 08-041-0019,
08-041-0004, 08-041-0020

**RECORDATION REQUESTED BY:**
Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

**WHEN RECORDED MAIL TO:**
Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

**SEND TAX NOTICES TO:**
Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT 84115

FOR RECORDER'S USE ONLY

# DEED OF TRUST

**THIS DEED OF TRUST** is dated September 14, 2016, among ECO RANCHES, whose address is 24050 N. 6000 W., Plymouth, UT 84330 ("Trustor"); Security Investment Corporation, whose address is 2970 South Main St., Suite 250, Salt Lake City, UT 84115 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Carl E. Kingston, whose address is 3212 S. State, Salt Lake City, UT 84115 (referred to below as "Trustee").

**CONVEYANCE AND GRANT.** For valuable consideration, Trustor irrevocably grants and conveys to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Box Elder County County, State of Utah:

    See Attached Exhibit "A"

The Real Property or its address is commonly known as Land in Box Elder County, Plymouth, UT 84330. The Real Property tax identification number is Parcel#'s Tract 1: 08-041-0025, 08-041-0026, 08-041-0027, 08-041-0028, 08-042-0018 Tract 2: 08-041-0019, 08-041-0004, 08-041-0020.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

    **Possession and Use.** Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property. The following provisions relate to the use of the Property or to other limitations on the Property. This instrument is a Trust Deed executed in conformity with the Utah Trust Deed Act, UCA 57-1-19, et seq.

    **Duty to Maintain.** Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

    **Compliance With Environmental Laws.** Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any

DEED OF TRUST
(Continued)

Loan No: 62-4000683                                                                                          Page 2

---

Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

Nuisance, Waste. Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

Removal of Improvements. Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

Lender's Right to Enter. Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

Compliance with Governmental Requirements. Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

Duty to Protect. Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

TAXES AND LIENS. The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

Payment. Trustor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

Right to Contest. Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

Evidence of Payment. Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

Notice of Construction. Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

PROPERTY DAMAGE INSURANCE. The following provisions relating to insuring the Property are a part of this Deed of Trust.

Maintenance of Insurance. Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a fair value basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance,

EXHIBIT "A"
LEGAL DESCRIPTION

PARCEL 1:
Beginning 22 2/3 rods West of the North Quarter corner of Section 7, Township 14 North, Range 3 West, Salt Lake Meridian, thence running West 246 feet, thence South 17 rods, thence East 246 feet, thence North 17 rods, to beginning.

LESS:  Tracts deeded to Raymond G. Yaworsky and William D. Marsh.

PARCEL 2:
Beginning at a point 538 feet West of the North Quarter corner of Section 7, Township 14 North, Range 3 West, Salt Lake Meridian, thence West 82 feet, thence South 280.5 feet, thence East 82 feet, thence North 280.5 feet to beginning.

PARCEL 3:
Beginning at a point 374 feet West of the North Quarter corner of Section 7, Township 14 North, Range 3 West, Salt Lake Meridian, thence West 82 feet, thence South 280.5 feet, thence East 82 feet, thence North 280.5 feet to beginning.

PARCEL 4:
Beginning at a point 1321.95 feet South of the North Quarter corner, Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, BOX ELDER County, Utah; running thence East 3,300 feet, plus or minus, to center line of Samaria Ditch; thence North along the center line of said ditch to a point 330 feet North of Grantor's South property line; thence West to West boundary of Grantor's property; thence South 330 feet, plus or minus, to point of beginning. (Lying within Portage City limits)

PARCEL 5:
The North half of the Northeast Quarter of Section 7, Township 14 North, Range 3 West, Salt Lake Meridian.

LESS:  The North half of the West half of the North half of the Northeast Quarter, Section 7, Township 14 North, Range 3 West, Salt Lake Meridian.

LESS:  A part of the North half of Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, BOX ELDER County, Utah:  Beginning at the North Quarter corner of Section 7 at a point West 34.8 feet from existing fence line; running thence North 89°57'38" East 2640.0 feet; thence South 0°28'34" West 660.0 feet; thence South 89°57'38" West 2640.0 feet; thence North 0°28'34" East 660.0 feet to the point of beginning.

Excepting therefrom:  Beginning at the North Quarter corner of Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, and running thence South 216 feet; thence East 327 feet; thence North 216 feet; thence West 327 feet to the point of beginning.

Also excepting therefrom:  That portion on the West of said property which lies within 8800 West Street.

LESS:  Beginning at a point 1321.95 feet South of the North Quarter corner, Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, BOX ELDER County, Utah; running thence East 3,300 feet, plus or minus, to center line of Samaria Ditch; thence North along the center line of said ditch to a point 330 feet North of Grantor's South property line; thence West to West boundary of Grantor's property; thence South 330 feet, plus or minus, to point of beginning.  (Lying within Portage City limits)

PARCEL 6:
Beginning at a point 1321.95 feet South of the North Quarter corner, Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, BOX ELDER County, Utah; running thence East 3,300 feet, plus or minus, to center line of Samaria Ditch; thence North along the center line of said ditch to a point 330 feet North of Grantor's South property line; thence West to West boundary of Grantor's property; thence South 330 feet, plus or minus, to point of beginning.  (Lying outside Portage City limits)

PARCEL 7:
The North half of the Northeast Quarter of Section 7, Township 14 North, Range 3 West, Salt Lake Meridian.

LESS:  The North half of the West half of the North half of the Northeast Quarter, Section 7, Township 14 North, Range 3 West, Salt Lake Meridian.

LESS:  A part of the North half of Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, BOX ELDER County, Utah:  Beginning at the North Quarter corner of Section 7 at a point West 34.8 feet from existing fence line; running thence North 89°57'38" East 2640.0 feet; thence South 0°28'34" West 660.0 feet; thence South 89°57'38" West 2640.0 feet; thence North 0°28'34" East 660.0 feet to the point of beginning.

Excepting therefrom:  Beginning at the North Quarter corner of Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, and running thence South 216 feet; thence East 327 feet; thence North 216 feet; thence West 327 feet to the point of beginning.

Also excepting therefrom:  That portion on the West of said property which lies within 8800 West Street.

LESS:  Beginning at a point 1321.95 feet South of the North Quarter corner, Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, BOX ELDER County, Utah; running thence East 3,300 feet, plus or minus, to center line of Samaria Ditch; thence North along the center line of said ditch to a point 330 feet North of Grantor's South property line; thence West to West boundary of Grantor's property; thence South 330 feet, plus or minus, to point of beginning.  (Lying outside Portage City limits)

PARCEL 8:
The North half of the Northwest Quarter of Section 8, Township 14 North, Range 3 West, Salt Lake Meridian.

LESS:  All land lying East of the West boundary of OSLRR right of way.

LESS:  Beginning at a point 1321.95 feet South of the North Quarter corner, Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, BOX ELDER County, Utah; running thence East 3,300 feet, plus or minus, to center line of Samaria Ditch; thence North along the center line of said ditch to a point 330 feet North of Grantor's South property line; thence West to West boundary of Grantor's property; thence South 330 feet, plus or minus, to point of beginning.

WHEN RECORD. MAI. .:

ECO RANCHES
24050 N. 6000 W.
Plymouth, UT 84330



Entry No. 365178   WARRANTY DEED
11/28/2016 03:18:32 PM B: 1295 P: 0368 Pages: 2
FEE $17.00 BY SECURITY INVE   NT CORPORATION
Chad Montgomery, Box Elder Co.    y Recorder

# **Warranty Deed**

WRE REAL ESTATE HOLDINGS, LLC                     , grantor,

of      Salt Lake              , County of      Salt Lake            ,State of Utah,

hereby  CONVEY and WARRANT to

ECO RANCHES              , grantee,

of      Plymouth              , County of      Box Elder        , State of Utah,

for the sum of    TEN and no/100-------------------------------------------------------   DOLLARS,
and other good and valuable consideration

the following described tract  of land in        Box Elder              County, State of Utah, to-wit:

See Attached Exhibit "A"

WITNESS the hand  of said grantor   , this  17      day of        November          , 2016__

Signed in the presence of

_____        By: _____
                                          WRE REAL ESTATE HOLDINGS, LLC

_____

_____

STATE OF UTAH

                              } ss.

COUNTY OF

On the  17   day of   Nov        20 16  , personally appeared before me  Jacob Kingston,
             Who being by me duly sworn did say that he/she is the  Manager    of WRE Real Estate
Holdings , and that the within and foregoing instrument was signed in behalf of said LLC by authority of a resolution
of its members and said_____ duly acknowledged to me that said LLC executed the same.

Notary Public
RACHEL A. KINGSTON
Commission #688026
My Commission Expires
March 18, 2020
State of Utah

_____
Notary Public

EXHIBIT "A"
LEGAL DESCRIPTION

PARCEL 1:
Southwest Quarter of Southwest Quarter, less the West 5.25 acres thereof; also the West 8.42 acres of the Southeast Quarter of Southwest Quarter of Section 27, Township 14 North, Range 3 West, Salt Lake Meridian.

Less:  County road right of way.

PARCEL 2:
The West 5.25 acres of Southwest Quarter of Southwest Quarter of Section 27, Township 14 North, Range 3 West, Salt Lake Meridian.

Less:  County road right of way.

PARCEL 3:
Northeast Quarter of Southwest Quarter; Southwest Quarter of Southeast Quarter lying West of county road known as Frontage Road; and the East 31.58 acres of the Southeast Quarter of Southwest Quarter of Section 27, Township 14 North, Range 3 West, Salt Lake Meridian.

Less:  Lot 1, BRUCE ZUNDEL SUBDIVISION.

Less:  County road right of way

PARCEL 4:
Beginning North 71° West 1350.1 feet from the Southeast corner of Section 27, Township 14 North, Range 3 West, Salt Lake Meridian, North 40°6' West 435 feet, North 19°22' West 240.5 feet, North 18°3' West 329.8 feet, North 89°38' East 456.2 feet, South 24' East 876.2 feet to beginning.

ALSO:  Beginning at a point 1320 feet West and 1312 feet North from the Southeast corner of Section 27, West 396 feet to East right of way line of county road, North 4°40' East 274 feet, North 15°20' East 1100 feet more or less to the North line of the Northwest Quarter of the Southeast Quarter of said Section 27, East 83 feet, South 1332 feet more or less to beginning.

PARCEL 5:
Lot 1, BRUCE ZUNDEL SUBDIVISION, as recorded March 26, 2001, as Entry No. 150913, in the office of the BOX ELDER County Recorder.

PARCEL 6:
The Northwest Quarter of the Southeast Quarter of Section 27, Township 14 North, Range 3 West, Salt Lake Meridian lying West of county road known as Frontage Road.

Less:  Utah Department of Transportation access road right of way.

Less:  Parcel No. 08-052-0013, created by Warranty Deed 216956.

Entry No. 365179  TRUS, ,EED
11/28/2016 03:18:32 PM B: 1295 P: 0370 Pages: 18
FEE $45.00 BY SECURITY INVESTMENT CORPORATION
Chad Montgomery  Box Elder County Recorder

PM B: 1295  P: 0370  Pages 18

**Tax Serial Number:**
08-052-0005,08-052-0004,08-052-0006,08-052-0014, 08-052-0012,08-052-0008

**RECORDATION REQUESTED BY:**
Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT  84115

**WHEN RECORDED MAIL TO:**
Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT  84115

**SEND TAX NOTICES TO:**
Security Investment Corporation
2970 South Main St.
Suite 250
Salt Lake City, UT  84115

**FOR RECORDER'S USE ONLY**

## DEED OF TRUST

**THIS DEED OF TRUST** is dated November 17, 2016, among ECO RANCHES, whose address is 24050 N. 6000 W., Plymouth, UT  84330 ("Trustor"); Security Investment Corporation, whose address is 2970 South Main St., Suite 250, Salt Lake City, UT  84115 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Carl E. Kingston, whose address is 3212 S. State, Salt Lake City, UT  84115 (referred to below as "Trustee").

**CONVEYANCE AND GRANT.** For valuable consideration, Trustor irrevocably grants and conveys to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Box Elder County County, State of Utah:

See Attached Exhibit "A"

# DEED OF TRUST
## (Continued)

Loan No: 4295683                                                                    Page 2

The Real Property or its address is commonly known as Mound Spring Parcels in Box Elder County, Plymouth, UT 84330. The Real Property tax identification number is 08-052-0005,08-052-0004,08-052-0006,08-052-0014, 08-052-0012,08-052-0008.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note, this Deed of Trust, and the Related Documents.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

Possession and Use. Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property. The following provisions relate to the use of the Property or to other limitations on the Property. This instrument is a Trust Deed executed in conformity with the Utah Trust Deed Act, UCA 57-1-19, et seq.

Duty to Maintain. Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Compliance With Environmental Laws. Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust.

DEED OF TRUST
(Continued)

Page 3

Loan No: 4295683

Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

Nuisance, Waste. Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

Removal of Improvements. Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

Lender's Right to Enter. Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

Compliance with Governmental Requirements. Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

Duty to Protect. Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

TAXES AND LIENS. The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

DEED OF TRUST
(Continued)

Page 4

Loan No: 4295683

**Payment.** Trustor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a fair value basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at

DEED OF TRUST
(Continued)

Loan No: 4295683

Page 5

least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during

DEED OF TRUST
(Continued)

Page 6

Loan No: 4295683

either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Trustor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to defend the action and obtain the award. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**DEED OF TRUST**
(Continued)

Loan No: 4295683

Page 7

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Trustor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further

DEED OF TRUST
(Continued)

Page 8

Loan No: 4295683

assurances and attorney-in-fact are a part of this Deed of Trust.

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Trustor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Any reconveyance fee required by law shall be paid by Trustor, if permitted by applicable law.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Trustor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Trustor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Trustor or on Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**DEED OF TRUST**
(Continued)

Page 9

Loan No: 4295683

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Trustor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Trustor's existence as a going business or the death of any member, the insolvency of Trustor, the appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Trustor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Trustor would be required to pay.

**Foreclosure.** With respect to all or any part of the Real Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable

DEED OF TRUST
(Continued)

Loan No: 4295683

law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. Trustor hereby waives any requirement that the receiver be impartial and disinterested as to all of the parties and agrees that employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses

## DEED OF TRUST
(Continued)

Loan No: 4295683                                              Page 11

Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Box Elder County County, State of Utah. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**NOTICES.** Unless otherwise provided by applicable law, any notice required to be given under

DEED OF TRUST
(Continued)

Page 12

Loan No: 4295683

this Deed of Trust or required by law, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered in accordance with the law or with this Deed of Trust, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Notwithstanding any other provision of this Deed of Trust, all notices given under Utah Code Ann. Section 57-1-26 shall be given as required therein. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided by applicable law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Utah without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of Utah.

**Choice of Venue.** If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the courts of Salt Lake County, State of Utah.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance

with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waiver of Homestead Exemption.** Trustor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Utah as to all Indebtedness secured by this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means Security Investment Corporation, and its successors and assigns.

**Borrower.** The word "Borrower" means ECO RANCHES and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and

DEED OF TRUST
(Continued)

Loan No: 4295683

Page 14

local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means Security Investment Corporation, its successors and assigns.

**Note.** The word "Note" means the promissory note dated November 17, 2016, in the original principal amount of $293,031.30 from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

Loan No: 4295683

Property. The word "Property" means collectively the Real Property and the Personal Property.

Real Property. The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

Rents. The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

Trustee. The word "Trustee" means Carl E. Kingston, whose address is 3212 S. State, Salt Lake City, UT 84115 and any substitute or successor trustees.

Trustor. The word "Trustor" means ECO RANCHES.

TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS.

TRUSTOR:

ECO RANCHES

By: _____
Shain Stoddard, Member of ECO RANCHES

DEED OF TRUST
(Continued)

Loan No: 4295683

Page 16

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _Utah_ )
 ) SS
COUNTY OF _Salt Lake_ )

On this _17_ day of _Nov_, 20 _16_, before me, the undersigned Notary Public, personally appeared Shain Stoddard, Member of ECO RANCHES, and known to me to be a member or designated agent of the limited liability company that executed the Deed of Trust and acknowledged the Deed of Trust to be the free and voluntary act and deed of the limited liability company, by authority of statute, its articles of organization or its operating agreement, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this Deed of Trust and in fact executed the Deed of Trust on behalf of the limited liability company.

By _Rachel A Kingston_

Notary Public in and for the State of

Residing at _Salt Lake County_

My commission expires _March 18, 2020_

Notary Public
RACHEL A. KINGSTON
Commission #688026
My Commission Expires
March 18, 2020
State of Utah

---

## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all Indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

_____

Date: _____

Beneficiary: _____

By: _____

Its: _____

**DEED OF TRUST**
**(Continued)**

Loan No: 4295683

Page 17

LaserPro, Ver. 15.4.20.033  Copr. D+H USA Corporation 1997, 2016.  All Rights Reserved
- UT  Z:\CFI\LPL\G01.FC  TR-589

## EXHIBIT "A"
## LEGAL DESCRIPTION

PARCEL 1:
Southwest Quarter of Southwest Quarter, less the West 5.25 acres thereof; also the West 8.42 acres of the Southeast Quarter of Southwest Quarter of Section 27, Township 14 North, Range 3 West, Salt Lake Meridian.

Less: County road right of way.

PARCEL 2:
The West 5.25 acres of Southwest Quarter of Southwest Quarter of Section 27, Township 14 North, Range 3 West, Salt Lake Meridian.

Less: County road right of way.

PARCEL 3:
Northeast Quarter of Southwest Quarter; Southwest Quarter of Southeast Quarter lying West of county road known as Frontage Road; and the East 31.58 acres of the Southeast Quarter of Southwest Quarter of Section 27, Township 14 North, Range 3 West, Salt Lake Meridian.

Less: Lot 1, BRUCE ZUNDEL SUBDIVISION.

Less: County road right of way

PARCEL 4:
Beginning North 71° West 1350.1 feet from the Southeast corner of Section 27, Township 14 North, Range 3 West, Salt Lake Meridian, North 40°6' West 435 feet, North 19°22' West 240.5 feet, North 18°3' West 329.8 feet, North 89°38' East 456.2 feet, South 24' East 876.2 feet to beginning.

ALSO: Beginning at a point 1320 feet West and 1312 feet North from the Southeast corner of Section 27, West 396 feet to East right of way line of county road, North 4°40' East 274 feet, North 15°20' East 1100 feet more or less to the North line of the Northwest Quarter of the Southeast Quarter of said Section 27, East 83 feet, South 1332 feet more or less to beginning.

PARCEL 5:
Lot 1, BRUCE ZUNDEL SUBDIVISION, as recorded March 26, 2001, as Entry No. 150913, in the office of the BOX ELDER County Recorder.

PARCEL 6:
The Northwest Quarter of the Southeast Quarter of Section 27, Township 14 North, Range 3 West, Salt Lake Meridian lying West of county road known as Frontage Road.

Less: Utah Department of Transportation access road right of way.

Less: Parcel No. 08-052-0013, created by Warranty Deed 216956.

# Exhibit G

## *Security Investment Corporation – Legal Department*

10 W. Century Parkway
Salt Lake City, Utah 84115
(801) 484-6988

December 3, 2019

Eco Ranches
24050 N. 6000 W.
Plymouth, UT 84330
Loan ID: 62-4000683, 62-4095683, 62-4295683, 62-4395683

Dear Eco Ranches,

Your Account has been referred to the legal Department to determine the necessary steps to be taken in order to satisfy your debt with Security Investment Corporation. Upon reviewing your situation, it is my belief that the only way to resolve the delinquency may be by settling this Your Account in a court of law.

In order to avoid being brought into court to pay a debt that you know that you owe, we are offering you (1) final opportunity to voluntarily cure the delinquency. Below is the total amount due on each account.

Loan ID: 62-4000683     Amount Due: $499,289.30
Loan ID: 62-4095683     Amount Due: $419,022.75
Loan ID: 62-4295683     Amount Due: $319,535.32
Loan ID: 62-4395683     Amount Due: $189,672.43

If you fail to remit the payment as set forth above, within ten (10) days from the date of this letter, we will pursue the commencement of litigation against you for any deficiency balance and all amounts due under Your Account, including all of our attorneys' fees, costs, and expenses. Therefore, your immediate attention to this matter is both anticipated and expected.

Sincerely,

Security Investment Corporation
Credit Department

Security Investment Corp
Statement of Account

| PAYABLE TO: | SECURITY INVESTMENT CORP | | | PAYABLE FROM: ECO RANCHES, LLC | | RATE: | 5.00 | | NOTE DATE: | | |
| | | | | | | | | | MATURITY DATE: | | |
| | | | | | | Loan# | 624000-683 | | | | |
| DATE | DESCRIPTION | | DRAWS | PAYMENTS | INTEREST+/- | INT BALANCE | PRINCIPAL+/- | PR BALANCE | TOT BALANCE | | |
| 01/01/19 | Beginning Balance | | | | | 48,627.84 | | 430,775.00 | 479,402.84 | | |
| 12/03/19 | 01/01/19 - 12/03/19 | 337 DAY(S) | | | 19,886.46 | 68,514.30 | 0.00 | 430,775.00 | 499,289.30 | | |
| 12/3/2019 | | 337 | . | . | | 68,514.30 | 0.00 | 430,775.00 | 499,289.30 | | |

Total Interest:          19,886.46

Security Investment Corp
Statement of Account

| PAYABLE TO: | SECURITY INVESTMENT CORP | PAYABLE FROM: ECO RANCHES, LLC | | | RATE: | 5.00 | NOTE DATE: |
|---|---|---|---|---|---|---|---|
| | | | | | | | MATURITY DATE: |
| | | | | | Loan # | 624095-683 | |

| DATE | DESCRIPTION | | DRAWS | PAYMENTS | INTEREST+/- | INT BALANCE | PRINCIPAL+/- | PR BALANCE | TOT BALANCE |
|---|---|---|---|---|---|---|---|---|---|
| 01/01/19 | Beginning Balance | | | | | 38,584.55 | | 363,650.50 | 402,235.05 |
| 12/03/19 | 01/01/19 - 12/03/19 | 337 DAY(S) | | | 16,787.70 | 55,372.25 | 0.00 | 363,650.50 | 419,022.75 |
| 12/3/2019 | | 337 | - | - | | 55,372.25 | 0.00 | 363,650.50 | 419,022.75 |

Total Interest: 16,787.70

Security Investment Corp
Statement of Account

| PAYABLE TO: | SECURITY INVESTMENT CORP | | PAYABLE FROM: | ECO RANCHES, LLC | | RATE: | 5.00 | NOTE DATE: | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | MATURITY DATE: | | |
| | | | | | | Loan # 624295-683 | | | | |
| DATE | DESCRIPTION | | DRAWS | PAYMENTS | INTEREST+/- | INT BALANCE | PRINCIPAL+/- | PR BALANCE | TOT BALANCE |
| 01/01/19 | Beginning Balance | | | | | 30,813.41 | | 293,031.30 | 323,844.71 |
| 08/22/19 | 01/01/19 - 08/22/19 | 234 DAY(S) | | | 9,393.06 | 40,206.47 | 0.00 | 293,031.30 | 333,237.77 |
| 08/22/19 | Pmt | | | (17,837.00) | -17,837.00 | 22,369.47 | 0.00 | 293,031.30 | 315,400.77 |
| 12/03/19 | 08/22/19 - 12/03/19 | 103 DAY(S) | | | 4,134.55 | 26,504.02 | 0.00 | 293,031.30 | 319,535.32 |
| 12/3/2019 | | 337 | - | (17,837.00) | | 26,504.02 | 0.00 | 293,031.30 | 319,535.32 |

Total Interest:        13,527.61

Security Investment Corp
Statement of Account

| PAYABLE TO: SECURITY INVESTMENT CORP | PAYABLE FROM: ECO RANCHES, LLC | RATE: | 5.00 | NOTE DATE: |
|---|---|---|---|---|
| | | | | MATURITY DATE: |
| | | | Loan#  624395-683 | |

| DATE | DESCRIPTION | | DRAWS | PAYMENTS | INTEREST+/- | INT BALANCE | PRINCIPAL+/- | PR BALANCE | TOT BALANCE |
|---|---|---|---|---|---|---|---|---|---|
| 01/01/19 | Beginning Balance | | | | | 17,323.47 | | 164,743.67 | 182,067.14 |
| 12/03/19 | 01/01/19 - 12/03/19 | 337 DAY(S) | | | 7,605.29 | 24,928.76 | 0.00 | 164,743.67 | 189,672.43 |
| 12/3/2019 | | 337 | - | - | | 24,928.76 | 0.00 | 164,743.67 | 189,672.43 |

Total interest:            7,605.29



When recorded mail to:
Katherine R. Young
3212 South State Street
Salt Lake City, UT 84115

Space above this line for Recorder's use

NOTICE OF DEFAULT

Notice is hereby given by Katherine R. Young, Trustee, that a default has occurred under that certain Trust Deed dated November 17, 2016 executed by ECO RANCHES, Trustor, in favor of SECURITY INVESTMENT CORPORATION NV as Beneficiary, the Deed of Trust having been recorded in the office of the County Recorder of Box Elder County, State of Utah on November 2016, as Entry No. 365179, Book 1295, page 370 of official records, relating to and describing the real property situated in Box Elder County, Utah, specifically:

Parcel Nos. 08-052-0005, 08-052-0004, 08-052-0006, 08-052-0014, 08-052-0012, and 08-052-0008 located in Box Elder County, State of Utah and is more particularly described in Exhibit "A".

Said Deed of Trust secures obligations under a Note dated November 17, 2016 in the original principal amount of $293,031.30

The beneficial interest under said Trust Deed and the obligations secured thereby are now owned by SECURITY INVESTMENT CORPORATION NV.

The default which has occurred is the breach of an obligation for which the trust property was conveyed as security and consist of the failure of the Trustor to pay the payments due thereunder. That there is now due and owing on said note, the sum of $321,622.67 all of which is hereby declared to be due and payable. There is also due all of the expenses and fees of these foreclosure proceedings and interest from January 28, 2020.

By reason of such default, SECURITY INVESTMENT CORPORATION NV, the beneficiary under said Trust Deed, has executed and delivered to said Trustee a written declaration of default and demand for sale, and has deposited with said Trustee such Deed of Trust and all documents evidencing obligations secured thereby and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated this 28 day of January, 2020.



Katherine R. Young, Trustee
3212 South State Street
Salt Lake City, Utah 84115
Phone: (801) 486-1458

State of Utah   )

              :ss

County of Salt Lake   )

On this ____ day of January, 2020, personally appeared before me Katherine R. Young, Trustee, the signer of the foregoing instrument, who duly acknowledged to me that she executed the same.

Notary Public

CLOVER JEAN OWEN
NOTARY PUBLIC - STATE OF UTAH
My Comm. Exp September 15, 2021
Commission # 697023

EXHIBIT "A"
LEGAL DESCRIPTION

PARCEL 1:
Southwest Quarter of Southwest Quarter, less the West 5.25 acres thereof; also the West 8.42 acres of the Southeast Quarter of Southwest Quarter of Section 27, Township 14 North, Range 3 West, Salt Lake Meridian.

Less:  County road right of way.

PARCEL 2:
The West 5.25 acres of Southwest Quarter of Southwest Quarter of Section 27, Township 14 North, Range 3 West, Salt Lake Meridian.

Less:  County road right of way.

PARCEL 3:
Northeast Quarter of Southwest Quarter; Southwest Quarter of Southeast Quarter lying West of county road known as Frontage Road; and the East 31.58 acres of the Southeast Quarter of Southwest Quarter of Section 27, Township 14 North, Range 3 West, Salt Lake Meridian.

Less:  Lot 1, BRUCE ZUNDEL SUBDIVISION.

Less:  County road right of way

PARCEL 4:
Beginning North 71° West 1350.1 feet from the Southeast corner of Section 27, Township 14 North, Range 3 West, Salt Lake Meridian, North 40°6' West 435 feet, North 19°22' West 240.5 feet, North 18°3' West 329.8 feet, North 89°38' East 456.2 feet, South 24' East 876.2 feet to beginning.

ALSO:  Beginning at a point 1320 feet West and 1312 feet North from the Southeast corner of Section 27, West 396 feet to East right of way line of county road, North 4°40' East 274 feet, North 15°20' East 1100 feet more or less to the North line of the Northwest Quarter of the Southeast Quarter of said Section 27, East 83 feet, South 1332 feet more or less to beginning.

PARCEL 5:
Lot 1, BRUCE ZUNDEL SUBDIVISION, as recorded March 26, 2001, as Entry No. 150913, in the office of the BOX ELDER County Recorder.

PARCEL 6:
The Northwest Quarter of the Southeast Quarter of Section 27, Township 14 North, Range 3 West, Salt Lake Meridian lying West of county road known as Frontage Road.

Less:  Utah Department of Transportation access road right of way.

Less:  Parcel No. 08-052-0013, created by Warranty Deed 216956.



Entry No. 408954       O. 1402 P 0.691
02/28/2020 04:03:18 PM    FEE $40.00    Pages 3
NOTICE OF DEFAULT For KATHERINE R YOUNG
Shad Montgomery, Box Elder County Recorder

When recorded mail to:
Katherine R. Young
3212 South State Street
Salt Lake City, UT 84115

<div align="right">Space above this line for Recorder's use</div>

## NOTICE OF DEFAULT

   Notice is hereby given by Katherine R. Young, Trustee, that a default has occurred under that certain Trust Deed dated November 8, 2016 executed by ECO RANCHES, Trustor, in favor of SECURITY INVESTMENT CORPORATION NV as Beneficiary, the Deed of Trust having been recorded in the office of the County Recorder of Box Elder County, State of Utah on November 2016, as Entry No. 364937, Book 1294, page 1056 of official records, relating to and describing the real property situated in Box Elder County, Utah, specifically:

   Parcel Nos. 08-045-0005 and 08-044-0004 located in Box Elder County, State of Utah and is more particularly described in Exhibit "A".

   Said Deed of Trust secures obligations under a Note dated November 8, 2016 in the original principal amount of $363,650.50.

   The beneficial interest under said Trust Deed and the obligations secured thereby are now owned by SECURITY INVESTMENT CORPORATION NV.

   The default which has occurred is the breach of an obligation for which the trust property was conveyed as security and consist of the failure of the Trustor to pay the payments due thereunder. That there is now due and owing on said note, the sum of $421,613.14 all of which is hereby declared to be due and payable. There is also due all of the expenses and fees of these foreclosure proceedings and interest from January 28, 2020.

   By reason of such default, SECURITY INVESTMENT CORPORATION NV, the beneficiary under said Trust Deed, has executed and delivered to said Trustee a written declaration of default and demand for sale, and has deposited with said Trustee such Deed of Trust and all documents evidencing obligations secured thereby and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

   Dated this 28 day of January, 2020.

Katherine R. Young, Trustee
3212 South State Street
Salt Lake City, Utah 84115
Phone: (801) 486-1458

State of Utah   )

                :ss

County of Salt Lake   )

On this ___ day of January, 2020, personally appeared before me Katherine R. Young, Trustee, the signer of the foregoing instrument, who duly acknowledged to me that she executed the same.

Notary Public

CLOVER JEAN OWEN
NOTARY PUBLIC -STATE OF UTAH
My Comm. Exp September 15, 2021
Commission # 697023

EXHIBIT "A"

PARCEL 1: 08-045-0006

LOTS 1, 2, AND 3, THE WEST HALF OF THE NORTHEAST QUARTER AND THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 15, TOWNSHIP 14 NORTH, RANGE 3 WEST, SALT LAKE BASE AND MERIDIAN.

LESS: A PARCEL OF LAND IN FEE FOR A FREEWAY KNOWN AS PROJECT NO. 15-8, BEING PART OF AN ENTIRE TRACT OF PROPERTY, IN THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER AND THE WEST HALF OF THE NORTHEAST QUARTER OF SECTION 15, TOWNSHIP 14 NORTH, RANGE 3 WEST, SALT LAKE BASE AND MERIDIAN. THE BOUNDARIES OF SAID PARCEL OF LAND ARE DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE SOUTHERLY BOUNDARY LINE OF SAID ENTIRE TRACT AND THE EASTERLY RIGHT-OF-WAY FENCE LINE OF A COUNTY ROAD, FORMERLY A STATE ROAD DESIGNATED AS PROJECT NO. S.P. 293, WHICH POINT IS 488.8 FEET EASTERLY ALONG THE 40 ACRE LINE FROM THE SOUTHWEST CORNER OF SAID NORTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 15; THENCE NORTH 11°08'33" WEST 60.48 FEET ALONG SAID EASTERLY RIGHT-OF-WAY FENCE LINE TO AN ANGLE POINT; THENCE CONTINUING NORTH 12°29'56" WEST 145.22 FEET ALONG SAID EASTERLY RIGHT-OF-WAY FENCE LINE TO AN INTERSECTION WITH AN EAST-WEST FENCE; THENCE CONTINUING NORTH 15°32'01" WEST 286.65 FEET ALONG SAID EASTERLY RIGHT-OF-WAY FENCE LINE TO AN ANGLE POINT; THENCE CONTINUING NORTH 18°33'59" WEST 1242.18 FEET ALONG SAID EASTERLY RIGHT-OF-WAY FENCE LINE TO THE WESTERLY BOUNDARY LINE OF SAID NORTHEAST QUARTER OF SECTION 15; THENCE NORTH 0°55'08" WEST 2080.96 FEET ALONG SAID WESTERLY BOUNDARY LINE TO A POINT WHICH IS 210.0 FEET, RADIALLY DISTANT EASTERLY FROM THE CENTER LINE OF SAID PROJECT OPPOSITE ENGINEER STATION 3460+98.23; THENCE SOUTH 13°35'26" EAST 1579.15 FEET; THENCE SOUTH 10°35'08" EAST 501.60 FEET; THENCE SOUTH 15°09'32" EAST 1744.69 FEET; THENCE SOUTH 89°25'26" WEST 371.77 FEET TO THE POINT OF BEGINNING AS SHOWN ON THE OFFICIAL MAP OF SAID PROJECT ON FILE IN THE OFFICE OF THE STATE ROAD COMMISSION OF UTAH.

LESS: A PARCEL OF LAND IN FEE FOR A FREEWAY KNOWN AS PROJECT NO. 15-8, BEING PART OF AN ENTIRE TRACT OF PROPERTY, IN THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER AND THE WEST HALF OF THE NORTHEAST QUARTER OF SECTION 15, TOWNSHIP 14 NORTH, RANGE 3 WEST, SALT LAKE BASE AND MERIDIAN. THE BOUNDARIES OF SAID PARCEL OF LAND ARE DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE EASTERLY RIGHT-OF-WAY FENCE LINE OF A COUNTY ROAD, FORMERLY A STATE ROAD DESIGNATED AS PROJECT NO. S.P. 293, AND AN EXISTING EAST-WEST FENCE, WHICH POINT IS 488.8 FEET EASTERLY ALONG THE 40 ACRE LINE, 60.48 FEET NORTH 11°08'33" WEST AND 145.22 FEET NORTH 12°29'56" WEST FROM THE SOUTHWEST CORNER OF SAID NORTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SAID SECTION 15; THENCE NORTH 15°32'01" WEST 286.65 FEET ALONG SAID EASTERLY RIGHT-OF-WAY FENCE LINE TO AN ANGLE POINT; THENCE CONTINUING NORTH 18°33'59" WEST 1242.18 FEET ALONG SAID EASTERLY RIGHT-OF-WAY FENCE LINE TO THE WESTERLY BOUNDARY LINE OF SAID NORTHEAST QUARTER OF SECTION 15; THENCE NORTH 0°55'08" WEST 2080.956 FEET ALONG SAID WESTERLY BOUNDARY LINE TO A POINT WHICH IS 210.0 FEET RADIALLY DISTANT EASTERLY FROM THE CENTER LINE OF SAID PROJECT OPPOSITE ENGINEER STATION 3460+98.23; THENCE SOUTH 13°35'26" EAST 1579.15 FEET; THENCE SOUTH 10°35'08" EAST 501.60 FEET; THENCE SOUTH 15°09'32" EAST 1538.44 FEET TO SAID EAST-WEST FENCE; THENCE SOUTH 89°38'22" WEST 359.98 FEET TO THE POINT OF BEGINNING AS SHOWN ON THE OFFICIAL MAP OF SAID PROJECT ON FILE IN THE OFFICE OF THE STATE ROAD COMMISSION OF UTAH.

PARCEL 2: 08-044-0004

LOTS 4, 5, 6, 7, WEST HALF OF THE SOUTHEAST QUARTER OF SECTION 10, TOWNSHIP 14 NORTH, RANGE 3 WEST, SALT LAKE BASE AND MERIDIAN.

LESS THAT PORTION DEEDED TO STATE ROAD.



When recorded mail to:
Katherine R. Young
3212 South State Street
Salt Lake City, UT 84115

Space above this line for Recorder's use

## NOTICE OF DEFAULT

Notice is hereby given by Katherine R. Young, Trustee, that a default has occurred under that certain Trust Deed dated September 14, 2016 executed by ECO RANCHES, Trustor, in favor of SECURITY INVESTMENT CORPORATION NV as Beneficiary, the Deed of Trust having been recorded in the office of the County Recorder of Box Elder County, State of Utah on September 2016, as Entry No. 362579, Book 1290, page 194 of official records, relating to and describing the real property situated in Box Elder County, Utah, specifically:

Parcel Nos. 08-041-0025, 08-041-0026, 08-041-0027, 08-041-0028, 08-042-0018 Tract 2: 08-041-0019, 08-041-0004, and 08-041-0020 located in Box Elder County, State of Utah and is more particularly described in Exhibit "A".

Said Deed of Trust secures obligations under a Note dated September 14, 2016 in the original principal amount of $430,775.00.

The beneficial interest under said Trust Deed and the obligations secured thereby are now owned by SECURITY INVESTMENT CORPORATION NV.

The default which has occurred is the breach of an obligation for which the trust property was conveyed as security and consist of the failure of the Trustor to pay the payments due thereunder. That there is now due and owing on said note, the sum of $502,357.84 all of which is hereby declared to be due and payable. There is also due all of the expenses and fees of these foreclosure proceedings and interest from January 28, 2020.

By reason of such default, SECURITY INVESTMENT CORPORATION NV, the beneficiary under said Trust Deed, has executed and delivered to said Trustee a written declaration of default and demand for sale, and has deposited with said Trustee such Deed of Trust and all documents evidencing obligations secured thereby and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated this ⟨28⟩ day of January, 2020.

_Katherine Young_
Katherine R. Young, Trustee
3212 South State Street
Salt Lake City, Utah 84115
Phone: (801) 486-1458

State of Utah   )
                            :ss
County of Salt Lake   )

On this __22__ day of January, 2020, personally appeared before me Katherine R. Young, Trustee, the signer of the foregoing instrument, who duly acknowledged to me that she executed the same.



_Notary Public_



**CLOVER JEAN OWEN**
NOTARY PUBLIC -STATE OF UTAH
My Comm. Exp September 15, 2021
Commission # 697023

EXHIBIT "A"
LEGAL DESCRIPTION

PARCEL 1:
Beginning 22 2/3 rods West of the North Quarter corner of Section 7, Township 14 North, Range 3 West, Salt Lake Meridian, thence running West 246 feet, thence South 17 rods, thence East 246 feet, thence North 17 rods, to beginning.

LESS:  Tracts deeded to Raymond G. Yaworsky and William D. Marsh.

PARCEL 2:
Beginning at a point 538 feet West of the North Quarter corner of Section 7, Township 14 North, Range 3 West, Salt Lake Meridian, thence West 82 feet, thence South 280.5 feet, thence East 82 feet, thence North 280.5 feet to beginning.

PARCEL 3:
Beginning at a point 374 feet West of the North Quarter corner of Section 7, Township 14 North, Range 3 West, Salt Lake Meridian, thence West 82 feet, thence South 280.5 feet, thence East 82 feet, thence North 280.5 feet to beginning.

PARCEL 4:
Beginning at a point 1321.95 feet South of the North Quarter corner, Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, BOX ELDER County, Utah; running thence East 3,300 feet, plus or minus, to center line of Samaria Ditch; thence North along the center line of said ditch to a point 330 feet North of Grantor's South property line; thence West to West boundary of Grantor's property; thence South 330 feet, plus or minus, to point of beginning. (Lying within Portage City limits)

PARCEL 5:
The North half of the Northeast Quarter of Section 7, Township 14 North, Range 3 West, Salt Lake Meridian.

LESS:  The North half of the West half of the North half of the Northeast Quarter, Section 7, Township 14 North, Range 3 West, Salt Lake Meridian.

LESS:  A part of the North half of Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, BOX ELDER County, Utah:  Beginning at the North Quarter corner of Section 7 at a point West 34.8 feet from existing fence line; running thence North 89°57'38" East 2640.0 feet; thence South 0°28'34" West 660.0 feet; thence South 89°57'38" West 2640.0 feet; thence North 0°28'34" East 660.0 feet to the point of beginning.

Excepting therefrom:  Beginning at the North Quarter corner of Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, and running thence South 216 feet; thence East 327 feet; thence North 216 feet; thence West 327 feet to the point of beginning.

Also excepting therefrom:  That portion on the West of said property which lies within 8800 West Street.

LESS:  Beginning at a point 1321.95 feet South of the North Quarter corner, Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, BOX ELDER County, Utah; running thence East 3,300 feet, plus or minus, to center line of Samaria Ditch; thence North along the center line of said ditch to a point 330 feet North of Grantor's South property line; thence West to West boundary of Grantor's property; thence South 330 feet, plus or minus, to point of beginning.  (Lying within Portage City limits)

PARCEL 6:

Beginning at a point 1321.95 feet South of the North Quarter corner, Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, BOX ELDER County, Utah; running thence East 3,300 feet, plus or minus, to center line of Samaria Ditch; thence North along the center line of said ditch to a point 330 feet North of Grantor's South property line; thence West to West boundary of Grantor's property; thence South 330 feet, plus or minus, to point of beginning. (Lying outside Portage City limits)

PARCEL 7:

The North half of the Northeast Quarter of Section 7, Township 14 North, Range 3 West, Salt Lake Meridian.

LESS:  The North half of the West half of the North half of the Northeast Quarter, Section 7, Township 14 North, Range 3 West, Salt Lake Meridian.

LESS:  A part of the North half of Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, BOX ELDER County, Utah: Beginning at the North Quarter corner of Section 7 at a point West 34.8 feet from existing fence line; running thence North 89°57'38" East 2640.0 feet; thence South 0°28'34" West 660.0 feet; thence South 89°57'38" West 2640.0 feet; thence North 0°28'34" East 660.0 feet to the point of beginning.

Excepting therefrom:  Beginning at the North Quarter corner of Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, and running thence South 216 feet; thence East 327 feet; thence North 216 feet; thence West 327 feet to the point of beginning.

Also excepting therefrom:  That portion on the West of said property which lies within 8800 West Street.

LESS:  Beginning at a point 1321.95 feet South of the North Quarter corner, Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, BOX ELDER County, Utah; running thence East 3,300 feet, plus or minus, to center line of Samaria Ditch; thence North along the center line of said ditch to a point 330 feet North of Grantor's South property line; thence West to West boundary of Grantor's property; thence South 330 feet, plus or minus, to point of beginning. (Lying outside Portage City limits)

PARCEL 8:

The North half of the Northwest Quarter of Section 8, Township 14 North, Range 3 West, Salt Lake Meridian.

LESS:  All land lying East of the West boundary of OSLRR right of way.

LESS:  Beginning at a point 1321.95 feet South of the North Quarter corner, Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, BOX ELDER County, Utah; running thence East 3,300 feet, plus or minus, to center line of Samaria Ditch; thence North along the center line of said ditch to a point 330 feet North of Grantor's South property line; thence West to West boundary of Grantor's property; thence South 330 feet, plus or minus, to point of beginning.



When recorded mail to:
Katherine R. Young
3212 South State Street
Salt Lake City, UT 84115

Space above this line for Recorder's use

### NOTICE OF DEFAULT

Notice is hereby given by Katherine R. Young, Trustee, that a default has occurred under that certain Trust Deed dated November 21, 2016 executed by ECO RANCHES, Trustor, in favor of SECURITY INVESTMENT CORPORATION NV as Beneficiary, the Deed of Trust having been recorded in the office of the County Recorder of Box Elder County, State of Utah on November 2016, as Entry No. 365181, Book 1295, page 390 of official records, relating to and describing the real property situated in Box Elder County, Utah, more particularly described as follows:

Parcel No. 07-090-0002

Southeast Quarter of Section Three (3) Township Thirteen (13) North, Range Three (3) West, Salt Lake Meridian, excepting therefrom, beginning at Northeast Corner of said Southeast Quarter, running thence West 534 6 feet, Thence in a Southeasterly direction along North side of State Highway 864.6 feet, thence North 673.2 feet to the point of beginning.

LESS AND EXCEPTING: (1) all state and county road rights-of-way, (2), All parcels as set forth in order of immediate occupancy in favor of Utah Department of Transportation as recorded November 7, 1985, as Entry No. 149395, in Book 408, at Page 770, and (3) BEGINNING at a point 1593 feet North along the section line and 33 feet West of the Southeast corner of Section 3, Township 13 North, Range 3 West, SLB&M, and running West 765.7 feet to the east Right-of-Way Line of the Interstate Freeway (no access line); then North 1 deg. 09'53" West 978.0 feet along said line, more or less, to North boundary of Southeast quarter of said section; then South 89 deg. 29'05" East 212.8 feet along the North boundary of the Southeast quarter of said section to the West Right-of-Way Line of county road, then South 37 deg. 01'12" East 951.37 feet along said line; thence South 216.3 feet along said line to point of beginning

Parcel No. 07-037-0001

The West half of the Northwest Quarter of Section 11, Township 13 North, Range 3 West, Salt Lake Meridian.

LESS AND EXCEPTING roads on the North and West sides, according to the official plat thereof, on file in the Office of the Recorder of Box Elder County, Utah.

Said Deed of Trust secures obligations under a Note dated November 21, 2016 in the original principal amount of $164,226.00.

The beneficial interest under said Trust Deed and the obligations secured thereby are now owned by SECURITY INVESTMENT CORPORATION NV.

The default which has occurred is the breach of an obligation for which the trust property was conveyed as security and consist of the failure of the Trustor to pay the payments due thereunder. That there is now due and owing on said note, the sum of $190,845.94 all of which is hereby declared to be due and payable. There is also due all of the expenses and fees of these foreclosure proceedings and interest from January 28, 2020.

By reason of such default, SECURITY INVESTMENT CORPORATION NV, the beneficiary under said Trust Deed, has executed and delivered to said Trustee a written declaration of default and demand for sale, and has deposited with said Trustee such Deed of Trust and all documents evidencing obligations secured thereby and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated this 21 day of February, 2020.


Katherine R. Young, Trustee
3212 South State Street
Salt Lake City, Utah 84115
Phone: (801) 486-1458


State of Utah   )
                           :ss
County of Salt Lake   )

On this 21 day of February, 2020, personally appeared before me Katherine R. Young, Trustee, the signer of the foregoing instrument, who duly acknowledged to me that she executed the same.


Notary Public

John W. Huber
United States Attorney (#7226)
111 South Main Street, Suite 1800
Salt Lake City, UT 84111
(801) 524-5682

## Notice of Trustee's Sale

The following described property will be sold at public auction to the highest bidder, without warranty as to title, possession, or encumbrances, payable in lawful money of the United States at the time of sale, at the main entrance of the First Judicial District Court for Box Elder County, 43 North Main, Brigham City, UT 84302 on September 25, 2020 at 11:30 a.m. of said day, for the purpose of foreclosing a trust deed originally executed by ECO RANCHES, LLC, as Trustor, in favor of SECURITY INVESTMENT CORPORATION NV, covering real property located in Box Elder County and more particularly described as:

Parcel No. 07-090-0002

Southeast Quarter of Section Three (3) Township Thirteen (13) North, Range Three (3) West, Salt Lake Meridian, excepting therefrom, beginning at Northeast Corner of said Southeast Quarter, running thence West 534 6 feet, Thence in a Southeasterly direction along North side of State Highway 864.6 feet, thence North 673.2 feet to the point of beginning.
LESS AND EXCEPTING: (1) all state and county road rights-of-way, (2), All parcels as set forth in order of immediate occupancy in favor of Utah Department of Transportation as recorded November 7, 1985, as Entry No. 149395, in Book 408, at Page 770, and (3) BEGINNING at a point 1593 feet North along the section line and 33 feet West of the Southeast corner of Section 3, Township 13 North, Range 3 West, SLB&M, and running West 765.7 feet to the east Right-of-Way Line of the Interstate Freeway (no access line); then North 1 deg. 09'53" West 978.0 feet along said line, more or less, to North boundary of Southeast quarter of said section; then South 89 deg. 29'05" East 212.8 feet along the North boundary of the Southeast quarter of said section to the West Right-of-Way Line of county road, then South 37 deg. 01'12" East 951.37 feet along said line; thence South 216.3 feet along said line to point of beginning

Parcel No. 07-037-0001

The West half of the Northwest Quarter of Section 11, Township 13 North, Range 3 West, Salt Lake Meridian.
LESS AND EXCEPTING roads on the North and West sides, according to the official plat thereof, on file in the Office of the Recorder of Box Elder County, Utah.

The current beneficiary of the trust deed is SECURITY INVESTMENT CORPORATION NV, and the record owner of the property as of the recording of the notice of default is ECO RANCHES, LLC.

Dated this 20<u>th</u> day of August, 2020.

<u>/s/ Katherine R. Young</u>
Katherine R. Young, Trustee
3212 S State Street
Salt Lake City UT, 84115
Phone: (801) 746-2477

John W. Huber
United States Attorney (#7226)
111 South Main Street, Suite 1800
Salt Lake City, UT 84111
(801) 524-5682

## Notice of Trustee's Sale

The following described property will be sold at public auction to the highest bidder, without warranty as to title, possession, or encumbrances, payable in lawful money of the United States at the time of sale, at the main entrance of the First Judicial District Court for Box Elder County, 43 North Main, Brigham City, UT 84302 on September 25, 2020 at 11:30 a.m. of said day, for the purpose of foreclosing a trust deed originally executed by ECO RANCHES, LLC, as Trustor, in favor of SECURITY INVESTMENT CORPORATION NV, covering real property located in Box Elder County and more particularly described as:

Parcel Nos. 08-052-0005, 08-052-0004, 08-052-0006, 08-052-0014, 08-052-0012, and 08-

052-0008 located in Box Elder County, State of Utah.

See attached "Exhibit A" for Legal Descriptions.

The current beneficiary of the trust deed is SECURITY INVESTMENT CORPORATION NV, and the record owner of the property as of the recording of the notice of default is ECO RANCHES, LLC.

Dated this 20th day of August, 2020.

/s/ Katherine R. Young
Katherine R. Young, Trustee
3212 S State Street, Salt Lake City UT, 84115
Phone: (801) 746-2477

### "Exhibit A"
### Legal Description

PARCEL 1:
Southwest Quarter of Southwest Quarter, less the West 5.25 acres thereof; also the West 8.42 acres of the Southeast Quarter of Southwest Quarter of Section 27, Township 14 North, Range 3 West, Salt Lake Meridian.
Less: County road right of way.

PARCEL 2:
The West 5.25 acres of Southwest Quarter of Southwest Quarter of Section 27, Township 14 North, Range 3 West, Salt Lake Meridian.
Less: County road right of way.

PARCEL 3:
Northeast Quarter of Southwest Quarter; Southwest Quarter of Southeast Quarter lying West of county road known as Frontage Road; and the East 31.58 acres of the Southeast Quarter of Southwest Quarter of Section 27. Township 14 North, Range 3 West, Salt Lake Meridian.
Less: Lot 1, BRUCE ZUNDEL SUBDIVISION
Less: County road right of way

PARCEL 4:
Beginning North 71° West 1350.1 feet from the Southeast corner of Section 27, Township 14 North, Range 3 West, Salt Lake Meridian, North 40°6' West 435 feet. North 19°22' West 240.5 feet. North 18° 3' West 329.8 feet, North 89°38' East 456.2 feet, South 24' East 876.2 feet to beginning.
ALSO: Beginning at a point 1320 feet West and 1312 feet North from the Southeast corner of Section 27, West 396 feet to East right of way line of county road, North 4°40' East 274 feet, North 15°20' East 1100 feet more or less to the North line of Northwest Quarter of the Southeast Quarter of said Section 27, East 83 feet, South 1332 feet more or less to beginning.

PARCEL 5:
Lot 1, BRUCE ZUNDEL SUBDIVISION, as recorded March 26, 2001, as Entry No. 150913, in the office of the BOX ELDER County Recorder.

PARCEL 6:
The Northwest Quarter of the Southeast Quarter of Section 27, Township 14 North, Range 3 West, Salt Lake Meridian lying West of county road known as Frontage Road.
Less: Utah Department of Transportation access road right of way.
Less: Parcel No. 08-052-0013, created by Warranty Deed 216956.

John W. Huber
United States Attorney (#7226)
111 South Main Street, Suite 1800
Salt Lake City, UT 84111
(801) 524-5682

### Notice of Trustee's Sale

The following described property will be sold at public auction to the highest bidder, without warranty as to title, possession, or encumbrances, payable in lawful money of the United States at the time of sale, at the main entrance of the First Judicial District Court for Box Elder County, 43 North Main, Brigham City, UT 84302 on September 25, 2020 at 11:30 a.m. of said day, for the purpose of foreclosing a trust deed originally executed by ECO RANCHES, LLC, as Trustor, in favor of SECURITY INVESTMENT CORPORATION NV, covering real property located in Box Elder County and more particularly described as:

Parcel Nos. 08-045-0005 and 08-044-0004 located in Box Elder County, State of Utah.

See attached "Exhibit A" for legal description.

The current beneficiary of the trust deed is SECURITY INVESTMENT CORPORATION NV, and the record owner of the property as of the recording of the notice of default is ECO RANCHES, LLC.

Dated this <u>20th</u> day of August, 2020.

<u>/s/ Katherine R. Young</u>
Katherine R. Young, Trustee
3212 S State Street, Salt Lake City UT, 84115
Phone: (801) 746-2477

### "Exhibit A"
### Legal Descriptions

PARCEL 1: 08-045-0005
LOTS 1, 2, AND 3 THE WEST HALF OF THE NORTHEAST QUARTER AND THE NORTHWEST QUARTER OF THE SOUTHEAST OUARTER OF SECTION 15, TOWNSHIP 14 NORTH, RANGE 3 WEST, SALT LAKE BASE AND MERIDIAN.
LESS: A PARCEL OF LAND IN FEE FOR A FREEWAY KNOWN AS PROJECT NO. 15-8 BEING PART OF AN ENTIRE TRACT OF PROPERTY, IN THE NOHTHWEST QUARTER OF THE SOUTHEAST OUARTER AND THE WEST HALF OF THE NORTHEAST QUARTER OF SECTION 15, TOWNSHIP 14 NORTH, RANGE 3 WEST, SALT LAKE BASE AND MERIDIAN. THE BOUNDARIES OF SAID PARCEL OF LAND ARE DESCRIBED AS FOLLOWS:
BEGINNING AT THE INTERSECTION OF THE SOUTHERLY BOUNDARY LINE OF SAID ENTIRE TRACT AND THE EASTERLY RIGHT–OF-WAY FENCE LINE OF A COUNTY ROAD, FORMERLY A STATE ROAD DESIGNATED AS PROJECT NO. S.P.293, WHICH POINT IS 488.8 FEET EASTERLY ALONG THE 40 ACRE LINE FROM THE SOUTHWEST CORNER OF SAID NORTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 15; THENCE NORTH 11°08'33" WEST 60.48 FEET ALONG SAID EASTERLY RIGHT-OF-WAY FENCE LINE TO AN ANGLE POINT; THENCE CONTINUING NORTH 12°29'56" WEST 145.22 FEET ALONG SAID EASTERLY RIGHT-OF-WAY FENCE LINE TO AN ITNERSECTION WITH AN EAST-WEST FENCE; THENCE CONTINUING NORTH 15°32'01" WEST 286.65 FEET ALONG SAID

EASTERLY RIGHT-OF-WAY FENCE LINE TO AN ANGLE POINT; THENCE CONTINUING NORTH 18°33'59" WEST 1242.18 FEET ALONG SAID EASTERLY RIGHT-OF-WAY FENCE LINE TO THE WESTERLY BOUNDARY LINE OF SAID NORTHEAST QUARTER OF SECTION 15; THENCE NORTH 0° 55'08 WEST 2060.96 FEET ALONG SAID WESTERLY BOUNDARY LINE TO A POINT WHICH IS 210.0 FEET, RADIALLY DISTANT EASTERLY FROM THE CENTER LINE OF SAID PROJECT OPPOSITE ENGINEER STATION 3460+98.23; THENCE SOUTH 13°35'26" EAST 1579.15 FEET: THENCE SOUTH 10°35'06" EAST 501.60 FEET; THENCE SOUTH 15°09'32" EAST 1744.69 FEET; THENCE SOUTH 89°25'26" WEST 371.77 FEET TO THE POINT OF BEGINNING AS SHOWN ON THE OFFICIAL MAP OF SAID PROJECT ON FILE IN THE OFFICE OF THE STATE ROAD COMISSION OF UTAH.
LESS: A PARCEL OF LAND IN FEE FOR A FREEWAY KNOWN AS PROJECT NO. 15-8, PART OF AN ENTIRE TRACT OF PROPERTY, IN THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER AND THE WEST HALF OF THE NORTHEAST QUARTER OF SECTION 15, TOWNSHIP 14 NORTH, RANGE 3 WEST, SALT LAKE BASE AND MERIDIAN. THE BOUNDARIES OF SAID PARCEL OF LAND ARE DESCRIBED AS FOLLOWS:
BEGINNING AT THE INTERSECTION OF THE EASTERLY RIGHT-OFWAY FENCE LINE OF A COUNTY ROAD, FORMERLY A STATE ROAD DESIGNATED AS PROJECT NO S.P. 293, AND AN EXISTING EAST-WEST FENCE, WHICH POINT IS 488.8 FEET EASTERLY ALONG THE 40 ACRE LINE, 60.48 FEET NORTH 11°08'33 WEST AND 145.22 FEET NORTH 12°29'56" WEST FROM THE SOUTHWEST CORNER OF SAID NORTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SAID SECTION 15; THENCE NORTH 15°.32'01" WEST 286.65 FEET ALONG SAID EASTERLY RIGHT-OF-WAY FENCE LINE TO AN ANGLE POINT; THENCE CONTINUING NORTH 18°33'59" WEST 1242.18 FEET ALONG SAID EASTERLY RIGHT-OF-WAY FENCE LINE TO THE WESTERLY BOUNDARY LINE OF SAID NORTHEAST QUARTER OF SECTION 15; THENCE NORTH 0°55'08" WEST 2060.956 FEET ALONG SAID WESTERLY BOUNDARY LINE TO A POINT WHICH IS 210.0 FEET RADIALLY DISTANT EASTERLY FROM THE CENTER LINE OF SAID PROJECT OPPOSITE THE ENGINEER STATION 3460+98.23; THENCE SOUTH 13°35'26" EAST 1579.15 FEET; THENCE SOUTH 10°35'06" EAST 501.60 FEET; THENCE SOUTH 15°09'32" EAST 1538.44 FEET TO SAID EAST-WEST FENCE; THENCE SOUTH 89°38'22" WEST 359.98 FEET TO THE POINT OF BEGINNING AS SHOWN ON THE OFFICIAL MAP OF SAID PROJECT ON FILE IN THE OFFICE OF THE STATE ROAD COMISSION OF UTAH.

PARCEL 2: 08-044-0004
LOTS 4, 5, 6, 7, WEST HALF OF THE SOUTHEAST QUARTER OF SECTION 10, TOWNSHIP 14 NORTH, RANGE 3 WEST, SALT LAKE BASE AND MERIDIAN.
LESS THAT PORTION DEEDED TO STATE ROAD.

John W. Huber
United States Attorney (#7226)
111 South Main Street, Suite 1800
Salt Lake City, UT 84111
(801) 524-5682

## Notice of Trustee's Sale

The following described property will be sold at public auction to the highest bidder, without warranty as to title, possession, or encumbrances, payable in lawful money of the United States at the time of sale, at the main entrance of the First Judicial District Court for Box Elder County, 43 North Main, Brigham City, UT 84302 on September 25, 2020 at 11:30 a.m. of said day, for the purpose of foreclosing a trust deed originally executed by ECO RANCHES, LLC, as Trustor, in favor of SECURITY INVESTMENT CORPORATION NV, covering real property located in Box Elder County and more particularly described as:

Parcel Nos. 08-041-0025, 08-041-0026, 08-041-0027, 08-041-0028, 08-042-0018 Tract 2:

08-041-0019, 08-041-0004, and 08-041-0020 located in Box Elder County, State of Utah.

See attached "Exhibit A" for legal description.

The current beneficiary of the trust deed is SECURITY INVESTMENT CORPORATION NV, and the record owner of the property as of the recording of the notice of default is ECO RANCHES, LLC.

Dated this 20th day of August, 2020.

/s/ Katherine R. Young
Katherine R. Young, Trustee
3212 S State Street
Salt Lake City UT, 84115
Phone: (801) 746-2477

## "Exhibit A"
## LEGAL DESCRIPTION

PARCEL 1:
Beginning 22 2/3 rods West of the North Quarter corner of Section 7, Township 14 North, Range 3 West, Salt Lake Meridian, thence running West 246 feet, thence South 17 rods, thence East 246 feet, thence North 17 rods, to beginning.
LESS: Tracts deeded to Raymond G. Yaworsky and William D. Marsh.

PARCEL 2:
Beginning at a point 538 feet West of the North Quarter corner of Section 7, Township 14 North, Range 3 West, Salt Lake Meridian, thence West 82 feet, thence South 280.5 feet, thence East 82 feet, thence North 280.5 feet to beginning.

PARCEL 3:
Beginning at a point 374 feet West of the North Quarter corner of Section 7, Township 14 North, Range 3 West, Salt Lake Meridian, thence West 82 feet, thence South 280.5 feet, thence East 82 feet, thence North 280.5 feet to beginning.

PARCEL 4:
Beginning at a point 1321.95 feet South of the North Quarter corner, Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, BOX ELDER County, Utah; running thence East 3,300 feet, plus or minus, to center line of Samaria Ditch; thence North along the center line of said ditch to a point 330 feet North of Grantor's South property line; thence West to West boundary of Grantor's property; thence South 330 feet, plus or minus, to point of beginning. (Lying within Portage City limits)

PARCEL 5:
The North half of Northeast Quarter of Section 7. Township 14 North, Range 3 West, Salt Lake Meridian.
LESS: The North half of the West half of the North half of the Northeast Quarter, Section 7. Township 14 North, Range 3 West, Salt Lake Meridian.
LESS: A part of the North half of section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, BOX ELDER County, Utah: Beginning at the North Quarter corner of Section 7 at a point West 34.8 feet from existing fence line; running thence North 89°57'38" East 2640.0 feet; thence South 0°28'34" West 660.0 feet; thence South 89°57'38" West 2640.0 feet thence North 0°28'34" East 660.0 feet to the point of beginning.
Excepting therefrom: Beginning at the North Quarter corner of Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, and running thence South 216 feet; thence East 327 feet; thence North 216 feet; thence West 327 feet to the point of beginning.
Also excepting therefrom: That portion on the West of said property which lies within 8800 West Street.
LESS: Beginning at a point 1321.95 feet South of the North Quarter corner, Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, BOX ELDER County, Utah; running thence East 3,300 feet, plus or minus, to center line of Samaria Ditch; thence North along the center line of said ditch to a point 330 feet North of Grantor's South property line; thence West to West boundary of Grantor's property; thence South 330 feet, plus or minus, to point of beginning. (Lying within Portage City limits)

PARCEL 6:
Beginning at a point 1321.95 feet South of the North Quarter corner, Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, BOX ELDER County, Utah; running thence East 3,300 feet, plus or minus, to center line of Samaria Ditch; thence North along the center line of said ditch to a point 330 feet North of Grantor's South property line; thence West to West boundary of Grantor's property; thence South 330 feet, plus or minus, to point of beginning. (Lying outside Portage City limits)

PARCEL 7:
The North half of the Northeast Quarter of Section 7, Township 14 North, Range 3 West, Salt Lake Meridian.
LESS: The North half of the West half of the North half of the Northeast Quarter, Section 7, Township 14 North, Range 3 West. Salt Lake Meridian.
LESS: A part of the North half of Section 7, Township 14 North, Range 3 West. Salt Lake Base and Meridian, U.S. Survey, BOX ELDER County, Utah: Beginning at the North Quarter corner of Section 7 at a point West 34.8 feet from existing fence line; running thence North 89°57'38" East 2640.0 feet; thence South 0°28'34" West 660.0 feet; thence South 89°57'38" West 2640.0 feet; thence North 0°28'34" East 660.0 feet to the point of beginning.
Excepting therefrom: Beginning at the North Quarter corner of Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, and running thence South 216 feet: thence East 327 feet; thence North 216 feet; thence West 327 feet to the point of beginning.
Also excepting therefrom: That portion on the West of said property which lies within 8800 West Street.

LESS: Beginning at a point 1321.95 feet South of the North Quarter corner, section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, BOX ELDER County, Utah; running thence East 3,300 feet, plus or minus, to center line of Samaria Ditch; thence North along the center line of said ditch to a point 330 feet North of Grantor's South property line; thence West to West boundary of Grantor's property; thence South 330 feet, plus or minus, to point of beginning. (Lying outside Portage City limits)

PARCEL 8:
The North half of the Northwest Quarter of Section 8, Township 14 North, Range 3 West, Salt Lake Meridian.
LESS: All land lying East of the West boundary of OSLRR right of way.
LESS: Beginning at a point 1321.95 feet South of the North Quarter corner, Section 7, Township 14 North, Range 3 West, Salt Lake Base and Meridian, U.S. Survey, BOX ELDER County, Utah; running thence East 3,300 feet, plus or minus, to center line of Samaria Ditch; thence North along the center line of said ditch to a point 330 feet North of Grantor's South property line; thence West to West boundary of Grantor's property; thence South 330 feet, plus or minus, to point of beginning.